1

District Judge Jamal N. Whitehead

2

3

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

4

5

6

7   PLAINTIFF PACITO; PLAINTIFF ESTHER;
    PLAINTIFF JOSEPHINE; PLAINTIFF
    SARA; PLAINTIFF ALYAS; PLAINTIFF
8   MARCOS; PLAINTIFF AHMED;
    PLAINTIFF RACHEL; PLAINTIFF ALI;
9   HIAS, INC.; CHURCH WORLD SERVICE,
    INC.; and LUTHERAN COMMUNITY
10  SERVICES NORTHWEST,

CASE NO. 2:25-cv-00255

OPPOSITION TO PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUCTION

11          *Plaintiffs*,

12

              v.
13
    DONALD J. TRUMP, in his official capacity
14  as President of the United States, MARCO
    RUBIO, in his official capacity as Secretary of
15  State, KRISTI NOEM, in her official capacity
    as Secretary of Homeland Security;
16  DOROTHY A. FINK, in her official capacity
    as Acting Secretary of Health and Human
17  Services,

18          *Defendants*.
    _____

19

20

21

22

23

24

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

1

**TABLE OF CONTENTS**

2
INTRODUCTION ................................................................................................................ 1

3
BACKGROUND ................................................................................................................. 2

4
    I.      The Executive's Authority to Suspend Entry of Aliens and to Set Foreign Aid .......... 2

5
    II.     The Refugee Act .................................................................................................. 4

6
    III.    The Executive Orders .......................................................................................... 5

7
    IV.    Implementation of the Executive Orders ............................................................ 6

    V.     This Litigation ..................................................................................................... 8

8
STANDARD OF REVIEW .................................................................................................. 8

9
ARGUMENT ...................................................................................................................... 8

10
    I.      Plaintiffs Are Not Likely to Prevail on the Merits of their Claims............................. 8

11
         A.     Plaintiffs Lack Standing to Seek Injunctive or Declaratory Relief

12
                Against the President .................................................................................... 9

13
         B.     Plaintiffs' Separation of Powers Claim Fails Because the President's
                Power in the Realm of Refugee Admission and Foreign Affairs is Vast

14
                and Not Justiciable ...................................................................................... 9

15
         C.     Plaintiffs' Refugee Act Claim Also Fails as the President Validly
                Exercised His Constitutional and Statutory Power and the USRAP

16
                Order Does Not Conflict with the INA........................................................ 12

17
               1.     The INA grants the President authority to suspend refugee
                     admissions...................................................................................... 12

18
               2.     Consistent with the Refugee Act, the INA grants the President,
                     through the Secretary of Homeland Security, discretion over the

19
                     admission of all refugees, including suspension of entry. ................. 13

20
                3.     The INA does not entitle derivative refugees to admission but
                     simply affords them refugee status should they be admitted............. 14

21
          D.     Plaintiffs Have Failed to State a Cognizable Due Process Claim .................. 16

22
          E.     Plaintiffs are Not Likely to Prevail on their APA Claims ............................ 16

23

24
Opposition to Plaintiffs' Motion for               U.S. Department of Justice
a Preliminary Injunction                      Civil Division, Office of Immigration Litigation
                                       P.O. Box 878, Ben Franklin Station
No. 2:24-cv-00255-JNW                   Washington, DC 20044
                                       (202) 305-7234

1.      Plaintiffs do not allege any agency action. .......................................... 17

2.      Plaintiffs do not allege any final action. ............................................ 18

3.      Defendants have not exceeded their statutory authority and have
        not acted contrary to law. .................................................................... 19

4.      Defendants have not acted arbitrary and capriciously. ...................... 20

II.     Plaintiffs Failed To Show Irreparable Harm And The Balance Of Public Interest
        Factors Weighs Strongly Against An Injunction ...................................................... 24

CONCLUSION ........................................................................................................... 27

Opposition to Plaintiffs' Motion for                     U.S. Department of Justice
a Preliminary Injunction                                 Civil Division, Office of Immigration Litigation
                                                         P.O. Box 878, Ben Franklin Station
No. 2:24-cv-00255-JNW                                    Washington, DC 20044
                                                         (202) 305-7234

                                         ii

1

2

# TABLE OF AUTHORITIES

3                                                                                          Page(s)

**Cases**

4

5    *Abourezk v. Reagan,*
      785 F.2d 1043 (D.C. Cir. 1986) .......................................................... 2-3, 10

6    *Adams v. Vance,*
      570 F.2d 950 (D.C. Cir. 1978) ............................................................ 12

7    *AIDS Vaccine v. United States,*
      Case No. 25-00400 (D.D.C.) ............................................................... 25

8

9    *All. for the Wild Rockies v. Cottrell,*
       632 F.3d 1127, 1131 (9th Cir. 2011) .................................................. 25

10

11   *Am. Ins. Ass'n v. Garamendi,*
      539 U.S. 396 (2003) ........................................................................... 11

12   *Am. Whitewater v. Tidwell,*
      770 F.3d 1108 (4th Cir. 2014) ........................................................... 16

13

14   *Arizona v. United States,*
      567 U.S. 387 (2012) ........................................................................... 26

15   *Bennett v. Spear,*
      520 U.S. 154 (1997) ........................................................................... 18

16

17   *California v. Azar,*
      911 F.3d 588 (9th Cir. 2018) ............................................................. 26

18   *Dalton v. Specter*
      511 U.S. 461 (1994) ........................................................................... 9

19

20   *Dep't of State v. Muñoz,*
      602 U.S. 899 (2024) ........................................................................... 16

21   *Detroit Int'l Bridge Co. v. Gov't of Canada,*
      189 F. Supp. 3d 85 (D.D.C. 2016) ..................................................... 17

22

23   *Doe #1 v. Trump,*
      957 F.3d 1050 (9th Cir. 2020) ........................................................... 26

24

Opposition to Plaintiffs' Motion for          U.S. Department of Justice
a Preliminary Injunction                       Civil Division, Office of Immigration Litigation
                                               P.O. Box 878, Ben Franklin Station
No. 2:24-cv-00255-JNW                          Washington, DC 20044
                                               (202) 305-7234

iii

*Doe 2 v. Trump*,
   319 F. Supp. 3d 539 (D.D.C. 2018) ..................................................................... 9, 14

*Doe v. Trump*,
   288 F. Supp. 3d 1045 (W.D. Wash. Dec. 23, 2017) ........................................... 14, 15

*E. Bay Sanctuary Covenant v. Trump*,
   2019 WL 1048238 (N.D. Cal. Mar. 5, 2019) ............................................................ 25

*Elkins v. Moreno*,
   435 U.S.  (1978) .......................................................................................................... 2

*Fiallo v. Bell*,
   430 U.S. 787 (1977) ................................................................................................ 2, 10

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) .............................................................................................. 17, 18

*Haitian Refugee Ctr., Inc. v. Gracey*,
   600 F. Supp. 1396 (D.D.C. 1985) .............................................................................. 13

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952) .................................................................................................... 10

*Hawaii v. Trump*,
   878 F.3d 662 (9th Cir. 2017) ...................................................................................... 13

*I.N.S. v. Stevic*,
   467 U.S. 407 (1984) .................................................................................................... 14

*INS v. Legalization Assistance Project*,
   510 U.S. 1301 (1993) .................................................................................................. 26

*Johnson v. Whitehead*,
   647 F.3d 120 (4th Cir. 2011) ........................................................................................ 2

*Kerry v. Din*,
   576 U.S. 86 (2015) ...................................................................................................... 10

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) .................................................................................... 25

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .................................................................................................... 17

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

*Maryland v. King*,
   567 U.S. 1301 (2012) .................................................................................... 26

*Matthews v. Diaz*,
   426 U.S. 67 (1976) ........................................................................................ 15

*Mississippi v. Johnson*,
   71 U.S. 475 (1866) ........................................................................................ 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ........................................................................................ 17

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) ...................................................................... 9

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................................................... 24

*Norton v. S. Utah Wilderness,*
   *All.*, 542 U.S. 55 (2004) ................................................................................ 16

*Schneider v. Kissinger*,
   412 F.3d 190 (D.C. Cir. 2005) ...................................................................... 12

