THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,* <br><br> *Defendants*. | Case No. C25-255 JNW <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> NOTE ON MOTION CALENDAR: FEBRUARY 24, 2025 <br><br> ORAL ARGUMENT REQUESTED |

---

 * Pursuant to Federal Rule of Civil Procedure 25(d), Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services, is automatically substituted for Dorothy A. Fink, in her official capacity as Acting Secretary of Health and Human Services.

PLS.' REPLY ISO PRELIM. INJ.
(No. C25-255 JNW)

1

## <u>TABLE OF CONTENTS</u>

2    INTRODUCTION ................................................................................................................. 1

3    ARGUMENT ........................................................................................................................ 2

4    I.    Defendants do not meaningfully dispute Plaintiffs' standing or irreparable

5          harms. ................................................................................................................. 2

6    II.   Plaintiffs are likely to succeed on the merits of their APA claims. ..................... 3

7          A.    Agency implementation of the Executive Orders is not immune
                 from review. ................................................................................................. 3

8                1.    The agencies' decision-making is reviewable. ............................... 3

9                2.    The challenged agency actions are discrete and identifiable. ......... 5

10               3.    The challenged actions are sufficiently final. ................................. 6

11         B.    Defendants' arguments and evidence do not undermine Plaintiffs'
                 likelihood of success. .................................................................................. 7

12               1.    Plaintiffs are likely to succeed on their arbitrary-and-
13                     capricious claims. ........................................................................... 7

14               2.    Plaintiffs are likely to succeed on their notice-and-comment
15                     claims. ............................................................................................. 9

16               3.    Plaintiffs are likely to succeed on their contrary-to-law
                       claims. ........................................................................................... 10

17   III.  Plaintiffs are likely to succeed on the merits of their *ultra vires* claims. ............... 11

18         A.    Plaintiffs' claims are reviewable. .............................................................. 11

19         B.    Defendants ignore controlling caselaw and attack strawmen. .................. 11

20   IV.   Plaintiffs are likely to succeed on the merits of their due-process claim. ............ 13

21   V.    The *Winter* factors and the record support a comprehensive preliminary
22         injunction. .................................................................................................................. 14

23   CONCLUSION ................................................................................................................... 15

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# INTRODUCTION

Reading Defendants' opposition is like entering an alternate reality—one in which President Trump's day-one orders to suspend all refugee admissions and all foreign-aid funding were run-of-the-mill uses of presidential authority; executive agencies were "just following orders" and exercised no discretion when they implemented those directives; and Plaintiffs and hundreds of thousands of refugees, families, and resettlement partners are suffering no immediate or irreparable harms as a result. This is not the world we live in, as the extensive, unrebutted evidence in this case makes clear.

Defendants almost entirely ignore that evidence, and they ignore or mischaracterize most of Plaintiffs' cases and arguments. Notably, they dismiss in just a sentence and two footnotes the considered judgment of another court in this district that issued a nationwide preliminary injunction of an earlier and *narrower* version of President Trump's refugee ban.

Instead, Defendants argue that the actions of the President and executive agencies are immune from judicial review, such that this Court is barred from even considering executive actions of breathtaking scope that are irreparably harming hundreds of thousands of people and threatening to decimate the U.S. refugee-resettlement apparatus. Binding precedent forecloses this argument.

On the merits, Defendants claim that the President has boundless power to invalidate entire statutory provisions enacted by Congress. No court has blessed such an expansive reading of presidential power under section 212(f) of the INA. Arguing that agencies implementing the Refugee Ban EO and the Foreign Aid EO can never violate the law, Defendants do not seriously engage with Plaintiffs' APA arguments—even though each APA violation is sufficient on its own to support a preliminary injunction under the *Winter* test. Defendants similarly fail to counter Plaintiffs' arguments that the President's actions are *ultra vires* and violate the Refugee Act, or that Defendants violated Plaintiff Esther's right to due process. Plaintiffs are likely to succeed on those claims as well.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Given the substantial evidence of irreparable and compounding harms Plaintiffs face, and

2    based on the remaining *Winter* factors, a comprehensive preliminary injunction is necessary and

3    appropriate to stop Defendants' unlawful actions and redress Plaintiffs' injuries.

4    ## ARGUMENT

5    ## I.    Defendants do not meaningfully dispute Plaintiffs' standing or irreparable harms.

