District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

    *Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, MARCO RUBIO, in his official capacity as Secretary of State, KRISTI NOEM, in her official capacity as Secretary of Homeland Security; DOROTHY A. FINK, in her official capacity as Acting Secretary of Health and Human Services,

    *Defendants*.

CASE NO. 2:25-cv-00255

MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

NOTE ON MOTION CALENDAR: MARCH 24, 2025

Motion to Stay Preliminary
Injunction Pending Appeal

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 62, Defendants hereby respectfully move for a stay pending appeal of the Court's Orders granting Plaintiffs' motion for preliminary injunction, ECF Nos. 39 (Minute Entry) and 45 (Findings of Fact, Conclusions of Law, and Order Issuing Preliminary Injunction). The Court's Orders entered a nationwide injunction prohibiting Defendants from implementing §§ 3(a), (b), (c), and 4 of Executive Order 14163, *Realigning the United States Refugee Admissions Program* ("USRAP Order"); suspending or implementing the suspension of refugee processing, decisions, and admissions; suspending or implementing the suspension of USRAP funds; and withholding reimbursements to resettlement partners for work performed prior to January 20, 2025. ECF No. 45 at 61. In so doing, the Court found that the USRAP order "effectively displaces the refugee program entirely and indefinitely, exceeding the President's statutory authority." ECF No. 45 at 28.

As explained more fully below, the Government is likely to prevail on the merits of its appeal and the balance of harms weighs strongly in favor of a stay. At a bare minimum, this Court should stay its injunction as to non-parties since the nationwide scope of the injunction is unsupported and unlawful and will not harm Plaintiffs.

Defendants respectfully request a ruling by the close of business on March 7, 2025. After that time, if relief has not been granted, Defendants intend to seek relief from the U.S. Court of Appeals for the Ninth Circuit.

## ARGUMENT

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008). When the government

Motion to Stay Preliminary
Injunction Pending Appeal

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

1

is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here the significance of Defendants' arguments on appeal, together with the relevant equitable considerations, weigh in favor of granting the stay pending appellate review that Defendants request.

## I. Defendants are Likely to Prevail on the Merits

The President, relying on his broad discretion to "spend the entry of…any class of aliens" "[w]henever [he] finds that [their] entry…would be detrimental to the interests of the United States," 8 U.S.C. § 1182(f), suspended the admission of refugees pending a determination that "further entry into the United States of refugees aligns with the interests of the United States." USRAP Order §§ 1, 4. This suspension is based upon a finding that the "United States lacks the ability to absorb large numbers of migrants, and in particular, refugees, into its communities in a manner that does not compromise the availability of resources for Americans, that protects their safety and security, and that ensures the appropriate assimilation of refugees." *Id.* § 1.

### A. The President's 212(f) powers are expansive and consistent with USRAP

Defendants are likely to prevail on their motion as the USRAP Order is a valid exercise of the Executive's authority to suspend entry of aliens and is consistent with the INA. The Court's Order, finding otherwise, violates the Supreme Court's decision in *Trump v. Hawaii*, 585 U.S. 667, 684–85 (2018).

The USRAP Order does not conflict with the INA because § 1182(f) authorizes the President authority to suspend the admission of "any class of aliens," including refugees, when it would be "detrimental to the interests of the United States," and no other provision of the INA requires refugee admissions. Indeed, the Refugee Act itself authorizes the President to allow no admissions of refugees when he determines that is in the "national interest." *See* 8 U.S.C. § 1157(a)(2). There is no conflict.

Motion to Stay Preliminary
Injunction Pending Appeal

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

2

Section 1182(f) provides that "[w]henever the President finds that the entry of…any class of aliens into the United States would be detrimental to the interests of the United States, he may … suspend entry of … any class of aliens … or impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f); *see also id.* § 1185(a)(1). Section 1182(f) "exudes deference to the President in every clause," and "[t]he sole prerequisite…is that the President 'find[]" that the entry of the covered aliens "would be detrimental to the interests of the United States." *Hawaii*, 585 U.S. at 684-85 (alteration in original).

The USRAP Order clearly articulates the President's reasons for finding that entry of refugees would be detrimental to the United States: the "United States lacks the ability to absorb large numbers of migrants, and in particular, refugees, into its communities in a manner that does not compromise the availability of resources for Americans, that protects their safety and security, and that ensures the appropriate assimilation of refugees." USRAP Order § 1. For these reasons, the President lawfully exercised his authority to suspend the admission of refugees pending a determination that "further entry into the United States of refugees aligns with the interests of the United States." *Id.* He further set forth a plan to evaluate "whether resumption of entry of refugees into the United States under the USRAP would be in the interests of the United States." *Id.* at § 4.

