UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, MARCO RUBIO, in his official capacity as Secretary of State, KRISTI NOEM, in her official capacity as Secretary of Homeland Security; DOROTHY A. FINK, in her official capacity as Acting Secretary of Health and Human Services,

*Defendants*.

CASE NO. 2:25-cv-00255

**DECLARATION OF ANDREW J. DAVIDSON**

I, Andrew J. Davidson, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the Acting Deputy Director of the U.S. Citizenship and Immigration Services ("USCIS"), a component agency within the Department of Homeland Security ("DHS"). The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and conversations that I observed and participated in with USCIS leadership.

2. In my current position as the Acting Deputy Director, I oversee USCIS operations, including refugee processing, international adjudications, and certain types of parole adjudications. I have been the Acting Deputy Director since January 26, 2025. Prior to this role, I served in various leadership positions including previously as Acting USCIS Deputy Director, Deputy Associate Director within the Service Center Operations Directorate, Deputy Associate Director of the Refugee Asylum, and International Operations Directorate (RAIO), Chief of the Asylum Division in RAIO, Deputy Associate Director of the Fraud Detection and National Security Directorate (FDNS), and Director of two field offices in the Field Operations Directorate (FOD). In these roles, I managed policy development for a broad range of issues relating to immigration benefits and improving the integrity of the immigration system.

**Termination of Refugee Status**

3. The Immigration and Nationality Act (INA) provides that the sole basis for terminating the refugee status of an alien admitted to the United States as a principal refugee is a determination that he or she was not a refugee within the meaning of INA § 101(a)(42) (8 U.S.C. § 1101(a)(42)) at the time of admission. INA § 207(c)(4) (8 U.S.C. § 1157(c)(4)); *see also* 8 CFR § 207.9. That provision defines a refugee as a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of [their] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," what USCIS generally refers to as the "refugee claim." INA § 101(a)(42). It also provides that the term "refugee" does not include any person "who

ordered, incited, assisted, or otherwise participated in the persecution of any person on account" of those stated grounds, what is commonly referred to as the "persecutor bar." *Id.*

4. USCIS can only terminate refugee status if it is subsequently determined that the alien did not meet the definition of a refugee at the time of admission. Refugees undergo a multi-layered screening process overseas in order to gain access to the U.S. Refugee Admissions Program (USRAP) and be considered for admission to the United States as refugees, including an in-person interview before specially trained USCIS refugee officers who determine whether an individual meets the refugee definition and otherwise qualifies for refugee status. As a consequence of this rigorous screening process, in combination with the limited basis for terminating refugee status, there have been few refugee status terminations over the course of the USRAP's existence, including none in the past two years according to USCIS records.

5. Historically at USCIS, termination of refugee status has primarily occurred only when information subsequently comes to light that the person admitted as a refugee fabricated their refugee claim or was a persecutor. By contrast, the INA provides numerous grounds to terminate a person's asylum status. INA § 208(c)(2) (8 U.S.C. § 1158(c)(2)). A grant of asylum to an alien already physically present in the United States is based on the applicant meeting the same statutory definition of a "refugee" that a person overseas must meet to be admitted to the United States in refugee status. However, under the asylum termination statute, USCIS may terminate asylum status if USCIS determines that the asylee:

- no longer meets the statutory definition of a refugee;

- ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

- constitutes a danger to the community of the United States, if convicted of a particularly serious crime;

- committed a serious nonpolitical crime outside the United States prior to arriving in the United States;

- is a danger to the security of the United States, including terrorist activity;

- may be removed to a country (other than the country of the applicant's nationality or last habitual residence) in which the applicant's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, where the applicant is eligible to receive asylum or equivalent temporary protection pursuant to a bilateral or multilateral agreement;

- has voluntarily availed himself or herself of the protection of the country of nationality or last habitual residence by returning to such country with permanent resident status or the reasonable possibility of obtaining such status with the same rights and obligations pertaining to other permanent residents of that country; or

- has acquired a new nationality and enjoys the protection of the country of his new nationality. *Id.*

**Refugee Adjustment**

6. Persons admitted as refugees may be adjusted to lawful permanent resident status as early as one year after admission to the United States. *See* INA § 209(a)(1) (8 U.S.C. § 1159(a)(1)). After one year, they are "to return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant." *Id.* Under current regulations, this legal requirement is satisfied by refugees voluntarily filing a Form I-485, Application to Register Permanent Resident Status ("adjustment application"). *See* 8 C.F.R. § 209.1(a).

7. Although the adjudication process for the adjustment application provides USCIS the opportunity to conduct this additional "inspection" of a person admitted in refugee status, and USCIS may uncover information supporting termination of refugee status during such inspection, the requirements for a person admitted as a refugee to adjust to lawful permanent resident status are minimal. The person need only establish that:

   (1) their admission as a refugee has not been terminated (as outlined above);

   (2) they have been physically present in the United States for one year;

   (3) they are not already a lawful permanent resident; and

   (4) they are admissible as immigrants (certain grounds of inadmissibility do not apply).

INA § 209(a), (c), 8 U.S.C. § 1159(a), (c). They are not required to show that they continue to meet the statutory definition of a refugee, as asylees must do to adjust to lawful permanent resident status. *See* INA § 209(b) (8 U.S.C. § 1159(b)). The INA also does not give USCIS the authority to deny a refugee's adjustment application as a matter of

discretion if the refugee is otherwise eligible, as it does for asylees. *Compare* INA § 209(a) *with* § 209(b). In addition, most of the inadmissibility grounds that apply to refugees can be and generally are waived, given that refugees are usually able to demonstrate they meet the generous requirements for a waiver. *See* INA § 209(c) (8 U.S.C. § 1159(c)). Consequently, USCIS is limited in its ability to deny refugees' adjustment applications unless that information is sufficient to establish inadmissibility and the person does not qualify for a waiver of that inadmissibility. *Id.*; *see also* 8 C.F.R. § 209.1(f). Accordingly, USCIS approves the vast majority of refugee-based adjustment applications that it adjudicates.

8. Further, many refugees do not apply for adjustment of status, either timely or at all, thus complicating efforts to locate and remove refugees who have committed acts rendering them removable after admission to the United States. For example, according to USCIS records, USCIS received only 12,522 refugee-based I-485 applications in Fiscal Year (FY) 2024, compared with 59,000 refugees admitted a year earlier in FY 2023.

Dated: March 3, 2025                                  Signed:

_____           _____

Washington, D.C.                                      Andrew J. Davidson
                                                      Acting Deputy Director
                                                      U.S. Citizenship and Immigration Services
                                                      Department of Homeland Security