THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

*Defendants*.

Case No. 2:25-cv-255-JNW

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ON SUPPLEMENTAL PLEADING**

NOTE ON MOTION CALENDAR:
MARCH 11, 2025

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 2

I. Plaintiffs easily satisfy the threshold requirements for injunctive relief. ........ 2

II. Plaintiffs are likely to succeed on the merits. ........ 3

A. This is the proper forum for Plaintiffs' claims. ........ 4

B. Plaintiffs challenge discrete and final agency actions. ........ 4

C. The USRAP Funding Termination is contrary to law. ........ 5

D. The USRAP Funding Termination is arbitrary and capricious. ........ 6

E. The Agency Defendants run afoul of the *Accardi* doctrine. ........ 7

F. The Agency Defendants' actions violate the separation of powers. ........ 7

G. Contract-termination clauses cannot save these unlawful actions. ........ 8

III. Comprehensive relief is necessary to stop the irreparable harm to Plaintiffs. ........ 8

CONCLUSION ........ 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**INTRODUCTION**

On an extensive record and after briefing and argument, this Court found that Plaintiffs are likely to succeed on their claims that President Trump's Refugee Ban Executive Order and the Agency Defendants' Refugee Suspension and Refugee Funding Suspension are unlawful, that Plaintiffs are suffering irreparable harm, and that the balance of equities and public interest favor a preliminary injunction. *See* Dkt. # 45 ("PI Order").[1]

Just one day after the Court orally granted Plaintiffs' motion and told the parties to expect a written order imminently, *see* Feb. 25, 2025 Hr'g Tr. 37:4–11, the State Department terminated—without notice and effective immediately—*all* cooperative agreements with resettlement agencies, including Plaintiffs HIAS, Inc. ("HIAS") and Church World Service, Inc. ("CWS"), to provide reception, placement, and supportive services to newly arrived refugees and SIV holders. The State Department also terminated the cooperative agreements of resettlement partners, including HIAS, for USRAP application processing, thus denying refugees from whole regions of the world access to refugee resettlement in the United States. The terminations mean that, under long-established and current policy, refugees cannot travel to the United States because they cannot receive assurances from U.S.-based organizations to support their integration.

Defendants' actions over the past week make it all but impossible for them to comply with the Court's preliminary injunction.[2] Defendants' latest attempt to defund the USRAP is just as unlawful today as it was last week, and the irreparable harm to Plaintiffs compounds with every passing day. A preliminary injunction of Defendants' most recent effort to halt the resettlement of refugees and decimate the organizations that serve them is necessary and appropriate.

---

[1] Plaintiffs use the terms from their briefing and the Court's PI Order.

[2] While Defendants have not acknowledged the *Sub Silentio* Funding Suspension, that portion of the PI Order is untouched by the Termination Notices. So too are cooperative agreements, such as CWS's RSC Africa agreement, that remain indefinitely suspended. Earlier today, the U.S. Supreme Court denied an application to vacate the district court's temporary restraining order in the *AIDS Vaccine* litigation. *See Dep't of State v. AIDS Vaccine Advoc. Coal.*, No. 24A831, slip op. at 1 (U.S. Mar. 5, 2025). That order requires the State Department to end its freeze on payments for work done prior to January 24, 2025.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## BACKGROUND

The Court and parties are well acquainted with the facts set forth in Plaintiffs' prior briefing and evidence, *see* Dkt. ## 14–15, 36, 43, hereby incorporated by reference. As for new facts: beginning on February 26, 2025, on Secretary Rubio's order, the State Department terminated every resettlement agency cooperative agreement to provide reception and placement ("R&P") services (the "R&P Termination"). *See* Dkt. # 49-2 ¶¶ 4–5. Defendants also terminated many of the cooperative agreements to provide USRAP-processing support abroad (the "Processing Termination," and together with the R&P Termination, the "USRAP Funding Termination") and maintained the indefinite suspension of other such cooperative agreements, including services to support refugee housing and community sponsorship in the United States. *See* Ex. 2 ¶¶ 5–9 (HIAS); Ex. 3 ¶¶ 5–9 (CWS).[3] These Termination Notices, like the Suspension Notices they followed, directed resettlement partners to immediately stop work pursuant to the agreements and incur no additional costs. *Id.* Defendants provided no explanation for the USRAP Funding Termination other than that the agreements no longer "effectuate[] agency priorities" and termination is for "the convenience" of the government. Ex. 2 ¶ 9, attach. A; Ex. 3 ¶ 9. Since at least January 20, HIAS and CWS have not received any funding for any cooperative agreement that was subject to the Suspension Notices or Termination Notices. Ex. 2 ¶ 11; Ex. 3 ¶ 11.

