THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER;
PLAINTIFF JOSEPHINE; PLAINTIFF SARA;
PLAINTIFF ALYAS; PLAINTIFF MARCOS;
PLAINTIFF AHMED; PLAINTIFF RACHEL;
PLAINTIFF ALI; HIAS, INC.; CHURCH
WORLD SERVICE, INC.; and LUTHERAN
COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States; MARCO RUBIO,
in his official capacity as Secretary of State;
KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; ROBERT F.
KENNEDY, JR., in his official capacity as
Secretary of Health and Human Services,

*Defendants*.

No. C25-255 JNW

PLAINTIFFS OPPOSITION TO
DEFENDANTS' MOTION FOR
A STAY PENDING APPEAL

NOTED ON MOTION CALENDAR:
MARCH 24, 2025

## **INTRODUCTION**

Defendants' Motion for a Stay Pending Appeal (Dkt. # 48, "Motion"), is nothing more than

an improper attempt to re-litigate arguments this Court has already considered—and decisively

rejected—in its February 28, 2025, order granting Plaintiffs' preliminary injunction (Dkt. # 45, the

"Order") or obtain reconsideration on arguments they could have made to the Court previously.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL – 1
(No. C25-255 JNW)

Meanwhile, Defendants' claimed harm—exercising their delegated authority in accordance with the law as it has existed for fifty years—strains credulity. The Court should deny the Motion.

**ARGUMENT**

A stay is fundamentally "'an exercise of judicial discretion,'" and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). Courts consider four factors in determining whether to exercise their discretionary authority to stay an order pending an appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quotation omitted). The first two factors, likelihood of success and irreparable injury, "are the most critical." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024).

Here, no factor favors the issuance of a stay. *Cf. Washington v. Trump*, 847 F.3d at 1169 (denying the Government's emergency motion for a stay pending appeal, even where "[a]spects of the public interest favor[ed] both sides").

**I.    Defendants are unlikely to succeed on the merits of their appeal.**

The Court should deny the stay because Defendants have not made a "strong showing" that the appeal is likely to succeed on the merits. *Doe #1 v. Trump*, 957 F.3d 1050, 1062 (9th Cir. 2020). Defendants rehash arguments already put before this Court that were squarely rejected in finding that Defendants did not establish a likelihood of success on the merits. Defendants did not seek reconsideration of the Court's Order before noticing their appeal, *see* Fed. R. Civ. P. 59(e), and their attempt to relitigate the same issues via a motion to stay should be rejected.

Defendants spend much of their Motion arguing that the Court's interpretation of 8 U.S.C. § 1182(f) and *Trump v. Hawaii,* 585 U.S. 667, 684–85 (2018), unreasonably cramps the executive branch's authority in matters of immigration and foreign affairs. Motion at 2–6. But the Court has

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL – 2
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

already carefully examined § 1182(f) and the Supreme Court's holding in *Trump v. Hawaii* and rejected these same arguments, instead holding that: (1) the President's authority under § 1182(f) is not limitless, Order at 21–24; (2) the President does not possess an unreviewable power in matters of immigration and foreign affairs, *id.* at 28–30; and (3) the Refugee Ban EO exceeds the President's authority under § 1182(f) because it unlawfully overrides the USRAP program, *id.* at 24–26.

Defendants also argue that the Court's Order should be stayed as to the Refugee Funding Suspension. Motion at 6–7. In support of this argument, Defendants renew two arguments already thoroughly addressed and rejected by the Court's Order: (1) Plaintiffs do not challenge discrete agency action; and (2) any claims by resettlement partners for reimbursement for expenses incurred prior to January 20, 2025, must be brought in the Court of Federal Claims. Motion at 6–7. Defendants' Motion does not meaningfully engage with the Court's reasoned holdings that (1) Plaintiffs did identify discrete and challengeable agency action, Order at 32–34; and (2) the District Court properly has jurisdiction over all of Plaintiff's Refugee Funding Suspension claims, *id.* at 38–41.

Nothing in Defendants' motion for a stay is new or should cause the Court to reevaluate its prior findings and conclusions.

