1

2

3

4

5

District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

11

12

13

14

15

16

17

18

PLAINTIFF PACITO; PLAINTIFF ESTHER;
PLAINTIFF JOSEPHINE; PLAINTIFF
SARA; PLAINTIFF ALYAS; PLAINTIFF
MARCOS; PLAINTIFF AHMED;
PLAINTIFF RACHEL; PLAINTIFF ALI;
HIAS, INC.; CHURCH WORLD SERVICE,
INC.; and LUTHERAN COMMUNITY
SERVICES NORTHWEST,

        *Plaintiffs*,

     v.

DONALD J. TRUMP, in his official capacity
as President of the United States, MARCO
RUBIO, in his official capacity as Secretary of
State, KRISTI NOEM, in her official capacity
as Secretary of Homeland Security;
DOROTHY A. FINK, in her official capacity
as Acting Secretary of Health and Human
Services,

        *Defendants*.

CASE NO. 2:25-cv-00255

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION ON
SUPPLEMENTAL PLEADING

MOTION CALENDAR:
MARCH 11, 2025

19

20

21

22

23

24

Opposition to Plaintiffs' Motion
for Preliminary Injunction on
Supplemental Pleading

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

1

2    Defendants, by and through undersigned counsel, respectfully oppose Plaintiffs'

3    Motion for Preliminary Injunction on Supplemental Pleading (ECF No. 57, "Pls' Motion").

For the reasons below, the Court should deny Plaintiffs' request.

4                                    **ARGUMENT**

5    **I.      Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits**

6            **A.      Plaintiffs fail to establish this Court's jurisdiction.**

7            The termination of organizational Plaintiffs' cooperative agreements leaves those

8    Plaintiffs with one remedy: to submit invoices for work performed and allow the State

Department to assess the invoices under the terms of the agreements, and if unsatisfied with

9    payment amounts, to file suit in the Court of Federal Claims. In *Maine Community Health*

10   *Options v. United States*, 590 U.S. 296 (2020), the Supreme Court explained that suits

11   involving "prospective declaratory and injunctive relief" in the context of a "complex ongoing

12   relationship," may be brought under the APA, but suits that "remedy[] particular categories of

past injuries or labors" instead are properly brought under the Tucker Act—*i.e.*, in the Court

13   of Federal Claims. *Id.* at 327 (internal quotation marks and citations omitted). Here, there is

14   no longer an ongoing relationship—it ended on February 26, 2025, the effective date of the

15   terminations. Plaintiffs' claims, therefore, "lie[] in the Tucker Act's heartland." *Id.* at 327.

16           Plaintiffs' assert that these terminations are properly before the Court because they are

17   challenging "a substantive policy decision." Pls' Motion at 4. Plaintiffs base this assertion on

18   the Court's earlier finding that "when a party suing the federal government 'seek[s] funds to

19   which a statute allegedly entitles it, rather than money in compensation for the losses,' such

claim is not excepted from Section 702's sovereign-immunity waiver." ECF 45, Order Issuing

20   Preliminary Injunction ("PI Order") at 40 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 893

21   (1988)) (edits in original). But *Bowen* "has no bearing on the unavailability of an injunction to

22   enforce a contractual obligation to pay money past due." *Great-West Life & Annuity Ins. Co.*

23
    Opposition to Plaintiffs' Motion                      U.S. Department of Justice
24  for Preliminary Injunction on                         Civil Division, Office of Immigration Litigation
    Supplemental Pleading                                 P.O. Box 878, Ben Franklin Station
                                                          Washington, DC 20044
    No. 2:25-cv-00255-JNW                                 (202) 305-7234

                                            1

*v. Knudson*, 534 U.S. 204, 212 (2002). Indeed, the sole basis for Plaintiffs' claim is grounded in the cooperative agreements and Plaintiffs' purported right—presumably, to engage in resettlement of refugees—did not "exist[] prior to and apart from rights created under the [agreements]." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). Simply put, the Refugee Act of 1980 does not create a right for a nonprofit to have an agreement with the government to provide resettlement of refugees. It merely authorizes the government to enter into one and, as discussed below, 8 U.S.C. § 1522 does not require the Secretary of State to contract with Plaintiffs or any other entity.

