THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST, <br><br>*Plaintiffs*, <br><br>v. <br><br>DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, <br><br>*Defendants*. | Case No. 2:25-cv-255-JNW <br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION ON SUPPLEMENTAL PLEADING** <br><br>NOTE ON MOTION CALENDAR: MARCH 11, 2025 |

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## TABLE OF CONTENTS

I.    The Court has jurisdiction to consider these claims. ............................................................. 1

II.   Defendants' unlawful action is judicially reviewable. ........................................................... 3

III.  The USRAP Funding Termination is arbitrary and capricious. ............................................. 4

IV.   The USRAP Funding Termination is contrary to law. .......................................................... 5

V.    Defendants fail to respond to the remaining claims. .............................................................. 6

VI.   New legal authority does not change the analysis. ................................................................. 6

VII.  The remaining factors favor relief and Defendants do not show otherwise. ......................... 7

VIII. Comprehensive relief is necessary to stop the irreparable harm. ........................................... 8

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING – ii
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Defendants recognize that their suspension of USRAP processing and funding has resulted in a "significant deterioration of functions throughout the USRAP" that impedes the restoration of "the USRAP to operational status." Dkt. # 62 ("Status Rep.") at 2. But rather than comply with the Court's preliminary-injunction order, Dkt. # 45 ("PI Order"), Defendants doubled down and terminated the underlying agreements—and now argue that doing so changed the nature of Plaintiffs' challenge, the venue, and the available remedies. Dkt. # 61 ("Opp'n") at 1–8.

The question for the Court is whether Defendants violated federal law in abruptly terminating the cooperative agreements as part of their overall effort to dismantle the entire refugee program. Plaintiffs' challenge fits well within the Court's jurisdiction, and the answer to the question is clear: Defendants' termination of the agreements was unlawful for the independently sufficient reasons Plaintiffs raised in their motion, which Defendants misconstrue or ignore entirely. Defendants attempt to obscure the harms that have arisen since the Court issued its injunction, including by misleadingly claiming that refugees retain access to necessary resettlement services. ˆDkt. # 61-2 ("Gradison Decl.") ¶¶ 3–9. To respond, Plaintiffs provide limited declarations to lay bare the true effects of the USRAP Funding Termination, which all but ensures that Defendants cannot comply with Congress's refugee-resettlement scheme and this Court's PI Order. *See* Exs. 1–3.[1] An additional injunction of Defendants' latest unlawful action is necessary to remedy Plaintiffs' compounding irreparable harms and serve the public interest.

**I.    The Court has jurisdiction to consider these claims.**

Defendants suggest that the termination of the USRAP cooperative agreements transformed Plaintiffs' challenge into a contract dispute that must be challenged in the U.S. Court of Federal Claims under the Tucker Act. Opp'n 1–3. But even as they cite *Bowen v. Massachusetts*, 487 U.S. 879 (1988), they misstate the law and mischaracterize Plaintiffs' arguments. The *Bowen*

---

[1] Exhibits are attached to the declaration of Melissa Keaney and are "submitted in direct response to evidence or arguments raised in the opposition." *HDT Bio Corp. v. Emcure Pharms., Ltd.*, No. C22-0334JLR, 2022 WL 3018239, at *3 (W.D. Wash. July 29, 2022).

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING – 1
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  Court held that a district court had jurisdiction over an APA challenge even where the "specific
2  relief" sought would result in payment of money. 487 U.S. at 899–901; *see also* PI Order 39–40.
3  The Court clarified that the APA's exclusion of review for actions seeking "money damages,"
4  5 U.S.C. § 702, is limited to cases seeking "a sum of money used as compensatory relief . . . to
5  *substitute* for a suffered loss"—and does *not* apply to actions for "specific remedies" that "attempt
6  to give the plaintiff the very thing to which he was entitled," which may include "equitable actions
7  for monetary relief under a contract." *Id.* at 893–96 (cleaned up). And the APA's limitation on
8  review to cases "for which there is no other adequate remedy," 5 U.S.C. § 704, does not displace
9  APA review of agency action any time a contract or money is at issue. Considering that plaintiffs
10 sought modification of future agency actions, the need for prompt relief, and the APA's "central
11 purpose of providing a broad spectrum of judicial review of agency action" by Article III courts,
12 the *Bowen* Court found district-court review appropriate. *Id*. at 903–08 & n.46.

