THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

*Defendants*.

Case No. 2:25-cv-255-JNW

**JOINT STATUS REPORT REGARDING PRELIMINARY INJUNCTION COMPLIANCE**

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**PARTIES' JOINT STATEMENT**

Plaintiffs filed their motion for a preliminary injunction on February 11, 2025, seeking an injunction of Executive Order 14163, which suspended refugee admissions and decisions, the Defendant agencies' implementation of the Executive Order, and the Defendant agencies' suspension of USRAP-related funding. Dkt. No 14. The Court heard argument on the Plaintiffs' motion on February 25, 2025, and granted Plaintiffs' motion in an oral ruling from the bench, which enjoined the implementation of Sections 3(a), (b), and (c), and Section 4 of Executive Order. Dkt. No. 39. On February 28, 2025, the Court issued a written order enjoining Defendants from: (1) enforcing or implementing Executive Order 14163 Section 3(a), (b), (c), and 4 in its entirety; (2) suspending or implementing the suspension of refugee processing, decisions, and admissions; (3) suspending or implementing the suspension of USRAP funds; and (4) withholding reimbursements to resettlement partners for USRAP-related work performed pursuant to cooperative agreements before January 20, 2025. *See* Dkt. No. 45 at 61 ("PI Order").

On February 26, Defendant State Department terminated all USRAP-related cooperative agreements for each of the ten national resettlement agencies, except Plaintiff CWS' cooperative agreement for operation of the Resettlement Support Center ("RSC") in Africa (which remained under a suspension notice). Plaintiffs moved for an emergency status conference, *see* Dkt. No. 43, which the Court held on March 4, 2025. Afterwards, the Court issued an Order (1) granting Plaintiffs leave to file an amended complaint and a second motion for a preliminary injunction; (2) requiring the Defendants to submit a status report on March 10, 2025, detailing their efforts to resume USRAP consistent with the Court's PI Order; and (3) requiring the Parties to submit a joint status report on the steps taken to comply with the Court's PI Order by March 14, 2025. *See* Dkt. No. 51 ("Emergency Hearing Order").

Plaintiffs filed a supplemental pleading, adding allegations to the Complaint regarding the Defendants' termination of USRAP-related funding as well as a supplemental motion for a preliminary injunction against the same on March 11, 2025. *See* Dkt. No. 56 ("Suppl. Compl.");

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dkt. No. 57 at ("Mot. for PI on Suppl. Pleading"). Defendants filed a Status Report on March 10, 2025. Dkt. No. 62 ("Status Rep."). Plaintiffs and Defendants (the Parties) conducted a meet and confer on March 13, 2025 and the Parties now submit this Joint Status Report pursuant to the Court's Emergency Hearing Order.

**PLAINTIFFS' STATEMENT**

Defendants' March 10 Status Report and further reporting below confirm that the government's record of compliance with this Court's PI Order has done anything but restore the status quo *ante litem* in order to stop the irreparable harm to Plaintiffs while a final decision on the merits is pending. To the contrary: Defendants now argue that they're not required to restore anything. They also concede that their actions subsequent to this Court's oral preliminary injunction ruling have made compliance all but impossible. The Court should reject Defendants' attempt to justify their lack of compliance by reference to conditions they themselves created but have failed to adequately undo.

To the extent Defendants have engaged in any meaningful compliance efforts, they have been timed to coincide with compliance reporting. Given this, Plaintiffs have a modest proposal: that the Court require Defendants to report on limited but meaningful categories of compliance every day, as described *infra* and in the attached Proposed Order. Far from putting the Court in the role of administering the USRAP or imposing substantial burdens on Defendants (as Defendants contend), this limited step is necessary to stem the tide of compounding irreparable harms Plaintiffs continue to face.

