THE HONORABLE JAMAL N. WHITEHEAD

1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8 AT SEATTLE

9 PLAINTIFF PACITO; PLAINTIFF ESTHER;
PLAINTIFF JOSEPHINE; PLAINTIFF SARA;
10 PLAINTIFF ALYAS; PLAINTIFF MARCOS;
PLAINTIFF AHMED; PLAINTIFF RACHEL;
11 PLAINTIFF ALI; HIAS, INC.; CHURCH
WORLD SERVICE, INC.; and LUTHERAN
12 COMMUNITY SERVICES NORTHWEST,

13                    *Plaintiffs*,

14        v.

15
DONALD J. TRUMP, in his official capacity as
16 President of the United States; MARCO RUBIO,
in his official capacity as Secretary of State;
17 KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; ROBERT F.
18 KENNEDY, JR., in his official capacity as
Secretary of Health and Human Services,
19
20                    *Defendants*.

Case No. 2:25-cv-255-JNW

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

NOTE ON MOTION CALENDAR:
APRIL 18, 2025

21

22

23

24

25

26

PLS.' OPP'N TO DEFS.' MOT. TO STAY
PRELIM. INJ. PENDING APPEAL
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

    I.      Defendants are unlikely to succeed on the merits of their appeal........................... 3

    II.     Defendants will suffer no harm in the absence of a stay, while Plaintiffs' irreparable harms continue to grow every day that the injunction does not take effect.................................................................................................. 7

    III.    The public interest supports enforcement of the Court's preliminary-injunction order. ................................................................................... 8

CONCLUSION...................................................................................................... 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## INTRODUCTION

Defendants' second motion to stay a Court order stopping the unlawful dismantling of the U.S. Refugee Admissions Program ("USRAP"), *see* Dkt. No. 79 ("Second PI Order"), must be denied. In addition to rehashing arguments Defendants have already lost, their new motion, *see* Dkt. No. 82 ("Mot."), blatantly misrepresents the Ninth Circuit's stay order of March 25, 2025, *see* Order, *Pacito v. Trump*, No. 25-1313 (9th Cir. Mar. 25, 2025), Dkt. No. 28.1 ("Ninth Circuit Order"), and how it relates to this Court's first preliminary-injunction order. This issue is not merely academic: Defendants are now relying on their erroneous and unsupportable interpretation to prevent the organizational Plaintiffs from resuming their USRAP work under their cooperative agreements, as required by the Court's second preliminary-injunction order. Yesterday, the State Department sent a "Notice of Intent to Reinstate Award" to Plaintiffs Church World Service, Inc. ("CWS") and HIAS, Inc. ("HIAS"), but these notices stated that, "[u]pon reinstatement, the referenced award(s) will be suspended immediately," citing only the Ninth Circuit's stay order as authority for this new funding suspension. Exs. 1–2.[*]

Defendants' motion—and, for that matter, the notices sent to CWS and HIAS—rely on a series of material omissions.

*First*, Defendants ignore that the Ninth Circuit's order discusses *only* the President's power under section 212(f) of the Immigration and Nationality Act, *see* 8 U.S.C. § 1182(f)—and did not evaluate or even mention Plaintiffs' Administrative Procedure Act ("APA") challenge to Defendants' USRAP funding suspension. This is unsurprising given that Defendants informed the Ninth Circuit that Plaintiffs' challenges to the suspension of cooperative agreements were "irrelevant" in light of the post-appeal termination of those agreements, Reply in Support of Emergency Motion Pursuant to Circuit Rule 27-3 at 10–11, *Pacito v. Trump*, No. 25-1313 (9th Cir. Mar. 18, 2025), Dkt. No. 17.1 ("Ninth Circuit Stay Reply"), such that "[a]ny injury Plaintiffs might have suffered . . . no longer exists . . . and [is] therefore no longer redressable," Emergency

---

[*] Exhibits are attached to the declaration of Jonathan P. Hawley, filed concurrently.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  Motion Pursuant to Circuit Rule 27-3 for Stay Pending Appeal at 17, *Pacito v. Trump*, No. 25-

2  1313 (9th Cir. Mar. 8, 2025), Dkt. No. 5.2 ("Ninth Circuit Stay Mot.")—thereby instructing the

3  court to treat the USRAP funding suspension as moot. At any rate, the reach and scope of

4  section 212(f) has no bearing on *agency* decisions to terminate the cooperative agreements with

5  resettlement agencies based on the agency's unexplained interpretation of an executive order.

