THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

*Defendants*.

Case No. 2:25-cv-255-JNW

**PLAINTIFFS' MOTION TO ENFORCE THE FIRST PRELIMINARY INJUNCTION AND EMERGENCY MOTION FOR SHOW CAUSE HEARING**

NOTE ON MOTION CALENDAR: APRIL 3, 2025

PLS.' MOT. TO ENFORCE PRELIM. INJ.
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT .......................................................................................................................... 5

    I.     Defendants are violating the first preliminary injunction and the Ninth Circuit's stay ruling .......................................................................................... 6

    II.    Further action from the Court is necessary to ensure Defendants' compliance. ................................................................................................. 10

CONCLUSION ..................................................................................................................... 12

PLS.' MOT. TO ENFORCE PRELIM. INJ. – ii
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# INTRODUCTION

Over a month ago, the Court preliminarily enjoined Defendants from enforcing their unlawful suspension of refugee processing, decisions, and admissions. Today, Defendants are continuing that suspension in full, notwithstanding that their requests to stay the preliminary injunction in its entirety pending appeal were denied—first by this Court and then by the Ninth Circuit, which left the injunction intact as applied to individuals who were conditionally approved for refugee status as of January 20, 2025. This is Plaintiffs' second emergency request filed today arising from Defendants' open defiance of this Court's (and the Ninth Circuit's) orders. The Court's immediate intervention is imperative.

Even before their stay requests were denied, Defendants openly conceded that they had taken little concrete action to implement the Court's first preliminary injunction, hiding behind an infrastructure problem of their own making (which is, in turn, the subject of the Court's second preliminary injunction, which also remains in effect). The experiences of the individual Plaintiffs—who have not moved forward in the process *at all*, even though they fall within the scope of the injunction as narrowed by the Ninth Circuit—and the organizational Plaintiffs—who, despite Defendants' representations, have *not* been instructed to resume refugee processing—only confirm Defendants' noncompliance. And it is undisputed that the vast majority of refugees with pre-January 20 conditional approvals, who are still covered by the preliminary injunction following the Ninth Circuit's stay ruling, were neither being processed for possible admission nor able to travel to the United States even if they had already completed all processing steps.

It has become abundantly clear following the Ninth Circuit's stay order that, despite the stay being *denied* in large part, Defendants have opted to undo what little effort they were making to comply with the first preliminary injunction and have reinstated their suspension of refugee processing, decisions, and admissions in full. Defendants remain as unwilling to comply with the Court's first preliminary injunction as they were the day after it issued, and it is clear that, absent further action by the Court, they will continue to violate the injunction and Congress's will.

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 1
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Plaintiffs respectfully request that the Court (1) order Defendants to show cause why it should not find them in violation of the first preliminary injunction as narrowed by the Ninth Circuit and (2) schedule an emergency hearing with Defendant witnesses present. Additionally, Plaintiffs request that the Court enforce the preliminary injunction by ordering Defendants to restore, by date certain, the *status quo ante litem* on January 19, 2025 for refugees conditionally approved as of that date (such that their cases can be processed to completion and they can be admitted to the United States) and to submit daily reports on their compliance.

## **BACKGROUND**

On February 25, 2025, having recognized the devastating and irreparable harm of Defendants' unlawful suspension of the U.S. Refugee Admissions Program ("USRAP"), the Court granted Plaintiffs' motion for a preliminary injunction from the bench, *see* Dkt. No. 39, and three days later issued the first preliminary-injunction written order, *see* Dkt. No. 45 ("PI Order") at 61. The preliminary injunction enjoined all agency Defendants and their "respective officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them who receive actual notice of this Order," from, among other things, "suspending or implementing the suspension of refugee processing, decisions, and admissions." *Id.*[1]

Defendants appealed the first preliminary injunction, *see* Dkt. No. 46, and sought a stay pending appeal from this Court and the Ninth Circuit, *see* Dkt. No. 48; Emergency Motion Pursuant to Circuit Rule 27-3 for Stay Pending Appeal, *Pacito v. Trump*, No. 25-1313 (9th Cir. Mar. 8, 2025), Dkt. No. 5.2. After this Court denied Defendants' request for a stay, *see* Dkt. No. 78, the Ninth Circuit denied a stay in part as to the application of the preliminary injunction to individuals conditionally approved for refugee status before January 20, 2025, noting that those

---

[1] The Court also enjoined Defendants from suspending USRAP funds. PI Order 61. However, on February 26—one day after the Court's ruling at the preliminary-injunction hearing—Defendants terminated nearly all the cooperative agreements for USRAP processing and Resettlement & Placement benefits. *See* Dkt. No. 43. Following these terminations, Plaintiffs supplemented their complaint, *see* Dkt. No. 56, and moved for a second preliminary injunction, *see* Dkt. No. 57, which was granted, *see* Dkt. No. 79, and remains in effect.

