District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, MARCO RUBIO, in his official capacity as Secretary of State, KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

*Defendants*.

CASE NO. 2:25-cv-00255

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION

NOTE ON MOTION CALENDAR:
April 11, 2025

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

# INTRODUCTION

Plaintiffs seek extraordinary, sweeping class-wide relief to invalidate or enjoin discretionary and system-wide decisions regarding the United States Refugee Admissions Program (USRAP). In doing so, they propose multiple subclasses, each challenging complex individualized determinations—from alleged "delays" to "funding terminations" and "reception & placement" processing—yet all under a single umbrella of class-wide treatment. But the proposed subclasses fail nearly every prerequisite under Rule 23.

*First*, the proposed classes sweep in individuals who have not suffered any cognizable injury, are not in the same procedural posture, or remain mid-process and thus lack ripe or exhausted claims. *Second*, there is no single "common policy" that uniformly applies to each proposed class member. They differ in factual posture (*e.g.*, family-based refugee petitions versus post-arrival reception and placement (R&P) benefits) and legal basis (statutory, regulatory, or constitutional claims), undermining commonality and typicality. *Third*, the relief sought would require a host of individualized reviews or "mini-trials," rendering Rule 23(b)(2) certification wholly improper. Class-wide injunctive or declaratory relief cannot remedy a wide variety of case-specific issues.

Lastly, fundamental justiciability principles—jurisdiction, standing, mootness, exhaustion, and the separation-of-powers constraints—further demonstrate that class certification is both unnecessary and inappropriate. For these reasons, the Court should deny Plaintiffs' Motion for Class Certification in its entirety. Crucially, this Court should decline to certify a class of Plaintiffs whose funding claims are beyond this Court's jurisdiction and instead belong in the Court of Federal Claims. Indeed, the Supreme Court recently reaffirmed that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money.' ... Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.' 28 U. S. C. §1491(a)(1).…" *Department of Education v. California*, 604 U. S. ____, 3 (April 4, 2025). This Court should also hold off on any class certification while the

| | |
|---|---|
| OPP'N FOR CLASS CERTIFICATION<br>No. 2:25-cv-00255-JNW | U.S. Department of Justice<br>Civil Division, Office of Immigration Litigation<br>P.O. Box 878, Ben Franklin Station<br>Washington, DC 20044<br>(202) 305-7234 |

government's appeals are pending in the Ninth Circuit, which will provide substantial clarity relating to the issues before this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   USRAP Background

The Court is familiar with the background of this action, but to summarize: the USRAP was established by the Refugee Act of 1980, which amended the Immigration and Nationality Act. The USRAP is jointly administered by the Department of State (DOS), the Department of Homeland Security (DHS), and the Department of Health and Human Services (DHHS), with support from the United Nations and nonprofit agencies. Dkt. No. 45 at 3-4.

DOS administers aspects of the USRAP through "cooperative agreements" with resettlement agencies under the Federal Grant and Cooperative Agreement Act (Grants Act), which distinguishes cooperative agreements from procurement contracts. These agreements are subject to regulations promulgated by the Office of Management and Budget (OMB), including 2 C.F.R. § 200.340, which governs termination of agreements.

### II.   The Termination and Realignment of the USRAP Funding

On January 20, 2025, hours after taking office, President Trump issued Executive Order 14163, "Realigning the United States Refugee Admissions Program." *See* Executive Order No. 14163, 90 Fed. Reg. 8459 (Jan. 20, 2025) (USRAP EO). The Agency Defendants immediately halted refugee processing and paused funding to resettlement agencies like Plaintiffs Church World Services, Inc. (CWS) and HIAS, Inc. For the reasons explained from the bench and in a later written order, the Court enjoined these actions. Dkt. Nos. 42 (Hr'g Tr.) at 37; 45 (Order) at 61.

