THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER;
PLAINTIFF JOSEPHINE; PLAINTIFF SARA;
PLAINTIFF ALYAS; PLAINTIFF MARCOS;
PLAINTIFF AHMED; PLAINTIFF RACHEL;
PLAINTIFF ALI; HIAS, INC.; CHURCH
WORLD SERVICE, INC.; and LUTHERAN
COMMUNITY SERVICES NORTHWEST,

     *Plaintiffs*,

   v.

DONALD J. TRUMP, in his official capacity as
President of the United States; MARCO RUBIO,
in his official capacity as Secretary of State;
KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; ROBERT F.
KENNEDY, JR., in his official capacity as
Secretary of Health and Human Services,

     *Defendants*.

Case No. 2:25-cv-255-JNW

**JOINT STATUS REPORT
PROPOSING SCHEDULE FOR
PRELIMINARY INJUNCTION
COMPLIANCE**

JOINT STATUS REPORT
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## <u>TABLE OF CONTENTS</u>

2     INTRODUCTION ................................................................................................ 1

3     PLAINTIFFS' SUBMISSION............................................................................. 1

4          I.     Specific compliance measures that Defendants must undertake by specific
                  deadlines, showing "due regard for the feasibility of any compliance
5                 timelines" .............................................................................................. 2

6                 A.     Measures to be taken within one calendar day of the Court's order........... 2

7                 B.     Measures to be taken within seven calendar days of the Court's
                         order .............................................................................................. 4
8
                  C.     Measures to be taken within fourteen calendar days of the Court's
9                        order .............................................................................................. 9

10                D.     Measures to be taken within twenty-one days of the Court's order ......... 11

11         II.    Proposed reporting schedule for Defendants to provide updates to the
                  Court on their compliance efforts ....................................................... 12
12
           III.   Specific obstacles to compliance ....................................................... 12
13
           IV.    Plaintiffs' response to Defendants' proposal ...................................... 13
14
15    DEFENDANTS' SUBMISSION......................................................................... 15

16         I.     Specific compliance measures that Defendants must undertake to restore
                  "refugee processing, decisions, and admissions" for individuals who were
17                conditionally approved for refugee status by USCIS before January 20,
                  2025............................................................................................... 15

18         II.    Specific deadlines for each compliance measure.................................. 16

19         III.   Reporting schedule for Defendants to provide updates to the Court on their
                  compliance efforts............................................................................... 17
20
           IV.    Specific obstacles to compliance identified by either party................... 17
21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## INTRODUCTION

Pursuant to the Court's order of April 11, 2025, *see* Dkt. No. 108, the parties submit the following proposals to bring Defendants into compliance with the Court's preliminary-injunction orders as they apply to individuals who were conditionally approved for refugee status by USCIS before January 20, 2025.[1]

## PLAINTIFFS' SUBMISSION

Plaintiffs' proposal outlines the specific compliance measures that Defendants must undertake to restore "refugee processing, decisions, and admissions" for individuals who were conditionally approved for refugee status by United States Citizenship and Immigration Services (USCIS) before January 20, 2025 under this Court's and the Ninth Circuit's orders, Dkt. No. 108 at 6, as well as proposed reporting to ensure that the Court can assess Defendants' compliance. Defendants do not assert that any specific compliance measure or timeline Plaintiffs propose is infeasible. Instead, they claim that, because the population of refugees covered by the Court's orders cannot all be admitted by the end of the fiscal year, they are justified in continuing their indefinite suspension of the U.S. Refugee Admissions Program (USRAP) and related funding, other than to process and admit a group of 65 "high value" Afghan refugees in the following six weeks. This proposal does not come close to discharging Defendants' obligations under the Court's multiple orders requiring Defendants to "[i]mmediately cease implementation of any suspension of" and "[i]mmediately resume processing, travel, admissions, and domestic

---

[1] For purposes of the forthcoming order, the parties agree that for principal refugee applicants (also referred to as I-590 refugees), "conditionally approved for refugee status by the United States Citizenship and Immigration Services before January 20, 2025," *Pacito v. Trump*, No. 25-1313 (9th Cir. Mar. 25, 2025), Dkt. No. 28.1, means any applicant for whom, prior to January 20, 2025, USCIS granted conditional approval for refugee status, including by generating and/or transmitting a "Notice of Eligibility for Resettlement" or equivalent document. In the case of follow-to-join refugee applicants (also referred to as I-730 refugees), "conditionally approved" means successful completion of USCIS domestic processing (either the petition was approved and forwarded to the Department of State, or, the petition was sent to a USCIS international field office overseas). The parties were unable to reach agreement on the remaining issues.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    resettlement support for individuals who were conditionally approved for refugee status by USCIS

