1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC., and LUTHERAN COMMUNITY SERVICES NORTHWEST, | CASE NO. 2:25-cv-255-JNW<br><br>ORDER |
|           Plaintiffs, | |
|    v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, | |
|           Defendants. | |

21

22

23

      On April 11, 2025, the Court ordered the parties to "meet and confer and file a joint status report proposing a schedule for Defendants to come into compliance

1    with the Court's preliminary injunction orders as they apply to individuals who

2    were conditionally approved for refugee status by USCIS before January 20, 2025."

3    Dkt. No. 108 at 5. The Court explained that "[i]f the parties cannot agree on any

4    aspect of the compliance schedule, the Court will resolve any such dispute in a way

5    that ensures prompt compliance while accounting for practical limitations." *Id.* at 6.

6    The Court also stated that it "will hold a status conference as soon as practicable to

7    discuss the joint submission and establish a compliance framework." *Id.*

8         On April 18, 2025, in compliance with the Court's Order, the parties filed a

9    joint status report laying out their competing proposals for implementing the

10   Court's orders. *See* Dkt. No. 112.

11        Three days later, on April 21, 2025, the Ninth Circuit issued an order

12   clarifying the scope of its March 25, 2025, partial stay. *See Pacito v. Trump*, No. 25-

13   1313, Dkt. No. 46 (9th Cir. Apr. 21, 2025). The clarification substantially narrowed

14   the category of refugees protected by this Court's preliminary injunction to only

15   those individuals who, on or before January 20, 2025, met three specific conditions:

16        (1) the individual had an approved refugee application authorizing
          Customs and Border Protection to admit the individual "conditionally as
17        a refugee upon arrival at the port within four months of the date the
          refugee application was approved," 8 C.F.R. § 207.4; (2) the individual
18        was cleared by USCIS for travel to the United States; *and* (3) the
          individual had arranged and confirmable travel plans to the United
19        States.

20   *Id.* at 4 (emphasis added). The Court refers to individuals who meet all three of

21   these conditions as "Injunction-Protected Refugees."

22        The Ninth Circuit's initial March 25 order, however, simply referred to

23   "individuals who were conditionally approved for refugee status" without providing

ORDER - 2

any definition of that term. The order contained no reference to travel readiness, no mention of USCIS clearance, and no indication that "arranged and confirmable travel plans" were prerequisites for protection. The Ninth Circuit now states that "Plaintiffs clearly grasp that our order was intended to apply to those 'refugees furthest along in the process,'" *Id.* at 2, but this intent was not expressed in the text of the original order.

While the Court will faithfully implement the clarified directive, the appellate court's belated precision has created unnecessary confusion in a matter of significant humanitarian concern. Now, the Ninth Circuit has determined that the preliminary injunction "remains in effect" only for the narrowly defined subset of conditionally approved refugees described above. For this population only, Defendants "must resume their processing, facilitation of travel to the United States, admission, and provision of resettlement benefits after admission." *Id.* at 4.

The Court wishes to pick up where it left off—establishing a compliance framework. Given that the Ninth Circuit issued its clarification order *after* the Parties submitted their joint status report, the Court intends to hear argument from the Parties about the effect of the Ninth Circuit's order on their respective proposed compliance frameworks.

The Court instructs the Parties to be prepared to answer and discuss the questions and topics below at the May 1, 2025, status conference:

1. How many Injunction-Protected Refugees exist total?

2. What specific mechanisms will be used to identify which refugees meet all three criteria established by the Ninth Circuit?

3.  What documentation or databases will serve as evidence of meeting each criterion?

4.  Please be prepared to discuss the USRAP processing steps that occur after conditional approval by USCIS, including medical screenings, cultural orientation, sponsorship, and the process for arranging and providing notice of refugee travel to the United States.

5.  What steps has the Government already taken to process, admit, and provide domestic resettlement support to the Injunction-Protected Refugees?

6.  Please be prepared to provide a high-level overview of where the Injunction-Protected Refugees are currently located (by major region or key countries) and any significant logistical challenges these locations present for Defendants' compliance.

7.  Please identify the primary U.S. resettlement destinations (states with highest concentrations) anticipated for these beneficiaries and any capacity constraints in these areas that may affect the compliance timeline.

8.  Please summarize which key USRAP partner agencies are essential to resume processing for those who meet the Ninth Circuit's three-part criteria, highlighting any agencies experiencing specific operational challenges that might impact the compliance schedule.

ORDER - 4

9.  What specific obstacles to compliance might arise under the Ninth Circuit's narrowed definition that weren't addressed in the parties' original proposals?

10. How, if at all, does the Ninth Circuit's order clarifying the scope of its partial stay affect your proposed compliance framework as stated in the Joint Status Report at Dkt. No. 112?

11. What reporting metrics would be appropriate to track compliance with the narrowed scope of the injunction?

12. What measures should be taken to ensure clear communication with refugees about their status under the Ninth Circuit's clarified definition?

13. How and where will Injunction-Protected Refugees receive resettlement benefits when they arrive at their destination in the United States?

Finally, as the Court finalizes a compliance framework with specific deadlines and reporting requirements to ensure steady progress and accountability, Defendants' obligation to comply with the injunction as clarified is *immediate*. Feasibility considerations do not diminish Defendants' obligation to act with haste.

It is so ORDERED.

Dated this 25th day of April, 2025.

Jamal N. Whitehead
United States District Judge

ORDER - 5