District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER;
PLAINTIFF JOSEPHINE; PLAINTIFF
SARA; PLAINTIFF ALYAS; PLAINTIFF
MARCOS; PLAINTIFF AHMED;
PLAINTIFF RACHEL; PLAINTIFF ALI;
HIAS, INC.; CHURCH WORLD SERVICE,
INC.; and LUTHERAN COMMUNITY
SERVICES NORTHWEST,

        *Plaintiffs*,

    v.

DONALD J. TRUMP, in his official capacity
as President of the United States, MARCO
RUBIO, in his official capacity as Secretary of
State, KRISTI NOEM, in her official capacity
as Secretary of Homeland Security;
DOROTHY A. FINK, in her official capacity
as Acting Secretary of Health and Human
Services,

        *Defendants.*

CASE NO. 2:25-cv-00255

DEFENDANTS' MOTION TO DISMISS
THE FIRST SUPPLEMENTAL
COMPLAINT

NOTE ON MOTION CALENDAR: May 27,
2025

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................2

    I.    Statutory and Regulatory Background ................................2

        A.    The Executive's Authority to Suspend Entry of Aliens and to Set Foreign Aid ................................2

        B.    The Refugee Act ................................4

    II.    The Executive Orders ................................6

    III.    The State Department terminates cooperative agreements with resettlement partners ................................7

STANDARD OF REVIEW ................................8

ARGUMENT ................................8

    I.    Plaintiffs may not sue the President. ................................8

    II.    The President's suspension of the USRAP was a valid exercise of his § 1182(f) authority. ................................9

    III.    The Court lacks APA jurisdiction over Organizational Plaintiffs' contract claims ................................13

    IV.    Plaintiffs' due process claim should be dismissed. ................................17

    V.    Regardless, Plaintiffs' APA claims fail at the threshold. ................................18

        A.    Failure to identify a discrete agency action. ................................18

        B.    Failure to identify a final agency action. ................................19

        C.    Committed to agency discretion ................................20

CONCLUSION ................................21

CERTIFICATION OF CONFERRAL ................................23

DEFENDANTS' MOTION TO DISMISS      i
[CASE NO. 2:25-CV-00255]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

## TABLE OF AUTHORITIES

### CASES

*Abourezk v. Reagan*,
   785 F.2d 1043 (D.C. Cir. 1986) ...................................................................... 2, 3, 13

*Allende v. Shultz*,
   845 F.2d 1111 (1st Cir. 1988) ............................................................................ 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 8

*Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ........................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 8

*Bembenista v. United States*,
   866 F.2d 493 (D.C. Cir. 1989) ......................................................................... 16

*Bennett v. Spear*,
   520 U.S. 154 (1997) ........................................................................................... 19

*Reagan v. Abourezk,*,
   484 U.S. 1 (1987) .............................................................................................. 13

*Dep't of Educ. v. Cal.*,
   145 S. Ct. 966 (2025) ............................................................................... 1, 15, 16

*Dep't of State v. Muñoz*,
   602 U.S. 899 (2024) ........................................................................................... 18

*Doe 1 v. Jaddou*,
   __ F. Supp. 3d __, 2025 WL 327368 (D. Md. Jan. 29, 2025) ................................. 11

*Elkins v. Moreno*,
   435 U.S. 664 (1978) ........................................................................................... 2

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

ii

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

*Fiallo v. Bell*,
    430 U.S. 787 (1977) .................................................................... 1, 2, 12

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ........................................................................ 9, 19

*Gonzalez v. Cuccinelli*,
    985 F.3d 357 (4th Cir. 2021) ................................................................. 11

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) ............................................................................. 12

*Hawaii v. Trump*,
    859 F.3d 741 (9th Cir. 2017) ................................................................... 9

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................. 21

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ................................................................. 14

*INS v. Stevic*,
    467 U.S. 407 (1984) ............................................................................. 11

*James v. Caldera*,
    159 F.3d 573 (Fed. Cir. 1998) ............................................................... 13

*Johnson v. Whitehead*,
    647 F.3d 120 (4th Cir. 2011) ................................................................... 2

*Kidwell v. Dep't of Army*,
    56 F.3d 279 (D.C. Cir. 1995) ................................................................. 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................... 8

*Kuahulu v. Emps. Ins. of Wausau*,
    557 F.2d 1334 (9th Cir. 1977) ............................................................... 17

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ............................................................................. 20

DEFENDANTS' MOTION TO DISMISS
[CASE No. 2:25-CV-00255]

iii

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .................................................................. 18

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ................................................ 14

*Norton v. SUWA*,
   542 U.S. 55 (2004) .................................................................. 19

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .................................................. 8

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ........................................................ 3, 9, 10, 11

*United Aeronautical Corp. v. U.S. Air Force*,
   80 F.4th 1017 (9th Cir. 2023) ................................................ 14

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) ............................................................ 3, 13

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*,
   __ F. Supp. 3d __, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ................ 14

*United States v. Curtiss-Wright Exp. Corp.*,
   299 U.S. 304 (1936) .................................................................. 3

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .................................................. 8

*Wright v. Riveland*,
   219 F.3d 905 (9th Cir. 2000) .................................................. 18

