| | |
|---|---|
| | District Judge Jamal N. Whitehead |

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, MARCO RUBIO, in his official capacity as Secretary of State, KRISTI NOEM, in her official capacity as Secretary of Homeland Security; DOROTHY A. FINK, in her official capacity as Acting Secretary of Health and Human Services,<br><br>*Defendants*. | CASE NO. 2:25-cv-255-JNW<br><br>**JOINT SUBMISSION REGARDING DEFENDANTS' DAY SEVEN COMPLIANCE FEASIBILITY CONCERNS** |

JOINT REPORT

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4111

**Defendants' Submission:**

On Thursday, May 8, 2025, the Parties met and conferred to discuss the Government's feasibility concerns as related to Day Seven Compliance Measures. The Government then drafted in writing its concerns and shared with Plaintiffs on Thursday afternoon as a first step towards reaching agreement on modified compliance measures. For each of the Day Seven Compliance Measures for which the Government has feasibility concerns, the Government identified in its draft shared with Plaintiffs: (a) the specific compliance measures at issue, (b) the precise operational constraints preventing compliance, and (c) proposed alternative compliance measures.

On Friday, May 9, 2025, the Ninth Circuit Court of Appeals granted Defendant's Motion to Amend or Further Clarify its March 25, 2025 partial stay of this Court's first preliminary injunction. The Ninth Circuit explained that the limited carveout from the stay "should be interpreted narrowly, on a case-by-case basis, to apply to individuals with a strong reliance interest arising prior to January 20, 2025, comparable to Plaintiff Pacito." *Pacito v. Trump*, No. 25-1313 Dkt. Entry 64.1 (9th Cir. 2025). Defendants adjusted their submission to Plaintiffs reflect the Ninth Circuit's May 9th order.

**Plaintiffs' Submission:**

Defendants do not identify actual feasibility concerns based on operational constraints that require relief from the measures ordered by the Court—but instead use this process to announce the limited compliance efforts they are willing to undertake. Despite the court's admonitions, Defendants continue to "approach[] the task at hand with one arm behind its back," May 1, 2025 Hrg. Tr. At 35:22-23, instead of promptly taking steps entirely within their control to comply with the preliminary injunctions.

The Court has made clear that Defendants are required to continue processing the full cohort of injunction-protected refugees. Disregarding this instruction, Defendants continue to hew to their

JOINT REPORT

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4111

invented two-week cut-off and have only taken steps to resume processing for a small group of 160 refugees. This is not due to specific operational constraints but rather to Defendants' decision to only process a limited number of refugees and continue to suspend the bulk of the resettlement infrastructure. This approach does not comply with the Court's order.

Plaintiffs do not believe that the Ninth Circuit's most recent order clarifying the scope of its stay, *Pacito v. Trump,* No. 25-1313, Dkt. No. 64.1 (9th Cir. May 9, 2025), alters Defendants' obligations under the Court's Compliance Framework Order, Dkt. No. 119. All refugees with travel booked before January 20 had a strong reliance interest in their upcoming travel. Many of these refugees had waited years for resettlement, and had organized their entire lives around their upcoming travel, including moving, selling belongings, and leaving employment. Defendants, who have no contact with refugee applicants between their conditional approval and travel, should not be permitted to be the arbiter of which refugees had a sufficiently strong reliance interest to fall under the Ninth Circuit's carveout from the stay of the first preliminary injunction. This Court is responsible for interpreting and enforcing the Ninth Circuit's order, and nothing in the order indicates otherwise. Plaintiffs request that the Court reject Defendants' proposal of an alternate plan for renewing clearances only for the refugees who Defendants themselves deem to have had a strong reliance interest arising prior to January 20.

### DAY SEVEN COMPLIANCE MEASURES

a. **Provide an update to Plaintiffs regarding the status of each individual plaintiff's case; and for each individual plaintiff who qualifies as an Injunction-Protected Refugee, identify any remaining processing steps that must be taken before they can travel to the United States.**

Defendants' Submission:

No feasibility concerns.

JOINT REPORT

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4111

Plaintiffs' Submission:

No response.