*Serv. Emp. Int'l Union Local 200 United v. Trump*,
   420 F. Supp. 3d 65 (W.D.N.Y. 2019) ............................................................ 20

*Sierra Club v. Peterson*,
   228 F.3d 559 (5th Cir. 2000) ................................................................... 17, 18

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ........................................................................ 8

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ............................................................................. *passim*

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) ................................................................................... 3, 11

*United States v. Curtiss-Wright Exp. Corp.*,
   299 U.S. 304 (1936) ............................................................................. 3, 10, 12

*United States v. Texas*,
   599 U.S. 670 (2023) ...................................................................................... 26

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

v

*Winter v. Nat. Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) ........................................................................... 1, 8, 24

*Wright v. Riveland*,
　219 F.3d 905 (9th Cir. 2000) ................................................................ 16

*Youngstown Sheet & Tube Co. v. Sawyer*,
　343 U.S. 579 (1952) ............................................................................... 12

*Zivotofsky ex rel Zivotofsky v. Kerry*,
　576 U.S. 1 (2015) .................................................................................. 12

**Statutes**

5 U.S.C. § 704 ........................................................................................ 19, 21

5 U.S.C. § 706(2)(A) .............................................................................. 19, 22

8 U.S.C. § 706(1) ........................................................................................ 18

8 U.S.C. § 1101 ............................................................................................. 2

8 U.S.C. § 1157(a)(2) .................................................................................... 4

8 U.S.C. § 1157(c) ...................................................................................... 18

8 U.S.C. § 1157(c)(1) .................................................................................. 16

8 U.S.C. § 1157(c)(2)(A) .................................................................. 5, 16, 17, 18

8 U.S.C. § 1157(c)(3) ................................................................................ 4, 5

8 U.S.C. § 1157(e) ................................................................................. 15, 16

8 U.S.C. § 1182(a) ........................................................................................ 4

8 U.S.C. § 1182(f) ................................................................................. *passim*

8 U.S.C. § 1201(h) ...................................................................................... 16

8 U.S.C. § 1522 ............................................................................................. 5

8 U.S.C. § 1522(a)(1) .................................................................................. 22

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

8 U.S.C. § 1522(a)(1)(A) ................................................................................................ 5

8 U.S.C § 1157 .................................................................................................. 16, 17, 18

8 U.S.C § 1157(c)(2)(A) ............................................................................................. 5, 17

22 U.S.C. § 2346(a) ......................................................................................................... 3

22 U.S.C. § 2601(c)(1) ..................................................................................................... 3

28 U.S.C. § 1291 ........................................................................................................... 22

**Regulations**

45 Fed. Reg. 25,789 (Apr. 15, 1980) ............................................................................. 15

51 Fed. Reg. 30470 (Aug. 22, 1986) ................................................................................ 3

61 Fed. Reg. 60007 (Nov. 22, 1996) ................................................................................ 3

74 Fed. Reg. 4093 (Jan. 21, 2009) ................................................................................... 3

76 Fed. Reg. 44751 (July 24, 2011) ................................................................................. 3

82 Fed. Reg. 8977 (January 17, 2017) ............................................................................. 7

90 Fed. Reg. 8,459 (Jan. 20, 2025) ................................................................................. 1

8 C.F.R. § 207.7(a) .......................................................................................................... 5

45 C.F.R. § 400 ............................................................................................................... 5

45 C.F.R. §§ 400.11(a) .................................................................................................... 5

**Other Authorities**

Exec. Order No. 12,172 .................................................................................................. 15

Exec. Order No. 12,807 .................................................................................................... 3

Exec. Order No 13769 ...................................................................................................... 7

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

Exec. Order No. 14,169 .................................................................................................. 1

Pub. L. No. 87-510, 76 Stat. 121 .................................................................................. 3

Pub. L. No. 101-179, 103 Stat. 1298 ........................................................................... 4

Pub. L. No. 96-212, 94 Stat. 102, § 101(b) .................................................................. 4

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

Pursuant to Local Civil Rule 7(e)(3), Defendants submit this opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 14)(Mot.).

## INTRODUCTION

The President has broad statutory authority to "suspend the entry of … any class of aliens" "*[w]henever* [he] finds that [their] entry … would be detrimental to the interests of the United States." 8 U.S.C. § 1182(f)(emphasis added). "By its terms, § 1182(f) exudes deference to the President in every clause" and provides a "comprehensive delegation" of authority. *Trump v. Hawaii*, 585 U.S. 667, 684–85 (2018). "*The sole prerequisite* set forth in § 1182(f) is that the President 'find[ ]" that the entry of the covered aliens "would be detrimental to the interests of the United States.'" *Id.* at 685 (emphasis added)(alteration in original).

Invoking that comprehensive statutory delegation and his inherent constitutional authority to control the entry of aliens into this country, on January 20, 2025, the President temporarily suspended the admission of refugees pending a determination that "further entry into the United States of refugees aligns with the interests of the United States." Exec. Order No. 14163, *Realigning the United States Refugee Admissions Program*, 90 Fed. Reg. 8,459 (Jan. 20, 2025)("USRAP Order") §§ 1, 4. The President also issued a 90-day pause in foreign development assistance to assess programmatic efficiencies, and to ensure that all foreign aid is consistent with foreign policy. *See* Exec. Order No. 14,169, *Reevaluating and Realigning United States Foreign Aid*, 90 Fed. Reg. 8,610 (Jan. 20, 2025)("Foreign Aid Order") §§ 2, 3. As a result, foreign aid related to the United States Refugee Admissions Program ("USRAP") was paused.

Plaintiffs, three national and local resettlement agencies and nine individuals, have moved the Court to preliminarily enjoin the USRAP and Foreign Aid Orders. Such relief is an "extraordinary remedy," which Plaintiffs bear a heavy burden to justify. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Especially here, as the President is acting pursuant to his statutory and constitutional authority to make determinations regarding national security and the admission of aliens.

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

1

Plaintiffs' motion fails as Plaintiffs have not demonstrated a clear likelihood of success on the merits: (1) Plaintiffs lack standing to seek injunctive or declaratory relief against the President, (2) the exercise of the President's powers in the realm of refugee admission and foreign affairs is not justiciable, (3) the President's issuance of the USRAP and Foreign Aid Orders is a valid exercise of his statutory and constitutional authority and is consistent with the Refugee Act of 1980, (4) Plaintiffs' due process claims are not cognizable, and (5) the agencies acted lawfully in implementing the USRAP Order and suspending funds, which fall within the definition of foreign aid, that support the refugee program. Moreover, Plaintiffs have not demonstrated irreparable harm, and the balance of equities and public interest further weigh against interfering with the President's exercise of statutory and constitutional power. The Court should deny a preliminary injunction.

## BACKGROUND

### I.    The Executive's Authority to Suspend Entry of Aliens and to Set Foreign Aid

The Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1101 et seq., as amended, established "a comprehensive and complete code covering all aspects of admission of aliens to this country," *Elkins v. Moreno*, 435 U.S. 664 (1978), and reflects "Congress's plenary power over immigration and naturalization," *Johnson v. Whitehead*, 647 F.3d 120, 126 (4th Cir. 2011)(citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). Central to this case, Congress gave the President broad discretionary authority to suspend or restrict the entry of all aliens:

> **(f) Suspension of entry or imposition of restrictions by President**
> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate. . . .

8 U.S.C. § 1182(f). "The President's sweeping proclamation power" under § 1182(f) "provides[, among others,] a safeguard against the danger posed by any particular case or class of cases that is not covered by one of the" INA's grounds for denying admission of aliens in § 1182(a). *Abourezk v.*

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

2

*Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986). Numerous Presidents have invoked § 1182(f) to suspend or impose restrictions on the entry of certain aliens or classes of aliens,[1] and the Supreme Court has repeatedly upheld the broad and virtually unreviewable sweep of this authority. *See, e.g., Trump v. Hawaii*, 585 U.S. 667, 684 (2018).