6    Defendants do not dispute that both individual and organizational Plaintiffs have standing

7    to challenge the agencies' implementation of the Refugee Ban EO and the Foreign Aid EO

8    (together, the "Executive Orders"). Dkt. # 31 ("Opp'n") at 9. Nor could they, because Plaintiffs'

9    evidence and controlling precedent make clear that they are directly harmed and that enjoining

10   those challenged actions would redress those harms. Dkt. # 14 ("Mot.") at 9–13 (citing Plaintiffs'

11   declarations). Defendants assert only that Plaintiffs "lack standing to seek any relief against the

12   President." Opp'n 9. But this conflates questions of justiciability and appropriate relief with the

13   issue of Plaintiffs' undisputed personal stake in the outcome of this case. In any event, as discussed

14   below, Defendants' cases regarding executive discretion are inapposite where the President's

15   actions are contrary to statute and lack lawful authority. Mot. 14–17; *contra* Opp'n 9 (relying on

16   cases involving "official non-ministerial duties").

17   As for irreparable harm, Defendants' position, Opp'n 24–25, is in direct conflict with

18   incontrovertible evidence of the danger Plaintiffs face abroad, the cancellation of their imminent

19   travel to the United States, their prolonged family separation, the loss of goodwill and harm to

20   relationships, and the massive disruption of core business activities. *See generally* Exs. 14–25;[1]

21   *see also* Mot. 9–13. As Plaintiffs set out, ample precedent finds such harms definitionally

22   irreparable. *See Al Otro Lado, Inc. v. McAleenan*, 423 F.Supp.3d 848, 876–77 (S.D. Cal. 2019)

23   (threat of physical danger to refugees is irreparable harm); *Doe v. Trump*, 288 F.Supp.3d 1045,

24   1082 (W.D. Wash. 2017) (prolonged family separation, including in context of refugee suspension,

25   constitutes irreparable harm); *Leiva-Perez v. Holde*r, 640 F.3d 962, 969–70 (9th Cir. 2011) (same);

26

---

[1] Plaintiffs' exhibits are attached to the declaration of Jonathan P. Hawley. Dkt. # 15.

PLS.' REPLY ISO PRELIM. INJ. – 2
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) ("[T]he threat of being driven

2    out of business is sufficient to establish irreparable harm." (cleaned up)); *AIDS Vaccine Advoc.*

3    *Coal. v. U.S. Dep't of State*, Nos. CV 25-00400 (AHA), 25-00402 (AHA), 2025 WL 485324, at

4    *2, *4 (D.D.C. Feb. 13, 2025) ("scale of the disruption" and "loss of funding . . . that threatens the

5    very existence of [their] business" constitutes irreparable harm (cleaned up)). Defendants'

6    misapplication of the narrow finding in *Nken v. Holder*, 556 U.S. 418, 435 (2009) (finding only

7    that removal is not *categorically* irreparable harm), Opp'n 25, does not show otherwise.

8          Finally, Defendants assert—wrongly—that another court has already enjoined the Refugee

9    Funding Suspension, Opp'n 25 (citing *AIDS Vaccine* case), but they do not and cannot represent

10   that any Plaintiff in *this* case is now receiving funding. In any event, the *AIDS Vaccine* court issued

11   a TRO that did not address or even mention the Refugee Ban EO or grants from the State

12   Department's Bureau of Population, Resettlement, and Migration ("PRM"), and Defendants' own

13   caselaw demonstrates that a TRO is insufficient to stop irreparable harm. Opp'n 25 (citing *E. Bay*

14   *Sanctuary Covenant v. Trump*, No. 4:18-cv-6810-JST, 2019 WL 1048238, at *2 (N.D. Cal. Mar.

15   5, 2019)). And Defendants' assertion that Plaintiffs' harm is "greatly reduce[d] or eliminate[d],"

16   *id.*, is belied by a February 20 order in *AIDS Vaccine* granting the plaintiffs' motion to enforce the

17   TRO—seven days *after* the TRO went into effect, with funding yet to be resumed. *See AIDS*

18   *Vaccine Advoc. Coal. v. U.S. Dep't of State*, Nos. CV 25-00400 (AHA), 25-00402 (AHA) (D.D.C.

19   Feb. 20, 2025), Dkt. # 30.

20   **II.    Plaintiffs are likely to succeed on the merits of their APA claims.**

21         **A.    Agency implementation of the Executive Orders is not immune from review.**

22               **1.    The agencies' decision-making is reviewable.**

23         Defendants take the sweeping and unprecedented position that agency action is immune

24   from judicial review under the APA whenever the agency is implementing a president's executive

25   order. Opp'n 17. As the *AIDS Vaccine* court recognized, this position, if accepted, "would allow

26   the President and agencies to simply reframe agency action as orders or directives originating from