While acknowledging § 1182(f) "exudes deference to the President and vests him with ample power to impose entry restrictions in addition to those enumerated elsewhere in the INA," the Court nonetheless found preliminary relief warranted because it found the USRAP Order likely "eviscerate[s]" the INA's provisions on refugee admissions. ECF No. 45 at 22-24 (cleaned up). In particular, the Court relied upon "Congress's considered policy judgment" concerning refugee admissions, the limitations of the President's § 1182(f)

| Motion to Stay Preliminary<br>Injunction Pending Appeal<br><br>No. 2:24-cv-00255-JNW | U.S. Department of Justice<br>Civil Division, Office of Immigration Litigation<br>P.O. Box 878, Ben Franklin Station<br>Washington, DC 20044<br>(202) 305-7234 |
|---|---|

authority, and the scope of that authority. ECF No. 45 at 22-30. The Court's findings are flawed for three reasons.

*First*, the Refugee Act does not, as the Court suggests, override the President's expansive authority under § 1182(f). *See* ECF No. 45 at 24-25 (finding the USRAP Order unlawfully replaces Congress' own policy judgments on refugee admissions). As the Supreme Court recognized in *Hawaii*, "§1182 vests the President with 'ample power' to impose entry restrictions *in addition to those elsewhere enumerated in the INA*." 585 U.S. at 684 (emphasis added). The Refugee Act, similar to § 1182, vests in the President the authority to decide whether the admission of refugees is in the "national interest." 8 U.S.C. § 1157(a)(2). This Court erred in reading two statutes that give full authority to the President as giving the President no authority and instead taking this authority for itself.

In *Hawaii*, the Supreme Court rejected a similar argument. There, plaintiffs argued that Proclamation No. 9645 exceeded the President's authority because it overrode Congress's individualized vetting system. *Hawaii*, 585 U.S. at 687–92. In rejecting these arguments, the Supreme Court noted that the proclamation did not "expressly override particular provisions of the INA." *Id.* at 689. The Court also refused to sanction a "cramped" reading of the President's authority under § 1182(f) based on plaintiffs' attempt to identify implicit limits on the President's authority in other provisions of the INA. *Id.* at 691. And "[b]ecause plaintiffs do not point to any contradiction with another provision of the INA, the President has not exceeded his authority under § 1182(f)." *Hawaii*, 585 U.S. at 691.[1]

*Second*, the President's actions here are congruent with the Refugee Act, which expressly permits the President to set numerical limits on refugee admissions. 8 U.S.C.

---

[1] Plaintiffs identify only one specific statutory provision as purporting to conflict with the President's authority; but the Court expressly declined to reach this issue. ECF No. 45 at 26 ("On top of overriding USRAP, Plaintiffs argue that the USRAP EO conflicts with Congress's statutorily implemented FTJ program. Given the findings above, the Court need not reach this issue.").

Motion to Stay Preliminary  
Injunction Pending Appeal  

No. 2:24-cv-00255-JNW  

U.S. Department of Justice  
Civil Division, Office of Immigration Litigation  
P.O. Box 878, Ben Franklin Station  
Washington, DC 20044  
(202) 305-7234  

4

§ 1157(c)(1). This "description of the number and allocation of the refugees to be admitted" is the *maximum* number of refugees that may be admitted in any fiscal year, but is by no means a mandate that a set number of refugees be admitted, and furthermore, does not entitle refugees to admission into the United States. *See* 8 U.S.C. § 1157(e)(2); *I.N.S. v. Stevic*, 467 U.S. 407, 426 (1984); 8 U.S.C. § 1201(h) ("Nothing in this chapter shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to be admitted [to] the United States, if, upon arrival at a port of entry in the United States, he is found to be inadmissible under this chapter, or any other provision of law."). Indeed, the language and intent of section 1157 is clearly to *limit* the number of refugees. *See id.* §§ 1157(a) (Maximum number of admissions), 1157(a)(1) ("the number of refugees who may be admitted under this section in fiscal year 1980, 1981, or 1982, *may not exceed* fifty thousand unless the President determines…"). The statute further requires the number of refugees to be "in the national interest." *Id.* at 1157(a)(2). In other words, both the Refugee Act and § 1182(f) charge the President with determining whether entry of additional aliens serves the national interest.