## ARGUMENT

### I. Plaintiffs easily satisfy the threshold requirements for injunctive relief.

As this Court already concluded, Plaintiffs satisfy the threshold and equitable requirements for preliminary injunctive relief.

**Standing and irreparable harm.** The USRAP Funding Termination irreparably harms the organizational Plaintiffs for the same reasons the Refugee Funding Suspension did: the resulting "combination of staff reductions, loss of institutional knowledge, damaged community partnerships, and declining service quality threatens to permanently shut down their operations."

[3] Exhibits are attached to the declaration of Megan M. Hauptman, filed concurrently.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

PI Order 54; *see also* Ex. 2 ¶¶ 10–15; Ex. 3 ¶¶ 10–15. The USRAP Funding Termination also irreparably harms individual Plaintiffs and refugees assured to the organizational Plaintiffs by making it impossible for refugee case processing to continue in entire regions. *See* Dkt. # 15-3 at 29 (listing RSCs). And the State Department's decision to eliminate R&P support means that refugees cannot be admitted to the United States under current guidance because they cannot receive assurances of resettlement support. *See* Dkt. # 15-5 (USRAP flow chart). Even if refugees are somehow able to enter the country, they cannot receive the benefits that Congress determined are necessary to achieve "self-sufficiency" and "effective[] resettle[ment]," 8 U.S.C. § 1522(a)(1), and that this Court determined Defendants are obligated to administer, *see* PI Order 42–43; *see also* Dkt. # 15-20 ¶¶ 19, 24; *cf.* Mar. 4, 2025 Hr'g Tr. ("Mar. 4 Tr.") 10:23–11:3 (confirming that all R&P contracts have been terminated and arguing, without support, that administration of these benefits is "option[al]"). Plaintiffs thus suffer cognizable injuries-in-fact and the organizational Plaintiffs have representative standing on behalf of the refugees they assist. *See* Dkt. # 14 at 13 (citing *Exodus Refugee Immigr., Inc. v. Pence*, 165 F.Supp.3d 718, 738–39 (S.D. Ind. 2016)).

**Balance of equities and public interest.** The Court found last week that the balance of equities and public interest favor a preliminary injunction, *see* PI Order 56–57 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)), and the same is true now. The Court's analysis applies with equal or even greater force here, given the permanent nature of Defendants' action and that the irreparable harms to Plaintiffs compound with every passing day.

## II. Plaintiffs are likely to succeed on the merits.

The USRAP Funding Termination is contrary to law and arbitrary and capricious for the same reasons this Court determined that Plaintiffs are likely to succeed on the merits of their APA claims last week. *See* PI Order 46–51. The USRAP Funding Termination is unlawful for additional reasons as well, including that it violates the agency's own guidance and the separation of powers enshrined in the U.S. Constitution. That Defendants implemented their unlawful actions through contract terminations does not somehow cure the illegality or shield it from judicial review.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**A. This is the proper forum for Plaintiffs' claims.**

Defendants have repeatedly argued that any challenge to the Termination Notices must be brought in the U.S. Court of Federal Claims, *see, e.g.*, Dkt. ## 31, 49—notwithstanding that the Court has definitively rejected this argument, relying on binding precedent, in the context of the Refugee Funding Suspension, *see* PI Order 38–41. Defendants admit that Secretary Rubio made a decision to stop providing R&P support to newly arrived refugees and SIV holders. This is plainly a substantive policy decision about the extent to which these populations must and should receive services supporting their initial integration—specifically, *not at all*. Similarly, Secretary Rubio made a policy decision to close whole regions of the world to refugee resettlement by terminating the cooperative agreements for USRAP processing in those regions. That Secretary Rubio implemented these policies by terminating a host of cooperative agreements (overnight and without notice) does not convert challenges to policy decisions into contract disputes, nor does it convert an equitable action for specific relief into an action seeking money damages, *see id.* at 39–41 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988))—particularly where the policy choices are contrary to federal statute, as described below.

**B. Plaintiffs challenge discrete and final agency actions.**

Defendants admit that Secretary Rubio decided to terminate all R&P, housing, and sponsorship support services on or about February 26, 2025, and thereafter terminated the cooperative agreements of all domestic resettlement agencies, including HIAS and CWS, to provide those services. Dkt. # 49-2 ¶¶ 4–5.[4] Defendants also admit that Secretary Rubio decided on or about February 26 to terminate cooperative agreements for USRAP-related processing support abroad in whole regions of the world. *Id.* These are discrete policy decisions amenable to APA challenge for the same reasons the Court found the Refugee Suspension and Refugee Funding Suspension amenable to APA challenge: they are time-limited and specific decisions. *See* PI Order

[4] Because all cooperative agreements for R&P were terminated, resettlement affiliates, including Plaintiff Lutheran Community Services Northwest, no longer have funding for this work.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

33–34; *see also* Dkt. # 36 at 5–6. Defendants cannot dispute that these policy decisions mark the consummation of the agency's decision-making process and are decisions by which rights or obligations have been determined or from which legal consequences flow—thus constituting final agency action under *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), *see* PI Order 37–38. Nor can Defendants dispute that Secretary Rubio exercised his discretion in terminating these programs and the associated funding—and, in any event, agencies can be sued for implementation of presidential orders. *See id.* at 34–37.