## II. Defendants will suffer no harm in continuing to comply with what has been the law for decades.

For decades, the USRAP has been an integral part of the American legal system, enabling the resettlement of refugees from around the world through statutorily prescribed partnership with organizations receiving federal funding for their resettlement work. See Dkt. # 1 ("Compl.") ¶¶ 31–77. Defendants cannot demonstrate irreparable harm where, as here, the Court's order "return[s] the nation temporarily to the position it has occupied for many previous years." *Washington v. Trump*, 847 F.3d at 1168.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL – 3
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

To secure a stay pending an appeal, Defendants bear the burden of showing that "irreparable injury is likely to occur during the period before the appeal is decided." *Doe #1*, 957 F.3d at 1059. The "mere possibility" of irreparable injury is insufficient; instead, "irreparable injury must be *likely* to occur." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770, 778 (9th Cir. 2018) (emphasis on original). As Defendants fail to meet even this basic threshold, their request for a stay should be denied. *Doe #1*, 957 F.3d at 1058.

Defendants briefly raise three points to support their assertion that balance of harms weighs "strongly" in favor of a stay.  Motion at 1. First, they claim that the Court's order necessarily inflicts irreparable injury on them because it prevents them from "effectuating statutes enacted by representatives of its people." *Id.* at 8 (citation omitted).  This argument was previously raised before the Court and rejected. Order at 57; *see also* Dkt. # 31 at 26. Moreover, the argument fails where this Court has held that the government is acting unlawfully—i.e., in a manner that violates a statute enacted by representatives of the people.  *See Doe v. Trump*, 284 F. Supp. 3d 1172, 1178–79 (W.D. Wash. 2018)*; E. Bay Sanctuary Covenant v. Biden*, No. 18-CV-06810-JST, 2023 WL 4943384, at *2 (N.D. Cal. Aug. 1, 2023).  Even if Defendants' argument were accepted, the Ninth Circuit has emphasized that any such harm "is not dispositive of the balance of harms analysis." *Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014) (per curiam) (citation omitted) (balance of second and third *Nken* factors favored individuals whose constitutional rights were infringed over state's interest in not having its laws and constitutional amendments enjoined).  This vague assertion of harm cannot overcome the absence of evidence of likely harm to Defendants here, particularly when weighed against Plaintiffs' evidence of irreparable harm.

Second, Defendants claim that complying with the preliminary injunction would inflict "permanent" injury because refugees, once admitted, cannot have their status revoked without cause. Motion at 8. But other than the fact that Defendants wish to ban all refugees from coming to the United States, which the Court has found unlawful, Defendants point to no evidence or allegation that admitting refugees to the United States in the ordinary course pursuant to the

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY PENDING APPEAL – 4 (No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Refugee Act would cause any harm at all. To the contrary, USRAP applicants spend years in the
2    pipeline being subject to extensive vetting and preparation by the U.S. government and
3    resettlement partners before they are resettled. *See* Order at 6.

4         Finally, while Defendants cursorily maintain that they will be harmed by an intrusion into
5    the executive branch's authority in matters of immigration and "foreign policy," Motion at 9, the
6    Ninth Circuit has squarely rejected the argument that separation-of-powers concerns constitute
7    "irreparable harm." *See E. Bay Sanctuary Covenant*, 932 F.3d at 778 ("'[C]laims that the
8    Government has suffered an institutional injury by erosion of the separation of powers' do not
9    alone amount to an injury that is 'irreparable,' because the Government may 'pursue and vindicate
10   its interests in the full course of this litigation.'" (quoting *Washington*, 847 F.3d at 1168)). The
11   executive branch does not suffer irreparable harm merely by having its actions challenged as
12   unlawful and being subject to a preliminary injunction. *Doe #1*, 957 F.3d at 1059 ("[I]f we were
13   to adopt the government's assertion that the irreparable harm standard is satisfied by the fact of
14   executive action alone, no act of the executive branch asserted to be inconsistent with a legislative
15   enactment could be the subject of a preliminary injunction. That cannot be so.").