Plaintiffs use "equitable" language, Pls' Motion at 4, but courts must look to the complaint's "substance, not merely its form." *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995). Here, Plaintiffs' claims are necessarily based entirely on an application of the terms of their respective cooperative agreements and payments thereunder. Plaintiffs take great care to couch their requested relief in equitable language, asking the Court to "issue a preliminary injunction blocking the Agency Defendants from enforcing their termination of USRAP-related funding." Pls' Mot. at 8. In essence, the only equitable relief that this Court could order is to force the government to perform under the cooperative agreements, as evidenced by the Court's prior ruling. *See* PI Order at 61 (enjoining the government from "[s]uspending or implementing the suspension of USRAP funds, including implementation of Suspension Notices sent by the U.S. State Department to all refugee and resettlement partners on January 24, 2025" and from "[w]ithholding reimbursements to resettlement partners for USRAP-related work performed pursuant to cooperative agreements before January 20, 2025").

While there may be arguments that suspension of existing contractual rights is not subject to Tucker Act review, any such theory is unworkable now that the contracts are terminated. "In other words, [Plaintiffs] seek[] the classic contractual remedy of specific performance" of the terminated contracts. *Spectrum Leasing*, 764 F.2d at 894. To prevent

Opposition to Plaintiffs' Motion
for Preliminary Injunction on
Supplemental Pleading

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

parties from "avoiding this remedy restriction [on an inability of a court to grant specific performance against the government], … a complaint involving a request for specific performance must be resolved by the Claims Court." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) (citations omitted); *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) ("Federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations."); *see B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727-28 (2d Cir. 1983) ("[A]n action seeking specific performance of a contract with the Government may not be brought in a district court to avoid the Tucker Act's limitation on relief to monetary judgments."). Failure to enforce this jurisdictional demarcation would lead to an absurd result: every contract termination would become a potential APA suit, vitiating Congress's channeling of such suits to the Court of Federal Claims. *See Personal Services Contractor Association v. Trump ("PSCA")*, No. 1:25-cv-00469-CJN (D.D.C. Mar. 6, 2025) (minute entry finding that plaintiff was not likely to succeed on merits of its claim because the personal services contractors' claims would need to be channeled through an alternative forum; specifically, the claims essentially arose out of contract disputes that must be brought through the Contract Disputes Act, with exclusive jurisdiction in the Court of Federal Claims or the Civilian Board of Contract Appeals).[1] And the mere labeling of the instrument as a "Cooperative Agreement" without examination of its terms would not preclude the Court of Federal Claims as a forum for the breach of contract claim. *See, e.g.*, *San Juan City College v. United States*, 391 F.3d 1357, 1360-62 (Fed. Cir. 2004).

19
20
21
22

     Plaintiffs' Impoundment Control Act (ICA) arguments fare no better. Pls' Motion at 6. As an initial matter, the government agreed to an expedited process to allow challenges to the contract terminations within the scope of the claims in Plaintiffs' Complaint, not to raise entirely new theories of the case that are not included in their complaint. *See* ECF No. 56, First

23
24

---

[1] Defendants can provide a transcript of the oral ruling when it is available.

Opposition to Plaintiffs' Motion
for Preliminary Injunction on
Supplemental Pleading

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

1  Supplemental Complaint for Declaratory and Injunctive Relief (making no mention of ICA).

2  This Court should reject expedited resolution of this complex issue that is not pled. *See* PI

3  Order at 43, n. 6 (declining to consider ICA).

4      On the merits, "Congress did not intend to create a private right of action [in the

5  Impoundment Control Act] in cases of unauthorized impoundments." *Rogers v. United States*,

6  14 Cl. Ct. 39, 50 (1987), *aff'd*, 861 F.2d 729 (Fed. Cir. 1988). Any right conferred to Plaintiffs

   by 2 C.F.R. Part 200 Subparts A through F and 2 C.F.R. Parts 600 and 601 only arise from

7  their cooperative agreements and are therefore contract claims.