   Here, Plaintiffs challenge Defendants' policy decisions to terminate the R&P program and
13 stop the processing of refugees in whole regions of the world, which were effectuated in part by
14 the USRAP Funding Termination. *See* Dkt. # 57 ("Mot.") at 1–3. The relief Plaintiffs seek is
15 forward-looking and intended to reopen the USRAP—as required by the Court's PI Order. Dkt.
16 # 56 ("Suppl. Compl.") (seeking vacatur of unlawful actions and declaratory and injunctive relief).
17 Defendants' selective quotations from a host of cases do not change the fact that the remedies
18 Plaintiffs seek have never been about "enforc[ing] a contractual obligation to pay money past due."
19 Opp'n 1–2.[2] And Defendants' assertion that specific performance is not available—based on
20 inapposite out-of-circuit cases—ignores contrary Ninth Circuit precedent. *Compare* Opp'n 2–3,
21 *with, e.g., Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645–46 (9th Cir. 1998);

---

[2] Defendants' citations to *Bowen's* progeny do not show otherwise. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-12 (2002) (plaintiffs sought "specific performance of a *contractual* obligation to pay *past* due sums" under ERISA); *Maine Comm. Health Options v. United States*, 590 U.S. 296, 326-27 (2020) (action properly filed in Federal Claims Court where limited to "past due" monies for "completed labors").

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING – 2
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 929 (9th Cir. 2008) (claims seeking specific performance could remain in district court). That this specific relief might result in monetary payment does not convert this action into a contract dispute, and there is "no other adequate remedy" for the irreparable harm. *Bowen,* 487 U.S. at 893, 904 (citing 5 U.S.C. § 704).

      Defendants' slippery-slope argument—that "every contract termination would become a potential APA suit," Opp'n 3—turns congressional intent on its head: as the *Bowen* Court noted, "it seems highly unlikely that Congress intended to designate an Article I court as the primary forum for judicial review of agency action that may involve questions of policy," particularly in light of the APA's "central purpose of providing a broad spectrum of judicial review of agency action," 487 U.S. at 903–04 & n.46. Defendants' argument is further belied by their tacit admission that Court of Claims review might not even be available here.[3] Their argument that the parties' relationship is now in the past, Opp'n 1, ignores their ongoing obligations to Plaintiff Ali and other recently resettled refugees—including the thousands of refugees assured to Plaintiffs HIAS, CWS, and LCSNW, who are entitled to resettlement benefits *now*, *see* PI Order 42–43 (citing 8 U.S.C. § 1522). Defendants also mischaracterize Plaintiffs' argument as "sole[ly] bas[ed]" on the cooperative agreements, Opp'n 2, but Plaintiffs' argument relies on the refugee processing and resettlement support required by the Refugee Act, *see* PI Order 40–43. And by Defendants' own admission, the USRAP Funding Termination, along with their other unlawful actions, has prevented them from complying with their legal obligations. *See* Status Rep. 2. Defendants are unable to meet their statutory obligations *now* without the terminated cooperative agreements.

## II. Defendants' unlawful action is judicially reviewable.

No longer peddling the fiction that Defendants' defunding of USRAP was only temporary, Defendants concede that the USRAP Funding Termination constitutes final agency action—and

---

[3] Defendants respond to an argument Plaintiffs do not raise—that cooperative agreements are not reviewable by the Court of Claims, Opp'n 3—but omit relevant precedent, *see Am. Near E. Refugee Aid v. USAID*, 703 F.Supp.3d 126, 134 (D.D.C. 2023) (cooperative agreements not subject to Tucker Act where they did not "confer a direct benefit" on USAID).