**I. Defendants have made no arrangements to rebook or book travel for travel-ready refugees.**

At the time the Refugee Ban EO was issued, approximately 12,000 refugees who were already booked to travel to the United States experienced the sudden cancellation of their travel. A further approximately 9,000 refugees were "travel-ready," which means that these individuals had completed all the steps required for travel to be booked and were simply awaiting IOM's

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

scheduling of travel. Aside from reporting to the Court that they are now allowing a small subset of this group—those seeking admission through the refugee follow-to-join (FTJ-R) pathway—to book their own travel to the United States, *see* Dkt No. 62 ("Status Rep.") at 4, Defendants do not appear to have made any progress in arranging or rebooking travel for the nearly 21,000 refugees whose travel was impacted by the suspension. Even as to FTJ cases, while Defendants' report that those with approved applications "*may* receive a document permitting their independent travel," *id.,* Defendants do not appear to be doing anything affirmative to ensure that individuals with approved FTJ-R applications are notified about the availability of this document or the possibility of self-travel.[1]

As to non-FTJ refugees, Defendants report that "IOM's USRAP operations are necessary for refugee travel to the United States, as well as for medical clearance exams to be conducted." *Id.* at 4. But even as Defendants admit that the lack of IOM operational support is entirely a problem of Defendants' own making, they do not make any commitments as to when refugees whose travel was cancelled or booking delayed by the unlawful suspension will see their cases move forward. *Id.* at 2 (explaining their actions have resulted in a "significant deterioration" of USRAP and that the Department of State is unable to "ascertain how long it will take to restore the USRAP to operational status"). In the parties' meet and confer Defendants indicated that travel for principal refugee applicants (I-590 refugees) cannot move forward until IOM resumes operations because Defendants are in the practice of providing I-590 refugees with a letter to permit travel rather than a Boarding Foil, which is what the State Department provides FTJ-Rs. Defendants were unable to explain why the government cannot provide I-590 refugees with a Boarding Foil to enable their self-travel. This leaves resumption of travel for I-590 refugees

---

[1] In the case of Plaintiff Josephine, for example, only after pro bono counsel in a separate mandamus case advocated with government's counsel to grant her access to her travel document, was she finally able to obtain it and book her own travel to the United States Plaintiff Josephine is scheduled to arrive in the United States in the morning on Saturday, March 15. But most FTJ families do not have the benefit of pro bono counsel and may not even be aware of the possibility of self-travel.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

dependent on the indefinite timeline of a third party's (IOM) ability to resume operations after seven weeks of suspended funding and uncertainty.

Defendants' foot-dragging on implementing the Court's injunction leaves individual Plaintiffs and others similarly situated in a continued, dangerous limbo. Not having heard any updates on his case after the Court's injunction, Plaintiff Pacito, contacted RSC Africa on March 9, 2025, but received only an autoreply. His exit visa expires March 25, 2025, after which time he will have to seek another exit visa before he would be permitted to travel. Because Plaintiff Pacito surrendered all of his documentation when travel was booked in his case—as is required for refugee travel—he is also at risk of arrest in Kenya because he does not have proof of having registered as a refugee.

Plaintiff Alyas was scheduled to travel on February 3 with his wife and son before their travel was canceled. Dkt No. 15-18 ¶¶ 2-3, 17-18. The family's medical exams expired on February 6, 2025, but Defendants have not provided any means for Plaintiff Alyas to redo his medical exam, which will prevent the family from traveling to the United States. *See* Status Rep. at 4 (stating that "IOM's USRAP operations are necessary" for refugees to complete the required medical clearance exams). There is no obvious entity to which Plaintiff Alyas can direct a request to be permitted to redo his medical check. In response to an inquiry from a legal representative regarding another case, the U.S. Embassy Baghdad staff reported on March 11, 2025 that "although there is a preliminary injunction[,] we do not have capacity to add or process cases right now." Ball Cooper Decl., Exh. 2. Defendants also have not contacted other individual Plaintiffs who were travel-ready and awaiting booking, including Plaintiff Sara and Plaintiff Marcos' stepdaughter.

Hundreds of organizational plaintiffs' clients were similarly travel-ready and either awaiting travel confirmation or had their booked travel canceled when the Refugee Ban EO was issued. As of February 6, 2025, approximately 1,453 of HIAS's overseas clients were travel-ready. Dkt. No. 15-24 ¶ 47. And as of February 7, 2025, approximately 5,277 of CWS's overseas clients were travel-ready. Dkt. No. 15-23 ¶ 32. LCSNW confirmed that from January 1 to date, it provided

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

assurances to support the resettlement of 423 individuals overseas, of whom 121 individuals had travel booked that was subsequently cancelled. For each of the individuals with travel cancelled, LCSNW had completed its pre-travel preparation, including arranging transportation from the airport and temporary lodging, all of which had to be cancelled. None of these individuals have been notified about their travel being booked or rebooked.