6  Plaintiffs' new claims challenging the funding terminations are likely to succeed on the merits, as

7  the Court has already held: the abrupt termination of the cooperative agreements violates the APA

8  and undermines the careful scheme Congress created with the Refugee Act of 1980.

9  　　　*Second*, Defendants ignore what the Ninth Circuit *did* order: in expressly declining to stay

10  the processing of refugees conditionally approved for refugee status prior to January 20, 2025, the

11  Ninth Circuit mandated that Defendants continue "refugee processing, decisions, and admissions"

12  for individuals who were conditionally approved for refugee status at the time the Refugee Ban

13  EO was issued. Ninth Circuit Order 1; *see also* Dkt. No. 45 ("First PI Order") at 61. But that

14  continued processing of refugees conditionally approved prior to January 20 cannot be effectuated

15  without resettlement partners, and a stay of this Court's funding-termination injunction would

16  leave whole regions of the world without functioning Resettlement Support Centers ("RSCs"). As

17  Defendants themselves have repeatedly stated, the State Department's abrupt termination of

18  resettlement agencies' cooperative agreements rendered the USRAP incapable of processing and

19  assisting the many thousands of conditionally approved refugees whose applications must proceed

20  under the Ninth Circuit's order. Complying with this Court's second preliminary-injunction order

21  to undo the terminations is presently the only method to implement the Ninth Circuit's mandate

22  and the portions of this Court's first preliminary-injunction order that remain in effect. Defendants'

23  stay motion aims to render the orders of this Court and the Ninth Circuit completely ineffective,

24  and for this reason alone should be denied.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    *Third*, the ongoing and irreparable harm to the individual and organizational Plaintiffs

2   continues unabated, and Defendants have not and cannot articulate any harm to themselves or the

3   public interest if they are obliged to comply with the congressional mandates of the APA.

4        Consistent with the Ninth Circuit's order, this Court's March 24 injunction requires

5   reinstatement of funding to insure that individuals conditionally approved for refugee status prior

6   to January 20, 2025 can proceed through the USRAP. Plaintiffs therefore respectfully request that

7   the Court deny the stay motion.

8                                        **ARGUMENT**

9        "The party requesting a stay bears the burden of showing that the circumstances justify an

10   exercise of [judicial] discretion." *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017)

11   (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). Courts consider four factors in

12   determining whether to exercise their discretion to stay an order pending an appeal: "(1) whether

13   the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether

14   the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

15   substantially injure the other parties interested in the proceeding; and (4) where the public interest

16   lies." *Nken*, 556 U.S. at 434 (cleaned up). Likelihood of success and irreparable injury "are the

17   most critical." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024).

18        Here, no factor favors the issuance of a stay.

19   **I.    Defendants are unlikely to succeed on the merits of their appeal.**

20        Defendants have made no showing that they are likely to succeed in their appeal of

21   Plaintiffs' APA claims. There is no defense available to them for abruptly terminating the

22   resettlement agencies' cooperative agreements under the APA, and they do not attempt one.

23   Instead, they argue that they are likely to succeed because, in their deliberately vague phrasing,

24   the Ninth Circuit stayed this Court's February 28 injunction "as to funding issues." Mot. 3.