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 2
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

conditional approvals remained intact following the Refugee Ban EO, *see* Order, *Pacito v. Trump*, No. 25-1313 (9th Cir. Mar. 25, 2025), Dkt. No. 28.1 ("Stay Order"); *see also* Ex. 4 attach. A (conditional approval notice for Plaintiff Ahmed).[2] Under the narrowed scope of the preliminary injunction currently in effect, Defendants remain enjoined from suspending refugee processing, decisions, and admissions for individuals who had already been conditionally approved for refugee status by U.S. Citizenship and Immigration Services ("USCIS") at the time the Refugee Ban EO was issued—including all the individual refugee Plaintiffs.

Weeks before the Ninth Circuit's stay decision, Defendants had failed to take the steps necessary to resume refugee processing and admissions for nearly all refugees. Following the Court's first preliminary injunction, Defendants reported in their status report and a joint status report that they had restarted processing of follow-to-join ("FTJ") beneficiaries through the State Department, including providing those individuals with travel documentation if they could pay for their own travel outside of the ordinary process. *See* Dkt. No. 62 ("SR") at 4; Dkt. No. 75 ("JSR") at 11–12.[3] But FTJ beneficiaries constituted only 1% of all refugees admitted to the United States in fiscal year 2023. *See* Ex. 1 at 4. At the time of the joint status report, Defendants had not resumed processing and admissions for all other refugees who constitute the vast majority of refugee admissions. JSR 4–5, 15. Defendants conceded that, for principal refugee applicants (i.e., those seeking admission through their own applications), they had done no more than resume decision-making by USCIS. *Id.* at 15. But this single step—that comes midway through the refugee-admission process—does not, without more, allow refugees to travel to safety.

---

[2] Exhibits are attached to the declaration of Megan M. Hauptman, filed concurrently.

[3] The FTJ program allows a refugee already admitted to the United States to petition for his or her spouse and unmarried minor children, who remain abroad, to come to the United States. *See* Dkt. No. 56 ¶¶ 48–50 (citing 8 U.S.C. § 1157(c)(2)(A)). Defendants' self-travel policy allowed Plaintiff Josephine—after extensive pressure and negotiation by her attorney in her refugee case and a separate lawsuit—to obtain travel documents and travel to and be admitted to the United States. For the small subset of FTJ beneficiaries like Josephine who are in theory permitted to organize their own travel, it is not clear if Defendants provided actual notice of the self-travel option, nor whether more than a few had been permitted to organize their own travel.

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 3
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Notably, decision-making by USCIS provides *no benefit* to the refugees covered by the injunction following the Ninth Circuit's stay ruling—the USCIS had, by definition, already conditionally approved those refugees before January 20, 2025. For these applicants, Defendants had not reestablished any way for their applications to move through the remaining steps before admission, nor provided an option for travel and admission. Under Defendants' supposed implementation of the first preliminary injunction, any further processing of these applications would rely on the two remaining resettlement partners with USRAP cooperative agreements that are neither suspended nor terminated—the International Organization of Migration ("IOM") and Plaintiff Church World Service, Inc. ("CWS")—to resume processing activities. *See* SR 2, 4. But this cannot happen, as Defendants have continued to withhold guidance and necessary database access to these entities necessary to conduct this further processing. Ex. 2 ¶¶ 8–17.

Even these minimal compliance efforts are irrelevant now, however, as following the Ninth Circuit's ruling *denying* their requested stay of the preliminary injunction, Defendants appear to have reverted to suspending refugee processing in its entirety. In recent emails to FTJ beneficiaries who were conditionally approved, the State Department disclosed that it has suspended processing of their cases pursuant to the Refugee Ban EO and "consistent with the United States Court of Appeals for the Ninth Circuit's partial stay in *Pacito v. Trump*." Ex. 11.