One day after the Court's oral ruling, DOS began terminating its cooperative agreements with the resettlement agencies. Between February 26 and 27, DOS terminated every resettlement agency cooperative agreement to provide R&P services for the USRAP. *See* Dkt. No. 49-2 ¶¶ 4–5. DOS also terminated all but one of the cooperative agreements to

OPP'N FOR CLASS CERTIFICATION            U.S. Department of Justice
No. 2:25-cv-00255-JNW                    Civil Division, Office of Immigration Litigation
                                         P.O. Box 878, Ben Franklin Station
                                         Washington, DC 20044
                                         (202) 305-7234

2

provide USRAP processing support abroad.[1] *See* Dkt. No. 58-2 ¶¶ 5–9 (HIAS Decl.); 58-3 ¶¶ 5–9 (CWS Decl.). The Court has referred to the termination of these two types of cooperative agreements as the "Funding Termination." Dkt No. 79 at 5. To implement the Funding Termination, DOS issued notices ("Termination Notice") to each funding partner terminating the award. *See* Dkt. Nos. 44-3; 44-5; 44-6. The Funding Termination resulted from reviews that DOS began on February 21, 2025, at Secretary Rubio's direction. Dkt. No. 49-2 ¶ 3. The Government acknowledges that this has caused a "significant deterioration of functions throughout the USRAP," Dkt. No. 62 at 3.

### III. Plaintiffs' Move for Class Certification, Proposing Three Subclasses and Eight Class Representatives

On March 14, 2025, Plaintiffs moved for class certification. Dkt. No. 71 (Plaintiffs' Motion). Plaintiffs seek to certify three broad subclasses that would encompass "many thousands" of diverse individuals. Mot. at 1. *First*, Plaintiffs propose the Refugee and Family Member Subclass, which would include essentially all persons who are or will be processed for admission to the United States as refugees, as well as anyone who has applied or will apply to bring a family member to the United States as a refugee. Mot. at 1. This subclass effectively seeks to cover the entire population of current and future refugee applicants and their families, regardless of individual circumstances or the reasons underlying their cases.

---

[1] While not terminated, CWS's contract remains suspended until its "concurrence" with Executive Order 14151, "Ending Radical and Wasteful Government DEI Programs and Preferencing"; Executive Order 14148, "Initial Recissions of Harmful Executive Orders and Actions"; and Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Dkt. No. 62 at 3. All three Executive Orders are subject to ongoing litigation, and courts have enjoined portions of them. *See, e.g., Nat'l Assoc. of Diversity Officers in Higher Educ. v. Trump*, Case No. 1:25-cv-00333-ABA (D. Md. Fed. 2, 2025); *Am. Assoc. of Colleges for Tchr. Educ. v. Carter*, Case No. 1:25-cv-00702-JRR (D. Md. Mar. 3, 2025); *N. Alaska Envtl. Ctr. v. Trump*, Case No. 3:25-cv-00038 (D. Alaska Feb. 19, 2025); *Jones v. Trump*, Case No. 1:25-cv-00401 (D.D.C. Feb. 10, 2025); *Kingdom v. Trump*, Case No. 1:25-cv-00691 (D.D.C. Mar. 7, 2025); *Doctors for Am. v. Office of Pers. Mgmt. et al.*, Case No. 1:25-cv-00322 (D.D.C. Feb. 2, 2025).

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

3

*Second*, Plaintiffs propose the R&P Subclass, encompassing all refugees and Special Immigrant Visa (SIV) holders in their first ninety-days post-resettlement. *Id.* This subclass would cover a vast number of individuals across the country who have recently arrived and are navigating the early stages of resettlement, regardless of their specific needs or experiences. *Third*, the Follow-to-Join (FTJ) Petitioner Subclass would encompass U.S.-based petitioners admitted as refugees who have filed or will file a petition for family members to be admitted through the follow-to-join refugee process. *Id.* At bottom, however, each subclass challenges decisions that arise from individualized, fact-specific determinations, rely on discretionary agency judgments, and implicate programmatic realignments entrusted to the Executive Branch.

### IV.    Plaintiffs' Eight Proposed Class Representatives

Plaintiffs name eight individuals seeking relief on behalf of themselves and proposed subclasses. Mot. at 5. Plaintiffs Pacito, Esther, Josephine, Sara, Alyas, Marcos, Ahmed, and Ali collectively claim that Defendants' actions—namely suspending refugee processing and admissions and halting USRAP-related funding—interfere with their ability to be resettled, reunite with family members, or receive post-resettlement services. *See id.*; Dkt. No. 15-14 (Pacito Decl.); Dkt. No. 15-15 (Esther Decl.); Dkt. No. 15-16 (Josephine Decl.); Dkt. No. 15-17 (Sara Decl.); Dkt. No. 15-18 (Alyas Decl.); Dkt. No. 15-19 (Marcos Decl.); Dkt. No. 15-20 (Ali Decl.); Dkt. No. 15-21 (Ahmed Decl.).