2    before January 20, 2025." Dkt. No. 108 at 7. In light of Defendants' ongoing failure to comply or

3    take serious steps to comply with the Court's orders, and their failure to raise any specific

4    objections to Plaintiffs' proposed compliance schedule, Plaintiffs respectfully request that the

5    Court order Defendants to follow the schedule outlined below.

6    **I.    Specific compliance measures that Defendants must undertake by specific deadlines, showing "due regard for the feasibility of any compliance timelines"**

7    Plaintiffs propose the following measures to restore the pre-January 20 status quo for

8    conditionally approved refugees. The proposed measures are organized with staggered deadlines,

9    and measures that are within Defendants' exclusive control and can be achieved relatively few

10   steps are proposed to be completed first. The plan builds on these initial steps to allow for a

11   restoration of the full U.S. Refugee Admissions Program (USRAP) system for the purpose of

12   admitting refugees who were conditionally approved as of January 20, 2025, keeping in mind that

13   the vast majority of conditionally approved refugees have no path to immediate admission at this

14   time because USRAP travel processes are not yet operational and Defendants have not permitted

15   any alternative. This proposal relies on organizational Plaintiffs' extensive insight into the USRAP

16   process and ecosystem as it operated prior to Defendants' unlawful suspension and is designed to

17   restore the status quo of refugee processing, decisions, and admissions on a reasonable timeline.

18   **A.    Measures to be taken within one calendar day of the Court's order**

19   There are a number of steps that Defendants can take immediately because they rely only

20   on action by government entities and do not require involvement of third-party resettlement

21   partners. If Defendants have not already taken these measures at the time the Court's order issues,

22   Plaintiffs request that Defendants be ordered to complete them within the first calendar day after

23   the order.

24

25

26

JOINT STATUS REPORT – 2
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1       *1.      Provide update regarding status of each individual plaintiff's case and*

2              *identify any remaining processing steps before the plaintiff can travel to*

3              *the United States*

4       Plaintiffs asked Defendants directly for this information on March 17 and March 27, 2025,

5       and the Court has entered a stipulated protective order to facilitate the transfer of this information.

6       *See* Dkt. No. 102. Despite this, Defendants have not provided any information about individual

7       Plaintiffs other than Josephine. The individual Plaintiffs have not seen any movement in their cases

8       nor have they received any substantive communications from Defendants or resettlement partners.

9       *See* Dkt. Nos. 90-4 ¶¶ 6–8, 90-5 ¶ 11, 90-6 ¶ 7, 90-7 ¶¶ 5–6, 8, 90-8 ¶¶ 8–11. There are no obstacles

10      to Defendants providing this information to Plaintiffs, and it should be provided posthaste.

11      *2.      Instruct agency offices/staff, including U.S. embassies, to resume*

12             *processing of refugee cases conditionally approved before January 20*

13      Notwithstanding the Court's April 11 order to immediately resume refugee processing, as

14      of Monday, April 14, 2025, U.S. embassies, which conduct case processing for follow-to-join

15      beneficiaries with conditional approval, were still advising applicants that processing of their

16      applications was suspended due to the Ninth Circuit's stay ruling. Defendants must advise their

17      offices and posts that Defendants and their agents are enjoined from implementing any suspension

18      of processing, travel, admissions, and domestic resettlement support for the refugees covered by

19      the first preliminary injunction and they must resume those activities.

20      *3.      Confirm that the suspension on admission of refugees has been lifted*

21             *such that there is no impediment to follow-to-join refugees with travel*

22             *documents traveling to the United States and seeking admission*

23      Under the Court's orders, Defendants may not continue to suspend refugee admissions.

24      There are a number of follow-to-join beneficiaries (also referred to herein as I-730 refugees) who

25      have completed the application process and are currently in possession of travel documentation

26      that would permit them to travel to the United States to seek admission. Between March 25 and

JOINT STATUS REPORT – 3
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

the Court's April 11 order, however, Defendants were advising these applicants that they would not be admitted upon arrival at a U.S. port of entry due to the Ninth Circuit's stay ruling. Defendants must confirm to the Court that the suspension on admissions has been lifted so that these refugees can travel to the United States to seek admission without undue risk of detention or being turned back upon arrival.