## STATUTES

**Immigration and Nationality Act of 1952, as amended:**

8 U.S.C. § 1101 ........................................................................ 2

8 U.S.C. § 1101(a)(42) ........................................................ 4, 5

8 U.S.C. § 1157 ...................................................................... 11

8 U.S.C. § 1157(a) ............................................................................................ 11

8 U.S.C. § 1157(a)(2) ...................................................................................... 4, 11

8 U.S.C. § 1157(c)(1) ........................................................................................... 4

8 U.S.C. § 1157(c)(2)(A) ......................................................................... 5, 12, 17

8 U.S.C. § 1157(c)(3) ........................................................................................ 4, 5

8 U.S.C. § 1182(a) ........................................................................................ 2, 4, 6

8 U.S.C. § 1182(f) ....................................................................................... *passim*

8 U.S.C. § 1185(a) ......................................................................................... 9, 12

8 U.S.C. § 1185(a)(1) ................................................................................. 4, 9, 10

8 U.S.C. § 1201(h) ........................................................................................ 11, 12

8 U.S.C. § 1522 ............................................................................................... 6, 15

8 U.S.C. § 1522(a)(1)(A) ............................................................................... 6, 16

8 U.S.C. § 1522(b)(1)(A) ............................................................................... 6, 16

## <u>OTHER STATUTES</u>

5 U.S.C. § 701(a)(2) ........................................................................................... 20

5 U.S.C. § 702 .................................................................................................... 13

5 U.S.C. § 704 .................................................................................................... 19

22 U.S.C. § 2346(a) .............................................................................................. 3

22 U.S.C. § 2601(c)(1) .......................................................................................... 3

28 U.S.C. § 1346(a)(2) ........................................................................................ 13

28 U.S.C. § 1491(a) ............................................................................................ 13

Pub. L. No. 96-212 ................................................................................................ 4

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

v

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Pub. L. No. 118-47 ........................................................................................ 21

## **REGULATIONS**

2 C.F.R. § 200.340 ......................................................................................... 8

8 C.F.R. § 207.7 ............................................................................................. 5

8 C.F.R. § 207.7(a) ......................................................................................... 5

8 C.F.R. § 207.7(b)(1-6) ................................................................................. 5

8 C.F.R. § 207.7(g) ......................................................................................... 5

8 C.F.R. § 207.9 ............................................................................................. 5

45 C.F.R. § 400 .............................................................................................. 6

45 C.F.R. § 400.11(a) ..................................................................................... 6

## **INTRODUCTION**

This Court by now will be familiar with the facts and arguments presented by the Parties, as also considered by the Ninth Circuit in its order, in which it clarified its March 25, 2025 stay order and held that Defendants are likely to succeed on the merits. *Pacito v. Trump*, No.25- 1313 (9th Cir. Apr. 21, 2025) ("CA9 Order"). To the extent this Court previously disagreed with Defendants' arguments on several jurisdictional and threshold issues, it should revisit its analysis and rule for the Government given the import of the Ninth Circuit's decision and the Supreme Court's recent action in addressing the proper forum for funding disputes.

Plaintiffs' First Supplemental Complaint ("FSC") should be dismissed in its entirety because this Court lacks jurisdiction and Plaintiffs fail to state plausible claims. This Court already held that declaratory and injunctive relief may not issue against the President. Dkt. 45 at 61. And the Ninth Circuit held Defendants are likely to succeed on the merits. CA9 Order at 3. As part of its reasoning, the Ninth Circuit underscored the broad deference 8 U.S.C. § 1182(f) exudes to the President "in every clause." *Id.* That independent power by the President to control entry into the United States is "a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted). And Plaintiffs cannot evade those restrictions on judicial review by purporting to bring their claims under the Administrative Procedure Act ("APA").

Furthermore, Plaintiffs' funding-related claims are not reviewable by this Court because they are, at their core, disputes over contract performance. The Supreme Court recently made this clear in issuing its stay order in *Dep't of Educ. v. Cal.*, 145 S. Ct. 966, 968 (2025). That ruling instructs that no district court may exercise jurisdiction over such types of contractual claims. Short

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

of that, Plaintiffs' challenge to the agencies' implementation of the Executive Orders at issue must also be dismissed, where they fail to identify any final agency action to support an APA claim, and where the allocation of funds across refugee and migration programs is an administrative decision firmly committed to agency discretion. Lastly, Plaintiffs' due process claim is now moot.

Irrespective of the Court's view of the merits, then, the Court should dismiss Plaintiffs' operative complaint on any one of these jurisdictional and threshold grounds.