**b. Instruct agency offices and staff, including U.S. embassies, to resume processing the cases of Injunction-Protected Refugees. Defendants must advise all government offices and officials involved in processing refugee applications abroad that Defendants and their agents are enjoined from implementing any suspension of processing, travel, admissions, and domestic resettlement support for Injunction-Protected Refugees.**

Defendants' Submission:

No feasibility concerns as applied to those individuals who, in accordance with the Ninth Circuit's May 9, 2025 Order granting in part Defendants' Motion to Amend Order Granting a Stay, or, in the Alternative, for Clarification ("May 9 Order"), had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis.

The State Department requires all refugees to travel with arrangements made by IOM or, in exceptional and extremely limited circumstances, travel booked by a U.S. government entity. This applies to follow-to-join refugee (FTJ-R) beneficiaries as well. *See* 9 FAM 203.6-15(a) ("All [FTJ-R] beneficiaries must travel to the United States under IOM's auspices; they may not make their own separate travel arrangements."). Although the U.S. government briefly made an exception to this policy in March 2025 during the course of this suit because IOM was unable to schedule travel at the time, based on policy and practice, the Government reasonably concludes that no refugees had travel plans on or before January 20, 2025, that "was self-arranged." And the Government is not aware of any other "USRAP instrumentality" that arranges travel for refugees besides IOM.

Plaintiffs' Submission:

Defendants note in conjunction with this measure that they have rescinded the self-travel option for follow-to-join refugees that they previously created to comply with the first

JOINT REPORT
No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4111

3

preliminary injunction. Defendants should use the tools they have at hand to ensure compliance with the injunction and continue to permit a self-travel option for follow-to-join refugees that are able to coordinate and afford independent travel. *See* Dkt. 119 at 9 (requiring Defendants to "restart production of travel documents" for injunction-protected follow-to-join refugees by May 19).[1]

    **c. Confirm to the Court that the suspension on admission of Injunction-Protected Refugees has been lifted such that there is no impediment to Injunction-Protected Follow-to-Join Refugees with travel documents traveling to the United States and seeking admission.**

Defendants' Submission:

No feasibility concerns with confirming to the Court that the suspension on admission has been lifted for individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis. However, remaining impediments include:

1) The NVC security checks for all Injunction-Protected Refugee—including FTJ-Rs—have lapsed and will need to be redone before new travel documents may be issued. This expiration is due to issues with recurrent vetting unrelated to the pause of the USRAP consistent with E.O. 14163. NVC security checks are currently only valid for 30 days from the time security checks are requested.

---

[1] Defendants claim that refugees may only in "exceptional and extremely limited circumstances" travel with arrangements "booked by a U.S. government entity" (instead of IOM). But the U.S. government has just made plans to charter a government plane to transport 54 Afrikaner refugees to the U.S. this Sunday—all of whom were approved for refugee status in the months while the injunction-protected refugees' cases stalled. *See* Zolan Kanno-Youngs, et al., *Trump Officials Seek to Bring First White Afrikaners to U.S. as Refugees Next Week,* NY Times (May 9, 2025), available at https://www.nytimes.com/2025/05/09/world/africa/trump-afrikaner-refugees.html.

JOINT REPORT

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4111

4

2) The medical examinations for some Injunction-Protected FTJ-Rs have expired and will need to be redone before new travel documents may be issued. Medical examinations are typically valid for six months.

3) Longstanding State Department policy requires FTJ-Rs to travel with flights arranged by IOM. *See* 9 FAM 203.6-15(a). Self-travel is not an option for refugee applicants, including FTJ-Rs. Previous self-travel for FTJ-Rs in March 2025 was conducted as an exception to this policy and only because, at that time, IOM was unable to schedule refugee applicants' travel.

<u>Plaintiffs' Submission:</u>

The impediment cited by Defendants is a change in the validity period for the NVC security check that post-dates the executive order: these checks that were previously valid for 36 months are now, according to Defendants, valid for only 30 days. Notwithstanding this new development, which has resulted in all injunction-protected refugees needing at least one security clearance to be redone, these checks are a routine component of the refugee vetting process that do not on their own pose an obstacle to Defendants' prompt compliance with the Court's orders. Indeed, Defendants state that the vetting agencies are returning most NVC security checks results within about a week. Defendants, however, have only requested new NVC checks for a small handful of injunction-protected refugees, based on their decision to resume processing only for individuals who they unilaterally deem to fall within the scope of the injunction.