This congressional delegation of authority to suspend entry to any aliens or to any class of aliens is at the heart of (and is bolstered by) the President's broad inherent constitutional authority under Article II relating to foreign affairs and national security. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950)("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in the executive power to control the foreign affairs of the nation."); *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936)(discussing "the very delicate, plenary and exclusive power of the President…in the field of international relations—a power which does not require as a basis for its exercise an act of Congress").

Similarly, the statutory framework governing foreign assistance grants the President broad discretion to set the conditions on which the United States provides such assistance. Indeed, the Foreign Assistance Act of 1961 (FAA), and similar statutes, explicitly allow for the provision of assistance "on such terms and conditions as [the President] may determine." *See, e.g.*, section 531 of the FAA (22 U.S.C. § 2346(a))(assistance to promote economic or political stability); section 2(c)(1) of the Migration and Refugee Assistance Act of 1962, (MRAA), Pub. L. No. 87-510, 76 Stat. 121 (22 U.S.C. § 2601(c)(1)).

Ultimately, Congress has given the President broad discretion to determine "whether and when to suspend entry … [,] whose entry to suspend … [,] for how long … [,] and on what conditions ('any restrictions he may deem to be appropriate')." *Hawaii*, 585 U.S. at 684. Congress has similarly deemed

---

[1] *See, e.g.*, Presidential Proclamation No. 5517, 51 Fed. Reg. 30470 (Aug. 22, 1986)(President Reagan); Exec. Order No. 12,807, 57 Fed. Reg. 23133 (May 24, 1992)(President H.W. Bush); Presidential Proclamation No. 6958, 61 Fed. Reg. 60007 (Nov. 22, 1996)(President Clinton); Presidential Proclamation No. 8342, 74 Fed. Reg. 4093 (Jan. 21, 2009)(President W. Bush); Presidential Proclamation No. 8693, 76 Fed. Reg. 44751 (July 24, 2011)(President Obama).

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

3

1    it unlawful for "any alien" to enter or attempt to enter the United States "except under such reasonable

2    rules, regulations, and orders, and subject to such limitations and exceptions as the President may

3    prescribe." 8 U.S.C. § 1185(a)(1).

4    **II.    The Refugee Act**

5        The Refugee Act of 1980 amended the INA to establish "a permanent and systematic procedure

6    for the admission to this country of refugees of special humanitarian concern to the United States, and

7    to provide comprehensive and uniform provisions for [their] effective resettlement." Pub. L. No. 96-

     212, 94 Stat. 102, § 101(b). The Refugee Act provides that the maximum number of refugees that may

8    be admitted annually shall be "such number as the President determines, before the beginning of the

9    fiscal year and after appropriate consultation [with Congress], is justified by humanitarian concerns or

10   is otherwise in the national interest." 8 U.S.C. § 1157(a)(2).

11        Subject to numerical limits set annually by the President, the Secretary of Homeland Security

12   has discretion to admit "any refugee who is not firmly resettled in any foreign country, is determined

13   to be of special humanitarian concern to the United States, and is admissible (except as otherwise

     provided under [8 U.S.C. § 1157(c)(3)]) as an immigrant" under the INA. 8 U.S.C. § 1157(c)(1); *see*

14   *also* 8 U.S.C. §§ 1101(a)(42)(defining "refugee"), 1182(a)(general inadmissibility grounds). Which

15   refugees are determined to be "of special humanitarian concern" to the United States for the purpose

16   of refugee resettlement is determined in the Report to Congress on Proposed Refugee Admissions

17   prior to the beginning of the fiscal year. Declaration of Adam Zerbinopoulos (Ex. 1) ¶9. Refugees

18   admitted in accordance with this provision are sometimes referred to as "principal" applicants or

19   refugees.

20        In addition, certain individuals who do not meet the statutory definition of a refugee under 8

21   U.S.C. § 1101(a)(42) may nonetheless be entitled to refugee status if they are accompanying or

     "following-to-join" a principal refugee. *See* 8 U.S.C. § 1157(c)(2)(A); 8 C.F.R. § 207.7(a). To obtain

22   "derivative refugee" status, an applicant must be the spouse or unmarried child under the age of 21 of

23
24   Opposition to Plaintiffs' Motion for                              U.S. Department of Justice
     a Preliminary Injunction                                          Civil Division, Office of Immigration Litigation
                                                                       P.O. Box 878, Ben Franklin Station
     No. 2:24-cv-00255-JNW                                             Washington, DC 20044
                                                                       (202) 305-7234

a principal refugee and must also be admissible (except as otherwise provided under 8 U.S.C. § 1157(c)(3)) as an immigrant under the INA. 8 U.S.C. § 1157(c)(2)(A). Derivative refugees who are either in the physical company of the principal refugee when admitted to the United States or admitted within four months of the principal refugee's admission are called "accompanying" refugees. 8 C.F.R. § 207.7(a). Derivative refugees who seek admission more than four months after the principal refugee are called "following-to-join" refugees. *Id*.

The INA provides only that such derivative refugees are entitled to refugee *status* if the appropriate application or petition is processed and their relationship as the spouse or child of a principal refugee and their admissibility is established.[2] *See* 8 U.S.C. § 1157(c)(2)(A). The INA does not, however, entitle derivative refugees to be *admitted* to the United States without qualification. The admission of a derivative who has obtained refugee status is contingent on there being room under the subsection allocation under which the principal refugee's admission is charged, as well as, by implication, the annual refugee limit, set by the President, and that individual establishing their eligibility for admission. *Id.* And, of course, such individuals, like everyone else seeking entry into the United States, may also be subject to the bar on entries under § 1182(f).

Following admission, the INA authorizes the funding of programs by public and private organizations to assist refugees in achieving self-sufficiency. 8 U.S.C. § 1522; 45 C.F.R. pt. 400. Government support for these programs, however, is only permitted "to the extent of available appropriations." 8 U.S.C. § 1522(a)(1)(A); *see* 45 C.F.R. §§ 400.11(a), 400.56.

**III.    The Executive Orders**

On January 20, 2025, the President signed the USRAP Order, which suspended admission of refugees under the USRAP, pursuant to the President's authority under 8 U.S.C. §§ 1182(f) and

---

[2] Accompanying derivatives are processed via Form I-590, Registration for Classification as Refugee, which is filed in conjunction with the Form I-590 by the principal refugee overseas. Following-to-join derivatives are processed via Form I-730, Refugee/Asylee Relative Petition, which the admitted principal refugee files on behalf of the derivative, who may be overseas or in the United States.

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

1185(a) and based on the President's finding that the "United States lacks the ability to absorb large numbers of migrants, and in particular, refugees, into its communities in a manner that does not compromise the availability of resources for Americans, that protects their safety and security, and that ensures the appropriate assimilation of refugees." USRAP Order § 1. The USRAP Order also suspended "decisions on applications for refugee status." *Id.* § 3(b). Notwithstanding the suspension, the USRAP Order allows for admission of refugees on a case-by-case basis should the Secretaries of Homeland Security and State jointly determine such admission is in the national interest and would not threaten national security or welfare, and sets a process for resuming refugee admissions in the future. *Id.* §§ 3(c), 4.

That same day, the President also signed the Foreign Aid Order, which required agency heads to "immediately pause new obligations and disbursements of development assistance funds to foreign countries and implementing non-governmental organizations, international organizations, and contractors pending reviews of such programs … to be conducted within 90 days." Foreign Aid Order § 3(a). The Foreign Aid Order also required agency heads to review each foreign assistance program under guidelines provided by the Secretary of State to determine "whether to continue, modify, or cease each foreign assistance program." *Id.* § 3(b)–(c). Notwithstanding the pause, the Foreign Aid Order allows the Secretary of State to waive the 90-day pause on incurring new development assistance funds and allows for the resumption of programs prior to the end of the 90-day period with the Secretary of State's approval. *Id.* § 3(d)–(e).