PLS.' REPLY ISO PRELIM. INJ. – 3
(No. C25-255 JNW)

the President to avoid APA review." 2025 WL 485324, at *5. Defendants' support for this untenable position rests on a single out-of-circuit, district-court case that addressed merely "ministerial" agency action involving no exercise of discretion. *Detroit Int'l Bridge Co. v. Gov't of Can.*, 189 F.Supp.3d 85, 104 (D.D.C. 2016), *aff'd on other grounds*, 875 F.3d 1132 (D.C. Cir. 2017). That case does not support upending decades of APA precedent affirming judicial review of agency action. As subsequent and factually analogous cases make clear, when agencies exercise judgment in implementing presidential orders, their actions are *not* ministerial—and *are* subject to APA review. *See, e.g., Tate v. Pompeo*, 513 F.Supp.3d 132, 143 (D.D.C. 2021) (State Department implementation of presidential proclamation forbidding admission to certain noncitizens was not ministerial and was reviewable); *Milligan v. Pompeo*, 502 F.Supp.3d 302, 314 (D.D.C. 2020) (same).

Here, the text of the Executive Orders and Defendants' own evidence, which demonstrates multiple exercises of discretion, defeat any argument that agency implementation was ministerial and thus immune from judicial review. The Foreign Aid EO left to the implementing agencies the job of defining the contours of the "United States foreign development assistance" that it suspended, *see* Foreign Aid EO § 3(a). The State Department used its judgment to construe that term—without explanation—to be conterminous with programs funded by certain appropriations to the agency. Dkt. # 31-1 ("Zerbinopoulos Decl.") ¶¶ 24, 26. But the agency's discretion did not stop there: The Foreign Aid EO granted the agency discretion to, among other things, "waive" the funding suspension for "specific programs." Foreign Aid EO § 3(e). Yet the State Department stopped federal payment portals from even functioning, "making the purported waiver process useless," Ex. 24 ¶ 46—even though the programming at issue operates on U.S. soil or involves the domestic program of processing refugees for admission, and thus has no obvious connection to the Foreign Aid EO's stated purpose and policy, *see* Foreign Aid EO §§ 1–2. Finally, while the agency "advised" funding recipients that they could request reimbursements for work prior to the agency's suspension notices, Zerbinopoulos Decl. ¶ 27, and Defendants claim they provided a "means" for

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    doing so, Opp'n 23, they do not rebut Plaintiffs' evidence that the agencies have also suspended

2    *sub silentio* these reimbursements that are outside the scope of the Foreign Aid EO, Ex. 24 ¶¶ 45,

3    59; Ex. 23 ¶¶ 46, 53; Mot. 5.

4         The agencies exercised similar discretion in implementing the Refugee Ban EO. That order

5    provides that the Secretaries of State and Homeland Security "may jointly determine . . . in their

6    discretion" to admit refugees on a case-by-case basis, "[n]otwithstanding" the President's

7    suspension of refugee entry. Refugee Ban EO § 3(a), (c). Although Defendants elsewhere highlight

8    the availability of these discretionary exceptions, Opp'n 24, the unrebutted evidence shows that

9    the agencies have not created a process for considering case-by-case exceptions, Ex. 24 ¶¶ 39–40;

10   Ex. 23 ¶ 28; *see also* Zerbinopoulos Decl. ¶ 22 n.6 (it is "not clear" which refugees "might" benefit

11   from case-by-case exception). Indeed, before the Refugee Ban EO issued, the State Department

12   *on its own* exercised discretion when it cancelled all refugee travel scheduled on or after noon on

13   January 20, 2025. Zerbinopoulos Decl. ¶¶ 18–20. It also exercised discretion when it determined

14   it was "reasonable" and "logical" to suspend *all* refugee processing, *id.* ¶¶ 21–22, even though the

15   plain language of the Refugee Ban EO requires only suspension of "entry into the United States"

16   and "decisions on applications for refugee status," *see* Refugee Ban EO § 3(a)–(b). Mr.

17   Zerbinopoulos's legal argument in his declaration that the order more generally "suspends the

18   USRAP" relies on selective quotations and omits the operative language "direct[ing]" only a

19   suspension of entry and decisions. *Compare* Zerbinopoulos Decl. ¶ 21, *and* Opp'n 21, *with*

20   Refugee Ban EO § 3(a)–(b).

21        **2.    The challenged agency actions are discrete and identifiable.**

22        Defendants next argue that the agencies' implementation of the Executive Orders is

23   immune from judicial review because Plaintiffs' challenge is not "discrete" and therefore amounts

24   to a demand for "wholesale improvement" of agency programs. Opp'n 17–18. But nothing about

25   Plaintiffs' challenge to the abrupt halt of all refugee processing and the blanket funding suspension

26   resembles the kind of "programmatic challenge" to agency operational management dismissed in

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000) (finding plaintiffs' challenge to "last

2    twenty years" of on-the-ground forest management too broad).