    Nothing in the language that Congress enacted prevents the President from setting the ceiling on refugees at zero. Had Congress intended to set a floor for the number of individuals given refugee status, it could easily have done so. But it did not. And its intentional choice not to do so does not supply this Court license to read a backdoor floor in by misconstruing § 1182(f), contrary to its plain terms.

    Here it is thus sufficient that the President suspended admission of refugees pending a determination that their entry is "in the national interest." *See Hawaii*, 585 U.S. at 685–86. The President's proclamation under § 1182(f) fits together with the statutory scheme set up by § 1157, which also charges the President with deciding whether refugee admissions serve the national interest, and does not conflict with the purpose of the Refugee Act.

Motion to Stay Preliminary  
Injunction Pending Appeal

No. 2:24-cv-00255-JNW

U.S. Department of Justice  
Civil Division, Office of Immigration Litigation  
P.O. Box 878, Ben Franklin Station  
Washington, DC 20044  
(202) 305-7234

*Third*, the USRAP Order's directives were within the scope of the President's § 1182(f) authority. Contrary to the Court's finding that the USRAP Order exceeded the scope of the President's authority because it focused on domestic impact, ECF No. 45 at 29, the plain text of § 1182(f) permits the President to consider the domestic impact of admitting any class of aliens into the country. 8 U.S.C. § 1182(f) ("Whenever the President finds the entry of any alien or class of aliens *would be detrimental to the interests of the United States* ...." (emphasis added)). Indeed, the Supreme Court, in *Hawaii*, found an executive order that was ultimately focused on public safety within the United States did not exceed the scope of the President's § 1182(f)'s authority. 585 U.S. at 685, 691.[2]

This Court's orders also intrude deeply into the prerogatives of the Executive Branch, in enjoining Section 4 of the USRAP Order. ECF Nos. 39, 45 at 61. These intrusive provisions squarely violate Article II of the Constitution.

A stay is warranted as Defendants are likely to prevail on the merits of their appeal where, as here, the Court's written order incorrectly interprets the Refugee Act and directly contradicts the Supreme Court holding, addressing § 1182(f), in *Hawaii*.

### B. Plaintiffs' APA Claims are Not Likely to Succeed

The Court's Order should also be stayed as it is fatally flawed in two ways with regards to the suspension of funding.

*First*, Plaintiffs do not challenge agency action reviewable under the APA because Plaintiffs fail to challenge a discrete agency action, instead mounting a programmatic challenge to agency implementation of the USRAP and Foreign Aid Orders. Plaintiffs cannot seek "wholesale improvement of [a] program by court decree, rather than in the offices of the

---

[2] Plaintiffs' APA claims regarding refugee status are derivative of their statutory claim and necessarily fall with it. If, for example, the grant of refugee status was lawfully halted, it could hardly be arbitrary and capricious not to process applications that could not be granted. (Nor are the agency's procedures for internal operations, such as how to process applications, subject to notice-and-comment requirements.)

| | |
|---|---|
| Motion to Stay Preliminary Injunction Pending Appeal | U.S. Department of Justice Civil Division, Office of Immigration Litigation P.O. Box 878, Ben Franklin Station |
| No. 2:24-cv-00255-JNW | Washington, DC 20044 (202) 305-7234 |

Department or the halls of Congress, where programmatic improvements are normally made." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Rather, Plaintiffs "must direct [their] attack against some particular 'agency action.'" *Id.* Here, the heart of Plaintiffs' claims is the "impact" of the USRAP and Foreign Aid Orders, as opposed to any particular discrete agency determination or action. ECF No. 14 at 5. The Court, in granting Plaintiffs' preliminary injunction, deemed Plaintiffs' challenge to the USRAP Order sufficiently narrow because Plaintiffs challenge agency decisions made within a limited time period – a window of several days or weeks. ECF No. 45 at 33. But the challenged decisions include the decision to suspend refugee case processing, case decisions, admissions, and travel – effectively seeking to halt the agencies' implementation of the USRAP Order entirely. ECF No. 14 at 5. That agency implementation decisions occurred within a limited timeframe in no way transforms Plaintiffs' broad programmatic challenge into a challenge of discrete agency action as is required for review under the APA.