**C. The USRAP Funding Termination is contrary to law.**

The Court already determined that the Refugee Funding Suspension likely "contradict[s] the clear will of Congress, codified in Section 1522 of the INA, to create a federally funded system to support domestic refugee resettlement." PI Order 42. In so doing, the Court considered and rejected Defendants' argument that the Refugee Act provides the agencies discretion to terminate the domestic refugee-resettlement program. *Id.* at 42–43 (citing 8 U.S.C. §§ 1521–1524). Rather, this Court concluded that the Agency Defendants are "required, 'to the extent of available appropriations,' to ensure the provision of support services for resettled refugees." *Id.* at 42 (quoting 8 U.S.C. § 1522(a)). The PI Order leaves little doubt that the R&P Termination, which entirely terminates the R&P program and related programs, violates the APA.

Similarly, the Court has already determined that the Agency Suspension and Refugee Funding Suspension "contradict[ed] the clear intent of Congress to provide a permanent and systemic procedure for [refugee] admission to this country." *Id.* at 41 (cleaned up). The USRAP Funding Termination is unlawful for the same reason: refugees cannot be admitted to the United States under current agency guidance absent an assurance to support their integration once they arrive. *See* Dkt. # 15-5; Ex. 1. And the State Department's decision to permanently shutter refugee processing for whole regions conflicts with the regional allocations of refugees of special humanitarian concern anticipated by Congress, *see* 8 U.S.C. § 1157(a)(3), and set forth by the Agency Defendants to Congress just months ago in support of the FY 2025 Presidential

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Determination, *see* Dkt. # 15-3 at 40–53; *see also* Mar. 4 Tr. 8:3–5, 10:18–21 (confirming that termination of funding for some RSCs will prevent refugee processing in corresponding regions).[5]

The Agency Defendants' actions are contrary to law for the additional reason that they violate the Impoundment Control Act ("ICA") by withholding congressionally appropriated USRAP funds, constituting a "deferral of budget authority" without meeting the procedural and substantive requirements of the ICA. PI Order 43 n.6 (citing 2 U.S.C. §§ 682(1)(A), 684(a)–(b)); *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1234 & n.3 (9th Cir. 2018).

**D. The USRAP Funding Termination is arbitrary and capricious.**

The Court has already determined that the Agency Defendants' implementation of the Agency Suspension and Refugee Funding Suspension is arbitrary and capricious because Defendants "provided no reasoned explanation" for their actions, apparently failed to consider reasonable alternatives, and failed to "acknowledge, let alone meaningfully consider, the reliance interests of refugees, U.S. citizens, and resettlement nonprofits harmed by their actions." PI Order 47–51. For all the same reasons, the USRAP Funding Termination is arbitrary and capricious. By Defendants' own admission, the State Department made these sweeping decisions to upend decades of established agency policy and practice in mere hours or days and provided no explanation other than a change in "agency priorities." The APA requires more.

The State Department's decision-making is arbitrary and capricious for another reason: the agency failed to explain its reasons for changing its prior decision, let alone provide the "more detailed justification" necessary where the prior policy engendered serious reliance interests. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009). The Agency Defendants recently set forth in more than fifty pages the facts, analysis, and conclusions underlying their prior policy of maintaining an R&P program operated by resettlement agencies, working with resettlement

[5] Because all RSC cooperative agreements not subject to a Termination Notice remain indefinitely suspended, *see, e.g.*, Ex. 3 ¶ 11, Defendants continue to operate a de facto refugee-processing suspension, which the Court has found to be unlawful, *see* PI Order 41–51.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

partners to process USRAP cases, and identifying refugees of special humanitarian concern in all regions. *See* Dkt. # 15-3. Defendants' two-word explanation for their no-notice about-face, which harms hundreds of thousands of people, is grossly insufficient under the APA.