16   **III.    Defendants are unlikely to succeed in challenging the nationwide scope of the
17              Court's injunction.**

18        Defendants protest the Court's issuance of a nationwide injunction. Motion at 8–9.[1]  But
19   Defendants do not, because they cannot, contest that issuing nationwide relief is well within the
20   Court's discretion. *See City & County of San Francisco v. Trump*, 897 F.3d 1225, 1245 (9th Cir.
21   2018) (district courts enjoy "considerable discretion in ordering an appropriate equitable remedy").
22   Unlike what Defendants claim, "there is 'no general requirement that an injunction affect only the
23   parties in the suit,'" *Hecox v. Little*, 104 F.4th 1061, 1090 (9th Cir. 2024), and nationwide equitable
24   relief "is acceptable where it is 'necessary to give prevailing parties the relief to which they are

25

26   ───────────────────────
     [1] Defendants did not timely raise these arguments in their Opposition to Plaintiffs' Motion for a Preliminary Injunction.
     *See* Dkt. No. 31 at 26 (including only one conclusory sentence arguing that nationwide injunctions are improper).

1    entitled,'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021). For this reason,

2    courts regularly order nationwide relief where appropriate. *Trump v. Int'l Refugee Assistance*

3    *Project*, 582 U.S. 571, 579, 581 (2017) (allowing nationwide injunction as to enforcement of

4    portions of Executive Order that exceeded presidential authority); *Doe #1*, 957 F.3d at 1069

5    (declining to stay nationwide injunction and explaining that "there is no bar" against such

6    injunctions "when it is appropriate" (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir.

7    1987))); *HIAS, Inc. v. Trump*, 985 F.3d 309, 317 (4th Cir. 2021) (affirming nationwide injunction

8    for organizations that "place[d] refugees throughout the country"). The Court acted well within its

9    authority in issuing the Order.

10        Defendants argue—with no explanation or support—that "Plaintiffs will suffer no harm if

11   the injunction is stayed as to non-parties." Motion at 9. This is patently untrue. As the Court has

12   already held, to afford complete relief to named Plaintiffs, entire portions of the Refugee Ban EO

13   must be enjoined. Order at 59. Not only would a "piecemeal approach" be an "administrative

14   nightmare," it would also be "impracticable, as the refugee resettlement system functions as an

15   integrated whole with interconnected processes spanning international borders and domestic

16   agencies." *Id.* This is made abundantly clear by considering the impact of Defendants' suspensions

17   on each plaintiff in the case.  The organizational plaintiffs are harmed by every fewer refugee they

18   resettle.  They will thus be harmed if the refugee ban is not enjoined in its entirety. Meanwhile,

19   the individual refugee plaintiffs cannot see their applications moved forward if the institutions

20   responsible for conducting that processing are not permitted to operate. *See* Dkt. # 15-3 at 29–32

21   (outlining the role of NGOs in overseas processing services); Dkt. #15-5 (case flow chart). And

22   because the organizational plaintiffs resettle refugees from all over the world, Dkt. # 15-24 ¶¶ 47–

23   49, 51–52, 57; Dkt. # 15-23 ¶¶ 22, 32–35, 37–38, many of whom are processed by non-plaintiff

24   organizations, Dkt. # 15-3 at 29, absent an injunction of the funding suspension in its entirety,

25   some of the refugees who would be resettled the organizational plaintiffs will not have their

26   applications advanced, inflicting further harm on the organizational plaintiffs.  Beyond these

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL – 6
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    administrative difficulties, the "fragmented" approach the Defendants advocate for "would run

2    afoul of the constitutional and statutory requirement for uniform immigration law and policy."

3    Order at 60 (quoting *Washington v. Trump*, 847 F.3d at 1166–67).

4        Nationwide relief here is well within the Court's discretion and "flexibility to craft

5    remedies that effectively address the actual harms at stake." *Id.* Such nationwide relief is necessary

6    to ensure that organizational and individual plaintiffs are relieved from the harms caused by

7    Defendants' illegal actions.

8    **IV.    As the Court has already decidedly held, Plaintiffs will be irreparably and
         substantially harmed by allowing the Refugee Ban EO and funding suspension to
9         stand.**

10        Plaintiffs have detailed at length the irreparable harm they face from the Refugee Ban EO

11    and Funding Suspension. *See* Dkt # 14 at 9–13; *see also* Dkt # 15-14 to # 15-25 (Plaintiff

12    declarations detailing continuing irreparable harm caused by Defendants' challenged actions). As

13    this Court has already explained:

14        The individual plaintiffs submit declarations showing the USRAP EO, Agency
         Suspension, and Refugee Funding Suspension have caused them irreparable
15        harm—plaintiffs stranded abroad face physical danger and financial hardship after
         cancelling travel plans and selling their possessions; several plaintiffs suffer
16        ongoing separation from family members in the U.S.; and plaintiffs who have
         recently arrived to the U.S. have been cut off from critical resettlement benefits and
17        support services needed to establish their new lives in America. These harms
         compound daily and cannot be remedied after the fact. . . . . The organization
18        plaintiffs will suffer a similar fate absent an injunction. The record shows that they
         face devastating and irreparable harm from the Refugee Funding Suspension,
19        which has frozen over $100 million in anticipated revenue and thrown them into a
         cash-flow crisis. This has forced them to furlough or lay off hundreds of staff
20        members, cancel obligations, and halt essential refugee services. This is an
         existential threat to their survival, as the combination of staff reductions, loss of
21        institutional knowledge, damaged community partnerships, and declining service
         quality threatens to permanently shut down their operations.
22

23

24    Order at 53–54. Defendants do not, because they cannot, challenge these findings. These tangible

25    harms will only continue and compound should a stay be granted, and they far outweigh the

26    nonexistent harms raised by Defendants.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL – 7
(No. C25-255 JNW)

1

2

**V.    The public interest lies in enforcing the Court's order and against the issuance of a stay.**

Maintaining the Order pending an appeal only serves the public interest. Allowing Defendants to exceed their executive authority and circumvent the statutory scheme is decidedly *not* in the public interest, as this Court held, as there can be no legitimate government interest in violating federal law. Order at 57 (citing *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). Here, Congress crafted a detailed statutory scheme governing the resettlement of refugees through the USRAP and supporting their effective resettlement. "[T]he public has an interest in ensuring that the '[laws] enacted by [their] representatives are not imperiled by executive fiat.'" *E. Bay Sanctuary Covenant*, 993 F.3d at 679 (cleaned up); *see also Doe*, 284 F. Supp. 3d at 1179 ("Where the Government's actions thwart Congressional intent and undermine Congressionally-enacted statutes, the public interest is best served by curtailing those actions." (internal citations omitted)).

## <u>CONCLUSION</u>

Defendants have not satisfied their burden to justify the extraordinary relief they seek here. Plaintiffs request that the Court deny Defendants' Motion.

**

I certify that this Opposition to Defendants' Motion for a Stay Pending Appeal contains 2,449 words, in compliance with the Local Civil Rules.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL – 8
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Dated: March 7, 2025

2        Deepa Alagesan*
3        Mevlüde Akay Alp*
         Linda Evarts*
4        Ghita Schwarz*
         **INTERNATIONAL REFUGEE**
5        **ASSISTANCE PROJECT**
         One Battery Park Plaza, 33rd Floor
6        New York, New York 10004
         Telephone: (646) 939-9169
7        Facsimile: (516) 324-2267
         dalagesan@refugeerights.org
8        makayalp@refugeerights.org
         levarts@refugeerights.org
9        gschwarz@refugeerights.org

10       Melissa Keaney*
11       **INTERNATIONAL REFUGEE**
         **ASSISTANCE PROJECT**
12       P.O. Box 2291
         Fair Oaks, California 95628
13       Telephone: (646) 939-9169
14       mkeaney@refugeerights.org

15       Laurie Ball Cooper*
         Megan Hauptman*
16       **INTERNATIONAL REFUGEE**
         **ASSISTANCE PROJECT**
17       650 Massachusetts Ave. NW, Suite 600
         Washington, D.C. 20001
18       Telephone: (646) 939-9169
19       lballcooper@refugeerights.org
         mhauptman@refugeerights.org
20

21

22

23

24

25

26

By:  s/ *Harry H. Schneider, Jr.*
Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792
Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com
EAston@perkinscoie.com

John M. Devaney*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
JDevaney@perkinscoie.com

Joel W. Nomkin*
**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
JNomkin@perkinscoie.com

Nicholas J. Surprise*
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
NSurprise@perkinscoie.com

*Counsel for Plaintiffs*

*\* Admitted pro hac vice*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL – 9
(No. C25-255 JNW)

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I certify under penalty of perjury that on March 7, 2025, I caused to be electronically filed

3

the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a

4

notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice

5

List.

6

Dated: March 7, 2025

7

8

s/ *Harry H. Schneider, Jr.*
Harry H. Schneider, Jr.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. C25-255 JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000