8      Plaintiff's newly-added *Accardi* claim is also outside the scope of the parties'

9  understanding of the nature of this expedited supplemental process. It is also based not on any

10 statute or regulation, but on a public notice on a web site. Pls' Motion at 7. It accordingly has

11 no merit. Ultimately, there is no entitlement to any specific relocation services within the

12 United States, as explained *infra*.

13      **B.    The State Department has not acted contrary to law.**

14      Even if the contract terminations are considered under the APA, Plaintiffs' claims fail

15 because the contract terminations violate no law. First, there is no requirement to utilize

16 resettlement contractors inside or outside the United States to facilitate or leverage the

   refugee program. Indeed, Plaintiffs cite no statute that mandates international refugee

17 contract partners, but instead focus exclusively on 8 U.S.C. § 1522, which concerns domestic

18 refugee support. The Secretary can manage the international aspects of the refugee program

19 in whatever way he thinks appropriate, and the Executive's authority is at its apex when

20 spending money abroad. *See Regan v. Wald*, 468 U.S. 222, 242 (1984) ("Matters relating to

21 the conduct of foreign relations…are so exclusively entrusted to the political branches of

   government as to be largely immune from judicial inquiry or interference.") (citation

22 omitted).

23

   Opposition to Plaintiffs' Motion                    U.S. Department of Justice
24 for Preliminary Injunction on                       Civil Division, Office of Immigration Litigation
   Supplemental Pleading                               P.O. Box 878, Ben Franklin Station
                                                        Washington, DC 20044
   No. 2:25-cv-00255-JNW                               (202) 305-7234

1

2
To the extent Plaintiffs contend that the Refugee Act requires refugee contractors,

3
much less specific refugee contractors of their choosing, they are wrong. Such a rule would

4
place this Court in a position to manage general agency operations, which the APA does not

5
allow and certainly would be inappropriate with respect to foreign operations. *Vt. Yankee*

6
*Nuclear Power Co. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978)

7
("administrative agencies should be free to fashion their own rules of procedure and to

8
pursue methods of inquiry capable of permitting them to discharge their multitudinous

9
duties") (citation omitted).

With respect to domestic resettlement services, Plaintiffs misapprehend the meaning

10
and operation of 8 U.S.C. § 1522. Section 1522 does not mandate that the government enter

11
into grants, agreements, or contracts for refugee resettlement, but gives the State Department

12
and HHS the option to do so (an option that is reflected in the contracts themselves, which
make clear the agencies may terminate if the contract does not serve administration priorities).

13
The key language is in § 1522(b)(1), which provides that the "Director…*is authorized*,

14
to make grants to, and contracts with, public or private nonprofit agencies for initial

15
resettlement…of refugees in the United States." 8 U.S.C. § 1522(b)(1)(A)(ii) (emphasis

16
added)—*i.e.*, may do so, not must. No provision requires that any grant or contract be made

17
by the Director, and indeed the President may "determine[] that the Director should not

18
administer the program" and may assign responsibilities to other officers. *Id.* § 1522(b)(1)(B).

19
It is only if those grants and contracts are pursued that other provisions of § 1522 apply,

20
including the two provisions erroneously relied upon by Plaintiffs and the Court in mistakenly

21
concluding that refugee resettlement services are statutorily required. First, § 1522(b)(7)

22
imposes various requirements on grantees in specifying what grants "shall require," but does
not require the Secretary to award any grants in the first place. Second, § 1522(a)(1)(A)

23
imposes limits on the Director "[i]n providing assistance under this section" but again does

24
Opposition to Plaintiffs' Motion
for Preliminary Injunction on
Supplemental Pleading

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

5

1  not create any right to specific assistance or require that grants be consummated in the first

2  place.  8 U.S.C. § 1522(a)(1)(A).

3      These provisions do not confer a right on refugees, much less on Plaintiffs or similar

4  nonprofits. Instead, § 1522(a)(1)(A) ensures that the Director does not spend unwisely—by

5  making sure grants focuses on quick assimilation that avoided extended reliance on public

6  cash payments from the government. *See* § 1522(a)(1)(A) (any cash payments must be made

7  "in a manner so as not to discourage their economic self-sufficiency"). Plaintiffs wrongly read

   this language to create a right to cash payments and various other benefits.

8      Plaintiffs' APA arbitrary-and-capricious claim also fails. As an initial matter, the

9  decision whether to terminate the contracts at issue here are decisions that are committed to

10 agency discretion by law. The contracts themselves—allowing termination when agency

11 priorities have changed—provides no law to apply and the decision to allocate funds "is

12 committed to agency discretion by law" and thus, not subject to APA review. *Lincoln v. Vigil*,

13 508 U.S. 182, 193 (1993); Div. F, Title III of P.L. 118-47 (138 Stat. 744) (providing

   $3,928,000,000 for "necessary expenses not otherwise provided for…and other activities to

14 meet refugee and migration needs…"). Plaintiffs identify no basis for this Court to second

15 guess the agencies' determinations as to what *their own priorities* are. The APA certainly

16 provides none.