PLS.' REPLY ISO PRELIM. INJ. ON SUPPL. PLEADING – 3
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

now argue that the termination decisions are unreviewable because they are "committed to agency discretion by law" such that there is "no law to apply." Opp'n 6. But Defendants fail to demonstrate that this "very narrow" exception applies here, *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971), and Defendants' own case, *Lincoln v. Vigil*, proves the opposite: "allocation of funds from a lump-sum appropriation" is judicially reviewable to determine whether the agency "disregard[ed] statutory responsibilities," 508 U.S. 182, 192–93 (1993); s*ee also King County v. Azar*, 320 F.Supp.3d 1167, 1175–76 (W.D. Wash. 2018) (decision to shorten grant period reviewable where statute and regulations provided applicable law). And Defendants' arguments interpreting various provisions of the Refugee Act make clear that there is law to apply here.

### III.  The USRAP Funding Termination is arbitrary and capricious.

Defendants do not dispute that if their threshold arguments fail such that the Court has jurisdiction to review the USRAP Funding Termination—and it does, *see supra* pp. 1–3—then their actions are arbitrary and capricious in violation of the APA. Mot. 6–7. They do not respond *at all* to Plaintiffs' merits argument except to assert that the APA does not apply. Opp'n 6–7. Nor do they recognize that even where an agency has the authority to change its policy, it must still comply with the APA's requirements for agency decision-making. *See*, *e.g.*, *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 31–33 (2020) (affirming vacatur of discretionary agency policy change where government failed to consider reasonable alternatives and reliance interests).

Indeed, their status report yesterday highlights just how arbitrary the agency's decision-making was when it terminated the R&P program in its entirety and stopped refugee processing in whole regions of the world. With respect to the R&P Termination, Defendants have never explained why they decided to terminate a decades-old program—which they extolled to Congress just months ago, Mot. 6-7—other than a vague reference to a shift in "agency priorities." Nor have they identified any concerns with the work done by all ten resettlement agencies, many of which have done this work since before the Refugee Act, when Congress codified their role into law. But Defendants now assert that they are "actively preparing a request for proposals for a *new*

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING – 4
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

resettlement agency that could provide reception and placement services"—and the solicitation of proposals alone "is expected to take at least 3 months." Status Rep. 5. The process of actually finalizing an agreement will surely take longer, and that does not account for the hiring, training, and building of local partnerships that are necessary to do this hyper-local work. *See* Dkt. # 15-23 ¶¶ 11–13, 56; Dkt. # 15-24 ¶¶ 12–14, 38; Dkt. # 15-25 ¶¶ 17–20. And Defendants do not dispute that refugees are unable to travel to the United States *at all* under Defendants' present guidance that requires assurances of resettlement support. Mot. 3, 8. Nor do they dispute that refugees from whole regions of the world are now cut off from USRAP. *Id.* at 3. With respect to the Processing Termination, the only "case processing and adjudication" that Defendants purport to have completed is USCIS decisions. Status Rep. 2. But that is just one discrete step in the lengthy USRAP process that requires RSC support for approved refugees to actually travel to the United States. Ex. 1 ¶¶ 10–12; *see also* Dkt. # 15-5. And Defendants acknowledge that such processing cannot happen even by those RSCs whose agreements have not been terminated because of the dire and ongoing impact of their unlawful Agency Suspension. Status Rep. 2.

### IV. The USRAP Funding Termination is contrary to law.

Defendants mischaracterize Plaintiffs' argument as stating that the Refugee Act requires "specific refugee contractors of their choosing." Opp'n 5. Not so. Plaintiffs contend that Defendants cannot lawfully suspend the USRAP—including by cutting off the funding needed to operate it—because that action is contrary to law, as this Court has already held. PI Order 41–43.

Defendants' argument that the Secretary of State "can manage the international aspects of the refugee program in whatever way he thinks appropriate," Opp'n 4, at best misses the point. The Secretary's substantial discretion is cabined by the Refugee Act. PI Order 41–43. Presently, the agency cannot continue to meet its statutory obligations and comply with the Court's PI Order without maintaining the cooperative agreements for the RSCs. *See* Ex. 1 ¶¶ 11–13; Status Rep. 2.