## II. Case processing for all refugees except FTJ refugees is still effectively suspended.

According to Defendants, on March 10, the State Department released a cable directing all diplomatic and consular posts to resume processing for FTJ cases. Status Rep. at 4.[2] But Defendants provide no information or guidance regarding the resumption of processing for all other refugee cases.

The facts show that Defendants have not resumed processing and admission for refugees, as this Court has ordered, given that processing for refugee cases other than FTJ cases is almost wholly dependent on RSCs and IOM. During the March 13 meet and confer, Defendants noted that for non-FTJ cases, the RSC is responsible for processing steps after the I-590 adjudication (i.e., USCIS's decision). Nonetheless, Defendants do not dispute that all RSC and IOM cooperative agreements have either been terminated or are still in the process of restarting and are not yet operational after the prolonged suspension, and that the U.S. Government is not able to process USRAP cases without the RSCs. *See, e.g.*, Ball Cooper Decl., Exh. 2 (explaining the embassy does not have any capacity to process refugee cases).

And even when RSC Africa and IOM's RSCs are operational again, this USRAP infrastructure would still leave out huge portions of refugees in the USRAP pipeline across whole regions of the world. The termination of Plaintiff HIAS's cooperative agreement for operation of its RSC in Austria, for example, means that the 15,000 refugees in their pipeline—vulnerable asylum seekers in Israel, and Iranian religious minorities—are without any means to resume

[2] Plaintiffs also note that notwithstanding this directive, at least one consular post at U.S. Embassy Baghdad, reports being unable to process cases right now. Ball Cooper Decl., Exh. 2.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

processing of their refugee applications. Dkt. No. 68-1 ("Russ Decl.") ¶ 15. During the March 13 meet and confer, Defendants indicated that the Department of State is "exploring" how files for refugees covered by terminated RSCs can be transferred to RSCs that are purportedly going to become operational, but there is "no timeline" for that to occur. In the meantime, the agency does not have a back-up plan. *See, e.g.* Ball Cooper Decl., Exh. 4 (stating in email dated March 11 that the "State Department will continue . . . to implement President Trump's America First policy priorities" and that State does "not have any additional information to share about specific USRAP case processing at this time."); *Id.* Exh. 5 (same).

It is not even clear that all State Department personnel are aware of this Court's injunction. In response to a case inquiry, the State Department's refugee coordinator for Tunis stated on March 11 that "[a]ll cases have been put on hold. I will let you know if there are any updates however I would recommend looking into other options for this case." *Id.*, Exh. 3.

Given the critical role in refugee processing that RSCs play, Plaintiffs are also concerned about Defendants' slow pace of facilitating the reopening of RSCs run by CWS and IOM. More than two weeks after this Court enjoined the USRAP funding suspension, CWS still has not received any funding from PRM. Ball Cooper Decl. Exh. 6 ("Rehberg Decl.") ¶¶ 3-6 (confirming that CWS has submitted reimbursement requests for work performed under its cooperative agreements on February 6, February 24, and March 3, which have not been paid). Without funding, CWS is unable to seek to rehire staff who were terminated as a result of Defendants' actions. *Id.* ¶ 14. Additionally, upon receiving notice on March 7 that RSC Africa was to resume operations, CWS responded the same day with the "concurrence" requested by the government. *Id.* ¶ 7. Notwithstanding their prompt response, CWS still has not received funding or instructions regarding the contours of the supposed resumption of operations. *Id.* ¶ 3-7. In addition, Defendants have not restored RSC Africa's access to the START database tool, the case management system maintained by PRM's Refugee Processing Center, where all case processing functions are documented and information regarding a refugee's readiness and needs for travel are stored. *Id.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

¶ 8. Access has been cut off since on or around January 24. *Id.* Reports and data from START are necessary for RSC staff to resume refugee processing. *Id*.