25        This argument is disingenuous at best. The Ninth Circuit made no analysis of Plaintiffs'

26   APA claims and did not directly address Defendants' suspension of USRAP funding from January

---

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

24, 2025 through February 26, 2025. *See* Ninth Circuit Order 1–2. In fact, Defendants specifically and repeatedly asked the Ninth Circuit and this Court to find that the suspension of cooperative agreements was "no longer redressable," Ninth Circuit Stay Mot. 17, "no longer in effect," Dkt. No. 75 ("JSR") at 11, and "irrelevant," Ninth Circuit Stay Reply 10–11, precisely because they had terminated the agreements within one day of the Court's first preliminary-injunction ruling from the bench. To omit these repeated representations and claim now that the Ninth Circuit concluded that Defendants were likely to succeed on the funding suspension—when *Defendants themselves* argued that the suspension no longer imposed a redressable injury—reads words into the Ninth Circuit's order that simply aren't there.

Other than alluding to (though not actually pressing) their Tucker Act argument that has been analyzed thoroughly and rejected by this Court twice, *see* Mot. 1; Second PI Order 8–13; First PI Order 38–41, Defendants fail to make any substantive arguments to undermine the Court's conclusion that the funding terminations are properly before it, *see* Second PI Order 9–14. Nor do they grapple with the Court's determination that the APA applies because "the Government's statutory obligation to carry out the USRAP is mandatory" rather than discretionary. *Id.* at 15. They make no attempt to address the Court's conclusion that the terminations likely violate the APA because they are contrary to the Refugee Act and 8 U.S.C. § 1522(b). *Id.* at 18–25. And they fail to analyze or even mention the Court's detailed findings that the State Department's funding terminations, effectuated without any "factual findings or bases" or any evaluation of the resettlement agencies' "reliance interests," were arbitrary and capricious. *Id.* at 25–27.

Defendants' arguments as to the "practical" need to stay the injunction are similarly oblivious to the plain meaning of the Ninth Circuit's stay order. Mot. 2. The Ninth Circuit specifically denied Defendants' motion to stay the February 28 injunction to the extent it applied to refugees who were conditionally approved for refugee status by the U.S. Citizenship and Immigration Services prior to January 20, 2025. *See* Ninth Circuit Order 1. As Defendants conceded to this Court in their status report of March 10, 2025, there has been "significant

1    deterioration of functions throughout the USRAP." Dkt. No. 62 at 2. As further discussed in the

2    parties' joint status report, because of the terminations of the cooperative agreements, the State

3    Department has no currently operative infrastructure to process refugee admissions. *See* JSR 11

4    (stating that "major portions of the [USRAP] that is operated through cooperative agreements have

5    been terminated"); *id.* at 12 (noting that "IOM and CWS *may* resume operating the RSCs" and that

6    the "State Department is also exploring the feasibility of transferring files for refugees covered by

7    terminated RSCs to operative RSCs" (emphasis added)). As of March 14, CWS did not have

8    confirmation that it could resume operations of its RSCs abroad. *See id.* Instead, the State

9    Department is "exploring the feasibility of transferring files for refugees covered by terminated

10   RSCs to operative RSCs, with the understanding that IOM will continue to facilitate travel and

11   medical screening and may need additional funds to complete this work." *Id.* By Defendants' own

12   admission, it will take "at least three months" to arrange for a new resettlement agency "to provide

13   reception and placement benefits aligned with administration policies." *Id*. at 13–14. The

14   difficulties Defendants have identified in complying with the Court's first preliminary injunction

15   and their statutory obligations—difficulties that are entirely of their own making—are no less

16   obstacles to complying with the Ninth Circuit's stay order. Indeed, for this reason, the practical

17   consequences of the Ninth Circuit's order strongly favor *denying* Defendants' stay motion because

18   this Court's second preliminary-injunction order provides the only practicable way for the still-

19   active portions of the earlier February 28 injunction to take effect.