Notably, at the same time Defendants have suspended all processing of conditionally approved refugee applications in defiance of court orders, they have established a brand-new refugee-processing infrastructure in Pretoria, South Africa—with the specific aim of screening white Afrikaner farmers who were not previously in USRAP (and certainly not conditionally approved prior to January 20). Ex. 3. Reporting indicates that this new refugee processing center is already evaluating more than 8,000 applications of Afrikaners for refugee status. *Id.*

## LEGAL STANDARD

The Court has an "inherent power" to enforce its judgments, *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008), and this general enforcement authority "extends to

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 4
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

the specific context of a mandate issued to a federal agency," *California v. U.S. Dep't of Lab.*, 155 F.Supp.3d 1089, 1095–96 (E.D. Cal. 2016) (cleaned up). The Court can grant a motion to enforce a prior order where, as here, "the prevailing party demonstrates its opponent has not complied with the judgment's terms." *Id.* at 1096 (cleaned up). This authority includes "'the power to construe and interpret the language of the judgment' in order to determine the totality of the relief the Court originally granted, and to which Plaintiff was originally entitled." *Yanofsky v. Dep't of Com.*, No. 1:16-CV-951 (KBJ), 2019 WL 5110502, at *2 (D.D.C. Apr. 25, 2019) (Jackson, J.) (quoting *Heartland Hosp. v. Thompson*, 328 F.Supp.2d 8, 12 (D.D.C. 2004)). In assessing whether an agency has failed to comply, the Court is guided "not only by the text" of the order in question but also "by its relevant opinions." *Anglers Conservation Network v. Ross*, 387 F.Supp.3d 87, 93 (D.D.C. 2019) (citing *City of Cleveland v. U.S. Fed. Power Comm'n*, 561 F.2d 344, 346–47 (D.C. Cir. 1977)).

## ARGUMENT

Defendants are violating the Court's first preliminary injunction, as the unrebutted facts make clear. The preliminary injunction enjoins Defendants from "suspending or implementing the suspension of refugee processing, decisions, and admissions." PI Order 61. But, since February 25, Defendants have continued to suspend refugee processing and admissions of principal refugee applicants in clear violation of the injunction's express terms. And although Defendants had taken steps to resume processing for FTJ beneficiaries in the past weeks, following the Ninth Circuit's stay ruling, Defendants appear to have backtracked and resumed enforcing their unlawful suspension in its entirety. The Court's first preliminary injunction was crystal clear about Defendants' obligations, as was the Ninth Circuit's stay ruling limiting its scope for the pendency of the appeal to those refugees who had already been conditionally approved. But Defendants' foot-dragging, obfuscation, and (now open) defiance make plain that, absent further intervention, Plaintiffs will continue to suffer the significant and compounding irreparable harms that the preliminary injunction is intended to prevent. The Court should order Defendants to show cause

(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

why they should not be found in violation of the first preliminary injunction and order them to restore, within five days of the Court's order, the *status quo ante litem* of refugee processing and admissions.

## I. Defendants are violating the first preliminary injunction and the Ninth Circuit's stay ruling.

Defendants are continuing to suspend processing and admissions for the refugees to whom the Court's first preliminary injunction currently applies, violating this Court's and the Ninth Circuit's orders in the process.

Defendants' noncompliance dates back to the issuance of the preliminary injunction. Since February 25, the individual Plaintiffs—all of whom were conditionally approved as of January 20—have not seen *any* movement in their cases (except for Josephine, an FTJ beneficiary, who was admitted on March 15 prior to the Ninth Circuit's stay ruling, *see supra* note 3). No Plaintiff who is a principal refugee applicant has been able to move their refugee cases forward *at all*—no one has been called for a medical exam, received information about security clearances, been enrolled in cultural orientation, or been scheduled for travel. *See* Ex. 4 ¶¶ 4–8; Ex. 5 ¶¶ 7, 10–11; Ex. 6 ¶¶ 4, 7–9; Ex. 7 ¶¶ 3, 5–8; Ex. 8 ¶¶ 5–11. During this month of delay, Plaintiffs Pacito's and Alyas's medical exams have both expired, and Pacito's exit visa to leave Kenya has expired—which will further delay their cases once Defendants actually resume case processing. Ex. 7 ¶¶ 6–7; Ex. 6 ¶ 8.