#### A. Refugee and Family Member Subclass Representatives

Plaintiffs Pacito, Sara, Alyas, Marcos, Josephine, and Ahmed seek to represent the Refugee and Family Member Subclass. Mot. at 5. Besides Josephine, who now resides in the United States, these plaintiffs currently reside abroad and seek resettlement to the United States through the USRAP. *Id.* (citations omitted). Plaintiff Marcos also filed a petition for his stepdaughter to apply for admission as a refugee. *Id.* (citations omitted). In their declarations, these representatives describe how Defendants' actions halted the processing of their refugee applications, leading to various alleged personal hardships including financial challenges, inability to work, and continued claimed risks in their current countries of

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

4

residence. *Id.* (citations omitted). Critically, Josephine has resettled in the United States. As such, her claims are moot and she cannot represent the subclass.

### B. FTJ Petitioner Subclass Representatives

Plaintiff Esther seeks to represent the FTJ Petitioner Subclass. *Id.* Esther, a U.S. citizen and former refugee residing in Idaho, petitioned for the reunification with her daughter, Plaintiff Josephine, through the FTJ program. Mot. at 5-6. At the time of filing, Plaintiff Esther claimed her petition remained unprocessed, leaving her separated from her daughter, who continued to face discrimination and violence in South Africa. *Id.* (citation omitted). Critically, Esther's petition has now been processed. As such, her claims are moot and she cannot represent the subclass, leaving the subclass without a proposed representative.

### C. Reception and Placement (R&P) Subclass Representatives

Plaintiff Ali seeks to represent the R&P Subclass, comprised of recently resettled refugees who require post-arrival support and services. Mot. at 6. Plaintiff Ali, who arrived in the United States in January 2025, alleges that Defendants' reduction in funding negatively impacted his access to reception and placement assistance. Mot. at 6 (citing Ali Decl. ¶ 24).

## ARGUMENT

Class certification is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To justify this exception, the burden falls squarely on Plaintiffs to establish that their proposed subclasses satisfy the stringent requirements of Rule 23(a) and at least one prong of Rule 23(b). This mandate exits because class certification imposes significant legal and practical consequences, including binding absent members and altering the procedural posture of the case. Thus, Plaintiffs must demonstrate that each of their proposed subclasses meet the fundamental prerequisites of numerosity, commonality, typicality, and adequacy. Moreover, where, as here, Plaintiffs seek injunctive or declaratory relief under

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

5

Rule 23(b)(2), they must establish that the requested relief is appropriate for every member of the proposed class.

Here, Plaintiffs fall short of meeting Rule 23's mandate. Their proposed subclasses—encompassing virtually all persons processed as refugees, all newly resettled refugees and SIV holders, and all U.S.-based petitioners for follow-to-join refugee cases—are sweeping in scope and breathtakingly broad. These subclasses fail to account for the vast differences among putative class members, including differences in procedural posture, the status of individual petitions or applications, the basis for alleged delays or terminations, and the specific factual circumstances that affect each case. Plaintiffs effectively seek certification of an unwieldy conglomerate of disparate claims, masking highly individualized and context-specific issues behind the veneer of a single, uniform class.

The proposed subclasses fail to establish commonality or typicality because they do not present a single, cohesive issue capable of resolution "in one stroke." *Wal-Mart*, 564 U.S. at 350. Instead, the claims of each subclass member hinge on distinct, fact-specific determinations—ranging from processing delays attributed to security checks, to individualized determinations about eligibility for R&P benefits, to differing impacts of agency funding adjustments. The legal theories Plaintiffs advance are similarly fragmented, combining allegations related to policy shifts, funding suspensions, terminations, or reallocations, and procedural delays without demonstrating how these disparate issues align to form a unified legal question.

Furthermore, Plaintiffs' claims do not meet Rule 23(b)(2)'s requirement that the challenged government actions or inactions affect all class members in a uniform way. For example, some refugees are awaiting travel arrangements, while others are navigating post-arrival services, and still others are petitioning for family reunification under follow-to-join processes. There is no one-size-fits-all solution that addresses these varied situations.

Finally, justiciability issues preclude certification. The proposed classes include individuals at various stages of the refugee admissions process, some of whom may not have completed required steps or exhausted administrative remedies. Others may have received

| OPP'N FOR CLASS CERTIFICATION | U.S. Department of Justice |
|---|---|
| No. 2:25-cv-00255-JNW | Civil Division, Office of Immigration Litigation |
| | P.O. Box 878, Ben Franklin Station |
| | Washington, DC 20044 |
| | (202) 305-7234 |

final decisions or experienced changes in status, rendering their claims moot. Plaintiffs' overly broad and ill-defined subclasses thus fail to present a live case or controversy appropriate for class-wide relief.  For these reasons, Plaintiffs' motion for class certification should be denied.