4. ***Issue notices lifting the suspension of USRAP-related cooperative agreements for the operation of Resettlement Support Centers (RSCs), including, but not limited to Plaintiffs CWS and HIAS***

Pursuant to this Court's April 11 order, Defendants must cease implementation of any suspension of funding to USRAP partner agencies as necessary to facilitate compliance with the Court's orders. Defendants must advise resettlement partners that their cooperative agreements to operate RSCs are no longer suspended as a first step to resuming application processing, travel, and admissions for individuals who were conditionally approved before January 20, 2025.

5. ***Reinstate resettlement partner access to databases and other technology necessary to facilitate refugee application processing (including but not limited to START, FileCloud, and RPC Help Desk (ITSM))***

Before resettlement partners, including the organizational Plaintiffs, may resume their refugee processing activities, they require access to the relevant databases and technology. Defendants must reinstate this access as a first step to USRAP agency partners coming back online to facilitate compliance with the Court's first preliminary injunction. They must also ensure that funding is restored for any necessary databases and technology maintained by resettlement partners, such as the IRIS beneficiary data repository.

**B.    Measures to be taken within seven calendar days of the Court's order**

After Defendants have taken the initial measures outlined above, all of which are within their exclusive control, they will need to begin to rehabilitate the USRAP processing and resettlement ecosystem that has deteriorated as a result of their unlawful actions. Within the first

JOINT STATUS REPORT – 4
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

week of the Court's Order, Defendants can feasibly restore prior funding streams and provide necessary guidance to resettlement partners to begin to rebuild the USRAP infrastructure and ensure that conditionally approved cases can begin to move through the processing pipeline. In addition, Defendants must work amongst themselves to extend or redo medical and security clearances for refugees who were travel-ready prior to January 20, as well as implement independent travel and medical exam options for refugees who are in a position to take advantage of such an option.

> *1.     Restore funding to resettlement partners necessary to ensure that the cases of refugees with conditional approval as of January 20, 2025 in all geographic regions can be processed up to and including travel to the United States for admission*

By this point, under Plaintiffs' proposal, the cooperative agreements between the State Department and USRAP resettlement partners to operate RSCs will have been reinstated and any suspensions will have been lifted. To ensure that the case processing required by the Court's preliminary injunction may resume, Defendants must ensure that the partners can seek and obtain reimbursements for the work they will undertake or have undertaken under these cooperative agreements.

> *2.     Provide guidance on resumption of services to RSCs to resume processing of conditionally approved refugee cases*

To resume operations, RSCs must receive confirmation that they should restart processing, as well as specific guidance from the State Department's Bureau of Population, Refugees, and Migration (PRM) about the scope of services they are to restore and which cases to prioritize. Further, RSCs require regular communications with PRM about the progress and status of refugee cases to keep cases moving through the pipeline.

JOINT STATUS REPORT – 5
(No. 2:25-cv-255-JNW)

1

*3.    Restart production of travel documents to allow for independent travel for follow-to-join refugees and ensure that all travel-ready follow-to-join cases receive direct notification that an independent travel option is available*

Prior to the Ninth Circuit's stay order, U.S. embassies had issued travel documents to some I-730 refugees to allow for independent travel. This independent travel process was in place up until recently and can be resumed quickly. This measure is not intended to replace the International Organization for Migration (IOM) facilitated travel option, which many refugees rely on to afford travel, but rather to provide a travel option that can be implemented ahead of restoration of IOM-facilitated travel as it is handled entirely through government entities and does not rely on third-party participation. Defendants must advise all follow-to-join refugees who are ready for travel that they have the option of organizing their travel at their own expense, and if they decide to do so, Defendants will provide them with travel documents that will enable them to board planes and travel to the United States.

*4.    For refugees who have already completed medical clearances, provide for an extension of validity for medical clearances of at least three months and notify refugees and RSCs of this extension*

As was the case for Plaintiffs Pacito and Alyas, some refugees' medical clearances expired during the period that Defendants failed to implement the Court's first preliminary injunction, and having to repeat medical checks would compound the delays such applicants face in having their applications processed to completion and travel. As Defendants have done in other cases, they should extend the validity period of medical clearances by at least three months for all individuals who completed their medical clearances prior to Defendants' unlawful suspension. Defendants must ensure that refugees and RSCs are aware of this extension of medical clearances so that these cases are timely scheduled for travel.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1
2

    **5.**    *For all cases where any security clearance expired between Jan. 20, 2025 to present, facilitate expedited treatment from security vetting agencies*

3
4
5
6

Other refugees may have had required security clearances expire during Defendants' suspension of refugee processing and travel. Defendants should be required to facilitate expedited new security clearances, to ensure that their delayed compliance does not exacerbate the irreparable harm suffered by these applicants.