## **BACKGROUND**

### I.    **Statutory and Regulatory Background**

#### A.  **The Executive's Authority to Suspend Entry of Aliens and to Set Foreign Aid**

The Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1101 et seq., as amended, established "a comprehensive and complete code covering all aspects of admission of aliens to this country," *Elkins v. Moreno*, 435 U.S. 664 (1978), and reflects "Congress's plenary power over immigration and naturalization," *Johnson v. Whitehead*, 647 F.3d 120, 126 (4th Cir. 2011) (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). Central to this case, Congress gave the President broad discretionary authority to suspend or restrict the entry of all aliens:

> **(f) Suspension of entry or imposition of restrictions by President**
>
> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate. …

8 U.S.C. § 1182(f). "The President's sweeping proclamation power" under § 1182(f) "provides[, among others,] a safeguard against the danger posed by any particular case or class of cases that is not covered by one of the" INA's grounds for denying admission of aliens in § 1182(a). *Abourezk v. Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986). Numerous Presidents have invoked § 1182(f)

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]
2
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

to suspend or impose restrictions on the entry of certain aliens or classes of aliens, and the Supreme Court has repeatedly upheld the broad and virtually unreviewable sweep of this authority. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 684 (2018).

This congressional delegation of authority to suspend entry to any aliens or to any class of aliens is at the heart of (and bolstered by) the President's broad inherent constitutional authority under Article II relating to foreign affairs and national security. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) (exclusion of aliens "a fundamental act of sovereignty … inherent in the executive power to control the foreign affairs of the nation"); *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936) (discussing "the very delicate, plenary and exclusive power of the President … in the field of international relations—a power which does not require as a basis for its exercise an act of Congress").

Similarly, the statutory framework governing foreign assistance grants the President broad discretion to set the conditions on which the United States provides such assistance. Particularly, the Foreign Assistance Act of 1961 (FAA), and similar statutes, explicitly allow for the provision of assistance "on such terms and conditions as [the President] may determine." *See, e.g.*, 22 U.S.C. § 2346(a) (assistance to promote economic or political stability); 22 U.S.C. § 2601(c)(1).

Ultimately, Congress gave the President unfettered discretion to determine "whether and when to suspend entry," "whose entry to suspend," "for how long," "and on what conditions ('any restrictions he may deem to be appropriate')." *Hawaii*, 585 U.S. at 684. Congress similarly deemed it unlawful for "any alien" to enter or attempt to enter the United States "except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe." 8 U.S.C. § 1185(a)(1).

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

3

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

**B. The Refugee Act**

The Refugee Act of 1980 amended the INA to establish "a permanent and systematic procedure for the admission to this country of refugees of special humanitarian concern to the United States, and to provide comprehensive and uniform provisions for [their] effective resettlement." Pub. L. No. 96-212, 94 Stat. 102, § 101(b). The Refugee Act provides that the maximum number of refugees that may be admitted annually shall be "such number as the President determines, before the beginning of the fiscal year and after appropriate consultation [with Congress], is justified by humanitarian concerns or is otherwise in the national interest." 8 U.S.C. § 1157(a)(2).

Subject to numerical limits set annually by the President, the Secretary of Homeland Security has discretion to admit "any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible (except as otherwise provided under [8 U.S.C. § 1157(c)(3)]) as an immigrant" under the INA. 8 U.S.C. § 1157(c)(1); *see also* 8 U.S.C. §§ 1101(a)(42) (defining "refugee"), 1182(a) (general inadmissibility grounds). Which refugees are determined to be "of special humanitarian concern" to the United States for the purpose of refugee resettlement is determined in the Report to Congress on Proposed Refugee Admissions prior to the beginning of the fiscal year. U.S. Dep't of State, Report to Congress on Proposed Refugee Admissions for Fiscal Year 2024, https://www.state.gov/bureau-of-population-refugees-and-migration/releases/2023/11/report-to-congress-on-proposed-refugee-admissions-for-fiscal-year-2024 (last visited Apr. 28, 2025). Refugees admitted in accordance with this provision are sometimes referred to as "principal" applicants or refugees.

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

4

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Certain individuals who do not meet the statutory definition of a refugee under 8 U.S.C. § 1101(a)(42) may nonetheless be entitled to refugee status if they are accompanying or "following-to-join" a principal refugee. *See* 8 U.S.C. § 1157(c)(2)(A); 8 C.F.R. § 207.7(a). To obtain "derivative refugee" status, an applicant must be the spouse or unmarried child under the age of 21 of a principal refugee and must also be admissible (except as otherwise provided under 8 U.S.C. § 1157(c)(3)) as an immigrant under the INA. 8 U.S.C. § 1157(c)(2)(A). Derivative refugees who are either in the physical company of the principal refugee when admitted to the United States or admitted within four months of the principal refugee's admission are called "accompanying" refugees. 8 C.F.R. § 207.7(a). Derivative refugees who seek admission more than four months after the principal refugee are called "following-to-join" refugee beneficiaries. *Id.* The governing regulation sets forth several grounds of ineligibility beyond the inadmissibility grounds. 8 C.F.R. § 207.7(b)(1-6). The United States Citizenship and Immigration Services ("USCIS") may deny or terminate refugee status, and that decision is not reviewable. *See* 8 C.F.R. §§ 207.7 (g), 207.9.