JOINT REPORT

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4111

5

**d. To the extent necessary to process, admit, and provide resettlement support to Injunction-Protected Refugees, issue notices lifting the suspension of USRAP cooperative agreements for operating Resettlement Support Centers ("RSCs"), including, but not limited to, Plaintiffs CWS and HIAS.**

<u>Defendants' Submission:</u>

No feasibility concerns, as the cooperative agreements for RSCs Eurasia, Latin America, and Middle East and North Africa (MENA), which are all operated by IOM, were never terminated and are not currently suspended. Additionally, the cooperative agreement for RSC Africa, operated by CWS, was never terminated and is not suspended. PRM will lift the suspensions on cooperative agreements for RSC Asia and RSC Austria but only "[t]o the extent necessary to process" individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis. PRM understands that the organization that previously operated RSC Turkey and the Middle East (TuME) is no longer operational, and they have not agreed to the terms of reinstatement as of the date of this report. There is no need to unsuspend that cooperative agreement, as the functions necessary to process individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis, can be performed by another RSC. PRM is considering which RSCs may provide support to any such individuals previously supported by RSC TuME.

<u>Plaintiffs' Submission:</u>

No response.

| JOINT REPORT | U.S. Department of Justice |
|---|---|
| | Civil Division, Office of Immigration Litigation |
| | P.O. Box 878, Ben Franklin Station |
| No. 2:24-cv-00255-JNW | Washington, DC 20044 |
| | (202) 616-4111 |

    **e. Reinstate resettlement partner access, including for CWS and HIAS, to the START, FileCloud, RPC Help Desk (ITSM), and any other databases or technologies necessary to facilitate refugee application processing and travel. This includes ensuring that funding is restored for any necessary databases and technology maintained by resettlement partners, such as the IRIS beneficiary data repository.**

<u>Defendants' Submission:</u>

    No feasibility concern, but, as a matter of policy, and consistent with user agreements, PRM does not provide access to USRAP systems to entities without a need to know that information. To limit user access to only what is necessary for official duties, to protect the integrity of the USRAP, and to reduce the risk of unauthorized disclosure of sensitive information during the suspension of USRAP operations, PRM limited access to USRAP applications and IT systems, including START, FileCloud, and the Help Desk (ITSM).

    Some RSC staff already have had access restored, and PRM will contact RSCs for a list of names of additional RSC staff who need access to PRM-owned-and-operated IT systems to process individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis. Upon receipt of these names, PRM will restore the needed access. PRM will endeavor to restore access within 3 days of receiving the names of individuals who need access.

<u>Plaintiffs' Submission:</u>

    It is unclear whether Defendants plan to have reinstated resettlement partner access to necessary USRAP systems by the compliance deadline. Defendants state that some RSC staff at IOM and CWS—who operate the supposedly active RSCs—have already had access restored to necessary USRAP systems. However, it is unclear how many staff have had access reinstated, and to what databases—and whether the level of access restored is sufficient to resume processing. For instance, organizational Plaintiff CWS has an initial list prepared of

JOINT REPORT  
No. 2:24-cv-00255-JNW

U.S. Department of Justice  
Civil Division, Office of Immigration Litigation  
P.O. Box 878, Ben Franklin Station  
Washington, DC 20044  
(202) 616-4111

7

      RSC Africa staff who require access, but the government has not yet requested this list from CWS. This, along with the lack of any guidance from PRM regarding resumption of processing, means that RSC Africa is not currently able to process any cases, despite Defendants representation that the RSC is operational.

    **f. Take immediate steps to facilitate travel and admissions for Injunction-Protected Refugees whose clearances, including medical and security authorizations, have not yet lapsed. Provide reporting to the Court (in accordance with the reporting timeline outlined below—i.e., three days after the deadline for compliance) regarding the total number of these individuals and the timeline for their admission. Given that the Government has already begun to admit some Injunction-Protected Refugees, such admissions should proceed immediately and with haste.**

Defendants' Submission:

    No feasibility concern, but there are no Injunction-Protected Refugees whose NVC security checks have not lapsed. Due to issues with recurrent vetting unrelated to the pause of the USRAP consistent with E.O. 14163, NVC security checks are currently only valid for 30 days from the time security checks are requested. Therefore, PRM-initiated NVC security checks for all individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis, have lapsed and will need to be re-requested (and run by agency partners) before travel can be scheduled by IOM. Additionally, the Government will need to assess which individuals had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis, in accordance with the Ninth Circuit's May 9 Order.