## IV.    Implementation of the Executive Orders

In the days before the administration change, senior officials in the State Department's Bureau of Population and Migration (PRM) were informed that President Trump intended to suspend refugee admissions under the USRAP through executive order. Ex. 1 ¶18. In 2017, when President Trump previously suspended the USRAP, the suspension took effect immediately, and following the

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

6

suspension, some refugees were stranded at U.S. ports of entry, unable to enter the United States.[3] Ex. 1 ¶19. Thus, in anticipation of the USRAP Order, the State Department, upon learning that the suspension would go into effect on January 27, 2025, cancelled all travel after 12:00 p.m. on January 20, 2025. Ex. 1 ¶20. The State Department did so out of an abundance of caution because most refugees travel to the United States from around the world, a trip that involves multiple layovers and can take multiple days. *Id.* Consequently, the State Department cancelled travel scheduled between January 20-27 to avoid the not insignificant risk that refugees would not arrive in the United States before the suspension went into effect at 12:01 a.m. on January 27, 2025, and to avoid the possibility that some refugees would be stranded at a U.S. port of entry or at an airport in a foreign country. *Id.*

In response to the USRAP Order's directive to suspend any decisions on refugee applications, the State Department also suspended USRAP processing activities. Ex. 1 ¶21. The suspension was intended to prevent inefficiencies, as it would be illogical for the Government and resettlement partners to move refugees to transit centers or conduct pre-departure activities when refugee admissions were suspended. Ex. 1 ¶¶21–22. And some processing activities, such as medical exams and security checks, expire after a certain amount of time. Ex. 1 ¶22. Further, the State Department could not be sure when and which classes of refugees the President would find to be in the United States' interest upon resumption of refugee admissions. Ex. 1 ¶22.

Following the Foreign Aid Order's directive to *immediately* cease foreign aid payments, the State Department, on January 24, 2025, issued 25 STATE 6828, an "All Diplomatic and Consular Posts" (ALDAC) cable "paus[ing] all new obligations of funding, pending a review, for foreign assistance programs funded by or through the Department and USAID." Ex. 1 ¶26.  This pause applied to assistance funded from accounts in title III of the Department of State, Foreign Operations, and Related Programs Appropriations Act, to include the Migration and Refugee Assistance account, from

---

[3] *See* Exec. Order No 13769, *Protecting the Nation from Foreign Terrorist Entry into the United States*, 82 Fed. Reg. 8977 (Jan. 17, 2017).

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

7

which funding for initial reception and placement services is provided to resettlement agencies. Ex. 1 ¶¶23-26. Thus, the Order's halt on foreign aid necessarily included payments to resettlement agencies in the United States. Ex. 1 ¶¶24-26.

## V.    This Litigation

On February 10, 2025, three national and local refugee-serving agencies and nine individuals filed suit on their own behalf and on behalf of a putative class. *See generally* ECF 1, Complaint (Compl.). The individual Plaintiffs are a refugee resettled in the United States, refugee applicants hoping to be resettled in the United States, and principal refugees residing in the United States and their derivative-refugee-beneficiaries abroad hoping to be resettled in the United States. Compl. ¶¶13–21. The organizational Plaintiffs are three refugee resettlement agencies. Compl. ¶¶22–24.

Plaintiffs allege, among others, that the President and various agencies violated the Refugee Act, APA, Due Process Clause, and Separation of Powers doctrine in issuing and implementing the USRAP and Foreign Aid Orders. *See generally* Mot.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009)(citation omitted).

## ARGUMENT

## I.    Plaintiffs Are Not Likely to Prevail on the Merits of their Claims

Plaintiffs' motion should be denied because they are not likely to prevail on their claims. First, Plaintiffs lack standing to seek injunctive or declaratory relief against the President. Plaintiffs' motion also fails because (1) the President's exercise of his extensive powers in the realm of refugee admission

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

8

and foreign affairs challenged here is justiciable, (2) the President's issuance of the USRAP and Foreign Aid Orders is a valid exercise of his statutory and constitutional authority and is consistent with the Refugee Act, (3) Plaintiffs' due process claims are not cognizable, and (4) the agencies acted lawfully in implementing the URSAP Order and suspending funds, that support the refugee program.

A.    **Plaintiffs Lack Standing to Seek Injunctive or Declaratory Relief Against the President**

Plaintiffs' motion should be dismissed because Plaintiffs lack standing to seek any relief against the President. Plaintiffs ask this Court to enjoin the President from implementing the USRAP Order and to declare the Order unlawful in its entirety. Compl. at 45–46 (Prayer for Relief). Additionally, Plaintiffs ask this Court to declare unlawful and set aside the suspension of resettlement agency funding under the Foreign Aid Order. *Id*. But neither form of relief is available against the President: the President may not be enjoined in the performance of his official non-ministerial duties, *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866)("[T]his court has no jurisdiction of a bill to enjoin the President in the performance of his official duties."), and declaratory relief likewise is not available for non-ministerial conduct, *Newdow v. Roberts*, 603 F.3d 1002, 1012–13 (D.C. Cir. 2010); *see also Doe 2 v. Trump*, 319 F. Supp. 3d 539, 541 (D.D.C. 2018)("Sound separation-of-power principles counsel the Court against granting [injunctive and declaratory] relief against the President directly.").

B.    **Plaintiffs' Separation of Powers Claim Fails Because the President's Power in the Realm of Refugee Admission and Foreign Affairs is Vast and Not Justiciable**

As an initial matter, Defendants note that the President's actions are not cognizable as they are derivative of Plaintiffs' APA claims. *Dalton v. Specter*, 511 U.S. 461, 469 (1994). Plaintiffs argue that Defendants violated the principle of separation of powers because "[t]here is no provision in the Constitution that authorizes the President to enact, amend, or repeal statutes" and to "redistribute or withhold properly appropriated funds in order to effectuate its own policy goals." Compl. ¶240. The

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

9

USRAP and Foreign Aid Orders, however, are well within the President's discretion to make, as it is the President whose authority reigns principally in the realm of admission of aliens and foreign affairs.

The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo*, 430 U.S. at 792; *see Harisiades v. Shaughnessy,* 342 U.S. 580, 589 (1952). In particular, "[t]he conditions of entry for every alien, the particular classes of aliens that shall be denied entry altogether, the basis for determining such classification, the right to terminate hospitality to aliens, [and] the grounds on which such determination shall be based" are "wholly outside the power of this Court to control." *Fiallo,* 430 U.S. at 796 (citation omitted).

"The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *Knauff*, 338 U.S. at 542. "When Congress prescribes a procedure concerning the admissibility of aliens, … [i]t is implementing an inherent executive power…Thus, the decision to admit or to exclude an alien may be lawfully placed with the President, who may in turn delegate the carrying out of this function to a responsible executive officer of the sovereign []." *Id.*

In enacting §§ 1182(f) and 1185(a), Congress conferred a "sweeping proclamation power" to not only suspend entry of aliens but also impose restrictions wholly in the President's discretion. *See Abourezk v. Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986)(R.B. Ginsburg, J.), *aff'd by an equally divided Court*, 484 U.S. 1 (1987)(per curiam). The USRAP Order, issued pursuant to that expansive inherent authority, thus renders Plaintiffs' non-constitutional claims not justiciable. *See Knauff*, 338 U.S. at 542. Indeed, the restrictions the USRAP Order imposes are inextricably tied to the President's "broad power over the creation and administration of the immigration system," *Kerry v. Din*, 576 U.S. 86, 106 (2015)(Kennedy, J., concurring in judgment), which necessarily includes the regulation of such benefits as refugee status. In short, despite Plaintiffs' unsupported assertion that § 1185(a)(1)

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

10

does not give the President the authority to restrict refugee entry,[4] and Plaintiffs' cramped reading of the President's authority under § 1182(f), the USRAP Order is not justiciable as "a fundamental act of sovereignty ... implementing an inherent executive power." *Knauff*, 338 U.S. at 542.

As § 1182(f) plainly states, the President is authorized to suspend the entry of "any aliens" or "any class of aliens"—whenever he finds that their entry would be detrimental to the interests of the United States. Accordingly, in finding that the "United States lacks the ability to absorb large numbers of [refugees]" without compromising the availability of resources for Americans and the ability to protect the safety and security of Americans, and without being able to ensure the appropriate assimilation of refugees into the country, the President properly invoked his § 1182(f) power to enact the USRAP Order. USRAP Order § 1.