3            To the contrary, Plaintiffs' challenge narrowly targets discrete agency decisions, made over

4    the course of several days, that conflict with statute. The relief sought would simply block the

5    government from enforcing those discrete policy decisions. As Defendants' own declarant makes

6    plain, the State Department's decisions to suspend all refugee processing and all funding to

7    resettlement partners for USRAP-related work abroad and in the United States reflected specific,

8    identifiable agency decisions—albeit with massive ramifications felt around the world.

9    Zerbinopoulos Decl. ¶¶ 20–21 (cancelling all refugee travel and all USRAP processing); *id.* ¶¶ 26–

10   27 (suspending resettlement-related funding to all resettlement partners). It is clear even from

11   Defendants' citations that judicial review is available under exactly these circumstances. *See Lujan*

12   *v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890–91 & n.2 (1990) (final agency action "applying some

13   particular measure across the board . . . can of course be challenged under the APA" where that

14   action causes plaintiff harm). To the extent Defendants imply that Plaintiffs are limited to

15   challenging only written agency policies, cases in this circuit have repeatedly rejected that

16   argument. *See, e.g.*, *Al Otro Lado, Inc. v. McAleenan*, 394 F.Supp.3d 1168, 1206–07 (S.D. Cal.

17   2019) (agency's unwritten practice of limiting access to asylum at border subject to APA review);

18   *Washington v. U.S. DHS*, 614 F.Supp.3d 863, 872–73 (W.D. Wash. 2020) (same as to U.S.

19   Customs and Border Protection's unwritten practice of courthouse arrests of noncitizens).

20           **3.    The challenged actions are sufficiently final.**

21           Finally, Defendants contend that Plaintiffs cannot demonstrate final agency action under

22   *Bennett v. Spear*, which requires that challenged agency action (1) marks "the consummation of

23   the agency's decisionmaking process" and (2) is "one by which rights or obligations have been

24   determined, or from which legal consequences flow." 520 U.S. 154, 177–78 (1997) (cleaned up).

25   Defendants do not dispute that the challenged agency decisions are ones by which "legal

26   consequences flow" to Plaintiffs, all refugees in the USRAP, and all resettlement partners. They

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    argue only that the challenged actions are "temporary" and subject to change in the future. Opp'n

2    18. But *all* agency actions are subject to future change, and courts regularly reject agency attempts

3    to insulate themselves from review by using a "temporary" label. As another court recently

4    determined in enjoining a requirement to "pause" funding and disbursements, "[b]y any measure,

5    Defendants' action[s] led to legal consequences and constituted final agency action." *Nat'l Council*

6    *of Nonprofits v. OMB*, No. 25-239 (LLA), 2025 WL 368852, at *11 (D.D.C. Feb. 3, 2025).

      **B.**    **Defendants' arguments and evidence do not undermine Plaintiffs' likelihood of success.**

            **1.**    **Plaintiffs are likely to succeed on their arbitrary-and-capricious claims.**

10    Plaintiffs have laid out why Defendants' USRAP and refugee-funding suspensions violate

11    many of the bare-minimum requirements for reasoned decision-making under the APA: The

12    agency failed to consider the reliance interests of refugees and SIV holders, failed to consider

13    reasonable alternatives, failed to consider "important aspect[s] of the problem," and engaged in

14    *sub silentio* policy change. Mot. 24–25; *see also Nat'l Council of Nonprofits*, 2025 WL 368852,

15    at *11–12 (finding arbitrary and capricious memorandum from OMB directing federal agencies to

16    freeze grant, loan, and assistance programs). Defendants fail to respond *at all* to each of these

17    arguments, and they are now forfeited. This alone is sufficient reason to find Plaintiffs likely to

18    succeed on the merits.

19    Indeed, Defendants' primary response to Plaintiffs' arbitrary-and-capricious arguments is

20    a declaration prepared in support of Defendants' opposition. Opp'n 21–23 (citing Mr.

21    Zerbinopoulos's declaration). But it is well established that judicial review of an agency's action

22    under the APA is limited to examination of the administrative record as it existed when the agency

23    made the relevant decision. *See, e.g.*, *Friends of Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th

24    Cir. 2000). Agencies cannot rely on "post hoc rationalizations" to defend earlier decisions, *Bowen*

25    *v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988), and Defendants do not and cannot argue

26    that any exception to this general rule applies. In any event, the declaration, made by a PRM

PLS.' REPLY ISO PRELIM. INJ. – 7
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    employee who does not purport to have any legal expertise, is largely comprised of misleading

2    legal conclusions and interpretations. *See, e.g.*, Zerbinopoulos Decl. ¶¶ 7–8, 13–14 (omitting

3    relevant definitions of "appropriate consultation" with Congress and ignoring mandatory statutory

4    language in 8 U.S.C. § 1522). Setting aside that use of a witness declaration to interpret statutes

5    and render legal opinions amounts to an impermissible circumvention of the word-count limitation,

6    insofar as the declaration does not limit itself to documentation of agency action, it is irrelevant

7    and should be disregarded in the APA merits inquiry.