*Second*, the Court enjoined the government from "[w]ithholding reimbursements to resettlement partners for USRAP-related work performed pursuant to cooperative agreements before January 20, 2025." ECF No. 45 at 61. But, if Plaintiffs believe that the government has failed to make timely payments for services rendered prior to January 20, 2025 pursuant to their cooperative agreements, Plaintiffs can and *must* pursue these claims through specified administrative processes and in the Court of Federal Claims. That is because it is generally the case that requests for payment – even if cast as APA claims – may not be brought in District Court. *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998) (Court of Federal Claims has "exclusive jurisdiction to award money damages, and impliedly forbids declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity") (quotations omitted). Here, the very essence of Plaintiffs' request, although cast as a request for "specific remedies, not damages," ECF No.

| Motion to Stay Preliminary Injunction Pending Appeal | U.S. Department of Justice Civil Division, Office of Immigration Litigation P.O. Box 878, Ben Franklin Station Washington, DC 20044 (202) 305-7234 |
|---|---|
| No. 2:24-cv-00255-JNW | |

7

45 at 41, is to demand that the government make payments on particular cooperative agreements. As such, the Court's Order with respect to requiring payments for expenses incurred prior to January 20, 2025 is not a proper exercise of this Court's subject-matter jurisdiction and should be stayed.

## II. The Injunction is Overbroad and the Balance of Equities, Including the Irreparable Harm Defendants Will Suffer, Favors A Stay

As explained above, the President issued the USRAP Order after finding that the "United States lacks the ability to absorb large numbers of migrants, and in particular, refugees, into its communities in a manner that does not compromise the availability of resources for Americans, that protects their safety and security, and that ensures the appropriate assimilation of refugees." USRAP Order § 1. The Court's Order enjoining enforcement of the USRAP Order necessarily imposes irreparable harm on the Government and the public interest. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). *A fortiori*, this Court's injunction imposes irreparable injury on the Executive Branch in light of his finding of detriment and because the injunction's impact is permanent – the USRAP Order cannot be applied after entry if the preliminary injunction is later overturned. March 3, 2025 Declaration of Andrew J. Davison (Ex. 1) ¶¶ 4-5 ("USCIS can only terminate refugee status if it is subsequently determined that the alien did not meet the definition of a refugee at the time of admission."). As such, the Court's Order vastly undermines and irreparably injures the President's authority. March 3, 2025 Declaration of Adam Zerbinopoulos (Ex. 2) ¶¶ 17-18.

The injunction is also overbroad. In purporting to set refugee policy for the entire nation, this Court disregarded Ninth Circuit precedent directing it to limit relief to "redress

Motion to Stay Preliminary
Injunction Pending Appeal

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

only the injury shown as to [Plaintiffs]." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). Such overbroad relief allows "one district court [to] make a binding judgment for the entire country." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021). This is especially inappropriate here: as evidenced by the amicus participation in this case, Plaintiffs' position is not uniformly accepted throughout the country. *See* ECF No. 45 at 58 (noting that "New York and Massachusetts – joined by seventeen other states that together resettle nearly half of all refugees in the United States"). At a minimum, this Court should stay its injunction as to non-parties. Plaintiffs will suffer no harm if the injunction is stayed as to non-parties.

The court's nationwide injunction also undermines the Executive Branch's constitutional and statutory authority over immigration, and constitutes an "unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013); Ex. 2 ¶¶ 17-18. An injunction that prevents the President from carrying out his broad authority over immigration matters is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of L.A. Cty Fed'n of Lab.*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Indeed, an injunction that presents the President from exercising his core authorities is "itself an irreparable injury." *Doe #1 v. Trump*, 957 F.3d 1050, 1084 (9th Cir. 2020) (Bress, J., dissenting) (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

## CONCLUSION

For the foregoing reasons, and for all the reasons stated in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, Defendants respectfully request that this Court stay its preliminary injunction. Defendants request a ruling on this motion no later than the close of business on March 7, 2025, after which time Defendants intend to seek relief from the Ninth Circuit.

Motion to Stay Preliminary
Injunction Pending Appeal

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

9

DATED this 3rd day of March, 2025.

        Respectfully submitted,

        YAAKOV M. ROTH
        Acting Assistant Attorney General
        Civil Division

        AUGUST FLENTJE
        Acting Director

        */s/ Nancy K. Canter*
        NANCY K. CANTER
        (CA Bar No. 263198)
        Senior Litigation Counsel

        LINDSAY ZIMLIKI
        JOSEPH MCCARTER
        ALEXANDRA YEATTS
        Trial Attorneys
        U.S. Department of Justice
        Civil Division, Office of Immigration Litigation
        Washington, DC 20005
        Phone: 202-305-7234
        Email: nancy.k.canter@usdoj.gov

        *Attorneys for Defendants*

I certify that this memorandum contains 3,121 words, in compliance with the Local Civil Rules.

Motion to Stay Preliminary
Injunction Pending Appeal

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

10