### E. The Agency Defendants run afoul of the *Accardi* doctrine.

Under the well-established principle laid out in *United States ex rel. Accardi v. Shaughnessy*, agencies act unlawfully when they fail to comply with their own policy and guidance. *See* 347 U.S. 260, 268 (1954). This doctrine extends to sub-regulatory agency guidance that affects the rights of individuals. *See Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) (collecting cases); *Emami v. Nielsen*, 365 F.Supp.3d 1009, 1020–21 (N.D. Cal. 2019) (agency violated *Accardi* doctrine where it failed to follow its own public-waiver guidance posted on website). Here, the Agency Defendants' public-facing guidance to refugees on their website informs refugees that they will be "assigned to a non-governmental organization that will assist [them] upon arrival in the U.S." with "housing, household supplies, and furniture" and further "assist[] with [their] job search wherever [they] are resettled." Ex. 1. Defendants' abrupt policy decision to eliminate R&P services is contrary to their own policy guidance.[6]

### F. The Agency Defendants' actions violate the separation of powers.

The Agency Defendants' elimination of the R&P program and refugee processing in whole regions of the world, notwithstanding Congress's appropriation of funds for these purposes, violates separation-of-powers principles. *See San Francisco*, 897 F.3d at 1234–35. The U.S. Constitution "exclusively grants the power of the purse to Congress, not the President," and that spending power is "directly linked to [Congress's] power to legislate." *Id.* at 1231–32. The Executive Branch does not have unilateral authority to "withhold properly appropriated funds in order to effectuate its own policy goals." *Id.* at 1235 (executive withholding of appropriated funds to "sanctuary" jurisdictions violated separation of powers); *see also* PI Order 43 n.6.

---

[6] As the Court further noted, an agency's failure to comply with its own guidance may also support an APA claim. *See* PI Order 50–51.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**G. Contract-termination clauses cannot save these unlawful actions.**

The Agency Defendants' sole argument in support of the USRAP Funding Termination appears to be that the cooperative agreements contain provisions allowing termination in response to changes in agency priorities. *See, e.g.*, Dkt. # 49 at 5. A thin reed indeed: this argument overlooks the fundamental fact that agency contract regulations do not and cannot permit the Agency Defendants to violate federal law, including the Refugee Act, APA, and ICA. *See* 2 C.F.R. § 200.101(d) ("Federal statutes or regulations govern in any circumstances where they conflict with the provisions of [2 C.F.R. § 200 *et seq*.]."); 2 C.F.R. § 200.340(a)(4) (termination permissible only "to the extent authorized by law").

**III. Comprehensive relief is necessary to stop the irreparable harm to Plaintiffs.**

The Court determined that the only way to prevent continuing irreparable harm to Plaintiffs is to enjoin implementation of the Refugee Ban Executive Order, Agency Suspension, and Funding Suspension on a nationwide basis because "[a] piecemeal approach would be impracticable, as the refugee resettlement system functions as an integrated whole, with interconnected processes spanning international borders and domestic agencies." PI Order 60. So too now: only a nationwide injunction can address Plaintiffs' harms. Defendants' actions to defund the USRAP ensure that no refugee, including individual Plaintiffs and refugees assured to organizational Plaintiffs, can receive R&P services. Nor can these individuals be admitted to the United States under current guidance without an assurance of resettlement support, and individual Plaintiffs may require assurances by non-Plaintiff resettlement agencies. Further, individual Plaintiffs may be unable to complete processing based on their geographic location. As for the organizational Plaintiffs, their very existence is threatened—and they operate in every circuit.

**<u>CONCLUSION</u>**

Plaintiffs respectfully request that the Court issue a preliminary injunction blocking the Agency Defendants from enforcing their termination of USRAP-related funding.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dated: March 5, 2025

By: s/ *Harry H. Schneider, Jr.*

Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792
Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com
EAston@perkinscoie.com

John M. Devaney*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
JDevaney@perkinscoie.com

Joel W. Nomkin*
**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
JNomkin@perkinscoie.com

Nicholas J. Surprise*
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
NSurprise@perkinscoie.com

Deepa Alagesan*
Mevlüde Akay Alp*
Linda Evarts*
Ghita Schwarz*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
dalagesan@refugeerights.org
makayalp@refugeerights.org
levarts@refugeerights.org
gschwarz@refugeerights.org

Melissa Keaney*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 2291
Fair Oaks, California 95628
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
mkeaney@refugeerights.org

Laurie Ball Cooper*
Megan McLaughlin Hauptman*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Avenue NW, Suite 600
Washington, D.C. 20001
Telephone: (516) 732-7116
Facsimile: (516) 324-2267
lballcooper@refugeerights.org
mhauptman@refugeerights.org

*Counsel for Plaintiffs*

* *Admitted pro hac vice*

PLS.' MOT. FOR PRELIM. INJ.
ON SUPPL. PLEADING – 9
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000