17     Further, Plaintiffs seek to impermissibly impose an APA review standard on the terms

18 of their cooperative agreements. As discussed *supra*, this is a contract dispute and a "central

19 tenet of contract law is that no party is obligated to provide more than is specified in the

20 agreement itself." *United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009); *see Torres v.

   Walker*, 356 F.3d 238, 245 (2d Cir. 2004) ("If a contract is clear, courts must take care not to

21 alter or go beyond the express terms of the agreement, or to impose obligations on the parties

22 that are mandated by the unambiguous terms of the agreement itself." (citation omitted));

23

24 Opposition to Plaintiffs' Motion                    U.S. Department of Justice
   for Preliminary Injunction on                      Civil Division, Office of Immigration Litigation
   Supplemental Pleading                              P.O. Box 878, Ben Franklin Station
                                                      Washington, DC 20044
   No. 2:25-cv-00255-JNW                              (202) 305-7234

*Assicurazioni Generali S.p.A. v. Black & Veatch Corp.*, 362 F.3d 1108, 1116–17 (8th Cir. 2004) ("The enforcement of contracts according to their unambiguous terms, however, serves an important purpose in the law....Where an agreement is clear, the parties are entitled to rely on an expectation that it will be enforced as written.").

Finally, notwithstanding Plaintiffs' failure to present the Court with the terms of the very cooperative agreements they claim were illegally terminated, the cooperative agreements at issue here are subject to the Department of State's Standard Terms and Conditions for Federal Awards, which provide that "any award may be terminated…[b]y the Department, to the greatest extent authorized by law, if the award no longer effectuates the program goals or agency priorities." *See* March 7, 2025 Declaration of Adam Zerbinopoulos (Ex. 1) ¶ 2. On February 26, 2025, the State Department provided the required written notice consistent with relevant regulation and specified that Plaintiffs' awards no longer effectuated agency priorities. 2 C.F.R. § 200.341(a); *see also* ECF Nos. 58-2, 58-3. Neither the cooperative agreements nor the governing regulations require Defendants to provide advance notice or the explanation Plaintiffs seek. Pls' Motion at 6-7. In short, no law precludes or prevents the termination of these contracts.

## II.   The Balance of Harms Weigh Against Relief and Nationwide Relief is Inappropriate

Organizational Plaintiffs can claim no irreparable harm absent an injunction because the government has terminated the cooperative agreements. As such, the only relief now available to organizational Plaintiffs is *money damages* should the parties not resolve any payment disputes through available administrative channels. And, while awards providing for reception and placement benefits domestically have been terminated by the Department of State, refugees continue to receive services in the United States under 8 U.S.C. § 1522 by the Office of Refugee Resettlement, and those that do can claim no harm from the various funding

Opposition to Plaintiffs' Motion
for Preliminary Injunction on
Supplemental Pleading

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

decisions being challenged here. *See* March 5, 2025 Declaration of Andrew Gradison, Acting Assistant Secretary for Children and Families, No. 1:25-cv-00465 (TNM), ECF No. 35-1, (Ex. 2) ¶¶ 6-10. It is simply not the case that a nationwide injunction as to the entire refugee program is called for by alleged harm to the one individual Plaintiff (Plaintiff Ali) in the United States.

On the other hand, managing the worldwide refugee program in this Court would cause grave harm to the United States and its foreign policy, an area where this Court has the least authority. In addition to alleging no harm beyond the few parties before this Court, Plaintiffs have provided no justification for how universal relief is needed to remedy their specific harm. No other organization or individual is before this Court, and this Court does not have the complete record of contracting materials related to any entity. A universal injunction is patently improper.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction on Supplemental Pleading.

DATED this 7th day of March, 2025.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST FLENTJE
Acting Director

*/s/ Nancy K. Canter*

Opposition to Plaintiffs' Motion
for Preliminary Injunction on
Supplemental Pleading

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

NANCY K. CANTER
(CA Bar No. 263198)
Senior Litigation Counsel

JOSEPH MCCARTER
ALEXANDRA YEATTS
Trial Attorneys
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
Washington, DC 20005
Phone: 202-305-7234
Email: nancy.k.canter@usdoj.gov

*Attorneys for Defendants*

Opposition to Plaintiffs' Motion
for Preliminary Injunction on
Supplemental Pleading

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234