As for domestic R&P benefits, Defendants' claim that the Refugee Act does not require *any* resettlement benefits be provided cherry-picks permissive language from Section 1522 to

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING – 5
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

rehash arguments the Court already rejected. Opp'n 5–6; *but see* PI Order 42–43 (statute requires benefits "to the extent of available appropriations"). Section 1522(b)(1)(B), for example, demonstrates that the Executive cannot decline to administer the R&P program, even if it "may" transfer responsibility for administering it. Defendants' attempt to reimagine the Refugee Act as an effort to restrain government spending on refugees directly contradicts the statute. By terminating all funding for R&P services, Defendants "act contrary to law" by "abdicating their [] obligations to fund and administer" a statutorily mandated program. PI Order 43.

Finally, the Funding Termination is unlawful for an independently sufficient reason—it violates the Impoundment Control Act ("ICA"). Mot. 6; *see also New York v. Trump*, No. 1:25-cv-00039, slip op. at 25–27 & n.13 (D.R.I. Mar. 6, 2025), Dkt. # 161 (agencies acted contrary to law by freezing federal funds without observing ICA's procedural and substantive strictures).[4]

## V. Defendants fail to respond to the remaining claims.

Defendants entirely ignore Plaintiffs' separation-of-powers claim, Mot. 7, and they ignore Plaintiffs' caselaw and argument when they dismiss Plaintiffs' *Accardi* claim in a single line. Opp'n 4; *but see* Mot. 7. Notably, Defendants do not dispute that the State Department's public-facing guidance provides that recently arrived refugees *will* receive R&P benefits, *see* Dkt. # 58-1, or that Defendants continue to provide this guidance to refugees—including those already in the United States who are no longer receiving R&P benefits to their detriment.

## VI. New legal authority does not change the analysis.

In response to Defendants' supplemental authority, Dkts. ## 64, 66, Plaintiffs note that, unlike in the *AIDS Vaccine* litigation, they supplemented their pleadings with allegations specific to the USRAP Funding Termination, Suppl. Compl. ¶¶ 208–19, and moved to separately enjoin that termination, *cf. AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 1:25-cv-00400, slip op.

---

[4] Contrary to Defendants' claim, Opp'n 3–4, the Court expressly declined to limit the parties' arguments, *see* Mar. 4 Tr. 19:9–21; *see also* Opp'n 4, 6 (raising new arguments). That Defendants' action likely violates the ICA is fairly encompassed in the pleadings, Suppl. Compl. ¶¶ 246, 248, and referenced in this Court's prior order, PI Order 43 n.6.

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING – 6
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  at 27 (D.D.C. Mar. 10, 2025), Dkt. # 60 (enjoining suspension, but not termination, of contracts
2  where pleadings were limited to suspension). And unlike in *U.S. Conference of Catholic Bishops*
3  *v. Department of State*, Plaintiffs here challenge Defendants' shutdown of the USRAP as
4  effectuated by suspending processing and cutting off funds necessary for program operation—and
5  Ninth Circuit precedent applies. *Cf.* No. 1:25-cv-00465, slip op. at 10–14 (D.D.C. Mar. 11, 2025),
6  Dkt. # 37 (characterizing relief sought as "money due" on agreements and applying D.C. Circuit
7  precedent). That court also relied on the *dissenting* opinion in *Bowen*, *see id.* at 10, rather than the
8  controlling precedent, *see supra* pp. 1–3; *see also AIDS Vaccine*, slip op. at 17–19 (APA challenge
9  to agency action properly before district court where it implicated cooperative agreements because
10 it would be "extraordinary" to conclude otherwise).

**VII.  The remaining factors favor relief and Defendants do not show otherwise.**

12      Defendants do not rebut Plaintiffs' evidence or arguments about the irreparable harm they
13 face specific to the USRAP Funding Termination. Mot. 3, 8. Defendants argue only that, as a
14 definitional matter, the organizational Plaintiffs cannot suffer harm because this is a mere contract
15 dispute. Opp'n 7. But the irreparable harms this Court already recognized, PI Order 53–56, do not
16 turn on legal characterizations; they are a factual reality, and the existential threat to Plaintiffs
17 cannot be repaired with money damages. Mot. 2–3; *see also* Dkt. # 58-2 ¶¶ 10–15; Dkt. # 58-3
18 ¶¶ 10–15; *supra* p. 3 (APA review appropriate where harm is irreparable).