Although Defendants report that USCIS has resumed adjudicating refugee applications, *see* Status Rep. at 3, refugees are still unable to complete processing because of the many steps refugees must undergo after receiving conditional approval for refugee resettlement (steps which require the involvement of RSCs). Dkt. No. 57 ("Reply in support of Mot. Prelim. Inj. on Supp. Pleading") at 5. For example, after USCIS has approved an application, refugees must complete security checks. *See* Dkt. No. 15-5 ("USRAP Process Flowchart"). Defendants' Status Report indicates the agencies are making changes to this step in the process, but does not provide any timeline by which such changes will be implemented. Status Rep. at 3. During the parties' meet and confer, Defendants indicated that the anticipated security changes will not apply to travel-ready refugees so long as they travel before their security checks expire, however, given that refugees currently have no way to travel to the United States, the risk that they will experience additional delays because they will be required to redo security checks under the new process looms large.

**III. Defendants have taken no actions to restore the USRAP infrastructure.**

Defendants have completely dismantled the USRAP domestic infrastructure, and they are taking no steps to meaningfully restore it. In addition to RSCs, resettlement agencies are integral to ensuring that refugees are able to travel to the United States. *See* Dkt. No. 14 ("Pls.' Mot. Prelim. Inj.") at 6-7; *see also* Russ Decl. ¶ 13. Under Defendants' current guidance, refugees need assurances of resettlement support for admission. Dkt. No. 14 ("Pls.' Mot. Prelim. Inj. on Supp. Pleading") at 3, 8. But Defendants' actions have threatened resettlement agencies' existence and they have not taken steps to mediate the harm: indeed, organizational Plaintiffs are being driven out of business.

CWS has received no funding from PRM since January 14, 2024. Rehberg Decl. ¶ 3. Rather than facilitating long-overdue reimbursements, Defendants have added new layers of bureaucratic

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

barriers to the payment process. On February 6, CWS submitted thirteen (13) drawdown requests for reimbursements for work done prior to January 24 via new certification forms created by PRM. *Id*. ¶ 5. Although PRM acknowledged receipt on February 7, stating that CWS's submissions were a model for the new certification process, and although CWS submitted additional reimbursement requests on February 24 and March 3, CWS has yet to receive any reimbursement for that work that pre-dated the January 24 Agency Funding Suspension. *Id*. CWS also has not received any reimbursement for work performed between January 24 and February 26, when PRM issued Notices of Termination for all CWS cooperative agreements under the USRAP (except for RSC Africa). *Id*. ¶¶ 5-6. Nor has CWS received any funding for RSC-Africa, despite the fact that PRM notified CWS that the RSC Africa cooperative agreement was no longer suspended. *Id*. ¶ 7.

Similarly, Plaintiff LCSNW still has not received any ORR or PRM funding because the national affiliate with the cooperative agreement with the State Department and Department of Health and Human Services, Global Refuge, has had its funding frozen since at least January 20. Defendants have not provided any timeline or information regarding any reimbursement that LCSNW is owed, representing to the Court only that that they will pay in "due course." Status Rep. at 5.

The cash flow crisis resulting from the Defendants actions has left the organizational Plaintiffs with no option but to continue to furlough or lay off hundreds of staff, worsening their existential crisis. In February, CWS initiated layoffs of 600 employees of RSC-Africa and furloughed 858 U.S.-based employees Rehberg Decl. ¶ 13. On Friday, March 14, CWS informed 453 of these U.S.-based employees that they would be laid off, and furloughed an additional 25. *Id.*

Likewise, LCSNW has notified 25 staff members who work within the R&P program that their positions will be eliminated as of April 10, 2025. While LCSNW has been trying to provide R&P services despite the nonpayment for services provided before January 20 and continuing to

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

the present, it can no longer afford to do so. It is now in the process of shutting down its refugee resettlement program, a program that has been operating for almost 50 years.

HIAS also continues to lay off staff. From January 24 to date, HIAS has laid off or given notice to 107 staff members and furloughed 14 in its U.S. headquarters. It has also laid off or given notice to 382 staff members in its international offices. Of these numbers, 268 have been laid off, given notice, or furloughed since February 25, 2025, the date of this Court's preliminary injunction.