20          It is unclear what meaning Defendants attach to their invocation of 48 C.F.R. § 49.102(d),

21   *see* Mot. 2, which sets forth the need for contracting parties to "consent" to reinstatement of

22   cooperative agreements; nothing in this Court's order bars Defendants from obtaining it, as the

23   organizational Plaintiffs and fellow resettlement agencies are highly unlikely to refuse the full

24   reinstatement of their abruptly terminated agreements. And, as noted above, Defendants have sent

25   new notices to CWS and HIAS, which, in addition to requiring consent to reinstate their

26   agreements, purport to immediately suspend any reinstated agreements. *See* Exs. 1–2.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1       Finally, *Trump v. Hawaii*, 585 U.S. 667 (2018), has no bearing on this Court's order to

2  enjoin the funding terminations because they violate the APA. It was the State Department, *not*

3  the President, that terminated the cooperative agreements, and section 212(f) does not give it or

4  any other federal agency the authority to do so. Indeed, Executive Order 14169, on which

5  Defendants rely as authority for the suspension of funding to the USRAP, did not purport to be

6  issued pursuant to section 212(f). *See* 90 Fed. Reg. 8,619 (Jan. 20, 2025).

7       Ultimately, it was Defendants who urged this Court *and* the Ninth Circuit to treat the

8  injunction of the funding suspensions as moot. Indeed, their own sworn evidence indicated that

9  the "pause" on funding was for purpose of review, and that the funding suspensions ended when

10  Secretary Rubio concluded his review of the relevant grants on February 26, 2025. *See* Dkt. No. 49

11  at 5–6. In response to Plaintiffs' motion for an emergency hearing, Defendants filed declarations

12  from State Department officials averring that "the processing for individually reviewing each

13  outstanding State Department grant and federal assistance award obligation has concluded" and

14  that "Secretary Rubio has now made a final decision with respect to each such award, affirmatively

15  electing to either retain the award or terminate as inconsistent with the national interests and

16  foreign policy of the United States." Dkt. No. 49-1 ¶¶ 1–2; *see also* Dkt. No. 49-2 ¶ 4. One State

17  Department official specifically affirmed that "no USAID obligations [i.e., grants subject to the

18  'pause' directed by Executive Order 14169] will remain in a suspended state." Dkt. No. 49-1 ¶ 1.

19  The Ninth Circuit in turn issued its stay only after this Court enjoined the terminations and—

20  following Defendants' suggestion that the funding suspension no longer presented a redressable

21  injury—did not address the claims related to funding *at all*. Defendants now seize on the Ninth

22  Circuit's understandable silence as a holding that Plaintiffs are unlikely to succeed on their APA

23  claims. Simply put, Defendants can't have it both ways: the Ninth Circuit didn't address the

24  funding suspension because Defendants told that court it couldn't, and Defendants should not be

25  allowed to manufacture a ruling they discouraged the Ninth Circuit from making.

26

1

2

**II.    Defendants will suffer no harm in the absence of a stay, while Plaintiffs' irreparable harms continue to grow every day that the injunction does not take effect.**

Defendants articulate no harm, much less irreparable harm, in their motion, which alone is fatal. Nor can they, as there is no harm to Defendants where the Court's order only "return[s] the nation temporarily to the position it has occupied for many previous years." *Washington*, 847 F.3d at 1168. Defendants are obligated by the Ninth Circuit's stay order to resume processing thousands of conditionally approved refugees and have no practical means to do so without the assistance of refugee-resettlement agencies whose painstakingly built infrastructures and expertise allow for the smooth functioning of the USRAP. Defendants might not *like* this court-ordered obligation, but their displeasure does not constitute irreparable harm.

In contrast, as the Court has recognized, the harms to Plaintiffs continue to cascade. In detailed declarations in support of their supplemental preliminary-injunction motion, Plaintiffs described at length the irreparable harm they face from the funding terminations. *See* Dkt. No. 58-2 ¶¶ 12–14 (documenting layoffs by HIAS of hundreds of employees and inability to assist thousands of clients, including 1,425 who are "'travel-ready' and just awaiting boarding documents and flight plans to enter the United States"); Dkt. No. 58-3 ¶¶ 13–14 (describing planned layoffs at CWS and loss of services to 4,235 refugees in the United States). Since then, these harms have only increased. *See* JSR 2–4 (describing failure to book or re-book travel for travel-ready refugees); *id.* at 7–10 (detailing organizational Plaintiffs' layoffs of hundreds of employees and loss of critical services to refugees nationwide); Dkt. No. 68-1 ¶¶ 11–13 (detailing lack of staff at HIAS's Resettlement Support Center in Austria "to do the core work of processing approved refugee applications to completion"); *id.* ¶¶ 14–25 (describing situation of travel-ready refugees as well as inability of Iranian religious minorities to access available visas to travel to Europe).