This standstill is hardly surprising given that Defendants have not restored the functionality of any of the entities that handle processing following conditional approval—despite representing to the Court that they were doing so. Resettlement Support Centers ("RSCs") are responsible for all processing for principal refugee applicants after the initial USCIS adjudication of their applications, as Defendants acknowledge. *See* JSR 5, 15 (stating that "cooperation by [RSC] partners is required in order to restart the program"). RSCs (1) coordinate security checks; (2) coordinate pre-travel medical exams; (3) organize required cultural orientations; (4) ensure that

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 6
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

refugees are cleared to travel; (5) organize assurances with domestic resettlement agencies; (6) flag cases to IOM as ready to book travel; and (7) prepare the documents necessary for refugees to enter the United States. *See* Dkt. No. 68-1 ¶¶ 7, 12. Each of these steps is required for a conditionally approved refugee to complete processing and be able to travel to and be admitted to the United States. *Id.* ¶¶ 11–12. RSCs, however, cannot currently move refugees through these processing steps, either because they have had their cooperative agreements terminated (and not yet restored under the Court's second preliminary injunction) or because Defendants have not taken action to allow them to resume services.

Contrary to Defendants' representations that they "worked diligently to comply with the Court's orders" and reopen four RSCs, SR 2, RSC Africa (run by Plaintiff CWS) and the IOM-run RSCs remain offline pending further action from Defendants. More than three weeks ago, Defendants claimed that they had already taken the steps necessary for these RSCs to restart and strongly implied that the RSC partners themselves were responsible for any delay. *See* SR 2; JSR 11–13, 15. This was not and is not the case: CWS responded to the State Department *on the same day* it received the agency's communication about reopening RSC Africa but has received no response, despite also subsequently requesting guidance and clarification. Ex. 2 ¶¶ 6–12. In addition to not responding to any of CWS's inquiries, Defendants have failed to provide CWS with instructions or access to the required database necessary to continue processing cases. *Id.* ¶¶ 13–17. Similarly, although Defendants have represented that IOM could "immediately resume activities," JSR 16; *see also id.* at 12 (claiming that IOM-run RSCs for Eurasia, Latin America, and Middle East and North Africa are not suspended and may resume operations), these three IOM-run RSCs continue to inform refugees that USRAP processing is suspended as a result of the Refugee Ban EO. *See* Exs. 4 attach. 2, 9–10.[4] Defendants' failure to take steps necessary to reopen

---

[4] All other RSCs (Turkey, Austria, and Asia) were terminated as part of the February 26 cooperative agreement terminations and are unable to process refugee cases. *See* Dkt. No. 68-1 ¶¶ 8–9, 11–12, 17–21; Dkt. No. 49-1 ¶ 5, Mar. 4 Hr'g Tr. 8:3–5, 10:18–21. Pursuant to the Court's second preliminary-injunction order, *see* Dkt. No. 79, Defendants are separately required to

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 7
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

these RSCs is all the more incredible because they represented to the Court that they were "exploring the feasibility" of relying on "operative RSCs" to process refugee cases "covered by terminated RSCs." JSR 12.

During this period, Defendants continued to prevent the vast majority of refugees who had completed all required processing from traveling to a port of entry to be admitted. *See* JSR 3–4; *but see id.* at 15 (claiming that Defendants have restarted refugee admissions). Travel to a U.S. port of entry with a government-issued travel document is a necessary precondition for refugees to seek admission. JSR 3. Defendants acknowledge that the entity that is "necessary for refugee travel"—namely, IOM—is not processing or coordinating travel documents, even as Defendants claim they are no longer suspending cooperative agreements with IOM. SR 4. And Defendants have not created an independent travel option for principal refugee applicants, as they reported facilitating for FTJ beneficiaries. JSR 3–4.

Principal refugee applicants thus continued to be subject to a suspension of refugee admissions by Defendants. As of January 20, Plaintiffs Pacito, Alyas, and Sara and Plaintiff Marcos's stepdaughter were all travel-ready or already had travel booked. None of these Plaintiffs have been able to travel or receive any information about travel since the Court's first preliminary injunction order. *See* Ex. 8 ¶¶ 5–6, 8; Ex. 7 ¶¶ 5–8; Ex. 6 ¶¶ 5–7, 9; Ex. 5 ¶¶ 9, 11. And they are not alone. At the time the Refugee Ban EO was issued, approximately 22,000 refugees were either already booked for travel to the United States or were travel-ready, meaning they had completed all the steps required for travel to be booked and were only awaiting IOM's scheduling of travel. Ex. 2 ¶ 18. And the conditionally approved population to whom the preliminary injunction applies following the Ninth Circuit's stay ruling is larger still, encompassing all refugees who received a notice of eligibility for resettlement after an interview with USCIS, conditionally approving them

---

reinstate the terminated cooperative agreements for these RSCs, *id.* at 36; nonetheless, Defendants have advised that they intend to resuspend funding for these RSCs immediately upon reinstatement of the agreements, *see* Dkt. No. 87.