## V.  Legal Standard

Under Rule 23, a party seeking class certification must satisfy all four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b). *Wal-Mart*, 564 U.S. at 350. Plaintiffs must prove that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). To meet Rule 23(b)(2), Plaintiffs must demonstrate that Defendants acted or refused to act on grounds that apply generally to the class, making final injunctive relief appropriate for the class as a whole.

## VI.  Plaintiffs Fail to Satisfy Rule 23(a).

### A.  The proposed class fails to satisfy Rule 23(a)'s commonality requirement and typicality requirements.

The commonality and typicality requirements of Rule 23(a)(2) and (a)(3) are interrelated and often merge. *Wal-Mart*, 564 U.S. at 350. "Both [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff[s'] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

Here, Plaintiffs cannot establish either requirement. Plaintiffs cannot demonstrate commonality because they do not challenge one systemwide practice or policy applied to all proposed class members, and they cannot identify a harm common to all proposed class members. Plaintiffs cannot demonstrate typicality because the proposed class representatives' legal claims, interests, and circumstances are not typical of one another or each putative class member. Commonality and typicality cannot be established where, as here, Plaintiffs propose an amorphous class comprised of individuals subject to a variety of

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

7

agency programs and processes, who present a myriad of divergent factual circumstances. Fed. R. Civ. P. 23(a)(2), (3).

### a. Plaintiffs Fail to Establish Commonality

As the Supreme Court noted in *Wal-Mart*, Rule 23(a)(2) requires a plaintiff to establish that "there are questions of law or fact common to the class." 564 U.S. at 349. But this language is "easy to misread, since any competently crafted complaint literally raises common questions." *Id*. As such, "[i]t is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 350. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and "[t]heir claims must depend upon a common contention." *Id*. at 349 (emphasis added). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. Accordingly, Plaintiffs must demonstrate that the factual differences in the proposed class are immaterial, and that the questions can be answered (and any violation remedied) the same way for every member of the class. *See id*. Critically, a proposed class that includes members who are not entitled to relief—or that would lead to the court granting relief to individuals who remain unharmed by Defendants' allegedly harmful conduct—cannot meet the Rule 23 commonality requirements.

Here, Plaintiffs argue that commonality exists when "Plaintiffs challenge Defendants' unlawful policies, rather than their specific application to any individual subclass member." Mot. at 14. They posit that this sweeping challenge of various agency actions allows for a finding of commonality despite individual factual differences among proposed class and subclass members. *Id*. Plaintiffs' commonality argument is, however, fatally flawed in two ways. First, Plaintiffs do not and cannot point to a universal policy that applies to all proposed class members, and, resultantly, proposed class members do not share a common legal issue or alleged harm. That Plaintiffs divide their proposed class into subclasses does not cure this. Second, Plaintiffs do not and cannot demonstrate that the factual differences amongst proposed class members are immaterial such that a common answer survives.

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

8

Here, Plaintiffs raise questions that are "easy to misread" as common, asking whether the challenged agency actions violate the Refugee Act, the APA, and the Constitution. Mot. at 15. Yet, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id*. at 350 (quoting *General Tele. Co. of Southwest. v. Falcon*, 457 U.S. 147, 157 (1982)); *Willis v City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019). Plaintiffs cannot satisfy their burden by merely alleging that all proposed class members have "suffered a violation of the same provision of law." *Walmart*, 564 U.S. at 350. Instead, a finding of commonality requires identifying "a single policy or practice which the proposed class members are all subject to." *Willis*, 954 F.3d at 885 (citing *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014)); *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) (explaining that class certification requires the court "to look at whether class members seek uniform relief from a practice applicable to all of them"). "These policies and practices are the 'glue' that holds together the putative class ... either each of the policies and practices is unlawful as to *every* [proposed member] or it is not." *Willis*, 954 F.3d at 885. (emphasis added). Here, Plaintiffs do not even attempt to assert that they are challenging a single policy, instead pointing to various agency actions, including the suspension of refugee processing and admissions and the halting of USRAP-related funding. Mot. at 15.