7
8

    **6.**    *Permit refugees to facilitate their own medical exams and advise refugees and panel physicians of this policy change*

9
10
11
12
13
14
15
16
17

Many conditionally approved refugees are awaiting completion of their required medical exams, which are generally coordinated and funded by IOM. Following the Court's first preliminary injunction, Defendants briefly allowed for I-730 refugees to facilitate and pay for their own medical exams, without IOM involvement. To ensure that refugees do not face further undue delays in completing processing, Defendants should implement a similar option for any conditionally approved refugee to be able to coordinate their own medical exams. Defendants must advise all conditionally approved refugees pending medical exams of this policy, as well as all panel physicians who are approved to conduct these exams, to avoid any confusion or delays in implementation.

18
19

    **7.**    *For individual Plaintiffs, complete the following steps in each Plaintiff's case:*

20
21
22

    *a.*    *Plaintiff Pacito: Extend the validity period of current medical clearances or facilitate expedited medical exams; and facilitate re-issuance of exit visas to be able to leave Kenya*

23
24

    *b.*    *Plaintiff Alyas: Extend the validity period of current medical clearances or facilitate expedited medical exams*

25
26

    *c.*    *Plaintiff Marcos: Schedule travel for stepdaughter or provide stepdaughter with travel documents to permit independent travel*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*(as has been arranged for Central American Minors program applicants in the past)*

  **d.**   *Plaintiff Sara: Schedule travel for family or provide them with travel documents to permit independent travel*

  **e.**   *Plaintiff Ahmed: Meet and confer with Plaintiffs following provision of information above and file updated proposed order with Court*

  As discussed in Plaintiffs' motion to enforce, none of the individual principal refugee applicants has seen any movement in their case following the Court's first preliminary injunction. After providing information about the remaining steps in each individual plaintiff's case, Defendants must resume processing their applications for admission. For all individual Plaintiffs, if additional barriers to travel arise, Defendants must immediately communicate these issues to Plaintiffs' counsel and work to resolve them.

  **8.**   *Issue notices lifting the suspension of USRAP-related cooperative agreements for the provision of post-arrival reception & placement (R&P) services, including but not limited to Plaintiffs CWS and HIAS*

  Pursuant to the Court's April 11 order, Defendants must cease implementation of any suspension of USRAP funding, as necessary to implement the Court's preliminary injunctions. Dkt. No. 108 at 7. To the extent that Defendants have not already lifted all the suspensions of cooperative agreements for post-arrival R&P services, Defendants must lift these suspensions of funding and any stop-work orders within the first week of the Court's order, and must resume funding so that resettlement partners may resume providing statutorily mandated post-arrival R&P services or ensuring that the private individuals, like Plaintiff Rachel, who have committed to financially supporting the refugees they sponsor upon arrival, can in fact provide such assistance.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**C.      Measures to be taken within fourteen calendar days of the Court's order**

In the second week following the Court's order, Defendants should work to restore IOM-coordinated travel and medical exams, to allow the bulk of conditionally approved refugees to move towards completing processing, scheduling travel, and seeking admission. If there continue to be barriers to refugee travel and admissions, Defendants must also work with RSCs to arrange for an independent travel option for principal refugee applicants (also referred to herein as I-590 applicants) who do not require financial or logistical assistance to arrange their travel, while undertaking appropriate coordination to ensure that domestic resettlement support is provided to these individuals upon admission.

**1.      *Resume option of IOM-facilitated and funded travel***

Defendants must restore the ability of principal refugee applicants, the vast majority of the individuals covered by the Court's first preliminary injunction, to travel to the United States to be admitted. The State Department never terminated its USRAP-related cooperative agreements with IOM, the entity that facilitates refugee travel, and the suspensions of those agreements were purportedly lifted as of March 13, 2025. Dkt. No. 75 at 12. Defendants have confirmed herein that IOM is again operational; thus, they should be in a position to have resumed IOM-facilitated refugee travel within 14 days of this Court's order.