The INA provides only that such derivative refugees are entitled to refugee *status* upon admission if the appropriate application or petition is processed and their relationship as the spouse or child of a principal refugee and their admissibility is established. *See* 8 U.S.C. § 1157(c)(2)(A). The INA does not, however, entitle derivative refugees to be *admitted* to the United States without qualification. The admission of a derivative in refugee status is contingent on: (1) there being room under the subsection allocation to which the principal refugee's admission is charged, as well as by implication the annual refugee limit, set by the President, and (2) that individual establishing their eligibility for admission. *Id.*; *see also* 8 U.S.C. § 120(h). And, of course, such individuals,

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

5

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

like everyone else seeking entry into the United States, may also be subject to the bar on entries under § 1182(f).

Following admission, the INA authorizes the funding of programs by public and private organizations to assist refugees in achieving self-sufficiency. 8 U.S.C. § 1522; 45 C.F.R. pt. 400. Government support for these programs, however, is only permitted "to the extent of available appropriations." 8 U.S.C. § 1522(a)(1)(A); *see* 45 C.F.R. §§ 400.11(a), 400.56. Critically, under § 1522(b), Congress "authorize[s]" the Secretary of State to "make grants to, and contracts with, public or private nonprofit agencies for initial resettlement" of "refugees in the United States," 8 U.S.C. § 1522(b)(1)(A),

## II.    The Executive Orders

On January 20, 2025, the President signed Executive Order 14163, Realigning the United States Refugee Admissions Program (the "USRAP Order"), which suspended admission of refugees under the USRAP pursuant to his authorities under 8 U.S.C. §§ 1182(f) and 1185(a) and based on his finding of detriment to the interests of the United States. USRAP Order §§ 1 (finding that the United States "lacks the ability to absorb large numbers of migrants, and in particular, refugees, into its communities in a manner that does not compromise the availability of resources for Americans, that protects their safety and security, and that ensures the appropriate assimilation of refugees"), 3(a) (invoking 8 U.S.C. § 1182(f) and finding "that entry into the United States of refugees under the USRAP would be detrimental to the interests of the United States"). The USRAP Order also suspended "decisions on applications for refugee status." *Id.* § 3(b). The USRAP Order allows for admission of refugees on a case-by-case basis should the Secretaries of Homeland Security and State jointly determine such admission is in the national interest and would

DEFENDANTS' MOTION TO DISMISS                6
[CASE NO. 2:25-CV-00255]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

not threaten national security or welfare, and sets a process for resuming refugee admissions in the future. *Id.* § 3(c).

That same day, the President also signed Executive Order 14169, Reevaluating and Realigning United States Foreign Aid (the "Foreign Aid Order"), which required agency heads to "immediately pause new obligations and disbursements of development assistance funds to foreign countries and implementing non-governmental organizations, international organizations, and contractors pending reviews of such programs … to be conducted within 90 days." Foreign Aid Order § 3(a). The Foreign Aid Order also required agency heads to review each foreign assistance program under guidelines provided by the Secretary of State to determine "whether to continue, modify, or cease each foreign assistance program." *Id.* § 3(b)–(c). The Foreign Aid Order allows the Secretary of State to waive the 90-day pause on incurring new development assistance funds and allows for the resumption of programs prior to the end of the 90-day period with the Secretary of State's approval. *Id.* § 3(d)–(e).

Consistent with these Orders, USCIS immediately suspended processing of refugee applications, FSC ¶ 6, and the State Department suspended payments to refugee resettlement partners, FSC ¶ 127.

### III.    The State Department terminates cooperative agreements with resettlement partners.

On February 26, 2025, the State Department terminated all USRAP-related cooperative agreements for the two Resettlement Partner Plaintiffs, except Plaintiff CWS's cooperative agreement for operation of the Resettlement Support Center ("RSC") in Africa. Dkt. 58-2. The State Department did so after determining that the affected cooperative agreements "no longer effectuate[d] agency priorities." Dkt. 58-2. The State Department did not terminate the agreements

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

7

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

1

2

3

4

5

6

pursuant to the USRAP or Funding Orders but did so in accordance with State Department regulation ("Standard Terms and Conditions, 2 C.F.R. 200.340, and/or Award Provisions as applicable."). *Id.* The State Department required the Resettlement Partners to stop all work under the terminated agreements and prohibited them from incurring new costs, but did not prohibit them from receiving compensation for legitimate costs incurred prior to the terminations going into effect. *Id.*

7

8

9

10

11

12

13

14

## **STANDARD OF REVIEW**

Under Rule 12(b)(1), Plaintiffs bear the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Attacks on jurisdiction come in two forms: factual attacks or facial attacks. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

15

16

17

18

19

Dismissal under Rule 12(b)(6) is warranted when a complaint fails to state a claim upon which relief may be granted that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 570 (2007). Courts accept as true plaintiffs' factual allegations but need not accept as true their legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20

## **ARGUMENT**

21

## I.    **Plaintiffs may not sue the President.**

22

23

This Court already correctly held that it lacks jurisdiction "to enjoin the President in the performance of his official duties." Dkt. 45 at 18 (quoting *Franklin v. Massachusetts*, 505 U.S.

24

8

788, 802–03, (1992)), 61; *see Hawaii v. Trump,* 859 F.3d 741, 788 (9th Cir. 2017), *vacated on other grounds*, 583 U.S. 941 (2017) ("[I]njunctive relief against the President ... is extraordinary, and should ... raise[] judicial eyebrows."). There has been no change in law since then. Thus, the Court should affirm its conclusion that it lacks jurisdiction to enjoin the President and dismiss Plaintiffs' First, Second, Fourth, and Seventh Claims to the extent they apply to the President.