Plaintiffs' Submission:

    As discussed above in response to measure 1.C, rerunning NVC security checks is a routine process and should not represent a significant barrier to resuming travel and admissions for injunction-protected refugees who are otherwise travel ready. Notably, Defendants have

JOINT REPORT  
No. 2:24-cv-00255-JNW

U.S. Department of Justice  
Civil Division, Office of Immigration Litigation  
P.O. Box 878, Ben Franklin Station  
Washington, DC 20044  
(202) 616-4111

8

opted to limit the universe of individuals for whom they have re-requested the security checks to the group of 160 to whom they wished to restrict application of the injunction, rather than, for example, all injunction-protected refugees with still-valid medical clearances who would be otherwise travel-ready. Further delay with respect to resuming processing as to this group will only lead to compounding delays, as these refugees may have medical and other clearances expire in the meantime.

g. **Develop a comprehensive plan, including a detailed timeline, to renew the travel clearances, including security and medical authorizations, of all Injunction-Protected Refugees whose clearances have lapsed since January 20. This comprehensive plan may include a combination of measures, including: extending existing clearances where possible; arranging new screening appointments where formal extensions are not possible; authorizing applicants to arrange their own medical screenings; and facilitating expedited treatment from security vetting agencies. The Government must submit this plan to the Court in accordance with the reporting timeline outlined below (i.e., three days after the deadline for compliance).**

Defendants' Submission:

No feasibility concerns with developing a comprehensive plan to identify individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, starting with conducting a case-by-case review of the 160 refugees who were scheduled to travel in the first two weeks after January 20, 2025. Of these 160 refugees, 11 have already been admitted as refugees as part of the Afghan cohort previously referenced in court filings, and 13 more are ready for departure and scheduled for travel next week, leaving 136 individuals who were scheduled to travel in the first two weeks after January 20, 2025. Additionally, there are some number of individuals in this cohort of 160 who have since arrived in the United States through pathways other than IOM-facilitated USRAP travel.

Of those remaining in the cohort of 160 who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as determined by

| JOINT REPORT | U.S. Department of Justice |
| --- | --- |
| | Civil Division, Office of Immigration Litigation |
| | P.O. Box 878, Ben Franklin Station |
| No. 2:24-cv-00255-JNW | Washington, DC 20044 |
| | (202) 616-4111 |

a case-by-case analysis, 71 refugees still have valid medical examinations. For those who fall within the scope of the Ninth Circuit's May 9 Order with expired medical exams, PRM is consulting with CDC to determine whether the validity of the medical exam can be extended. For those whose validity cannot be extended, PRM is working with IOM to schedule them for a new medical exam expeditiously. Scheduling a new medical examination and obtaining the results can take approximately four to six weeks.

Additionally, PRM has re-requested new NVC security checks for all of the remaining refugees of the 160 who have not yet traveled or are not travel ready. Currently, vetting security agencies (VSAs) are returning some NVC security check responses within approximately one week. However, the circumstances for each case are different—some security checks take much longer if derogatory or conflicting information is uncovered.

It has historically taken approximately 4 weeks for refugees to be allocated and then assured to domestic resettlement partners. However, it is likely that some of the individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis, had been assured to resettlement agencies that are no longer immediately functional, and it will take time to reassess where these individuals can be placed. Additionally, some of the individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis, may have been assured to private sponsor groups, and those sponsors would need to be contacted to determine whether they are still willing to provide

JOINT REPORT

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4111

10

support to the refugees.[2] In addition, Section 412 of the INA, 8 USC 1522(a)(2)(A), requires HHS/ORR and State to consult at least quarterly with state and local governments regarding the intended distribution of refugees among the states and localities. This consultation may need to occur before resettlement of individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis.