As with admission of aliens, the President also has broad authority to attend to the foreign affairs of the nation, including determining how foreign aid funds are used. While the Executive is "not free from the ordinary controls and checks of Congress merely because foreign affairs are at issue," *Zivotofsky ex rel Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015), the "historical gloss on the 'executive Power' vested in Article II of the Constitution has recognized the President's 'vast share of responsibility for the conduct of our foreign relations,'" *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003)(quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610–11 (1952)(Frankfurter, J., concurring)). Thus, "in foreign affairs the President has a degree of independent authority to act." *Id.*

Here, Plaintiffs challenge a general policy initiated by the President to *pause* foreign aid to confirm that those initiatives are within the national interest. This is well within the Executive Branch's unique expertise and constitutional role, is consistent with Article II of the Constitution, and is the sort

---

[4] Plaintiffs baldly assert that § 1185(a) "certainly" does not provide the President with the authority to suspend the USRAP. Mot. at 16 n. 4. But, the plain text of § 1185(a)(1) makes it unlawful for a noncitizen to enter the United States except under such "reasonable rules, regulations and orders, and subject to such limitations and exceptions as the President may prescribe."

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

of conduct that a federal court should hesitate to disrupt, absent a valid and binding direction to the contrary. Indeed, Plaintiffs' request that the Court override the President's judgment is the very separation of powers problem Plaintiffs' claim to challenge. That is because diplomacy and foreign relations fall within the "plenary and exclusive power of the President as the sole organ of the federal government in the field of international relations." *Curtiss–Wright*, 299 U.S. at 319–20; *see Schneider v. Kissinger*, 412 F.3d 190, 195 (D.C. Cir. 2005)("It cannot [] be denied that decision-making in the areas of foreign policy and national security is textually committed to the political branches."). As such, injunctive relief related to foreign affairs "deeply intrudes into the core concerns of the executive branch" and may be awarded only upon "an extraordinarily strong showing" as to each element. *Adams v. Vance*, 570 F.2d 950, 954–55 (D.C. Cir. 1978).

Plaintiffs are not likely to prevail on their separation of powers claim as the relief they seek would in fact result in a serious overstep of the judiciary into the exclusive domain of the Executive.

## C.    Plaintiffs' Refugee Act Claim Also Fails as the President Validly Exercised His Constitutional and Statutory Power and the USRAP Order Does Not Conflict with the INA

Even if Plaintiffs' claims were justiciable, Plaintiffs fail to demonstrate that the President violated the Refugee Act in issuing the USRAP Order.

### 1.    The INA grants the President authority to suspend refugee admissions.

"The sole prerequisite set forth in § 1182(f) is that the President 'find[]' that the entry of the covered aliens 'would be detrimental to the interests of the United States.'" *Hawaii*, 585 U.S. at 685. Plaintiffs' assertion that the USRAP Order fails to make a requisite finding to properly invoke the President's authority under § 1182(f) is unsupported by the plain language of the statute and Order. Mot. at 17. Plaintiffs assert that the President must make a "finding that entry of the suspended class 'would be detrimental to the interest of the United States,'" and complains that the only findings made in the USRAP Order are "irrelevant to the entry ban ordered." *Id.* But, that is exactly what the President

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

12

did—he found that entry of additional refugees would be impossible without "compromise[ing] the availability of resources for Americans, … protect[ing] their safety and security, and … ensur[ing] the appropriate assimilation of refugees." USRAP Order § 1 (citing "record levels of migration, including through the [USRAP]" and "significant influxes of migrants" over the last four years, requests by urban centers for "Federal aid to manage the burden of new arrivals," and declarations by some jurisdictions of "states of emergency because of increased migration"). This finding, based on an influx of aliens over the past four years, is impossible to ignore. Ex. 1 ¶16-17. In sum, the President "f[ound[] that the entry of any aliens or any class of aliens into the United States would be detrimental to the interests of the United States." 8 U.S.C. § 1182(f). Because the USRAP Order on its face satisfies the INA, Plaintiffs' statutory challenge to it necessarily fails. [5] Mot. at 17.

### 2. Consistent with the Refugee Act, the INA grants the President, through the Secretary of State and Homeland Security, discretion over the admission of all refugees, including suspension of entry.

In addition to the President's wide discretion to suspend the "entry of *all aliens*," 8 U.S.C. § 1182(f)(emphasis added), the INA expressly permits the President, following consultation with the House of Representations and Senate Judiciary Committees, to set numerical limits on refugee admission, which operates as a ceiling on such admissions. 8 U.S.C. § 1157(e) defines such consultations as in-person discussions between Cabinet-level representatives of the President and members of those Committees. The Secretary of State, as the President's delegate pursuant to E.O. 12208, 45 Fed. Reg. 25,789 (Apr. 15, 1980), attends these consultations, generally with officials from

---

[5] Because the President made the requisite finding under § 1182(f), Plaintiffs' § 1185(a)(1) argument fails. Section 1185(a), along with § 1182(f), "make it clear that Congress has allowed the Executive Branch to exercise its broad discretion regarding alien immigration." *Haitian Refugee Ctr., Inc. v. Gracey*, 600 F. Supp. 1396, 1399 (D.D.C. 1985). Indeed, President Carter invoked § 1185(a)(1) when delegating to the Attorney General authority to place restrictions on the entry of Iranians during the Hostage Crisis. *Hawaii*, 585 U.S. at 696. At bottom, §§ 1182(f) and 1185(a)(1) are separate provisions, and because these provisions are not closely positioned, § 1185(a)(1) is not modified by § 1182(f). As such, the court, in *Hawaii v. Trump*, 878 F.3d 662, 694 (9th Cir. 2017), *rev'd on other grounds*, 585 U.S. at 683, n.1, erred in concluding that §1185(a)(1) requires a finding of detriment as § 1182(f) provides the President with independent authority to place limitations on entry of aliens.

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

the Homeland Security and Health and Human Services. Ex. 1 ¶7. Prior to these discussions, and consistent with 8 U.S.C. 1157(e), the Departments of State, Homeland Security, and Health and Human Services submit a Report to Congress on Proposed Refugee Admissions on behalf of the President. Ex. 1 ¶8. The Secretary of Homeland Security also has discretion to "admit any refugee" "pursuant to such regulations as the [Secretary] may prescribe," subject to the maximum number set by the President. 8 U.S.C. § 1157(c)(1).

Plaintiffs assert that the USRAP Order violates the Refugee Act, but nowhere does the Refugee Act *entitle* refugees to admission into the United States. *See I.N.S. v. Stevic*, 467 U.S. 407, 426 (1984); 8 U.S.C. § 1201(h)("Nothing in this chapter shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to be admitted [to] the United States, if, upon arrival at a port of entry in the United States, he is found to be inadmissible under this chapter, or any other provision of law."). Nor does the Refugee Act or rules regarding admissibility override § 1182(f), the source of authority for the USRAP Order. *See Hawaii* ("§1182(f) vests the President with 'ample power' to impose entry restrictions in addition to those elsewhere enumerated in the INA"). Prior case law relied upon by Plaintiffs did not involve § 1182(f) and predated the *Hawaii* decision. *See Doe v. Trump*, 288 F. Supp. 3d 1045, 1078–79 (W.D. Wash. 2017)(Robart, J.)(stating there is an "entitlement for spouses and children" under the Refugee Act).[6] The Refugee Act permits refugee admissions and imposes numerical limitations—a ceiling, not a floor, but the Act does not mandate a set number of refugees in any fiscal year nor override the President's authority under § 1182(f). *See* 8 U.S.C § 1157.

### 3. The INA does not entitle derivative refugees to admission but simply affords them refugee status should they be admitted.

Derivative refugees are not entitled to *admission* to the United States as 8 U.S.C. § 1157(c)(2)(A) requires only that when admitted to the United States, derivatives are to be admitted

---

[6] In *Doe 2*, 288 F. Supp. 3d at 1078–79, the Court held that the Secretary lacked authority under § 1157(c)(2)(A) to suspend refugee processing, but the case did not involve a Presidential suspension under § 1182(f). *Id.* at 1057–58.