8         In any event, Defendants fail to show that the agencies' decision-making satisfies the

9    APA's minimum standards. *See* Mot. 23–25. Their myopic focus on promoting purportedly

10   efficient use of government resources and preventing hypothetical refugee travel delays—at any

11   cost—is arbitrary and capricious under the APA because they failed to consider important factors,

12   such as statutory purpose and the serious reliance interests of refugees, their families and sponsors,

13   and resettlement partners in the existing and well-established scheme. *See* Mot. 23–25; Ex. 24 ¶ 47

14   (number of impacted travelers); Ex. 23 ¶ 32 (same); Ex. 18 ¶ 10 (in danger). It is particularly

15   notable that the agency did not consider the serious reliance interests of refugees on the verge of

16   travel, even where Defendants recognize that medical exams and security checks expire, Opp'n 21,

17   such that temporary travel delays can have "cascading effects that prolong a refugee's processing

18   and ultimate admission," Mot. 10 (cleaned up); *see also AIDS Vaccine*, 2025 WL 485324, at *5

19   (failure to consider "immense reliance interests" rendered agency action likely arbitrary and

20   capricious). It is similarly arbitrary and capricious that the agency failed to consider whether, for

21   example, its concerns about hypothetical travel delays could not be addressed by a much-less-

22   disruptive alternative, such as granting case-by-case exceptions to the entry suspension for the

23   small number of refugees who might have been impacted. The experience of Plaintiff Pacito and

24   his family—discovering, after years of waiting, that their scheduled January 22 travel was

25   cancelled—highlights the serious reliance interests at stake and the disruptive nature of the

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  agencies' failures. *See also* Dkt. # 25-1 at 2, 4–11, 14–18 (amicus brief specifying harms to states

2  and refugees and showing that agency acted contrary to stated purposes of Executive Orders).

3        As for the agencies' implementation of the funding suspension, Defendants do not explain

4  why the agencies interpreted the term "foreign development assistance" to apply to a broad swath

5  of appropriations that included funding for *domestic* work. Opp'n 22. Defendants' argument that

6  they considered resettlement partners' reliance interests when they "immediately issue[d] stop-

7  work orders," *id.* at 23, is irrational on its face—particularly where the State Department has

8  discretion under the Foreign Aid EO to waive the funding suspension. Defendants' contention that

9  the funding suspension is merely "temporary" ignores the relevant factors—including that the

10 Plaintiff organizations might not be able to survive the suspension and, at minimum, will suffer

11 lasting impacts. Mot. 11–12. And Defendants' suggestion that resettlement partners "have a means

12 to recoup costs," Opp'n 24, ignores the reality that no such funding has been provided and the

13 agency stopped payment portals from reimbursing resettlement agencies for work done prior to

14 January 20, Ex. 24 ¶¶ 44–46, 59; Ex. 23 ¶¶ 43–47, 53.

15        **2.    Plaintiffs are likely to succeed on their notice-and-comment claims.**

16        Defendants' notice-and-comment arguments are similarly unpersuasive. They focus on the

17 irrelevant contention that notice-and-comment claims cannot lie against the President, even though

18 Plaintiffs only asserted those claims against the agencies. Dkt. # 1 ¶¶ 222, 234. Any suggestion

19 that the agencies' implementation is merely ministerial remains unavailing. *See supra* pp. 4–5.

20 And the single out-of-circuit case they cite, Opp'n 20, does not support their position.

21        Defendants do not even attempt to distinguish a decision by a court in this district that

22 concluded that plaintiffs challenging a refugee suspension were likely to succeed on the merits of

23 their notice-and-comment claim. *See* Mot. 22 (citing *Doe*, 288 F.Supp.3d at 1075). The record

24 illustrates why public notice, an opportunity for comment, and agency consideration of relevant

25 comments are essential where, as here, an agency substantively alters the rights of hundreds of

26 thousands of vulnerable people. Mot. 22. For example, Plaintiffs Pacito and Josephine recount that

1   they could not understand why their travel was blocked before the effective date of the Refugee