19      As for individual Plaintiffs, Defendants argue only that Plaintiff Ali and other "refugees
20 continue to receive services in the United States under 8 U.S.C. § 1522 by the Office of Refugee
21 Resettlement," and thus they cannot claim any harm from the funding terminations. Opp'n 7-8.
22 But ORR-funded services, which require refugees to meet eligibility requirements and are not
23 available immediately upon arrival, cannot replace the R&P services designed to ensure refugees
24 are housed, fed, and otherwise have their basic needs met from the day they arrive in the United
25 States. *See* Ex. 3 ¶¶ 4–9; Ex. 2. Indeed, even Defendants concede that ORR funding is suspended
26 for four resettlement agencies, Gradison Decl. ¶ 10, which translates to nearly *half* of the national

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING – 7
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

resettlement agency infrastructure, Ex. 3 ¶ 18. The resulting lack of meaningful resettlement support for most refugees and SIV holders is precisely the situation that Congress enacted the Refugee Act to avoid. Dkt. # 26-1 at 11–12, 15–17 (States' amicus brief).

The balance of equities and public interest favor a preliminary injunction for the same reasons they did two weeks ago. PI Order 56–58. Plaintiffs ask the Court to enjoin unlawful agency action to stop irreparable harm and maintain the status quo ante litem—not to "manag[e] the worldwide refugee program," Opp'n 8. Such an order does not improperly interfere with "foreign policy," *id.*, but rather appropriately stops an Executive Branch invasion of Congress's power to legislate and spend in support of a permanent refugee-resettlement system. PI Order 2.

**VIII. Comprehensive relief is necessary to stop the irreparable harm.**

Defendants ignore Plaintiffs' detailed justifications for a nationwide preliminary injunction, including the geographic span of the organizational Plaintiffs and the interconnected pieces of the refugee-processing system. *See* Opp'n 8 (wrongly claiming that "Plaintiffs have provided no justification for how universal relief is needed to remedy their specific harm"); c*f.* Mot. 3, 8; PI Order 59–60. And Defendants cite no caselaw to challenge universal relief, instead merely stating that other organizations are not plaintiffs and that the Court does not have the "complete record of contracting materials related to any entity." Opp'n 8. But both the organizational and the individual Plaintiffs have established that they suffer immediate and irreparable harm because of funding terminations to other organizations, Mot. 3, 8. Unspecified "contracting materials" have no bearing on the scope of relief.

Defendants also challenge nationwide relief by asserting that only Plaintiff Ali alleges harm from the R&P Funding Termination. Opp'n 8. To the contrary, Plaintiffs have set forth a record of devastating harms to the organizational Plaintiffs and the refugees they serve as a result of termination. *See, e.g.*, Mot. 3 (detailing harms and representative standing on behalf of refugee clients). And Defendants fail to contest Plaintiffs' representative standing.

PLS.' REPLY ISO PRELIM. INJ. ON
SUPPL. PLEADING – 8
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dated: March 11, 2025

Linda Evarts*
Deepa Alagesan*
Mevlüde Akay Alp*
Ghita Schwarz*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
levarts@refugeerights.org
dalagesan@refugeerights.org
makayalp@refugeerights.org
gschwarz@refugeerights.org

Melissa Keaney*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 2291
Fair Oaks, California 95628
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
mkeaney@refugeerights.org

Megan McLaughlin Hauptman*
Laurie Ball Cooper*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Avenue NW, Suite 600
Washington, D.C. 20001
Telephone: (516) 732-7116
Facsimile: (516) 324-2267
mhauptman@refugeerights.org
lballcooper@refugeerights.org

By: *s/ Harry H. Schneider, Jr.*
Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792
Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com
EAston@perkinscoie.com

John M. Devaney*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
JDevaney@perkinscoie.com

Joel W. Nomkin*
**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
JNomkin@perkinscoie.com

Nicholas J. Surprise*
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
NSurprise@perkinscoie.com

*Counsel for Plaintiffs*

*\* Admitted pro hac vice*

PLS.' REPLY ISO PRELIM. INJ. ON SUPPL. PLEADING – 9
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000