With resettlement agencies struggling for survival and the USRAP domestic infrastructure devastated, Defendants have failed to effectively remedy the dire situation they created. After terminating R&P funding for all ten national resettlement agencies, Defendants now assert that they are "actively preparing a request for proposals for a *new* resettlement agency that could provide reception and placement services." Status Rep. at 5 (emphasis added). But the solicitation of proposals alone "is expected to take at least three months." *Id.* Defendants provide no other information or timeline for establishing this new R&P program.

The result of all this devastation is a loss of critical services for refugees across the country. Not only are recently-arrived refugees (still within their first 90 days) not receiving R&P benefits right now, but, contrary to Defendants representations below, many are also facing barriers to accessing longer-term ORR benefits as well. First, Defendants have not remedied the fact that ORR-funded services are inaccessible to large swaths of the country as a result of the suspension of ORR funding for four national refugee resettlement agencies (representing roughly fifty percent of the domestic resettlement infrastructure, which includes Plaintiff LCSNW). *See* Dkt. No. 68-3 ("Smyers Decl.") ¶ 18; Dkt. No. 61-2 ("Gradison Decl.") ¶ 10. For example, Plaintiff Ali has been unable to access ORR benefits, such as Refugee Cash Assistance and Matching Grant, because Catholic Charities of Fort Worth—Texas's replacement designee—is no longer receiving ORR funding. *See* Dkt. No. 68-2 ("Ali Decl.") ¶¶ 6-7; Smyers Decl. ¶ 13. Second, even if an agency is receiving ORR funding (as is currently the case for CWS and HIAS), many positions at

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

resettlement agencies are partially funded by R&P *and* ORR revenue streams, and the diminished workforce limits resettlement agencies' capacity to administer smaller ORR-funded programs. Smyers Decl. ¶ 17.

**IV. Plaintiffs' proposed plan for compliance.**

Two and a half weeks have passed since this Court granted Plaintiffs' motion for preliminary injunction, and Defendants' efforts toward compliance to date have not resulted in effective relief for the irreparable harms Plaintiffs suffer, which compound every day. As Plaintiff Pacito's case demonstrates, the more time passes without meaningful relief, the increasingly remote the prospect of any relief becomes. Defendants do, however, appear to take more definitive and decisive action in connection with their reporting on compliance to this Court. Given this, and the time sensitive need for compliance now, Plaintiffs request that this Court order Defendants to provide daily compliance reports to the Court until such time as such reporting is no longer necessary. To this end, Plaintiffs submit herewith a proposed order requiring Defendants to describe their compliance efforts in certain, limited categories.

**DEFENDANTS' STATEMENT**

As recognized by the Court, the Refugee Act creates a "'permanent and systematic procedure' for refugee admissions" that is "jointly administered by the Department of State (DOS), through its sub-agency the Bureau of Population, Refugees, and Migration (PRM); the Department of Homeland Security (DHS), through its sub-agency U.S. Citizenship and Immigration Services (USCIS); the Department of Health and Human Services (DHHS), through its sub-agency the Office of Refugee Resettlement (ORR); and through partnerships with the United Nations—in particular, the International Organization for Migration (IOM) and United Nations High Commissioner for Refugees (UNHCR); and nonprofit agencies that provide case processing and refugee resettlement services." Dkt. No. 45 at 3. The administration of this program, involving so many agencies and partners, is complex, and at many stages involves the exercise of policy

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

judgment and discretion such that the contours of the program are subject to changes from administration to administration.

As the Court is already aware, in restarting the program following the Court's February 28, 2025 Order, major portions of the program that is operated through cooperative agreements have been terminated. Certain components can be administered by different federal agencies or by contracting with nonprofits, but need not be administered in this way. *See* 8 U.S.C. § 1522(b). And in restarting the program, Defendants appropriately may do so in a manner that reflects administration priorities.