PLS.' OPP'N TO DEFS.' MOT. TO STAY
PRELIM. INJ. PENDING APPEAL – 7
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

III.    **The public interest supports enforcement of the Court's preliminary-injunction order.**

Finally, maintaining the Court's second preliminary injunction pending an appeal serves the public interest and allows for the orderly administration of the portions of the Court's first injunction that the Ninth Circuit has not stayed. It is certainly *not* in the public interest to allow Defendants to violate the APA and erect ever-new obstacles to admitting refugees who have been conditionally approved under Congress's carefully constructed scheme. As Plaintiffs have argued—and the Court previously agreed—"the public has an interest in ensuring that the [laws] enacted by their representatives are not imperiled by executive fiat." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 679 (9th Cir. 2021) (cleaned up).

<u>**CONCLUSION**</u>

Defendants have not satisfied their burden to justify the extraordinary relief they seek, and their stay motion should be denied.

\*       \*       \*

I certify that this opposition contains 2,616 words, in compliance with the Local Civil Rules.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   Dated: April 3, 2025

By: *s/ Harry H. Schneider, Jr.*

2

Harry H. Schneider, Jr., WSBA No. 9404

3   Linda Evarts*
Deepa Alagesan*

Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792

4   Mevlüde Akay Alp*
Ghita Schwarz*

Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**

5   **INTERNATIONAL REFUGEE
ASSISTANCE PROJECT**

1201 Third Avenue, Suite 4900
Seattle, Washington 98101

6   One Battery Park Plaza, 33rd Floor
New York, New York 10004

Telephone: (206) 359-8000
Facsimile: (206) 359-9000

7   Telephone: (646) 939-9169
Facsimile: (516) 324-2267

HSchneider@perkinscoie.com
JHawley@perkinscoie.com

8   levarts@refugeerights.org
dalagesan@refugeerights.org

SLankarani@perkinscoie.com
EAston@perkinscoie.com

9   makayalp@refugeerights.org
gschwarz@refugeerights.org

John M. Devaney*

10

**PERKINS COIE LLP**

11  Melissa Keaney*
**INTERNATIONAL REFUGEE
ASSISTANCE PROJECT**

700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200

12  P.O. Box 2291

Facsimile: (202) 654-6211
JDevaney@perkinscoie.com

13  Fair Oaks, California 95628
Telephone: (646) 939-9169

Joel W. Nomkin*

14  Facsimile: (516) 324-2267
mkeaney@refugeerights.org

**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500

15

Phoenix, Arizona 85016

16  Laurie Ball Cooper*
Megan McLaughlin Hauptman*

Telephone: (602) 351-8000
Facsimile: (602) 648-7000

17  **INTERNATIONAL REFUGEE
ASSISTANCE PROJECT**

JNomkin@perkinscoie.com

18  650 Massachusetts Avenue NW, Suite 600
Washington, D.C. 20001

Nicholas J. Surprise*
**PERKINS COIE LLP**

19  Telephone: (516) 732-7116
Facsimile: (516) 324-2267

33 East Main Street, Suite 201
Madison, Wisconsin 53703

20  lballcooper@refugeerights.org
mhauptman@refugeerights.org

Telephone: (608) 663-7460
Facsimile: (608) 663-7499

21

NSurprise@perkinscoie.com

22

*Counsel for Plaintiffs*

23

* *Admitted pro hac vice*

24

25

26