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 8
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  for refugee status pending successful completion of remaining clearance steps. *See* Dkt. No. 15-5
2  (USRAP flowchart); *see also* Ex. 4 ¶ 3, attach. A; Ex. 8 ¶ 3; Ex. 6 ¶ 3; Ex. 5 ¶ 3. There is no
3  indication that any of these individuals—except a tiny subset of FTJ beneficiaries—have been able
4  to travel and be admitted in the month since the first preliminary injunction issued.

5        Defendants' prior feints at compliance are beside the point now that they have resumed
6  suspending refugee processing, decisions, and admissions in full. It is simply inconceivable how
7  they could justify again suspending refugee processing given the Ninth Circuit's ruling denying
8  their requested stay in large part; after all, this Court's first preliminary injunction expressly
9  enjoined the agency Defendants and their "respective officers, agents, servants, employees, and
10 attorneys, and any person in active concert or participation with them" from "suspending or
11 implementing the suspension of refugee processing, decisions, and admissions," PI Order 61, and
12 the Ninth Circuit denied a stay as it applies to "individuals who were conditionally approved for
13 refugee status by the [USCIS] before January 20, 2025," Stay Order 1. And now, Defendants have
14 not only failed to restart processing for conditionally approved principal refugee applicants, but
15 also resuspended processing for conditionally approved FTJ beneficiaries. *See* Ex. 11.

16       Defendants' disregard for this Court's and the Ninth Circuit's orders stands in stark contrast
17 to their actions to create from whole cloth a new, parallel refugee program for their preferred
18 population. Their representation to the Court that they are unable to timely resume refugee
19 processing and admissions—due to a self-created infrastructure vacuum—is belied by these
20 developments. Defendants have *chosen* not to restore refugee processing for already approved
21 refugees, instead expending their time and resources creating a new infrastructure in South Africa
22 to process refugee applications for a select population of white Afrikaners. *See* Ex. 3. Put plainly,
23 diverting resources for refugee processing to Afrikaners while doing nothing to move forward the
24 cases of the thousands of already approved refugees does not satisfy this Court's preliminary
25 injunction as refined by the Ninth Circuit. This unjustified reallocation of resources leaves the
26 refugees covered by the Court's first preliminary injunction (such as Plaintiffs), who were the

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 9
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

furthest along in USRAP processing as of January 20, stranded in limbo, with their medical and security checks at risk of expiring and delays consequently compounding.[5]

## II. Further action from the Court is necessary to ensure Defendants' compliance.

The suspension of refugee case processing and admissions that the Court enjoined more than a month ago is continuing at Defendants' direction, and it will continue absent further intervention from the Court.[6] For more than a month, Defendants stalled implementation and misrepresented to the Court what steps they had taken to resume the USRAP—with the undisputed result that processing and admissions for the vast majority of conditionally approved refugees remain suspended with no indication of resumption. And now, Defendants are openly suspending all refugee processing, decisions, and admissions for conditionally approved refugees, based on the unjustified and inexplicable belief that the Court's and the Ninth Circuit's orders do not require them to do anything at all. *See* Ex. 11. In light of Defendants' established, ongoing, and willful noncompliance, Plaintiffs request the following actions.

*First*, the Court should order Defendants to show cause why it should not conclude that they are in violation of the first preliminary injunction as narrowed by the Ninth Circuit and hold an emergency hearing at the earliest available opportunity. An order to show cause "allows the requesting party to bring the opposing party to court to answer its demands." *CJCLive, Inc. v. Braziel*, No. 2:19-CV-1593-KJD-BNJ, 2020 WL 4274707, at *2 (D. Nev. July 24, 2020) (citing *Morehouse v. Pac. Hardware & Steel Co.*, 177 F. 337, 339 (9th Cir. 1910)). Given Defendants' month-plus record of intransigence, failure to provide any indication that they would come into compliance with the injunction on any defined timeline, and express intent to continue to defy the

---

[5] Defendants' disparate treatment raises significant equal-protection concerns, and Plaintiffs reserve their right to further supplement or amend their complaint in light of those or other concerns.