Even the proposed subclasses consist of individuals with vastly different circumstances, experiences, and alleged harms. For example, while the Refugee and Family Member Subclass plaintiffs generally allege that the termination of funding directly impacted them, the specific nature and immediacy of their claimed harms vary significantly. *See* Dkt. Nos. 15-14, 15-17, 15-18, 15-19, 15-21, 15-22. One Plaintiff alleges ongoing personal safety concerns, while others focus on economic difficulties or delays in processing. *Id*.

The FTJ and Refugee and Family Member Subclasses encompass individuals who are at different stages of the immigration process, with differing circumstances that affect their claims. Mot. at 9. The FTJ Subclass also lacks commonality because each petitioner's situation differs. Some petitioners have already completed parts of the process, while others have not yet filed. Additionally, family members' living situations vary widely—some are in

OPP'N FOR CLASS CERTIFICATION  
No. 2:25-cv-00255-JNW

U.S. Department of Justice  
Civil Division, Office of Immigration Litigation  
P.O. Box 878, Ben Franklin Station  
Washington, DC 20044  
(202) 305-7234

9

stable environments, while others allege they are experiencing urgent and unsafe conditions. Mot. at 10.

Additionally, the R&P Subclass includes recently arrived refugees who vary significantly in their post-resettlement support needs, geographic locations, and access to alternative assistance. For instance, some individuals may encounter gaps in support due to the closure of a local partner agency, while others may remain unaffected due to full coverage from private sponsorships or alternative NGOs.

Further, Plaintiffs' proposed subclasses include individuals who have not been impacted—let alone harmed—in any way by any of the challenged agency actions. The subclasses sweep in all potential future applicants for admission to the U.S. as a refugee, future FTJ petitioners, and future newly-resettled refugees. *See* Mot. at 6, 14-15 outlining proposed subclasses to include individuals who are "or will be processed for admission," who are "or will be [] resettled in the United States," and who have "or will have" their applications and petitions impacted.

### b. Plaintiffs Cannot Satisfy Typicality

The Rule 23(a)(3) typicality requirement seeks to determine "whether the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 350; *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Here, Plaintiffs cannot demonstrate typicality because the proposed class representatives' legal claims, interests, and circumstances are not typical of one another or each putative class member.

For instance, the circumstances described by Plaintiff Esther indicate that Plaintiff Josephine's situation and related hardships were not necessarily linked to any single challenged agency action or procedural change by Defendants. *See generally* Esther Decl.; Josephine Decl. This causation question suggests proposed class representative Esther's legal claim and alleged harms may not be typical of those of proposed subclass members. And Plaintiff Ali's declaration does not make clear whether he sought and received alternative services or how his specific circumstances align with the experiences of other proposed

OPP'N FOR CLASS CERTIFICATION  
No. 2:25-cv-00255-JNW  

U.S. Department of Justice  
Civil Division, Office of Immigration Litigation  
P.O. Box 878, Ben Franklin Station  
Washington, DC 20044  
(202) 305-7234  

10

members of the R&P subclass. *See generally* Ali Decl. Critically, the lack of detail outlining Ali's circumstances prevents this court from determining whether his situation is representative of the entire proposed subclass, which includes diverse individuals with varying levels of need and support.

### B. Plaintiffs are not Adequate Class Representatives

The final hurdle interposed by Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id*.

Here, given the disparate circumstances within each proposed subclass, it is unclear how any particular named Plaintiff can speak for the entire putative group or weigh all interests equally. And, as noted above, Plaintiffs Josephine and Esther's claims are moot, as Esther's application was processed and Josephine has now resettled in the United States. Dkt. No. 75 at 13. Given that they are no longer members of their proposed subclasses as defined, there can be no realistic suggestion that they maintain an interest aligned with those of the proposed subclass members or that they will continue prosecuting the action vigorously on behalf of their respective subclasses or the proposed class as a whole. *See E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 404-05 (1977) (finding that if a named plaintiff is not a member of the class he purports to represent, he cannot be expected to fairly and adequately represent the interests of the class). Indeed, "[m]ost courts have adopted a strict, bright-line rule that mooting of a named plaintiff's claim *before* class certification requires dismissal of the entire action as moot if an adequate substitute cannot intervene." *Newberg and Rubenstein on Class Actions* § 2.9 at 3 (6th ed. 2024 update)

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

11

(emphasis added); see e.g., *Kuahulu v. Emps. Ins. of Wausau*, 557 F.2d 1334 (9th Cir. 1977) (finding, where plaintiff's claim became moot before class was certified, entire appeal would be dismissed as moot).