**2.      *Resume option of IOM-facilitated and funded medical exams***

Principal refugee applicants are also dependent on IOM to facilitate the medical exams required for admission, so this functionality must be restored in order to continue the processing of conditionally approved refugee cases.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

3.    *Coordinate with RSCs to permit the option of independent travel for individuals who do not require financial assistance to facilitate their travel, including ensuring that necessary coordination takes place with relevant domestic resettlement agencies to provide resettlement support to these refugees upon arrival*

Although Defendants have arranged for follow-to-join beneficiaries to independently travel (that is, obtain travel documents from the State Department and pay for and arrange their own flights), there is no such option for the vast majority of refugees covered by the Court's first preliminary injunction. Should this continue to be a barrier to admitting refugees to the United States because IOM-facilitated travel has not resumed in full, Defendants must be required to coordinate with RSCs to allow principal refugee applicants whose circumstances permit to independently travel, while taking care to ensure that domestic resettlement agencies are prepared to provide resettlement services to these refugees upon arrival.

4.    *Resume provision of post-arrival services for admitted refugees as provided for under 8 U.S.C. § 1522, including initial housing, transportation, employment training and placement, English language training, cash and medical assistance, and case management support*

Under Plaintiffs' proposal, the cooperative agreements for R&P post-arrival services will have been reinstated and any suspension will have been lifted within the first week of the Court's Order. To ensure that recently arrived refugees begin to receive statutorily mandated post-arrival services within the first two weeks of the Order, Defendants must ensure that resettlement partners can seek and obtain timely reimbursements for the post-arrival services they provide, had provided, or facilitate through private sponsors for recently arrived refugees. In addition to restoring the provision of domestic resettlement support prospectively, Defendants must ensure (1) that resettled refugees whose benefits were prematurely cut off following the funding suspension have those benefits restored and extended, and (2) that refugees who independently traveled to and were

JOINT STATUS REPORT – 10
(No. 2:25-cv-255-JNW)

admitted to the United States in weeks following the first preliminary injunction are matched with a domestic resettlement agency so that they can receive the resettlement support to which they are entitled.

**D.      Measures to be taken within twenty-one days of the Court's order**

At this point, Defendants would have resumed facilitating medical exams and travel for those refugees the furthest along in the process but still need to ensure that the remaining processing steps required for conditionally approved refugees can be completed. In addition, should any RSC not have reopened by this point, Defendants must ensure that the cases handled by that RSC can continue to be processed.

***1.      Resume any other processing steps required for cases to become travel-ready, including provision of resettlement assurances and cultural orientation***

Conditionally approved refugees are required to complete a cultural orientation and be matched with a domestic resettlement agency that will provide post-arrival services and support before they can be cleared for departure. Defendants must ensure these steps are resumed so that refugees protected by the Court's orders can have their cases processed for admission.

***2.      If not all RSCs operative prior to January 20 have reopened, ensure that refugee cases outside the geographic scope of the reopened RSCs can complete post-conditional approval processing steps necessary for travel***

RSCs are organized by region—thus, even if some are reopened, refugees located in parts of the world not served by those RSCs will not have their cases processed. If certain RSCs have not reopened by this time, Defendants must be required to ensure that refugee cases previously handled by the inoperative RSCs can nonetheless complete the remaining processing steps necessary for admission.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**II.    Proposed reporting schedule for Defendants to provide updates to the Court on their compliance efforts**

Plaintiffs propose that Defendants, within two days of each deadline above, report to the Court on their completion of each compliance measure (*i.e.*, 3 days following the Court's order for the first category of compliance measures). Following the completion of the 21-day compliance schedule outlined above, Plaintiffs propose that Defendants submit weekly updates on actions taken since the last report related to any of the ordered compliance measures. To provide insight into the restoration of processing, admissions, travel, and domestic resettlement support, the reports should also identify the number of cases with conditional approval prior to January 20, 2025 (broken down by I-590 and I-730 refugees) that, in that week:

A.    Were provided with independent travel documents, and of those refugees, the number admitted to the United States;

B.    Had travel facilitated by IOM, and of those refugees, the number admitted to the United States;

C.    Were scheduled for medical exams;

D.    For whom medical exam results were received;

E.    Completed cultural orientation;

F.    Were scheduled for interview at a U.S. embassy (I-730 only);

G.    Were interviewed at a U.S. embassy (I-730 only); and

H.    Whose security checks expired since January 20, and of those, the number whose security checks have been re-completed