## II.    The President's suspension of the USRAP was a valid exercise of his § 1182(f) authority.

Plaintiffs' First, Third, and Seventh Claims are not plausible because, as the Ninth Circuit recently clarified, the President's suspension of the USRAP was valid under 8 U.S.C. § 1182(f) and *Hawaii*, 585 U.S. at 667. CA9 Order at 3-4.

Section 1182(f) provides that "[w]henever the President finds that the entry of … any class of aliens into the United States would be detrimental to the interests of the United States, he may … suspend entry of … any class of aliens …or impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f); *see also id*. § 1185(a)(1). Section 1182(f) "exudes deference to the President in every clause," as it "entrusts to the President the decisions whether and when to suspend entry," "whose entry to suspend," "for how long," and "on what conditions." *Hawaii*, 585 U.S. at 684. Section 1185(a) further prohibits aliens, including refugees, from entering the United States "except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe." 8 U.S.C. § 1185(a)(1); *see Allende v. Shultz*, 845 F.2d 1111, 1118 & n.13 (1st Cir. 1988) (Sections 1182(f) and 1185(a) "grant the President vast power to exclude any individual alien or class of aliens whose entry might harm the national interest."). The "sole prerequisite" to the President's exercise of authority under

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]                                         9

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

this "comprehensive delegation" is the determination that entry of the covered aliens into the United States "would be detrimental to the interests of the United States." *Hawaii*, 585 U.S. at 685.

Further, the *Hawaii* Court made clear that when the President suspends entries under §1182(f), he "is not required to prescribe in advance a fixed end date for the entry restrictions." 585 U.S. at 687. Instead, § 1182(f) "authorizes the President to suspend entry 'for such period as he shall deem necessary,'" so the President "may link the duration of [entry] restrictions, implicitly or explicitly, to the resolution of the triggering condition." *Id.* Indeed, "not one of the 43 suspension orders issued prior to [the *Hawaii* order] ha[d] specified a precise end date." *Id.* Nor did the presidential proclamation that *Hawaii* upheld have an end date; that suspension was to be reviewed every 180 days. *Id.* at 680. Here, the President permissibly linked his decision to restrict refugee entry to the strain on American communities caused by "record levels of migration" over the past four years. USRAP Order § 1. He further set a procedure and timeline for considering resumption—i.e., upon receipt of periodic reports from the Secretaries of State and Homeland Security to be submitted every 90 days (so *more* frequently than the 180-day period approved in *Hawaii*). *Id.* § 4. Section 1182(f) requires nothing more. *Hawaii*, 585 U.S. at 687.

Contrary to Plaintiffs' claims (FSC ¶¶ 230-33), the Refugee Act does not override the President's expansive § 1182(f) authority. Just the opposite. It empowers the President to set a *maximum* number of refugee admissions to the United States but does not provide any minimum or otherwise require the admission of any refugees. *See* 8 U.S.C. § 1157(a)(2); *see also id.* § 1201(h) ("Nothing in this chapter shall be construed to entitle any alien … to be admitted [to] the United States."). The Refugee Act, in short, does not mandate *any* refugee admissions, and the President did not "override particular provisions of the INA," even "assum[ing]" any limitation on

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

the President's § 1182(f) authority existed. *Hawaii*, 585 U.S. at 689; *see Doe 1 v. Jaddou*, __ F.

Supp. 3d __, 2025 WL 327368, at *3-4 (D. Md. Jan. 29, 2025) (holding that § 1157 confers

discretionary authority to admit refugees, including "discretion over whether to implement this

provision at all" (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 367 (4th Cir. 2021))). The Refugee

Act further requires the number of refugees to be "in the national interest," 8 U.S.C. § 1157(a),

reinforcing the President's § 1182(f) authority to suspend entry if it is not in the nation's interest.

Plaintiffs also contend that the Refugee Act *entitles* following-to-join refugee beneficiaries

to admission to the United States. *See* FSC ¶ 51 (claiming "[u]nder the Refugee Act, so long as [a

following-to-join refugee] beneficiary is not inadmissible under the INA, the government has no

discretion to deny their entry as refugees."). That is not so. As the INA explicitly states, nothing

"shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to

be admitted [to] the United States, if, upon arrival at a port of entry in the United States, he is

found to be inadmissible under this chapter, or any other provision of law." 8 U.S.C. § 1201(h);

*see INS v. Stevic*, 467 U.S. 407, 426 (1984). Moreover, the Refugee Act does not override §

1182(f), which "vests authority in the President to impose *additional limitations* on entry beyond

the grounds for exclusion set forth in the INA—including in response to 'interests of the United

States.'" *Hawaii*, 585 U.S. at 691 (emphasis added).