USCIS is reviewing the universe of individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis, and evaluating who needs a new biometric check. USCIS will likely have identified all individuals in need of a new biometric check by Monday, May 12. Biometric check results are typically returned within a few days. Once the biometric security check, NVC security check, and medical clearance are valid for a case and the case has received a domestic placement, PRM will work with IOM to schedule the case for travel. It can take approximately 6 weeks to secure exit permits (depending on the location), coordinate with refugees on departure dates, book travel, and transport refugees to transit centers prior to departure. It is likely that many of the exit permits (the duration of which varies by country) of individuals who, in accordance with the Ninth Circuit's May 9 Order, had a strong reliance interest arising prior to January 20, 2025, as assessed on a case-by-case basis, have expired, and some of the refugees' circumstances may have changed (i.e., some may have

---

[2] Due to the deadline for filing this submission and the time the Ninth Circuit's May 9 Order was issued, the Government has not yet been able to identify which individuals had a strong reliance interest arising prior to January 20, 2025, and whether those individuals were assured to private sponsor groups.

| | |
|---|---|
| JOINT REPORT | U.S. Department of Justice |
| | Civil Division, Office of Immigration Litigation |
| | P.O. Box 878, Ben Franklin Station |
| No. 2:24-cv-00255-JNW | Washington, DC 20044 |
| | (202) 616-4111 |

11

had children, got married, moved, etc.), complicating travel rescheduling. Finally, once a case is arranged for travel, prior to departure, USCIS will run a just-in-time TECS/NCIC check.

Plaintiffs' Submission:

Defendants state that they do not plan to develop a comprehensive plan for renewing the security clearances and medical checks for the approximately 12,000 possible injunction-protected refugees. But Defendants identify no "precise operational constraint" that prevents them from designing and proposing the plan ordered by the Court. Rather, Defendants propose that they will instead submit a significantly more limited plan involving a case-by-case review of 160 cases—1% of the total estimated protected population—with no indication of any plan or timeline to review the remainder of the injunction-protected cases.

Defendants have maintained to the Court that this cohort of 160 refugees has strong reliance interests, May 1, 2025 Hrg. Tr. At 5-6:24-25; 1-6, and it is unclear why further evaluation of this group is necessary to renew clearances. In any event, Defendants should not be permitted to be the case-by-case arbiters of which refugees fall within the Ninth Circuit's carveout. Plaintiffs request that the Court reject Defendants' attempt to redefine their obligation under this compliance measure and continue to require Defendants to develop a comprehensive plan for all injunction-protected refugees.

Defendants suggest that one barrier to getting refugees travel-ready is assurances, as Defendants represent that it takes approximately 4 weeks for refugees to be allocated and then assured to resettlement agencies. But the injunction-protected refugees are already allocated and assured to resettlement agencies, so this step should not pose a month-long delay in resettlement.

JOINT REPORT  
No. 2:24-cv-00255-JNW

U.S. Department of Justice  
Civil Division, Office of Immigration Litigation  
P.O. Box 878, Ben Franklin Station  
Washington, DC 20044  
(202) 616-4111

12

Defendants' expressed concern about resettlement agencies that are "no longer immediately functional" is a slippery attempt to avoid recognizing a self-imposed constraint. As a threshold matter, Defendants have not contacted resettlement agencies to assess their capacity to resettle the injunction-protected cases that were assigned to them.[3] Instead, Defendants shared with Plaintiffs that they still plan to reinstate only one resettlement agency to provide R&P services for the entire cohort, rather than utilizing the existing reception & placement infrastructure, which would allow most refugees to be resettled by the agencies that have already assured them. This plan to re-allocate all injunction-protected refugees' cases would necessarily limit the pace and scale of processing and admissions because no single resettlement agency can possibly do the work that was previously accomplished by ten. Further, no single resettlement agency has the size or geographic scope to be able to provide for resettlement support across the country and ensure that refugees are resettled near any family ties, as contemplated by the Refugee Act.

Defendants also represent that they must consult with state and local government before "large-scale resettlement" of injunction-protected refugees occurs. Injunction-protected refugees were already allocated to local domestic resettlement agencies and were on the verge of travel and thus their geographic distribution presumably has already been accounted for in past consultations. Further, resettlement agencies have continued participating in quarterly consultations with state and local governments and stakeholders about refugee placement.