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

14

in the "same admission *status*" (i.e. refugee status) as the principal refugee they are accompanying or following to join. To be admitted, a derivative refugee must still independently establish they are not subject to a ground of inadmissibility, and entry may be suspended under § 1182(f) just as for any other alien who seeks entry into the United States. 8 U.S.C. § 1201(h). A derivative's admission also hinges on there being room left under the total applicable regional refugee ceilings and total ceiling set by the President for the fiscal year. 8 U.S.C. § 1157(c)(2)(A). Thus, contrary to Plaintiffs' assertion that derivative refugee benefits "are nondiscretionary," Compl. ¶217, Plaintiffs seeking refugee status as a derivative are not entitled to be admitted to the United States simply because they may be eligible for the same refugee status as the relative they are following to join in the United States if and when they are admitted. *Contra* Mot. at 14-15 (misdescribing § 1157(c)(2)(A) as creating a "mandatory duty to admit spouses and children of refugees whom Congress singled out for entitlement to admission"). Instead, because Plaintiffs' entry into the U.S. is also subject to the limitations of § 1182(f), as well as whatever cap on refugees that the President sets, the USRAP Order suspending entry does not deprive individuals seeking admission to this country of any entitlement.

Separate from admission, the suspension of refugees also does not violate § 1157(c)(2)(A)'s requirement that, if admissible, derivatives be admitted in the same refugee *status* as the relative they are following to join in the United States. Nothing in that provision requires processing when the action that would allow them to obtain refugee status—entry into the United States—is suspended pursuant to § 1182(f). Moreover, because the USRAP Order temporarily suspends decisions on I-730 petitions, the petitions have not been denied. Rather, adjudication is delayed because of the suspension on entry. Plaintiffs do not allege unreasonable delay,[7] and, even if the USRAP Order is evaluated for unreasonable delay under 8 U.S.C. § 706(1), Plaintiffs cannot state a plausible claim because the INA

---

[7] Plaintiffs assert that the indefinite suspension of I-730 application processing is unlawful, Mot. at 14-15, (citing *Doe*, 288 F. Supp. 3d at 1078−79), but *Doe* assumed all I-730 beneficiaries would be found eligible for refugee status. *See* 288 F. Supp. 3d at 1078−79. Respectfully, like here, the *Doe* court should have asked whether the delayed decisions resulting from the suspension had become unreasonably prolonged.

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

15

does not supply any duty to process refugee applications in general or within a certain timeframe. *See* 8 U.S.C. § 1157 (prescribing no such duty); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)(court can compel unreasonably delayed agency action only if the agency has a legal duty to act). Further, there is a reasonable rationale for the halt in processing—the entry suspension would not allow individuals to enter, and adjudicating requests while that suspension is in place serves no purpose.

### D.    Plaintiffs Have Failed to State a Cognizable Due Process

To state a procedural due process claim, a plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000)(citation omitted). Here, Plaintiff Esther's procedural due process claim has no likelihood of success because she does not have a liberty interest in the admission of her daughter, Plaintiff Josephine, the I-730 beneficiary whose entitlement is supposedly being withheld. *See Dep't of State v. Muñoz*, 602 U.S. 899, 909 (2024)(holding "that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country"). It is fundamental that a noncitizen outside the United States has no constitutional right to entry. *Muñoz*, 602 U.S at 909. Plaintiffs' contrary view—that § 1157(c)(2)(A) creates a property interest in entry—is contrary to *Muñoz* and fails to acknowledge the President's § 1182(f) authority.

### E.    Plaintiffs are Not Likely to Prevail on their APA Claims

Under the APA, the Court may set aside an agency action if the Court finds that challenged action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A), (C). The Court's review is "narrow and deferential" and focused on "ensur[ing] that the agency has 'examined the relevant data and articulated a satisfactory explanation for its action.'" *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1115 (4th Cir. 2014)(cleaned up)(citations omitted). The agency

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

16

need only "provide[] an explanation of its decision that includes a rational connection between the facts found and the choice made," *id.*, and a court "is not to substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Plaintiffs' APA claims are not likely to succeed here because (1) they do not allege any *agency* action, (2) they do not allege any *final* action, (3) Defendants have not exceeded their statutory authority and have not acted contrary to law, and (4) Defendants have not acted arbitrarily and capriciously.

### 1.    Plaintiffs do not allege any agency action.

Review under the APA is available only for "agency action." 5 U.S.C. § 704. Presidential actions are not agency actions reviewable under the APA and thus, the USRAP and Foreign Aid Orders are not reviewable. *Franklin*, 505 U.S. at 801.

Plaintiffs' challenges to agency implementation of the USRAP and Foreign Aid Orders likewise fail. First, where the Complaint effectively seeks review of the President's action by suing an agency acting on behalf of the President, the implementing agency actions are not reviewable under the APA. *See Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 104 (D.D.C. 2016), *aff'd*, 875 F.3d 1132 (D.C. Cir. 2017), *opinion amended and superseded*, 883 F.3d 895 (D.C. Cir. 2018), *as amended on denial of reh'g* (Mar. 6, 2018), *and aff'd*, 883 F.3d 895 (D.C. Cir. 2018), *as amended on denial of reh'g* (Mar. 6, 2018).

Second, to the extent Plaintiffs challenge the agencies' general implementation of the USRAP and Foreign Aid Orders, that is not a discrete, identifiable "agency action" subject to challenge. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890–91 (1990)(a plaintiff cannot challenge "the continuing (and thus constantly changing) operations" of the agency in carrying out a program, but must instead "direct its attack against some particular 'agency action' that causes it harm"). As the Supreme Court has recognized, the APA precludes "programmatic challenges," or challenges that demand "wholesale improvement [of an agency's] program[s] by court decree." *Sierra Club v. Peterson*, 228 F.3d 559,

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

17

566 (5th Cir. 2000)(cleaned up). To sidestep this, Plaintiffs advert to an internal agency email announcing the USRAP Order's suspension of refugee case processing, as well as notices of suspension reflecting the directives contained in the Foreign Aid Order. Mot. at 3. But the heart of Plaintiffs' claims is the "impact" of the Orders themselves—which they argue "is clear from its face"—as opposed to any particular discrete agency determination or action. Mot. at 3. Ultimately, Plaintiffs seek the Court's intervention in lifting the Orders and halting the agencies' implementation of the Orders entirely. Mot. at 28 (requesting the entry of a "broad" preliminary injunction that would "enjoin in their entirety" the USRAP Order and its operation). That is the exact type of broad programmatic challenge that courts have repeatedly ruled are impermissible under the APA.

### 2.    Plaintiffs do not allege any final action.

Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. Agency action is final only if (1) the agency action marks "the consummation of the agency's decisionmaking process" and (2) the "action must be one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)(citations omitted). In their motion, Plaintiffs fail to identify any final agency action. *See* Mot. at 19–26. That is because there is no final agency action where, as here, the USRAP and Foreign Aid Orders are temporary. Indeed, the USRAP Order calls for a report to be submitted "[w]ithin 90 days" for the President to determine "whether resumption of entry of refugees…is in the interests of the United States." USRAP Order § 4. And whatever determination the President ultimately reaches would not be subject to challenge, since that final action would be made by the President himself in view of "the interests of the United States." USRAP Order § 4; *see Franklin*, 505 U.S. at 796 ("no final agency action," where "the final action complained of is that of the President, and the President is not an agency within the meaning of the [APA]"). Similarly, the Foreign Aid Order calls for a determination to be made "within 90 days of this order on whether to continue, modify, or cease" foreign assistance. Foreign Aid Order ¶3(c). In other words, the agency's decisionmaking process is ongoing—not consummated—and there

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

18

is no final agency action here. There is also no provision in the law that requires the foreign aid funds

to be disbursed at a particular time in the fiscal year.

**3.    Defendants have not exceeded their statutory authority and have not acted contrary to law.**

As explained above, the Court may set aside an agency action only if the Court finds that challenged action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A), (C). Plaintiffs argue that the agencies have no statutory authority to implement the President's USRAP and Foreign Aid Orders. Mot. at 19. These arguments are unfounded.