2   Ban EO. Ex. 14 ¶¶ 25–28; Ex. 16 ¶¶ 18–24. Pacito described sleeping overnight in a parking lot

3   with his wife and infant along with other impacted families because they believed there had been

4   some mistake. Ex. 14 ¶¶ 28–31. The agencies appear not to have grasped the magnitude and lasting

5   impact of the harms resulting from their actions or considered obvious reasonable alternatives. *See*

6   *supra* pp. 7–9. Such omissions in agency decision-making are fatal under the APA, *see id.*, and

7   are precisely why Congress created the notice-and-comment guardrails in the first place.[2]

8          **3.    Plaintiffs are likely to succeed on their contrary-to-law claims.**

9       Defendants' arguments that the agencies did not act contrary to law rise and fall with their

10  claims about the scope of presidential authority under section 212(f). Opp'n 19. For the reasons

11  discussed below, *infra* pp. 12–13, Plaintiffs are likely to succeed on the merits of those claims.

12       But there is an independently sufficient reason why Plaintiffs' contrary-to-law claims are

13  likely to succeed: The agencies' actions fall outside their statutory authority and conflict with

14  federal statutes. Mot. 19–21. These are "infirmities of a constitutional magnitude." *Nat'l Council*

15  *of Nonprofits*, 2025 WL 368852, at *12. For example, as discussed above, the State Department

16  in its discretion construed the Foreign Aid EO to apply to domestic assistance for refugees and

17  SIV holders living in the United States. In so doing, the agency directly contravened Congress's

18  mandate that where, as here, the government has contracted with resettlement agencies to provide

19  initial resettlement services, the resettlement agencies "*shall* . . . fulfill [their] responsibility to

20  provide for [] basic needs." 8 U.S.C. § 1522(b)(7) (emphasis added). While it may be that the

21  agency is not required to enter into such contracts, Opp'n 19, this argument is unavailing where

22  the agency *has already done so* and the contract periods last until September 2025, Mot. 24–25

23  (agency violated its own contract regulations). And Defendants' passing reference to Tucker Act

24  challenges, which must be brought in the U.S. Court of Federal Claims, Opp'n 20, is a red herring

25

26        [2] Defendants have not asserted that any exceptions to the notice-and-comment rulemaking requirement apply, and those arguments are now forfeited.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    given that Plaintiffs do not bring breach-of-contract claims for money damages. Instead, they

2    challenge agency actions suspending all USRAP processing and funding for USRAP and

3    resettlement assistance and seek an injunction and ultimately vacatur of those unlawful actions.

4    Similarly, the agencies' failure to ensure a process for exemptions from the USRAP

5    suspension for follow-to-join refugees directly conflicts with Congress's statutory directive that

6    eligible and admissible spouses and children of such refugees are entitled to admission. Mot. 21–

7    22. And Defendants ignore that another court in this district has already held that a suspension of

8    "the ability of otherwise qualified [follow-to-join] applicants from seeking and obtaining that

9    entitlement" is contrary to law under the APA. *Doe*, 288 F.Supp.3d at 1079.

10    **III.    Plaintiffs are likely to succeed on the merits of their *ultra vires* claims.**

11         **A.    Plaintiffs' claims are reviewable.**

12    Defendants assert that Plaintiffs' *ultra vires* claims are not justiciable—but fail to explain

13    why. Opp'n 12. Nor could they: A long line of U.S. Supreme Court cases has reviewed on-the-

14    merits challenges to presidential actions as *ultra vires* of the President's constitutional or statutory

15    authority. *See, e.g.*, *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 171–73 (1993); *Trump v.*

16    *Hawai'i*, 585 U.S. 667, 682–83 (2018) (assuming without deciding that claim was reviewable and

17    proceeding to merits).[3]

18         **B.    Defendants ignore controlling caselaw and attack strawmen.**

19    The core of Defendants' argument is that the President's powers under section 212(f) (and

20    section 215(a)[4]) are so vast that the President has boundless authority to eliminate entire statutory

21    provisions enacted by Congress that provide for refugee admissions and resettlement assistance.

22    Opp'n 12–16. Defendants rely almost exclusively on *Trump v. Hawai'i*, but they ignore that the

23

24    ───────────────

    [3] Defendants spill considerable ink on Plaintiffs' separation-of-powers claim, Opp'n 9–12, but Plaintiffs did not move on that claim.

25    [4] Plaintiffs analyze only section 212(f) as it "substantially overlap[s]" with section 215(a),

26    *Hawai'i*, 585 U.S. at 683 n.1, and Defendants provide no analysis or caselaw specific to section 215(a).