Here, Plaintiffs "narrowly challenge[d] discrete agency actions made over several days or weeks," Dkt. 45 at 33. Plaintiffs, however, now read the Court's subsequent injunction to encompass evaluating the myriad agency decisions that go into restarting the program, and brazenly request that this Court micromanage that process. Plaintiffs' request is inconsistent with the APA and must be rejected. *See* Dkt. 45 at 32 (accepting that court cannot assess "'sweeping argument' . . . [that ageny's] "'on the ground management of" a federal program violate the law) (quoting *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000). The suspension Plaintiffs challenged and that has been enjoined is no longer in effect. And the agency defendants are taking actions to operate a refugee program at this time. That should be the end of the inquiry with respect to compliance with this Court's injunction.

In any event, since filing Defendants' Status Report on March 10, 2025, Dkt. No. 62, Defendants have taken the following additional steps to implement the provisions of the Refugee Act and this Court's ruling, Dkt. No. 45.

## I. Additional measures that have been taken, or planned, to resume USRAP case processing and adjudication overseas.

As noted in Defendants' March 10, 2025 filing, Dkt. No. 62, Defendants, on March 7, 2025, notified the IOM and CWS that they could resume working on refugee programs following confirmation and acknowledgement of restrictions outlined in the Suspension Lift Letters. Dkt.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

No. 62. On March 13, 2025, IOM confirmed receipt of the Notice and took note of the restrictions outlined in the Notice. As of March 13, 2025, the Department of State awaits written acknowledgement from CWS of compliance with the restrictions and executive orders cited in the Suspension Lift Letter, to the extent those orders are not enjoined.

Upon receipt of confirmation and acknowledgement, IOM and CWS may resume operating the RSCs covered by their existing awards. For IOM, this includes RSCs for Eurasia, Latin America, and Middle East and North Africa. The State Department is also exploring the feasibility of transferring files for refugees covered by terminated RSCs to operative RSCs, with the understanding that IOM will continue to facilitate travel and medical screening and may need additional funds to complete this work. For CWS, resumption of operations following the lifting of suspension includes resuming operations in Africa. CWS will be given instructions and provided access to START[3] as needed to accomplish these functions.

As reported in Defendants' March 10 Report, USCIS has resumed rendering decisions on refugee applications. *See* Dkt. No. 62 at 3. Since March 1, 2025, USCIS's International and Refugee Affairs Division (IRAD) has processed 703 Form I-590 refugee applications, approving 529 cases (747 individuals), denying 150 cases (382 individuals), and closing 24 cases (41 individuals). During that window, IRAD also processed 401 Form I-730 (FTJ-R) cases, approving 231 cases (231 individuals), and denying 170 cases (170 individuals). USCIS continues to mail decisions on Form I-730 FTJ-R petitions to petitioners.

In addition, since the March 10 cable directing ALDAC to "resume processing" for FTJ-R beneficiaries, *see* Dkt. No. 62 at 4, the Department of State has resumed FTJ-R processing, and the National Visa Center has also resumed shipping case files to embassies and consulates. The Department of State has also begun communicating directly with beneficiaries whose interviews were cancelled to reschedule those interviews. Furthermore, individuals with approved FTJ-R

[3] START is a customized computer software system that assists the processing of refugees bound for resettlement in the United States.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

applications have received travel documents permitting their independent travel to the United States.

On March 13, 2025, the State Department received written acknowledgement of the Suspension Lift Letter from IOM. The State Department will provide IOM with guidance, following which IOM may resume overseas processing of cases, including facilitating travel. Upon receipt of written acknowledgement from CWS, CWS may also resume processing applications, following guidance from the Department of State.

**II. Additional measures that have been taken, or planned, to facilitate the travel into the United States of individuals who have already been conditionally approved for refugee status by the United States Citizenship and Immigration Services (USCIS), including individual Plaintiffs.**

As noted in Defendants' March 10, 2025 filing, Dkt. No. 62 at 4, Defendants' counsel received a proposed protective order from Plaintiffs' counsel on Sunday, March 9, 2025, following a meet and confer on March, 7, 2025. Defendants have reviewed the order and, following a meet and confer on March 13, 2025, the parties have agreed to a Protective Order governing the disclosure of the identity of the individual Plaintiffs proceeding under pseudonyms as identified in ¶¶ 13-21 of the Complaint. Upon entry of the Protective Order and receipt of the personal identifying information of said plaintiffs, defendant agencies will be able to confirm the status of their individual applications.