[6] Plaintiffs have repeatedly expressed concerns to Defendants about their failure to promptly implement the Court's first preliminary injunction and have requested information about the case progress of each of the individual Plaintiffs—with no substantive response. *See, e.g.*, Hauptman Decl. ¶ 2.

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 10
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

preliminary injunction, Plaintiffs request that the Court require agency representatives to attend the hearing to facilitate the prompt disclosure of information regarding Defendants' noncompliance.

*Second*, the Court should issue an order directing Defendants to restore, within five days of the Court's order, the *status quo ante litem* of refugee processing and admissions as of January 19, 2025 for those individuals who were conditionally approved for refugee status. *See* PI Order 20 (purpose of preliminary injunction "is to maintain the status quo ante litem—that is, the last uncontested status before the controversy erupted—pending a decision on the merits" (cleaned up)). The Court's first preliminary injunction order enjoined Defendants from suspending or implementing the suspension of refugee processing, decisions, and admissions—but Defendants' actions (and inactions) since have left that suspension in effect as to the very population presently subject to the protections of the preliminary injunction. There is no indication that Defendants will resume the processing of those cases, which would have continued had Defendants not unlawfully suspended the refugee program (and without the cascading delays caused by Defendants' intransigence). Defendants have not made good-faith efforts to comply with the first preliminary-injunction order and cannot unilaterally defer their lifting of a suspension that the Court has held unlawful until some undefined future date or state of affairs. They must (again) be ordered to cease their unlawful suspension and restore the *status quo ante litem*—that is, resume processing conditionally approved refugees such that they can travel and be admitted to the United States, as they would have been prior to January 20, 2025. Setting a specific deadline for compliance is appropriate where, as here, Defendants have not complied and do not intend to comply with the Court's preliminary injunction. *See Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 705 (D.C. Cir. 1974) (courts have authority to set "enforceable deadlines" to compel performance); *N.Y. Legal Assistance Grp. v. BIA*, 987 F.3d 207, 225 (2d Cir. 2021) (similar).

*Third*, at minimum, additional and regular reporting is imperative for the Court to ensure that Defendants come into compliance with the first preliminary injunction (as it remains in effect

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 11
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

following the Ninth Circuit's ruling) without further delay. As described above, Defendants had not yet taken any action to resume processing most refugee cases in the month following the injunction, and they are now reverting to a full suspension of all refugee processing and admissions. Plaintiffs request that the Court order Defendants to provide the information outlined in their proposed order on a daily basis until the Court finds such reporting is no longer necessary.

## **CONCLUSION**

Plaintiffs respectfully request that the Court order Defendants to show cause why the Court should not conclude that they are in violation of the first preliminary injunction, schedule an emergency hearing at the earliest available opportunity, and enforce its first preliminary-injunction order as it applies to individuals who were conditionally approved for refugee status before January 20, 2025.

\*    \*    \*

The undersigned certifies that this motion contains 4,199 words, in compliance with the Local Civil Rules.

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 12
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dated: April 3, 2025

Deepa Alagesan*
Mevlüde Akay Alp*
Linda Evarts*
Ghita Schwarz*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
dalagesan@refugeerights.org
makayalp@refugeerights.org
levarts@refugeerights.org
gschwarz@refugeerights.org

Melissa Keaney*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 2291
Fair Oaks, California 95628
Telephone: (646) 939-9169
mkeaney@refugeerights.org

Laurie Ball Cooper*
Megan Hauptman*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Ave. NW
Washington, D.C. 20001
Telephone: (646) 939-9169
lballcooper@refugeerights.org
mhauptman@refugeerights.org

By: s/ *Harry H. Schneider, Jr.*
Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792
Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com
EAston@perkinscoie.com

John M. Devaney*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
JDevaney@perkinscoie.com

Joel W. Nomkin*
**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
JNomkin@perkinscoie.com

Nicholas J. Surprise*
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
NSurprise@perkinscoie.com

*Counsel for Plaintiffs*

* *Admitted pro hac vice*

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 13
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000