The only way the Court could certify the FTJ subclass despite the mootness of Plaintiffs Esther and Josephine's claims is if their claims were "inherently transitory," such that it was likely, at the time of filing, that their claims would moot out before the Court could certify the class. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011). But the FTJ application process often takes years and, as such, the claims of FTJ petitioners and their relatives cannot be labeled as inherently transitory. If anything, that, at the time of filing, Josephine was a plane ticket away from resettling in the U.S. serves to underscore that Joesphine and Esther are not similarly situated to proposed subclass members and are, therefore, unable to adequately represent their proposed subclasses.

### VII.  Plaintiffs Fail to Satisfy Rule 23(b)(2)

Even if class proponents can satisfy Rule 23(a), they still must show that their claims come within one of the three types of class actions permitted by Rule 23(b)(1), (2) or (3). *See* Fed. R. Civ. P. 23(b).  Rule 23(b)(2) requires Plaintiffs to demonstrate that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, Plaintiffs have not demonstrated that the alleged harms arise from a uniform policy applied across the proposed class. They do not allege that any one action impacts every proposed class member in the same way—or even at all.  Instead, the harms alleged often result from case-specific factors, such as the availability of local resources, individual processing delays, or differences in resettlement assistance. Therefore, any injunctive relief would require individualized analysis, precluding a one-size-fits-all solution. And, critically, the proposed class includes individuals who have not yet filed petitions for

| OPP'N FOR CLASS CERTIFICATION | U.S. Department of Justice |
|---|---|
| No. 2:25-cv-00255-JNW | Civil Division, Office of Immigration Litigation |
| | P.O. Box 878, Ben Franklin Station |
| | Washington, DC 20044 |
| | (202) 305-7234 |

family members or applications for immigrant visas, making it speculative whether they will ever be impacted by the challenged actions, let alone harmed.

Rule 23(b)(2) demands a certain cohesiveness among proposed class members with respect to their injuries and the relief sought, the absence of which can preclude certification. *Shook v. Bd. Of Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008); *Maldonado v. Ochsner Clinic Found.,* 493 F.3d 521, 524 (5th Cir.2007); *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1121 (8th Cir.2005); *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 143 (3d Cir.1998); see also Newberg § 4.11.  Here, Plaintiffs' claims and the relief sought lack the requisite cohesiveness because the proposed subclasses consist of individuals experiencing disparate harms and circumstances. Mot. at 11. The proposed subclasses include individuals at different stages of the refugee process, such as newly arrived refugees seeking R&P support, U.S.-based petitioners for family reunification, and overseas refugees awaiting processing. These varying situations necessitate distinct and individualized remedies, not a single, class-wide injunction. For example, addressing R&P funding challenges would not resolve the issues faced by overseas applicants stalled in security processing. Mot. at 14. Because the merits of each class member's claim hinge on factors unique to them, this Court cannot enter an injunction or declaratory relief so that the challenged conduct "can be enjoined or declared unlawful only as to *all* of the class members or as to *none* of them." *Wal-Mart*, 564 U.S. at 360.

Plaintiffs' attempt to use Rule 23(b)(2) to seek sweeping, class-wide injunctive relief fails because the proposed remedies do not uniformly address the diverse and individualized issues presented. Accordingly, Rule 23(b)(2) certification is inappropriate.

## CONCLUSION

Plaintiffs' proposed subclasses each present diverse, individualized claims that hinge on discretionary decisions and multifaceted resource allocations. Rule 23 does not permit transforming these complex discretionary determinations into a monolithic class action. Plaintiffs fail several criterion under Rule 23(a), and they cannot meet Rule 23(b)(2)'s

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

requirement for uniform injunctive relief. For all these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification in its entirety.

DATED: April 4, 2025    Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

AUGUST FLENTJE
Acting Director

*/s/ Nancy K. Canter*
NANCY K. CANTER
Senior Litigation Counsel

LINDSAY ZIMLIKI
JOSEPH MCCARTER
ALEXANDRA YEATTS
Trial Attorneys
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
Washington, DC 20005
Phone: 202-305-7234
Email: nancy.k.canter@usdoj.gov

*Attorneys for Defendants*

I certify that this memorandum contains 4,421 words, in compliance with the Local Rules.

OPP'N FOR CLASS CERTIFICATION
No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7234

14