**III.    Specific obstacles to compliance**

Plaintiffs' proposal seeks to outline specific measures to overcome identified existing barriers to compliance. Should additional barriers come to light following an order from the Court, Plaintiffs would raise them with Defendants expeditiously in hopes of resolving the issue without the Court's intervention. Defendants have not indicated that any proposed compliance measure, or

JOINT STATUS REPORT – 12
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    the timeline proposed for completion, is not feasible. As discussed below, Defendants' concern

2    that the ceiling for refugee admissions for the fiscal year prevents them from complying with the

3    Court's orders is a red herring, exposed by their proposed solution of continuing to suspend

4    processing and admissions for all but 65 refugees.

5    **IV.    Plaintiffs' response to Defendants' proposal**

6         Defendants' proposal is not a schedule for coming into compliance with the Court's orders.

7    Rather, it would continue their unlawful suspension of processing, travel, admissions, and

8    domestic resettlement support, as well as the funding required for those functions, for all

9    conditionally approved refugees other than the 65 they plan to admit. Although they estimate that

10   there are approximately 128,000 refugees covered by the Court's order, they have proposed no

11   measures to resume processing those applications. They have proposed no measures to resume

12   travel for the tens of thousands of refugee applicants who have completed the application process

13   and been deemed ready for departure by Defendants. They have proposed no measures to resume

14   processing and admissions for follow-to-join applicants, which the Court has recognized to be

15   protected by the due process guarantees of the Constitution. Dkt. No. 45 at 51–53. They have

16   proposed no measures to resume processing the individual Plaintiffs' cases at all—only that they

17   will provide information and preserve each Plaintiff's "conditional approval" status, the very

18   interpretation of compliance that this Court rejected because it would "reduce the Ninth Circuit's

19   carveout to just a formality." Dkt. No. 104 at 3–4. And because they propose that they not comply

20   with the Court's order to restore processing, travel, admissions, and domestic resettlement support

21   for conditionally approved refugees, Defendants claim that they need not fund USRAP

22   resettlement partners because their work is not necessary to comply with the Court's orders.

23        Defendants' proposal does not implement the Court's preliminary injunction orders, nor

24   does it comply with the Court's clear directives in its order granting in part Plaintiffs' motion to

25   enforce. Dkt. No. 108 at 5–7. Defendants failed to respond to any aspect of Plaintiffs' detailed

26   proposal for compliance—let alone with the specificity required by the Court's order. Dkt. No. 108

JOINT STATUS REPORT – 13
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

at 6. Defendants identify no specific "obstacles to compliance," Dkt. No. 108 at 6, that would make implementation of Plaintiffs' proposal unworkable or limit their ability to timely implement the Court's orders as to conditionally approved refugees—beyond their own unwillingness to resume processing and admissions for these individuals. Their reference to this fiscal year's ceiling on refugee admissions is misplaced—the Court has not directed Defendants to admit all conditionally approved refugees by the end of the fiscal year. Rather, the Court has ordered Defendants to resume the functioning of the program so that conditionally approved refugees can continue to move through the process, be admitted to the United States, and receive the services to which they are entitled, as they did for decades before Defendants' unlawful suspensions.[2] The unremarkable fact that Defendants cannot admit all refugees covered by the Court's order under the current presidential determination is not an obstacle to restoring the routine processing of refugee applications.

Defendants have failed to propose specific measures to implement the Court's orders and have not identified any specific obstacles to implementing Plaintiffs' proposal. And they do not claim that any portion of Plaintiffs' proposal is unnecessary to restore the status quo of the USRAP as it existed before January 20, 2025. The Court should order Defendants to implement Plaintiffs' proposed measures, schedule, and reporting requirements, which will ensure that Defendants come into compliance as soon as feasible and that the harm from Defendants' unlawful suspensions is halted.

---

[2] As the record reflects, processing refugee applications can take months from start to end, and Defendants are always processing applications that may not be admitted in the same fiscal year. *See, e.g.*, Dkt. No. 15-17 (conditional approval received in January 2024, still awaiting completion of processing and admission).