To this end, the provision Plaintiffs principally rely on—8 U.S.C. § 1157(c)(2)(A)—does

not mean what they claim. Section 1157(c)(2)(A) merely provides that a derivative beneficiary

"shall … be entitled to the *same admission status*" as the principal refugee, if they are admitted. 8

U.S.C. § 1157(c)(2)(A) (emphasis added). Further, it provides that "[u]pon … admission to the

United States, such admission shall be charged against the numerical limitation established" for

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

the principal refugee's category or subsection. *Id.* Thus, the INA does not require actual admission of derivative refugees; it requires that *if and when* derivative refugees are admitted to the United States, they receive the "same admission status" (i.e., refugee status) as the principal refugee they are accompanying or following to join, and that their admission be counted against the numerical limitation set for the principal refugee's category or subsection. 8 U.S.C. § 1157(c)(2)(A). Derivative refugees must still independently establish they are not subject to a ground of inadmissibility, and entry may be suspended under § 1182(f), just as for any other alien who seeks entry into the United States. 8 U.S.C. § 1201(h). A derivative's admission also requires that the total applicable regional refugee ceilings and total ceiling set by the President for the fiscal year have not already been reached. 8 U.S.C. § 1157(c)(2)(A). All that to say, nothing in § 1157(c)(2)(A) limits the President's § 1182(f) authority or entitles a relative of a refugee to admission.

Dismissal of Plaintiffs' separation-of-powers claim (Seventh Claim, FSC ¶¶ 254-57) is likewise warranted, where the Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo*, 430 U.S. at 792; *see Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). And in enacting 8 U.S.C. §§ 1182(f) and 1185(a), Congress conferred a "sweeping proclamation power" to not only suspend entry of aliens but also impose restrictions wholly in the President's discretion. *See Abourezk v. Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986) (Ginsburg, J.), *aff'd by an equally divided Court*, 484 U.S. 1 (1987) (per curiam); *Knauff*, 338 U.S. at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, … [i]t is implementing an inherent executive power."). Given the Executive Branch's indisputable

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

12

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

control over immigration matters and Congress's resounding grant of authority to the President to suspend admission of refugees, the President's actions here were entirely consistent with constitutional principles. If anything, Plaintiffs' claims should be dismissed, where they ask this Court to override the President's judgment in the arena of foreign affairs, implicating the very separation-of-powers concerns on which they purport to bring their challenge.

## III.    The Court lacks APA jurisdiction over Organizational Plaintiffs' contract claims.

Plaintiffs, through their Fifth and Sixth Claims, seek specific performance and monetary compensation. FSC ¶¶ 245-50. But the Tucker Act, and not the APA, governs claims seeking specific performance or payment of funds purportedly obligated under contracts. *See* 28 U.S.C. § 1491(a) (the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States"); 28 U.S.C. § 1346(a)(2) ("[T]he district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States."); *Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (APA's limited waiver of sovereign immunity does not apply "'if any other statute … expressly or impliedly forbids the relief which is sought.'" (quoting 5 U.S.C. § 702)). The Tucker Act "'impliedly forbid[s]' an APA action seeking injunctive or declaratory relief" against the government in a federal district court "if that action is a 'disguised' breach-of-contract claim." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). That jurisdictional barrier matters, as it ensures that contract claims against the government are channeled into the court that has "unique expertise" in that area. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 7 (D.C. Cir.

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

13

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

1985). It also matters because the Tucker Act limits plaintiffs to only money claims or claims for relief that are purely "an incident of and collateral to a money judgment." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (citation omitted).

To determine whether a particular action is, at its essence, a contract action subject to the Tucker Act or instead a challenge properly brought under the APA, courts look to both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Aeronautical Corp.*, 80 F.4th at 1026. "If rights and remedies are *statutorily* or *constitutionally* based, then districts courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does, even if the plaintiff formally seeks injunctive relief." *Id.*

The district court in Washington, D.C., recently applied these principles and rejected an attempt by another refugee resettlement agency to disguise contractual claims as APA claims, holding that the resettlement agency's APA claims challenging the pause and termination of cooperative agreements were a demand, "at its core, [for] a purely contractual remedy" to be brought in the Court of Federal Claims. *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, __ F. Supp. 3d __, 2025 WL 763738, at *1, 6 (D.D.C. Mar. 11, 2025) (on appeal). In another similar case, the Supreme Court granted a stay pending appeal of a temporary restraining order enjoining the Government from terminating various education-related grants and requiring the Government to pay past-due grant obligations. *Dep't of Educ.*, 145 S. Ct. at 969. As it reasoned, while a district court is not barred by "the possibility that an order setting aside an agency's action *may* result in the disbursement of funds," there can be no APA jurisdiction where the requested relief is, at its

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

14

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

base, for enforcement of "a contractual obligation to pay money." *Id.* at 968 (citation omitted) (emphasis added).