---

[3] Organizational Plaintiffs CWS and HIAS remain ready to receive the cases previously assured to them, subject to reassignment within their own networks as needed.

JOINT REPORT  
No. 2:24-cv-00255-JNW

U.S. Department of Justice  
Civil Division, Office of Immigration Litigation  
P.O. Box 878, Ben Franklin Station  
Washington, DC 20044  
(202) 616-4111

These recurring consultations are an ordinary part of the resettlement process and should not be invoked as an exceptional circumstance to delay compliance with the orders.

DATED this 9th day of May, 2025.

        Respectfully submitted,

        YAAKOV M. ROTH
        Acting Assistant Attorney General
        Civil Division

        DREW ENSIGN
        Deputy Assistant Attorney General

        */s/ David Kim*
        DAVID KIM
        (IL Bar No. 6318223)
        Senior Litigation Counsel
        U.S. Department of Justice
        Civil Division, Office of Immigration Litigation
        Washington, D.C. 20005
        Phone: (202) 598-0114
        Email: david.kim4@usdoj.gov

        ALEXANDRA YEATTS
        JOSEPH MCCARTER
        JASON ZUBATA
        LINDSAY ZIMLIKI
        Trial Attorneys

        *Attorneys for Defendants*

JOINT REPORT

No. 2:24-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4111

14

| | |
|---|---|
| Deepa Alagesan* | Harry H. Schneider, Jr., WSBA No. 9404 |
| Mevlüde Akay Alp* | Jonathan P. Hawley, WSBA No. 56297 |
| Linda Evarts* | Shireen Lankarani, WSBA No. 61792 |
| Ghita Schwarz* | Esmé L. Aston, WSBA No. 62545 |
| **International Refugee Assistance Project** | **Perkins Coie LLP** |
| One Battery Park Plaza, 33rd Floor | 1201 Third Avenue, Suite 4900 |
| New York, New York 10004 | Seattle, Washington 98101 |
| Telephone: (646) 939-9169 | Telephone: (206) 359-8000 |
| Facsimile: (516) 324-2267 | Facsimile: (206) 359-9000 |
| dalagesan@refugeerights.org | HSchneider@perkinscoie.com |
| makayalp@refugeerights.org | JHawley@perkinscoie.com |
| levarts@refugeerights.org | SLankarani@perkinscoie.com |
| gschwarz@refugeerights.org | EAston@perkinscoie.com |
| | |
| Melissa Keaney* | John M. Devaney* |
| **International Refugee Assistance Project** | **Perkins Coie LLP** |
| P.O. Box 2291 | 700 Thirteenth Street NW, Suite 800 |
| Fair Oaks, California 95628 | Washington, D.C. 20005 |
| Telephone: (646) 939-9169 | Telephone: (202) 654-6200 |
| mkeaney@refugeerights.org | Facsimile: (202) 654-6211 |
| | JDevaney@perkinscoie.com |
| | |
| Laurie Ball Cooper* | |
| Megan Hauptman* | Joel W. Nomkin* |
| **International Refugee Assistance Project** | **Perkins Coie LLP** |
| 650 Massachusetts Ave. NW | 2525 East Camelback Road, Suite 500 |
| Washington, D.C. 20001 | Phoenix, Arizona 85016 |
| Telephone: (646) 939-9169 | Telephone: (602) 351-8000 |
| lballcooper@refugeerights.org | Facsimile: (602) 648-7000 |
| mhauptman@refugeerights.org | JNomkin@perkinscoie.com |
| | |
| | Nicholas J. Surprise* |
| | **PERKINS COIE LLP** |
| | 33 East Main Street, Suite 201 |
| | Madison, Wisconsin 53703 |
| | Telephone: (608) 663-7460 |
| | Facsimile: (608) 663-7499 |
| | NSurprise@perkinscoie.com |
| | |
| | *Counsel for Plaintiffs* |
| | |
| | *\* Admitted pro hac vice* |

| | |
|---|---|
| JOINT REPORT | U.S. Department of Justice |
| | Civil Division, Office of Immigration Litigation |
| | P.O. Box 878, Ben Franklin Station |
| No. 2:24-cv-00255-JNW | Washington, DC 20044 |
| | (202) 616-4111 |