8 U.S.C. § 1182(f) vests the President with "ample power" to impose entry restrictions in addition to those elsewhere enumerated in the INA, and agencies are obligated to carry out lawful executive orders.  Plaintiffs assert that the USRAP and Foreign Aid Orders effectively "ban[] the entry of all refugees" in violation of "Congress's detailed statutory scheme" providing for the admission of refugees and federal support to recently arrived refugees. *See* Mot. at 19-21. But, as discussed *supra* I.C., Plaintiffs' Refugee Act claim fails as the President validly exercised his constitutional and statutory power (which agencies are obligated to follow) and, in any event, the USRAP order does not conflict with the INA.

Nor does the agency's temporary pause of funding violate the Refugee Act.  Plaintiffs assert that funding for newly arrived refugees is congressionally mandated and that the agencies violated the Refugee Act in "withholding funds Congress appropriated to support refugee self-sufficiency and integration under the statute." Mot. at 20–21; 8 U.S.C. § 1522(a)(1). While it is true that § 1522(b), in conjunction with the Presidential letter dated January 13, 1981, authorizes the Secretary of State "to make grants to, and contracts with, public or private nonprofit agencies for initial resettlement (including initial reception and placement with sponsors) of refugees in the United States," nothing *requires* the Secretary to exercise this authority at all or to any specific degree.

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

19

8 U.S.C. § 1522(b)(1)(A)(ii). If Plaintiffs believe that the Secretary has taken action that in essence violates a contractual provision, the proper—and typically exclusive—place to raise such a claim is in the Court of Federal Claims. 28 U.S.C. § 1291 (Court of Federal Claims has exclusive jurisdiction over monetary claims against the United States in excess of $10,000). Further, Afghan and Iraqi special immigrant visa (SIV) holders are only eligible for benefits "available to refugees." Refugee Crisis in Iraq Act of 2007, sec. 1244(g), Title XII, Div. A, NDAA for FY 2008, P.L. 110–181; Afghan Allies Protection Act of 2009, sec. 602(b)(8), Div. F, Title VI, Omnibus Appropriations Act, P.L. 111–8. If no benefits are "available to refugees" due to the Secretary's decision to make no grants or contracts for such benefits or because such benefits are paused under existing grants or contracts, then there are no benefits for which Afghan and Iraqi SIV holders are eligible. Ex. 1 ¶15.

Plaintiffs also allege that the agencies failed to engage in required notice-and-comment rulemaking prior to implementing the USRAP and Foreign Aid Orders. Mot. at 22. The President was not required to engage in notice-and-comment rulemaking, however, as he has broad authority under the Constitution and the INA to suspend and impose restrictions on the entry of aliens, which were then delegated to the agencies to implement. *See Hawaii*, 585 U.S. at 683-84. And, any activity relating to the pause in funding necessarily involves "loans, grants, benefits, or contracts," 5 U.S.C. § 553(a)(1), which is exempt from rulemaking under the APA.  In any event, executive orders and the agencies' implementation of them "leave open the possibility for future notice-and-comment rulemaking, and expressly state that the executive orders should be implemented only "to the extent consistent with applicable law." *Serv. Emp. Int'l Union Local 200 United v. Trump*, 420 F. Supp. 3d 65, 77 (W.D.N.Y. 2019).

### 4.    Defendants have not acted arbitrary and capriciously.

Plaintiffs next argue that the agencies' temporary suspension of USRAP and its funding was arbitrary and capricious because they "offer no rational" explanation. Mot. at 23–25. Plaintiffs complain that the government offered no reasoning for suspending all USRAP processing activities

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

20

when the USRAP Order suspended only refugee admissions. Mot. at 25. Yet there is clearly a rational connection between the executive orders and the agencies' actions. While section 3(a) of USRAP Order only "direct[ed] that the entry into the United States of refugees under the USRAP be suspended," section 1 expressly states that the "order suspends the USRAP until such time as the further entry into the United States of refugees aligns with the interests of the United States." And, section 4 requires the Secretary of Homeland Security and State to submit reports every 90 days "until [the [President] determine[s] that resumption of the USRAP is in the interest of the United States." In other words, the USRAP Order does not limit suspensions to only admissions. Suspending operations, and not just admissions, therefore is consistent with the purpose of the USRAP Order. Suspending USRAP processing until admissions resume is also not arbitrary and capricious given the entry suspension on its own: doing so is appropriate as it would be an inefficient use of resources to move refugees to transit center or conduct pre-departure activities when refugee admissions are barred until the President lifts USRAP entry restrictions. Ex. 1 ¶¶21–22. This is particularly true as some processing activities, for example, medical exams and security checks, expire after a certain amount of time. *Id.*

Plaintiffs observe that the U.S. government stopped refugee travel immediately, a week before the admission suspension went into effect on January 27. Mot. at 6, 26–27. Senior officials in the State Department's PRM were informed on or about January 18 and 19 that the President intended to issue an executive order suspending refugee admissions and that cancelling refugee travel ahead of issuance would be prudent. Ex. 1 ¶18. Mindful of the risk of stranding travelers unless travel was stopped well before January 27, PRM officials cancelled all refugee travel scheduled for after January 20. Ex. 1 ¶¶19–20. Even though the refugee admissions suspension did not go into effect for seven days, PRM officials noted that because most refugees travel from across the world, their travel includes several layovers and often spans more than one day. PRM officials were concerned that refugees would not arrive by January 27 and would be stranded at a U.S. port of entry or mid transit. Ex. 1 ¶20.

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

21

1    Importantly, there is no right for a potential refugee to travel to a border or U.S. port of entry at any

2    particular time, and many refugees are not resettled for a lengthy period. And for many refugees, once

3    they leave their country of first refuge, they cannot return, which could potentially leave them stranded

4    at an airport in a foreign country. These are rational and logical explanations for the agencies' decision

5    to suspend the USRAP and its corresponding funds.

6        Plaintiffs also assert that the agencies' decision to suspend USRAP funding was arbitrary and

7    capricious. Mot. at 25. However, PRM's suspension of all USRAP funding was consistent with the

8    Foreign Aid Order. Ex. 1 ¶¶23–27. Funds for activities to meet refugee and migration needs, including

9    funds for including initial reception and placement benefits, are appropriated under the "Migration

10   and Refugee Assistance" (MRA) heading of title III of the Department of State, Foreign Operations,

11   and Related Programs Appropriations Act (SFOAA). Ex. 1 ¶24. On January 20, 2025, President Trump

12   issued the Foreign Aid Order stating that "[i]t is the policy of [the] United States that no further United

13   States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy

14   of the President of the United States." Section 3(a) directed that "[a]ll department and agency

15   heads…shall immediately pause new obligations and disbursements of development assistance

16   funds…pending reviews of such programs for programmatic efficiency and consistency with United

17   States foreign policy, to be conducted within 90 days of this order." To ensure foreign assistance is

18   provided consistent with President Trump's foreign policy, Secretary Rubio issued the January 24

19   ALDAC cable, "paus[ing] all new obligations of funding, pending a review, for foreign assistance

20   programs funded by or through the Department and USAID."   Ex. 1 ¶26. For existing foreign

21   assistance awards, the Secretary directed contracting officers and grant officers to "immediately issue

22   stop work orders, consistent with the terms of the relevant award, until such time as the Secretary shall

23   determine, following a review." *Id.* This pause applied to assistance funded from, among others,

24   accounts in title III of the SFOAA, to include MRA funds—which includes the migrant funds at issue

     here. *Id.*

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

22

Consistent with the Foreign Aid Order and ALDAC, PRM issued a "Notice of Suspension" on January 24, 2025, to its implementing partners, to include HIAS Inc. (HIAS) and Church World Service (CWS). Ex. 1 ¶27. This Notice advised recipients that awards were "immediately suspended pending a department-wide review of foreign assistance programs" and that "[d]ecisions whether to continue, modify, or terminate" awards would be made following that review. *Id.* Recipients were directed to stop all work under the awards and not incur any new costs after January 24, 2025. *Id.* Additionally, recipients were advised they could submit payment for legitimate expenses incurred prior to the date of the Notice or for legitimate expenses associated with the Notice. *Id.*

Plaintiffs assert that the suspension of funds fails to consider the resettlement agencies high dependence on "government funding to do their core work," without which they cannot exist. Mot. at 25. But, as Plaintiffs concede, this suspension of foreign aid is temporary. The Foreign Aid Order provides for a 90-day suspension and the Secretary of State has issued implementing guidance directing a review to take place within the Department of State and relevant components of other agencies "to ensure that all foreign assistance is aligned with President Trump's foreign policy agenda and that data regarding all foreign assistance spending in the future is aggregated and inputted into a comprehensive internal Department repository," following which "[d]ecisions whether to continue, modify, or terminate programs will be made following this review." Ex. 1, Attachment A. As such, Plaintiffs' assertion that the executive agencies unlawfully terminated their cooperative agreements is unlikely to succeed on the merits. *See* Mot. at 43–44. They also have no entitlement to receive the funds at any particular time.