PLS.' REPLY ISO PRELIM. INJ. – 11
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

case involved a narrower invocation of presidential power, supported by significant findings, that aligned with Congress's statutory scheme and purpose. *See* 585 U.S. at 677–80, 689. As the *Hawai'i* Court emphasized, the challenged presidential proclamation imposed entry restrictions on nationals of countries following a worldwide multi-agency review that determined certain countries had deficient information-sharing practices and presented national-security concerns, and only following diplomatic efforts to address those concerns. *Id.* at 677–79. The Court further emphasized that the President's proclamation "support[ed] Congress's individualized approach for determining admissibility" because it ensured consular officers had "sufficient (and sufficiently reliable) information" to make those determinations. *Id.* at 689.

Here, in stark contrast, the Refugee Ban EO's policy goals are domestic in nature, and there has been no review or findings that support suspending any refugee admissions, let alone USRAP in its entirety. Mot. 14–17. The Ninth Circuit requires a "sufficient finding" to support invocation of section 212(f) and has held that findings indistinguishable from those here could not support a prior refugee ban. *See Hawai'i v. Trump*, 859 F.3d 741, 771–74 (9th Cir.) (per curiam), *vacated on other grounds*, 583 U.S. 941 (2017). Lest there be any doubt, the Ninth Circuit's *Hawai'i* decision remains good law: It was vacated only because the ban at issue became moot after the Supreme Court granted certiorari and before the appeal could be adjudicated.[5] Conspicuously, Defendants ignore the Ninth Circuit's *Hawai'i* decision entirely.

The Refugee Ban EO fails to meet the requirements to invoke the President's section 212(f) power. Mot. 17–18. Rather than address this failing or Plaintiffs' arguments that the Refugee Ban EO unlawfully supplants Congress's priorities and directly conflicts with the Refugee Act, *see id.* at 15–17, Defendants tackle strawmen, *compare* Opp'n 14–15 (refugees are not entitled to admission), *with* Mot. 21 (statute mandates that follow-to-join refugees be granted refugee status if eligible and otherwise inadmissible). Defendants' minimal legal analysis is relegated to

---

[5] The Supreme Court's *Hawai'i* decision concerned a subsequent iteration of the "Muslim ban" that was limited to certain visa holders and did not concern refugees.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  footnotes and incorrectly suggests Plaintiffs should have claimed unreasonable delay under
2  section 706(1) of the APA. Opp'n 11–15 nn. 4–7. But section 1157(c)(2)(A) of the INA creates a
3  non-discretionary duty to admit, and indefinitely suspending admission is unlawful agency action
4  that must be analyzed under section 706(2) of the APA. Defendants' false suggestion that "refugee
5  status"—conferred upon admission as a legal matter—is somehow different than admission must
6  be rejected. Finally, Defendants fail to explain why the decision of a court in this district applying
7  circuit precedent to hold a narrower refugee ban unlawful is no longer good law after *Hawai'i*. *See*
8  Mot. 17 (citing *Doe*, 288 F.Supp.3d at 1078–79).

9          With respect to the Foreign Aid EO, Defendants do not assert that section 212(f) applies,
10  but they cite a string of cases involving "foreign affairs" for the proposition that the President has
11  authority to "determin[e] how foreign aid funds are used." Opp'n 11. Even if these cases supported
12  Defendants' claim (they do not), they fail to explain why the President's foreign-affairs authority
13  supports suspension of *domestic* assistance to noncitizens in the United States and processing for
14  *domestic* immigration programs. *See* Mot. 14–18.

15  **IV.    Plaintiffs are likely to succeed on the merits of their due-process claim.**

16          Finally, in response to Plaintiffs' due-process claim, *see* Mot. 26, Defendants argue only
17  that Plaintiffs lack a cognizable property or liberty interest under Supreme Court precedent, Opp'n
18  16. But *Department of State v. Muñoz* is inapposite: That case concerned whether judicial review
19  of an individual visa denial was available under an exception to the doctrine of consular
20  nonreviewability, and the Court held that no exception applied to a U.S.-citizen spouse challenging
21  her husband's visa denial because she lacked a fundamental liberty interest in her spouse's
22  admission—following an analysis of whether such a right is "deeply rooted in this Nation's history
23  and tradition." 602 U.S. 899, 903, 907–12 (2024) (quoting *Washington v. Glucksberg*, 521 U.S.
24  702, 720–21 (1997)). Here, in contrast, Congress has created a *statutory entitlement* to admission
25  for family members of principal refugees in the United States as long as those family members are
26  otherwise eligible and not inadmissible. Mot. 14–15 (citing 8 U.S.C. § 1157).