Defendants further submit that Plaintiff Josephine* is scheduled to arrive at Washington Dulles International Airport on Saturday, March 15, 2025.

**III. Additional measures that have been taken, or planned, to ensure that arriving refugees will receive resettlement support services upon arrival—in particular, addressing the effect of the Termination Notices on the Government's ability to meet its statutory obligations to provide resettlement support services.**

The Department of State continues to prepare a request for proposals for a new resettlement agency to provide reception and placement benefits aligned with administration policies. The Department of State anticipates entertaining all project proposals submitted in accordance with

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

applicable laws or regulations and expects the solicitation process to take at least three months. Additional information is not available at this time without waiving deliberative process privilege.

The Department of Health and Human Services' (DHHS) Office of Refugee Resettlement (ORR) continues to provide its suite of domestic resettlement support services, including cash and medical assistance, employment assistance, and English language learning and case management, in the vast majority of the country. Refugees can access these resources upon arrival.

**IV. Measures that have been taken, or planned, to reimburse organizational Plaintiffs for expenses already incurred subject to cooperative agreements.**

The Department of State has, to its knowledge, processed all pending payments for HIAS and has disbursed all payments for legitimate expenses. The Department of State is in the process of disbursing payments to CWS and Global Refuge for legitimate expenses and expects payment processes to be completed the week of March 17.

As noted in Defendants' March 10, 2025 filing, ORR has been in communication with Global Refuge and has requested that Global Refuge provide payment information for expenses incurred prior to January 20, 2025. On March 12, 2025, Global Refuge responded that they are working on the request. As of the filing of this status report, Global Refuge has provided some of the requirement payment information and for those payments, DHHS plans to process the payments today.

**V. Response to Plaintiffs' Statement**

Plaintiffs accuse Defendants of "foot-dragging" on implementing the Court's injunction, complaining that (1) Defendants have made no arrangements to rebook or book travel for travel-ready refugees, (2) case processing for all refugees except FTJ refugees is still effectively suspended, and (3) Defendants have taken no actions to restore the USRAP infrastructure. As Defendants acknowledged in their March 10, 2025 Status Report, there has been significant deterioration of functions throughout the USRAP since the refugee resettlement program was suspended, Dkt. No. 62 at 2. Moreover, in resuming refugee processing and admission, the United

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

States will do so by exercising appropriate discretion and consistent with agency priorities. Within this context, Defendants have taken immediate and diligent steps to resume refugee processing consistent with the Court's preliminary injunction order.

As noted *supra*, Defendants notified IOM and CWS on March 7, 2025 that following confirmation and acknowledgement of restrictions, IOM and CWS may immediately resume activities under their respective awards. Defendants did not receive written acknowledgement from IOM until six days later – after business hours on March 13, 2025. As of the filing of this report, Defendants have still not received sufficient written acknowledgement from CWS of compliance with the restrictions and executive orders cited in the Suspension Lift Letter. Cooperation by these partners is required in order to restart the program – including key functions performed by IOM such as making arrangements to rebook or book travel for travel-ready refugees and processing refugee cases. The State Department could explore other contracting arrangements for these functions, but doing so is likely to take much longer than utilizing IOM and CWS.

Defendants' diligence and compliance with the Court's preliminary injunction order is further underscored by the immediate steps Defendants undertook to resume processing and rendering decisions, to the extent practicable. Indeed, as noted *supra*, USCIS undertook the immediate processing and issuance of decisions on Form I-590 refugee applications, Requests for Review, Form I-730 FTJ-R petitions, and Form I-290 Notices of Appeal or Motion relating to Form I-730 FTJ-Rs, *see also* Dkt. No. 62 at 3. The Department of State also resumed processing for beneficiaries of approved FTJ-R relative petitions and resumed processing FTJ-R applications for which the FTJ-R beneficiary has already been interviewed. In other words, the agency has taken all steps possible to allow for the resumption of refugee processing *and admissions*, as evidenced by Plaintiff Josephine's* receipt of the necessary travel document, permitting her to travel to the United States. Plaintiffs downplay Defendants' efforts to facilitate refugee processing and admissions notwithstanding IOM and CWS's delay in returning written acknowledgment,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

complaining this occurred "only after pro bono counsel in a separate mandamus case advocated with government's counsel."