JOINT STATUS REPORT – 14
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**DEFENDANTS' SUBMISSION**

I.    **Specific compliance measures that Defendants must undertake to restore "refugee processing, decisions, and admissions" for individuals who were conditionally approved for refugee status by USCIS before January 20, 2025**

The U.S. government proposes the following measures to restore refugee processing, decisions, and admissions for individuals who were conditionally approved for refugee status before January 20, 2025. For purposes of this order, in the I-590 context, "conditionally approved for refugee status by the United States Citizenship and Immigration Services before January 20, 2025," *Pacito v. Trump*, No. 25-1313, Dkt. No. 28.1 (9th Cir. Mar. 28, 2025), means any refugee applicant for whom, prior to January 20, 2025, USCIS granted conditional approval for refugee status by generating and/or transmitting a "Notice of Eligibility for Resettlement" or equivalent document. For purposes of this order, in the I-730 FTJ-R context, "conditionally approved" means successful completion of USCIS domestic processing (either the petition was approved and forwarded to the Department of State, or, the petition was sent to a USCIS international field office overseas).

Over 128,000 individuals were conditionally approved for refugee status before January 20, 2025. Before January 20, 2025, approximately 37,000 refugees had been admitted to the United States for Fiscal Year 2025. The maximum number of refugees set by the last administration for Fiscal Year 2025 is 125,000 refugees. Because the number of individuals with conditional refugee approval far exceeds the number remaining under the refugee ceiling for this fiscal year, the U.S. government must prioritize groups for resettlement. Such prioritization is consistent with previous administrations' practice to admit certain refugees among the over 630,000-person USRAP backlog. The Department of State (State) and Department of Homeland Security (DHS), the U.S. government agencies that implement the USRAP, along with the Department of Health and Human Services (HHS), will identify individuals who were conditionally approved for refugee status before January 20 and whose admission the President determines is in the national interest for prioritization.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

At this time, the government will process and admit Afghans who are of high value to the U.S. government due to their service with U.S. military, intelligence, and diplomatic cadre. State and DHS will confer and consider other groups of individuals who were conditionally approved for refugee status before January 20, 2025, whose admission would be consistent with the President's priorities.

The U.S. government will provide an update on the status of each individual Plaintiff's case within seven days of the court's order. Unless there is a basis for denial, the named Plaintiffs will retain conditional approval.

Because not all resettlement agencies or resettlement support centers are "necessary to facilitate compliance with the Court's orders," the U.S. government will not reinstate cooperative agreements that are not necessary to facilitate the admission of the above-described cohort. Rather, such cooperative agreements will remain in a suspended state. The International Organization for Migration (IOM) is capable of facilitating medical examinations and travel to the United States, and it currently is operational at a level adequate to service the above-described cohort. Defendants also will identify a resettlement agency to provide virtual reception and placement (R&P) services to the above-described cohort and will unsuspend associated awards.

## II.    Specific deadlines for each compliance measure

The U.S. government anticipates admitting the Afghans noted above starting on April 24, 2025. The U.S. government will endeavor to admit all Afghans within that cohort no later than May 30, 2025.

For expired medical examinations for the above-described cohort, State will endeavor to schedule new examinations within 30 days of the Court's order. For expired security checks for the above-described cohort, State and DHS will endeavor to resubmit the individuals for security checks, including through the National Vetting Center, within 14 days of the Court's order. Due to each case being different, the U.S. government is unable to state how long it might take for new

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

medical examinations or security checks to be concluded, but these checks have previously ranged from 14 days to nine months, or more where there are complex security vetting issues.

Within 30 days of the Court's order on a compliance framework, State will unsuspend the award of the resettlement agency identified to provide virtual reception and placement services.

**III.    Reporting schedule for Defendants to provide updates to the Court on their compliance efforts**

The U.S. government will provide an update to the Court on its compliance efforts every 30 days.

**IV.    Specific obstacles to compliance identified by either party**

The "refugee ceiling" for Fiscal Year 2025—*i.e.*, the annual cap on refugee admissions set by the last administration in accordance with 8 U.S.C. 1157(a)(2)—is 125,000 refugees. There is no legal requirement to admit 125,000 refugees this fiscal year; rather, this is the *maximum* number authorized by law. Indeed, over the past 25 years, the USRAP has admitted on average only 86% of the refugee ceiling. In Fiscal Year 2024, the refugee ceiling was 125,000, but only 100,000 were ultimately admitted, the highest number of refugee admissions in thirty years. And the difference between the refugee ceiling and admissions in FY 2024 was, in large part, because resettlement agencies were unable to find appropriate placement for refugees due to severe shortages in affordable housing and other public services.