That is just the situation here. As in *Catholic Bishops* and *Dep't of Educ.*, Plaintiffs' requested relief is, at its core, contractual. While Plaintiffs posit (FSC ¶¶ 74-77, 248) various statutes and regulations they find relevant to their funding suspension and termination claims, no statute or regulation goes so far as to require the State Department's Bureau of Population and Migration ("PRM") to make payments to resettlement partners through cooperative agreements or the Office of Refugee Resettlement ("ORR")[1] to fund grants to resettlement agencies. Instead, the Refugee Act *authorizes* the Government to make grants to, and contracts with, resettlement partners for initial resettlement and simply directs the Government to prioritize certain goals. 8 U.S.C. § 1522. Section 1522 does not require any particular set of services but permits the Government to enter into contracts to offer a range of services. To the extent that the Government is obligated to disburse funds to any resettlement partners, that obligation arises directly out of contractual agreements the Government has entered into—as opposed to any authorizing statute or regulation. To be sure, section 1522(a)(1)(A) imposes limits on the Director of ORR "[i]n providing assistance under this section" and does not create any right to specific assistance or require that grants be consummated in the first place. 8 U.S.C. § 1522(a)(1)(A). And, under Section 1522(b), Congress has "authorized" the Secretary of State to "make grants to, and contracts with, public or private nonprofit agencies for initial resettlement" of "refugees in the United

---

[1] The Office of Refugee Resettlement ("ORR") sits within the Department of Health and Human Services.

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

15

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

States," 8 U.S.C. § 1522(b)(1)(A),[2] but nothing requires the Secretary to exercise this authority at all or to any specific degree.

In short, the agreements themselves—not the Refugee Act or APA—create the asserted right to payment in the first instance. *See Dep't of Educ.*, 145 S. Ct. at 968. And the Government retains discretion to operate these programs using different funding levels, different contractors, or different sets of benefits, showing that at bottom Plaintiffs' claim that these specific contracts must be performed is, at its core, a contract claim.

No matter how Plaintiffs style their contractual claims, including by specifically requesting equitable relief (FSC, Prayer for Relief ¶¶ E-F), courts must look to a *complaint's* "substance, not merely its form." *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see Bembenista v. United States*, 866 F.2d 493, 497 (D.C. Cir. 1989) ("Congress, in passing the Federal Courts Improvement Act, emphasized … it did not want federal court jurisdiction to be manipulated by artful pleading." (quotation omitted)). Indeed, although Plaintiffs insist that the Government is statutorily obligated to provide refugee resettlement assistance, they have not explained how that alleged injury could be remedied without the Government being required to make *payment* to Plaintiffs pursuant to the cooperative agreements Plaintiffs themselves seek to enforce.

For these reasons, the Court lacks jurisdiction over Claims Five and Six.

---

[2] The statute authorizes the Director to make such grants and contracts but allows the President to designate a different officer, see 8 U.S.C. § 1522(b)(1)(A)-(B), and the President has designated the Secretary of State, see 17 Weekly Compilation of Presidential Documents 2880 (Jan. 13, 1981).

**IV.    Plaintiffs' due process claim should be dismissed.**

Plaintiffs' due process claim (Claim Four) fails because: (1) it is moot, (2) there is no entitlement to admission for following-to-join refugee beneficiaries, and (3) principal refugees already present inside the United States do not have a liberty interest in the admission of family members.

First, this claim is moot because the Plaintiffs pressing it—Plaintiffs Esther and Josephine—received the relief they sought. *See* Dkt. 89 at 3 n.3 (stating Josephine was admitted to the United States). This not only moots Plaintiffs Esther and Josephine's due process claims, but also the entire FTJ Petitioner Proposed Subclass. *See* Dkt. 93 at 11-12 (asserting that Plaintiffs Esther and Josephine cannot serve as class representatives because their claims mooted before the class has been certified, citing, *inter alia*, *Kuahulu v. Emps. Ins. of Wausau*, 557 F.2d 1334 (9th Cir. 1977)).

Second, Plaintiffs' claim that following-to-join refugee beneficiaries have a statutory entitlement to admission, FSC ¶ 243, also fails, where 8 U.S.C. § 1157(c)(2)(A) does not give following-to-join refugee beneficiaries any entitlement to admission. The Ninth Circuit recognized this when it held the Government was likely to succeed on its claim that the President validly exercised his § 1182(f) authority when he suspended refugee admissions, which necessarily includes the suspension of admissions of following-to-join refugee beneficiaries. CA9 Order at 3.

Even assuming her claim was still live, Plaintiff Esther did not have a fundamental liberty interest in having her noncitizen relative admitted to the United States. *See Dep't of State v. Muñoz*, 602 U.S. 899, 909 (2024) (holding "that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country"); *see also Wright v. Riveland*, 219 F.3d 905,

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

912 (9th Cir. 2000) (explaining that having a protected liberty interest is required to state a procedural due process claim). Indeed, it is fundamental that a noncitizen outside the United States has no constitutional right to entry. *Muñoz*, 602 U.S at 909.

In sum, Plaintiffs' due process challenge should be dismissed entirely where it does not raise a claim of entitlement to any relief plausible on its face.

## V. Regardless, Plaintiffs' APA claims fail at the threshold.

Plaintiffs' APA claims (Claims Two, Three, Five, and Six) also suffer from three distinct and independently fatal problems: (1) they fail to identify a discrete agency action; (2) they fail to identify a final agency action; and (3) agency funding decisions are committed to agency discretion by law.