The agencies also considered the reliance interests of the resettlement agencies by providing a means for reimbursement of costs incurred prior to the issuance of the Foreign Aid Order and by requiring "contracting officers and grant officers" to "immediately issue stop-work orders, consistent with the terms of the relevant award," for "existing foreign assistance awards." Exhibit 1, Attachment B. Additionally, the PRM stated that payments would be allowed for "expenses incurred prior to

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

23

January 24, 2025[,]" "expenses associated with stop work orders[,]" "emergency food assistance[,]" and "exempted activities[.]" ECF No. 15–23 at ¶45; 15–24 at ¶35. Thus, resettlement agencies have a means to recoup costs incurred and were directed to refrain from incurring additional costs. Thus, the agencies' decision to immediately suspend the funding of the USRAP program was rational and consistent with the Foreign Aid Order.

The temporary suspension of resettlement agency funding was thus lawful under the APA.

## II. Plaintiffs Failed To Show Irreparable Harm And The Balance Of Public Interest Factors Weighs Strongly Against An Injunction

Plaintiffs' motion should also be denied because Plaintiffs have not made a clear showing of irreparable harm absent a preliminary injunction. Individual plaintiffs have not demonstrated that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted). Plaintiffs allege that prolonged separation from family members is "paradigmatic" irreparable harm, Mot. at 11, but delay in entry alone does not amount to irreparable harm. Refugees often wait years for their applications to be processed, and the USRAP Order merely suspends temporarily their admission into the United States, while still allowing for admission on a case-by-case basis during the suspension period. In other words, while Plaintiffs may have waited many years to be reunited with their family members, the entirety of that separation cannot be attributable to a temporary suspension in refugee admissions. Indeed, even "the burden of removal alone cannot constitute the requisite irreparable injury." *Nken v. Holder*, 556 U.S. 418, 435 (2009). If *outright removal* from the U.S. does not satisfy the irreparable-harm requirement, then a temporary extension of non-entry into the U.S. cannot either *a fortiori*.

Plaintiffs abroad also allege fear for their physical safety, but these individuals have already been waiting months or years for possible admission to the United States in a third country—not their home country where they faced persecution—and critically have not demonstrated that an injunction from this Court would bring them to the United States any sooner *or* that they will be returned to their

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

24

home country in the absence of an injunction. Similarly, economic harm alone is not generally considered irreparable, *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Because individual Plaintiffs have not shown that a temporary suspension in refugee admissions will irreparably harm them, they are not entitled to the "extraordinary remedy" of preliminary injunctive relief. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)(citation omitted).

Organization Plaintiffs similarly have failed to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief. Plaintiffs CWS, HIAS, and LCSNW assert that the temporary pause in funding has resulted in a "cash-flow" crisis. Mot. at 11–12. But, as explained above, a dispute over money is not irreparable. In any event, a preliminary injunction with respect to the Foreign Aid Order and the Department of State implementation has been issued by another Court. That Court has enjoined the government from "enforcing and giving effect to Sections 1, 5, 7, 8, and 9 of Dep't of State, Memorandum, 25 STATE 6828 (Jan. 24, 2025) and any other directives that implement Sections 3(a) and 3(c) of the [Foreign Aid Order]." *See AIDS Vaccine Advocacy Coalition v. United States,* Case No. 25-00400-AHA, ECF No. 21 (D.D.C. Feb. 13, 2025). Those are the exact same provisions from which Plaintiffs here seek relief. Mot. at 28; Compl. 45. That Court is also receiving notice concerning compliance with that injunction, *AIDS Vaccine*, ECF No. 22 ("Status Report *regarding* Compliance"), and a second overlapping injunction on complex issues such as those raised here would risk imposing inconsistent obligations on the Government. The existing injunction also greatly reduces or eliminates Plaintiffs' claim of present harm deriving from these challenged policies. *See E. Bay Sanctuary Covenant v. Trump*, No. 4:18-cv-06810, 2019 WL 1048238, at * 2 (N.D. Cal. Mar. 5, 2019)("noting that where there is a preliminary injunction in place, not merely a TRO, 'Plaintiffs are unlikely to suffer harm if the Court stays these proceedings because the preliminary injunction preventing Defendants from enforcing the Rule will remain in place'").

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

25

Conversely, an injunction would irreparably harm the Government and the public interest. "[A]ny time a State is enjoined by a court from effectuating statues enacted by representatives of its people, it suffers a form if irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012)(Roberts, C.J., in chambers). The same principle applies to the judgments of the President at issue here: the Court should not interfere with, or second-guess, the foreign policy and national security judgments that the Constitution and INA commit unequivocally to the duly elected President.

Plaintiffs' asserted harms are greatly outweighed by the harm to the government and public interest that would result from an order taking the unprecedented step of enjoining the President from exercising his Constitutional and statutory power over the admission of refugees. *See Nken*, 556 U.S. at 435. As the Supreme Court has recognized, Executive officials must have "broad discretion" to manage the immigration system. *Arizona v. United States*, 567 U.S. 387, 395–96 (2012). It is the United States that has "broad, undoubted power over the subject of immigration and the status of aliens," *id*. at 394, and providing Plaintiffs with their requested relief would mark a severe intrusion into this core executive authority, *see INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993)(O'Connor, J., in chambers)(warning against "intrusion by a federal court into the workings of a coordinate branch of the Government"); *see also Doe #1 v. Trump*, 957 F.3d 1050, 1084 (9th Cir. 2020)(Bress, J., dissenting)(an injunction that limits presidential authority is "itself an irreparable injury"). Furthermore, while Plaintiffs seek a nationwide injunction, Mot. at 28, "universal injunctions…intrude on powers reserved for the elected branches," *United States v. Texas*, 599 U.S. 670, 694 (2023)(Gorsuch, J., concurring), and any injunction should, at a minimum, be "narrowed to redress only the injury shown as to [Plaintiffs]," *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018).

//

//

Opposition to Plaintiffs' Motion for
a Preliminary Injunction

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

1

2

**CONCLUSION**

3

For the foregoing reasons, the Court should deny Plaintiffs' motion for preliminary injunction.

4

5 DATED this 19th day of February, 2025.

Respectfully submitted,

6

BRETT A. SHUMATE

7 Acting Assistant Attorney General
Civil Division

8

AUGUST FLENTJE

9 Acting Director

10 */s/ Nancy K. Canter*
NANCY K. CANTER

11 (CA Bar No. 263198)
Senior Litigation Counsel

12

LINDSAY ZIMLIKI

13 JOSEPH MCCARTER
ALEXANDRA YEATTS

14 Trial Attorneys
U.S. Department of Justice

15 Civil Division, Office of Immigration Litigation
Washington, DC 20005

16 Phone: 202-305-7234
Email: nancy.k.canter@usdoj.gov

17

*Attorneys for Defendants*

18

19 I certify that this memorandum contains 9,988 words, in
compliance with the Local Civil Rules as modified by

20 this Court's February 12, 2025 Order (ECF No. 19).

21

22

23

Opposition to Plaintiffs' Motion for                    U.S. Department of Justice
a Preliminary Injunction                                Civil Division, Office of Immigration Litigation

24                                                       P.O. Box 878, Ben Franklin Station
                                                        Washington, DC 20044
No. 2:24-cv-00255-JNW                                   (202) 305-7234