PLS.' REPLY ISO PRELIM. INJ. – 13
(No. C25-255 JNW)

1    **V.    The *Winter* factors and the record support a comprehensive preliminary injunction.**

2    Plaintiffs are thus likely to succeed on the merits (or, at minimum, demonstrate serious

3    questions going to the merits) and are suffering irreparable harm, and the other *Winter* factors

4    further support injunctive relief. Mot. 26–28.

5    Defendants' invocation of the abstract harm purportedly suffered by the Executive Branch

6    when its authority over immigration is questioned, Opp'n 26, cannot defeat Plaintiffs' far more

7    concrete injuries or their invocation of the public interest, *see AIDS Vaccine*, 2025 WL 485324, at

8    \*6 (balance of equities favored party showing "concrete, real-world harm"); *see also* Dkt. # 25-1

9    at 6–11, 15–18 (detailing harms to states resettling nearly half of all refugees last year). Moreover,

10   the Ninth Circuit has regularly concluded that there is no public interest in maintaining unlawful

11   executive action. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 679 (9th Cir. 2021)

12   ("[T]he public has an interest in ensuring that the statutes enacted by their representatives are not

13   imperiled by executive fiat." (cleaned up)); *Hawai'i*, 859 F.3d at 784 ("The public interest is served

14   by curtailing unlawful executive action." (cleaned up)).

15   Finally, Defendants are wrong to assert that a nationwide injunction is broader than

16   necessary to redress "the injury shown." Opp'n 26 (cleaned up). A comprehensive injunction is

17   the only way to redress the proven irreparable harms Plaintiffs face, and binding precedent

18   supports a comprehensive injunction. Mot. 27–28. Defendants also ignore the cascade of recent

19   opinions temporarily restraining and preliminarily enjoining the Trump Administration's unlawful

20   actions on a nationwide basis given evidence of irreparable harm. *See, e.g.*, *Washington v. Trump*,

21   No. C25-0127-JCC, 2025 WL 415165, at \*7 (W.D. Wash. Feb. 6, 2025) (granting nationwide

22   preliminary injunction enjoining enforcement of birthright-citizenship executive order); *Nat'l*

23   *Council of Nonprofits*, 2025 WL 368852, at \*14 (granting nationwide TRO enjoining

24   implementation of funding freeze of federal grant programs); *Ass'n of Am. Med. Colls. v. NIH*, No.

25   25-CV-10340-AK (D. Mass. Feb 10, 2025), Dkt. # 8 (same for notice changing reimbursement

26

1  policy for scientific research); *AIDS Vaccine*, 2025 WL 485324, at *6–7 (same for foreign-
2  assistance funding).

3  <u>**CONCLUSION**</u>

4      The Court should preliminarily enjoin the Refugee Ban EO, the Refugee Suspension, and
5  the Refugee Funding Suspension in their entirety.

6                          \*       \*       \*

7      The undersigned certifies that this brief contains 4,974 words, in compliance with the Local
8  Civil Rules.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Dated: February 22, 2025

2

3        Linda Evarts*
         Deepa Alagesan*
4        Mevlüde Akay Alp*
         Ghita Schwarz*
5        **INTERNATIONAL REFUGEE**
         **ASSISTANCE PROJECT**
6        One Battery Park Plaza, 33rd Floor
         New York, New York 10004
7        Telephone: (646) 939-9169
         Facsimile: (516) 324-2267
8        dalagesan@refugeerights.org
         makayalp@refugeerights.org
9        levarts@refugeerights.org
         gschwarz@refugeerights.org
10
         Melissa Keaney*
11       **INTERNATIONAL REFUGEE**
         **ASSISTANCE PROJECT**
12       P.O. Box 2291
         Fair Oaks, California 95628
13       Telephone: (646) 939-9169
         mkeaney@refugeerights.org
14

By:   s/ *Harry H. Schneider, Jr.*

Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792
Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com
EAston@perkinscoie.com

John M. Devaney*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
JDevaney@perkinscoie.com

Joel W. Nomkin*
**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
JNomkin@perkinscoie.com

Nicholas J. Surprise*
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
NSurprise@perkinscoie.com

*Counsel for Plaintiffs*

* *Admitted pro hac vice*

PLS.' REPLY ISO PRELIM. INJ. – 16
(No. C25-255 JNW)

1

## <u>CERTIFICATE OF SERVICE</u>

2    I certify under penalty of perjury that on February 22, 2025, I caused to be electronically

3  filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will

4  send a notification of the filing to the email addresses indicated on the Court's Electronic Mail

5  Notice List.

6    Dated: February 22, 2025

7                                          *s/ Harry H. Schneider, Jr.*
                                           Harry H. Schneider, Jr.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000