Indeed, Plaintiffs diminish these immediate steps undertaken by the agency to restore refugee processing and admissions, complaining that the "lack of IOM operational support is entirely a problem of Defendants' own making" and that Defendants "do not make any commitments as to when refugees whose travel was cancelled or booking delayed by the unlawful suspension will see their cases move forward." In so doing, Plaintiffs appear to desire the immediate return to the USRAP as it existed prior to January 20, 2025. Notwithstanding practical and logistical difficulties of which Defendants have been forthcoming in acknowledging, Plaintiffs fail to appreciate that Defendants' continued compliance with the Court's injunction does not mean a return to how the program existed prior to January 20, 2025. The State Department and other agencies can change the way they contract for services or terminate cooperative agreements. They may employ new screening protocols as appropriate, along with making many other discretionary decisions in the manner that it operates this complex program. Indeed, as Defendants noted in their March 10 report, the President has issued Executive Order 14161, *Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, which requires the Secretary of State, in consultation with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to formulate new vetting guidelines for refugees consistent with that executive order. Dkt. No. 62 at 3. And, as noted in Defendants' March 10 Status Report, *id.* at 5, the Department of State is exploring alternatives to the traditional reception and replacement program and anticipates a request for proposals for a new resettlement agency. The Court's February 28, 2025 order does not prevent the defendant agencies from restarting the refugee program consistent with the administration's current priorities.

Finally, Plaintiffs complain about delayed reimbursement, but Defendants have been forthcoming from the outset that a second overlapping injunction on foreign aid funding could pose inconsistent obligations on the Government. Dkt. 31 at 25 ("Those are the exact same

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

provisions from which Plaintiffs here seek relief."). Nevertheless, Defendants have diligently worked to thread the needle and comply with the Court's injunction, processing and disbursing payments for legitimate expenses.

**VI. Defendants' Opposition to Plaintiffs' Proposed Order**

Plaintiffs "propose" at the conclusion of their section of this "Joint Status Report" that the Court order Defendants to submit a daily compliance report. Plaintiffs' audacious request would effectively place the Court (or Plaintiffs) in the role of administering the USRAP program. Furthermore, it would divert necessary resources from the very action Plaintiffs demand – resumption of refugee processing and admissions.

Defendants oppose Plaintiffs' request. Should a properly noticed motion be filed, Defendants will respond in due course.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dated: March 14, 2025

By: s/ *Harry H. Schneider, Jr.*

Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792
Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com
EAston@perkinscoie.com

John M. Devaney*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
JDevaney@perkinscoie.com

Joel W. Nomkin*
**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
JNomkin@perkinscoie.com

Nicholas J. Surprise*
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
NSurprise@perkinscoie.com

Deepa Alagesan*
Mevlüde Akay Alp*
Linda Evarts*
Ghita Schwarz*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
dalagesan@refugeerights.org
makayalp@refugeerights.org
levarts@refugeerights.org
gschwarz@refugeerights.org

Melissa Keaney*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 2291
Fair Oaks, California 95628
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
mkeaney@refugeerights.org

Laurie Ball Cooper*
Megan McLaughlin Hauptman*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Avenue NW, Suite 600
Washington, D.C. 20001
Telephone: (516) 732-7116
Facsimile: (516) 324-2267
lballcooper@refugeerights.org
mhauptman@refugeerights.org

*Counsel for Plaintiffs*

* *Admitted pro hac vice*

DATED this 14th day of March, 2025.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW ENSIGN
Deputy Assistant Attorney General

AUGUST FLENTJE
Acting Director

/s/ Nancy K. Canter
NANCY K. CANTER
(CA Bar No. 263198)
Senior Litigation Counsel

JOSEPH MCCARTER
ALEXANDRA YEATTS
Trial Attorneys
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
Washington, DC 20005
Phone: 202-305-7234
Email: nancy.k.canter@usdoj.gov

*Attorneys for Defendants*

JOINT STATUS REPORT – 19
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000