Before January 20, 2025, approximately 37,000 refugees had been admitted to the United States for Fiscal Year 2025. According to U.S. government records, there are approximately 128,000 individuals who had conditional refugee status before January 20, 2025. It is not legally possible for the U.S. government to admit this entire cohort this fiscal year, because doing so would exceed the refugee ceiling for Fiscal Year 2025. Pursuant to 8 U.S.C. 1157(b), the refugee ceiling may be increased only if the President determines, after consultation with Congress, that an unforeseen emergency refugee situation exists and the admission of refugees in response to this

JOINT STATUS REPORT – 17
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

situation is justified by grave humanitarian concerns or is otherwise in the national interest. President Trump has made no such determination and there is no such emergency.

By law, the maximum number of additional refugees that could be admitted in the remainder of Fiscal Year 2025 is about 90,000. It is not logistically possible for the U.S. government to restore admissions for this cohort by the end of Fiscal Year 2025. Doing so would also limit the President's ability to identify and admit other refugees of humanitarian interest to the United States, policy leeway that every other President has enjoyed since enactment of the Refugee Act in 1980.

*       *       *

The undersigned certify that Plaintiffs' submission contains 4,044 words and Defendants' submission contains 1,075 words, in compliance with the Court's order of April 11, 2025. *See* Dkt. No. 108 at 6.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  Dated: April 18, 2025

By: s/ *Harry H. Schneider, Jr.*

2

Deepa Alagesan*

Harry H. Schneider, Jr., WSBA No. 9404

3

Mevlüde Akay Alp*
Linda Evarts*

Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792

4

Ghita Schwarz*

Esmé L. Aston, WSBA No. 62545

**INTERNATIONAL REFUGEE**

**PERKINS COIE LLP**

5

**ASSISTANCE PROJECT**

1201 Third Avenue, Suite 4900

6

One Battery Park Plaza, 33rd Floor

Seattle, Washington 98101

New York, New York 10004

Telephone: (206) 359-8000

7

Telephone: (646) 939-9169

Facsimile: (206) 359-9000

Facsimile: (516) 324-2267

HSchneider@perkinscoie.com

8

dalagesan@refugeerights.org

JHawley@perkinscoie.com

makayalp@refugeerights.org

SLankarani@perkinscoie.com

9

levarts@refugeerights.org

EAston@perkinscoie.com

gschwarz@refugeerights.org

10

John M. Devaney*

Melissa Keaney*

**PERKINS COIE LLP**

11

**INTERNATIONAL REFUGEE**

700 Thirteenth Street NW, Suite 800

**ASSISTANCE PROJECT**

Washington, D.C. 20005

12

P.O. Box 2291

Telephone: (202) 654-6200

Fair Oaks, California 95628

Facsimile: (202) 654-6211

13

Telephone: (646) 939-9169

JDevaney@perkinscoie.com

14

mkeaney@refugeerights.org

Joel W. Nomkin*

15

Laurie Ball Cooper*

**PERKINS COIE LLP**

Megan Hauptman*

2525 East Camelback Road, Suite 500

16

**INTERNATIONAL REFUGEE**

Phoenix, Arizona 85016

**ASSISTANCE PROJECT**

Telephone: (602) 351-8000

17

650 Massachusetts Ave. NW

Facsimile: (602) 648-7000

Washington, D.C. 20001

JNomkin@perkinscoie.com

18

Telephone: (646) 939-9169

19

lballcooper@refugeerights.org

Nicholas J. Surprise*

mhauptman@refugeerights.org

**PERKINS COIE LLP**

20

33 East Main Street, Suite 201

Madison, Wisconsin 53703

21

Telephone: (608) 663-7460

Facsimile: (608) 663-7499

22

NSurprise@perkinscoie.com

23

*Counsel for Plaintiffs*

24

* *Admitted pro hac vice*

25

26

JOINT STATUS REPORT – 19
(No. 2:25-cv-255-JNW)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

ERNESTO H. MOLINA, JR.
*Deputy Director*

*/s/ Alexandra L. Yeatts*
ALEXANDRA YEATTS
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Washington, DC 20005
Phone: 202-353-5677
Email: Alexandra.yeatts@usdoj.gov

JOSEPH MCCARTER
LINDSAY ZIMLIKI
*Trial Attorneys*

*Counsel for Defendants*

JOINT STATUS REPORT – 20
(No. 2:25-cv-255-JNW)