### A. Failure to identify a discrete agency action.

Plaintiffs have failed to identify any discrete agency action that is subject to judicial review. Instead, they have mounted a programmatic challenge to a large number of agency processes that collectively make up the refugee program—e.g., work involving resettlement partners; management of refugee case processing, case decisions, admissions, and travel; provision of support services domestically and abroad. *See, e.g.*, FSC ¶¶ 229-57. By doing so, they effectively seek "wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). The APA, however, does not permit such challenges, lest it "become the task of the supervising court, rather than the agency, to work out compliance with the [agency's] broad statutory mandate, injecting the judge into day-to-day

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

18

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

agency management." *Norton v. SUWA*, 542 U.S. 55, 66–67 (2004). The Court is surely mindful by now of the micromanagement of the refugee program Plaintiffs have sought in this Court.

### B. Failure to identify a final agency action.

The President's suspension of USRAP entries is a Presidential action pursuant to a statute that confers authority directly on the President – it therefore cannot be reviewed under the APA. *See Franklin*, 505 U.S. at 802–03; *supra* Argument I. It rests on the President's determination of "the interests of the United States" and could not be ascribed to any lower official or agency so as to implicate the APA. *See Franklin*, 505 U.S. at 796 (holding "no final agency action" where "the final action complained of is that of the President," as "the President is not an agency within the meaning of the [APA]").

Even looking at the subsequent actions taken by the State Department in response to that Presidential action—such as halting travel arrangements, various resettlement contracts, and visa processing—those are *temporary* steps and therefore not final agency action as required for review under the APA. *See* 5 U.S.C. § 704. Agency action is final only if the action (1) marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

Thus, to the extent the State Department took actions relating to the President's pause of refugee entries in the USRAP Order, those steps are not a final agency action where they merely *pause* a range of refugee program processes given the President's suspension. The Government has *temporarily* suspended agency decisionmaking on applications only until the President determines "the resumption of entry of refugees … is in the interests of the United States." USRAP

DEFENDANTS' MOTION TO DISMISS
[CASE No. 2:25-CV-00255]

19

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Order § 4. Nothing remotely suggests a permanent or final state of affairs. Neither was DHHS' temporary suspension of funding for recently arrived refugees and SIV holders, which has now been fully reinstated, a final agency action.

Similarly, the Foreign Aid Order did not instigate any final agency action, where it merely called for a "90 day pause" of financial assistance to allow "for assessment of programmatic efficiencies and consistency with United States foreign policy." Foreign Aid Order § 3(a). That "pause" again, was temporary and is no way marked the "consummation" of the agency decisionmaking process.

### C. Committed to agency discretion

APA review is also unavailable because the State Department's decision to suspend funding to Organizational Plaintiffs and terminate their cooperative agreements was committed to agency discretion by law. 5 U.S.C. § 701(a)(2). The Supreme Court explained in *Lincoln v. Vigil* that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion," and that the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." 508 U.S. 182, 192 (1993). Indeed, allocating "funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within its expertise': whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, '… whether the agency has enough resources' to fund a program 'at all.'" *Id*. at 193 (quoting *Heckler v.*

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

20

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

*Chaney*, 470 U.S. 821, 831 (1985)). While such discretion is not unbounded, as long as the agency abides by relevant statutes and regulations, the APA "gives the courts no leave to intrude." *Id.*

That plainly describes the program at issue here. In March 2024, Congress appropriated to the State Department under the heading "Migration and Refugee Assistance" a lump sum of $3,928,000,000 "to remain available until expended" for various "refugee and migration needs," including domestic initial reception and placement benefits. *See* Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024, Div. F, 2024, Pub. L. No. 118-47, 138 Stat. 460, 729. The Secretary of State is afforded broad discretion to allocate these funds as he sees fit to meet a wide range of migration and refugee programs. And nothing in the Refugee Act suggests Congress intended to permit funding recipients such as Plaintiff Resettlement Partners to contest the Executive Branch's decisions regarding how to allocate appropriations across refugee and migration programs.

## CONCLUSION

For these reasons, the Court should dismiss the FSC.

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

21

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

DATED this 28th day of April, 2025.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW ENSIGN
Deputy Assistant Attorney General
Civil Division

AUGUST FLENTJE
Special Counsel

DAVID KIM
Senior Litigation Counsel

*/s/ Joseph McCarter*
JOSEPH MCCARTER
LINDSAY ZIMLIKI
ALEXANDRA YEATTS
JASON ZUBATA
Trial Attorneys
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
Washington, DC 20005
Phone: (202) 746-8537
Email: Joseph.A.McCarter@usdoj.gov

*Attorneys for Defendants*

I certify that this memorandum contains 6,119 words, in compliance with the Local Civil Rule 7(e)(3).

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00255]

22

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

## <u>CERTIFICATION OF CONFERRAL</u>

Pursuant to rule 5.6 of this Court's procedures, on April 28, 2025, counsel for Defendants conferred via e-mail with counsel for Plaintiffs as to this Rule 12(b) motion. Counsel for Plaintiffs stated that Plaintiffs will oppose this motion.

*/s/ Joseph McCarter*
JOSEPH MCCARTER
*Attorney for Defendants*

DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00255]

23

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537