THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, <br><br> *Defendants*. | Case No. 2:25-cv-255-JNW <br><br> **PLAINTIFFS' SUBMISSION REGARDING PROPOSAL FOR SPECIAL NEUTRAL[1] AND PROCEDURES FOR EVALUATION** |

---

[1] Plaintiffs use the term "special neutral" synonymously with the term "special master" as it is used in Federal Rule of Civil Procedure 53(d).

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 1
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## INTRODUCTION

Pursuant to the Court's order of May 15, 2025, Dkt. No. 126, Plaintiffs submit their position regarding i) proposed qualifications and nominations for a special neutral, and ii) suggested procedures for the case-by-case evaluation process for determining which refugees qualify as Injunction-Protected Refugees based on their strong reliance interests.

## PROPOSAL FOR SPECIAL NEUTRAL

On May 15, 2025, the Court determined that appointment of a special neutral is warranted to assist with an assessment of the reliance interests of refugee applicants who meet the Ninth Circuit's three-part test but for whom a qualitative assessment is now required to determine whether they fall within the scope of the narrowed first preliminary injunction ("Injunction-Protected Refugees"). Dkt. No. 126. Plaintiffs agree with the Court's decision to appoint a neutral arbitrator to administer an efficient and fair process for making the required determinations. Defendants contend that the appointment of a special neutral is not necessary because Defendants should instead be the ones to determine whether refugees have a sufficient reliance interest. But as this Court has already concluded, Dkt. No. 126 at 3, Defendants should not be in charge of determining the scope of their obligations under the Court's preliminary injunction.

Given the ongoing harm accruing to Plaintiffs and beneficiaries of this Court's preliminary injunction, it is critical that a special neutral is identified and assigned expeditiously to enable the implementation of the case-by-case evaluation process without delay. Plaintiffs propose the qualifications listed below, which are informed by the urgency and nature of the inquiry, including the importance of the candidate having an understanding of the circumstances of displaced people (for example, the relative impact of actions taken in reliance on an impending move across continents, barriers to access such as language difference and technological barriers). Plaintiffs propose the following qualifications:

- Must have ability to commit substantial capacity and time for the next several months until the process is complete;

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 2
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

- Highly preferred that the candidate be licensed to practice law or have practiced law in the past and have some quasi-adjudicatory experience (non-lawyers with adjudicatory, arbitration, or mediation experience may be considered);
- Highly preferred that the candidate has a demonstrated familiarity or experience with issues affecting displaced people abroad or those living in precarious situations abroad and/or familiarity with immigration or refugee work.

Plaintiffs nominate the following candidates for special neutral:

- Hon. Phillip S. Gutierrez[2]
- Prof. Margo Schlanger
- Prof. Jean Reisz
- Susan Martin (availability not confirmed)

## CASE-BY-CASE EVALUATION PROCESS

The parties have met and conferred regarding their respective proposals for the case-by-case evaluation, and while they agree on some aspects of the process, which are noted below, they fundamentally disagree regarding the role of the special neutral (with Defendants taking the position that the Court should not appoint one).

Plaintiffs propose the following broad contours of a process to document and evaluate on a case-by-case basis the reliance interests of the universe of refugees potentially covered by the Court's preliminary injunction. Plaintiffs propose that the appointed special neutral and the Court, with input from the parties, will set a more detailed framework and schedule for accomplishing the steps set forth below.

---

[2] Plaintiffs note that a member of Plaintiffs' counsel team, Jonathan Hawley, served as a law clerk for J. Gutierrez from 2017-2018.

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 3
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

I. **Case Identification**

    a. **Identification of universe of cases eligible for evaluation of reliance interests**

As a threshold matter, Defendants must identify the universe of refugee cases that satisfy the Ninth Circuit's three-part test and are thus eligible to be evaluated as to whether they had "strong reliance interests" to determine their inclusion within this Court's injunction ("review-eligible refugees"). *Pacito v. Trump*, No. 25-1313, Dkt. 46.1, 64.1. While prior orders have referenced the population of individual refugee applicants, refugee cases often include multiple family members and travel cannot be booked until every member of a case group is ready for travel. Both parties therefore agree that Defendants should identify a list of cases rather than individual applicants. Plaintiffs understand that the number of cases is smaller, perhaps considerably so, than the 12,000 individuals referenced in prior filings.[3] The review-eligible cases can be identified based on the indication in the START database that they had been scheduled for travel on or before January 20, 2025, regardless of the flight dates or the date of travel cancellation. Defendants would need to verify this data with the International Organization for Migration (IOM), given that organization's role in booking travel. Once this list is confirmed, Defendants would provide a list of the case numbers to Plaintiffs. In the event Plaintiffs become aware of a case not initially identified by Defendants that Plaintiffs believe falls within the population of review-eligible refugees, the parties can meet and confer to resolve the issue.

    b. **Identification of limited cases benefitting from a rebuttable presumption of qualifying as Injunction-Protected Refugees**

As the Court has recognized with respect to the cases of individuals booked to travel in the two-week period after January 20, Dkt. No. 126, some cases are amenable to a rebuttable

---

[3] Plaintiffs have sought confirmation from Defendants that this figure includes cases where travel was booked prior to January 20 and cancelled before that date but not re-booked as of January 20, per the Ninth Circuit's instruction that the injunction should apply to refugees who had travel plans "on *or before* January 20, 2025," however as of the time of this filing, Defendants have not yet confirmed. *See* Dkt. No. 46.1, Order, at 4 (emphasis added).

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 4
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

presumption that they qualify as Injunction-Protected Refugees based on the nature of the case type. Plaintiffs have identified three limited groups of cases, each of which are easily identifiable in the START database, that necessarily demonstrate strong reliance interests such that an individualized analysis would be inefficient and needlessly prolong ongoing harm. Plaintiffs propose that the Court apply a rebuttable presumption that these cases qualify as Injunction-Protected Refugees for whom Defendants must resume case processing pursuant to the preliminary injunction. For all other cases identified as potentially eligible based on the Ninth Circuit's three-part test, Plaintiffs propose that they be evaluated pursuant to the procedures laid out in Section II.

If Defendants have a good-faith reason to believe that a case identified as belonging in one of the categories outlined below does not qualify as an injunction-protected case, Plaintiffs propose that Defendants be required to submit their reasoning and any evidence to the special neutral, with a copy provided to Plaintiffs' counsel for informational purposes. If the special neutral determines that the presumption has been rebutted, the case would then undergo the case-by-case review detailed in Section II.

### i. Cases of minor children traveling without an accompanying adult

Minor children who were scheduled to travel without an accompanying adult to the United States prior to January 20, 2025 necessarily had strong reliance interests, as Defendants' submission recognizes in proposing that such cases be considered first.[4] These children travel alone in order to be reunited with parents or family members in the United States, or to be placed in stable foster care, and have made significant preparations in reliance on their imminent travel. *See* USRAP Processing Guide 2 Prescreen, Appx. B & C, at 123-129 (2023)

---

[4] Defendants propose prioritizing their evaluation of reliance interests for only a group of 12 refugee minors who were designated under the Unaccompanied Refugee Minor Program, which is a program that facilitates admission for refugee minors who no longer have a parent or legal guardian. *See* Office of Refugee Resettlement, "Unaccompanied Refugee Minors Program," https://acf.gov/orr/programs/refugees/urm (last visited May 22, 2025). Plaintiffs refer to a broader group that includes any minor who was scheduled to travel to the United States without a parent or legal guardian, which would include minors who were scheduled to travel to the United States to be reunited with a parent.

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 5
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

https://www.documentcloud.org/documents/23988935-start_usrap-processing-guide-2-prescreen/#document/ (describing procedures related to minor counseling and processing). In these cases, steps to transition the child's situation in anticipation of travel would need to have been taken given the nature of a child living without a parent or legal guardian. Moreover, it would not be feasible to require children to explain their reliance interests, and such a process is unnecessary because those interests are clear on the face of the case.

### ii. Cases authorized for expedited processing for medical or protection concerns

The State Department authorizes certain refugee cases for expedited processing due to urgent medical or protection reasons. *See* USRAP Processing Guide 10: General Case Processing at 68-69 (2023), https://www.documentcloud.org/documents/23988949-start_usrap-processing-guide-10-general-case-processing_merged/#document/p67. Because of the government's prior determination that the case merits expedited treatment, the reliance interests of cases so designated are already clear and sufficiently strong.

### iii. Cases of Afghan refugees required by the U.S. government to relocate to a third location for processing of their application

Under a State Department initiative, certain Afghan refugees were required to relocate from Afghanistan to Camp As Sayliyah (CAS) in Qatar to pursue their refugee applications, where they lack authorization to stay long-term. *See* IRAD Training, Camp As Sayliyah (CAS) Afghan Parole 3 (2022), https://www.documentcloud.org/documents/23789601-irad-training-camp-as-sayliyah-cas-afghan-parole-adjudications-16-february-2022/. The government represents that many of these individuals fall within the 160 cases that the Court has ordered be processed according to a rebuttable presumption of reliance interests; however, Plaintiffs have reason to believe there may be a small number of additional cases with travel booked prior to January 20 who remain stranded at Camp As Sayliyah. Given the strong reliance interests necessarily at stake for individuals in this situation, a rebuttable presumption should apply for any such case regardless of when the refugees were scheduled to travel.

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 6
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**c. Notification**

Defendants should be required to notify case members promptly at each stage of the evaluation process, starting with the case identification. Cases identified as review-eligible under the Ninth Circuit's three-part test should be notified immediately that they may be eligible for processing under the injunction. Following this initial notification, cases identified by Defendants as falling within the enumerated categories above, and to which Defendants do not indicate an objection within 7 days, should be notified expeditiously that their cases will resume processing. All other cases will be notified that they will be contacted by the RSC processing their case to complete a survey to provide information related to their reliance interests. Cases where Defendants indicate that they wish to rebut the presumption of strong reliance can be notified of next steps on a rolling basis. As discussed further below, there is no need to stagger these notifications, as review-eligible refugees may require time to compile the relevant information.

**II.   Documentation of reliance interests by Resettlement Support Centers**

Plaintiffs propose that the remaining cases for which a rebuttable presumption does not apply undergo case-by-case evaluation of their reliance interests. Because this information is not yet captured anywhere, the first step needed will be to document each case's reliance interests. The parties agree that the RSCs, as the entities in direct contact with refugee applicants and equipped to navigate communication barriers, should be responsible for documenting applicants' reliance interests. As described above, the parties have agreed that the documentation and review can be conducted as to a particular refugee "case," or family. This would avoid unnecessary duplication of work, given that families traveling together as part of the same case group will have necessarily taken overlapping and cumulative actions in reliance on their scheduled travel. This will also provide for a more effective and fair review process.

Plaintiffs propose that the RSCs administer a survey for every review-eligible case by collecting information from the principal applicant about their family's reliance interests. Because

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 7
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

"reliance interest" is a legal term of art, the survey would include specific questions about the actions taken by the refugee family in reliance on their upcoming travel to the United States; a proposed survey is attached as Exhibit A. Plaintiffs object to Defendants' proposal that the agencies determine these questions, which should be agreed upon between the parties and the special neutral. Plaintiffs propose that the RSCs send the survey by email to all review-eligible cases as soon as they are identified.

Defendants propose a method whereby reliance interests are assessed only in batches, based on the case's original travel date. But there is no reason to delay the RSC's initial outreach, given that applicants will respond on a rolling basis, and the parties and special neutral can begin to conduct the review as they are received. Administering the survey to groups of refugees at a time and waiting for them to complete it before others could begin would exacerbate the delay in resuming processing for these review-eligible refugees, and will not reduce the burden on the RSCs or the special neutral.

Although many refugee applicants may be able to provide responses via email, many will not be able due to language barriers, literacy level, or technology access. The RSCs would need to determine which applicants may require survey administration over the phone or in person. In some cases, the RSC may be required to conduct additional follow-up to obtain a complete response to the survey.

### III. Review of Documented Reliance Interests

Under Plaintiffs' proposal, once the RSC deems a response complete, the response can be reviewed to determine whether the case has strong reliance interests that put it within the scope of the preliminary injunction, as narrowed by the Ninth Circuit. To streamline the review, Plaintiffs propose that the RSCs share the responses with Defendants on a rolling basis, and that Defendants conduct an initial review within a short period (e.g., 3 days) to determine whether sufficient reliance interests have been shown. In cases where the government agrees that sufficient reliance interests have been shown, the case can be referred for continued processing (and the applicant so

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 8
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

notified) without further consideration from the special neutral. Defendants propose instead that they make the final determination themselves, and that there would be no opportunity for an applicant or Plaintiffs to contest a decision—a unilateral process that is not consistent with either the Ninth Circuit or this Court's orders.[5]

Plaintiffs propose that the special neutral would receive survey responses on a rolling basis and, for those cases where Defendants contest reliance interests, the special neutral would conduct an independent review. The special neutral would make a determination within a fixed period (e.g., 7 days from receiving the survey response from Defendants). The special neutral should also have the option to request additional information from the applicant (via the RSCs) where necessary to render a determination. Finally, the special neutral should relay the determinations to the parties and provide them with the relevant survey response in all cases,[6] on a rolling basis, with Defendants communicating the determination to the applicant shortly thereafter.[7]

### IV. Dispute Resolution

Plaintiffs propose that, after the shares a determination with the parties, the parties and the applicant then have the opportunity to object to the determination, which would ultimately be

---

[5] Defendants also propose that in addition to collecting the information regarding a particular case's reliance interests, the RSC make a recommendation to the government about whether the case has demonstrated sufficiently strong reliance interests. Plaintiffs do not take any position about whether the RSCs should play this additional role so long as it does not add further delay given potential RSC capacity constraints.

[6] As the survey responses include information relevant to the administration of the injunction in this case, rather than applicants' individual refugee cases, Plaintiffs should be afforded access as a party and as putative class representatives and counsel. Plaintiffs are happy to discuss any revisions to the applicable protective order in this case to facilitate the transmission of information.

[7] Plaintiffs propose that the parties discuss with the special neutral specific guidelines for review shortly after their appointment, so that the special neutral can set a more detailed framework for the review ahead of the survey responses being returned.

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 9
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

resolved by the Court.[8] The parties should have a relatively short period of time to object (e.g., 5 days), given Defendants will have already reviewed the survey response in their initial review; however, objections from applicants received after this time period should still be entertained given the multiple layers of communication involved and barriers applicants may face in communicating their objection.

Plaintiffs propose that the objecting party file a concise explanation of their objection on the docket, with the survey response and special neutral determination filed under seal as needed to shield identifying information. Should Defendants introduce any new information in an objection, it is important that that information be shared with the applicant. If the applicant objects, the RSC would share the objection with Defendants, who would then ensure all counsel of record, the special neutral, and chambers are notified and provided with a copy of the objection.

Over the course of the review, the parties may wish to raise issues beyond objections to individual case-level reliance determinations. Plaintiffs propose that the parties first attempt to resolve the issue with each other (and the special neutral) before raising such issues to the Court's attention.

## I. Miscellaneous

### a. Reporting

Regular reporting about the progress of the reliance review is important to ensure the Court, the special neutral, and the parties are aware of any roadblocks that arise. Plaintiffs propose that the special neutral report on progress to the Court on a weekly basis, to include: i) the number of cases reviewed, aggregated by approval, rejection and return for additional information; and ii) the number of cases pending review.

---

[8] Plaintiffs propose that objections should be resolved by the Court with the possibility of revisiting this procedure should the volume of objections and the speed with which review progresses become impracticable.

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 10
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Separately, Plaintiffs propose that Defendants provide reporting to the Court every week as to the progress of the RSCs' survey outreach and the continued processing of Injunction-Protected Refugees. As to the case-by-case evaluation process, these reports should include for any given week: i) the number of review-eligible cases; ii) the number of survey responses received by Defendants; and iii) the number of survey responses reviewed by Defendants. As for continued processing of Injunction-Protected Refugees, the report should include for any given week: i) the total number of cases and applicants being processed pursuant to the Court's injunction, and of those applicants, the total number of refugees who: a) were admitted to the United States; b) were scheduled for travel; c) were scheduled for medical exams; d) for whom medical exam results were received; e) received renewed security authorizations; and f) had their applications denied.

### b. Payment

Plaintiffs understand that the Court's appointment order will specify the payment of the special neutral. Fed. R. Civ. P. 53(g). Should the court order that the special neutral's compensation be paid by one of the parties, Plaintiffs believe that Defendants should be required to bear the full costs given that the preliminary injunction is being enforced against Defendants for their unlawful actions and they bear responsibility for referral of the case to a special neutral. *See* Fed. R. Civ. P. 53(g)(3). In any event, it would be inequitable to require Plaintiffs to bear these costs given the documented financial harm to organizational plaintiffs and individual plaintiffs' limited means. *See id.*

### c. Resumption of benefits for already-resettled refugees

Plaintiffs note that this case-by-case evaluation framework, and the Ninth Circuit's clarification orders regarding the first preliminary injunction in general, do not cover Plaintiff Ali and similarly situated resettled refugees, who continue to be protected by the Court's second preliminary injunction enjoining the termination of USRAP-related funding, including reception-and-placement benefits. Defendants continue to be required to provide post-arrival services to

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 11
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  these refugees, along with Injunction-Protected Refugees admitted in the future, notwithstanding
2  the Court's rescission of its prior compliance framework order, Dkt. No. 126.

PLAINTIFFS' SUBMISSION REGARDING
SPECIAL NEUTRAL AND PROCEDURES – 12
(No. 2:25-cv-255-JNW)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dated: May 22, 2025

Deepa Alagesan*
Mevlüde Akay Alp*
Linda Evarts*
Ghita Schwarz*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
dalagesan@refugeerights.org
makayalp@refugeerights.org
levarts@refugeerights.org
gschwarz@refugeerights.org

Melissa Keaney*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 2291
Fair Oaks, California 95628
Telephone: (646) 939-9169
mkeaney@refugeerights.org

Laurie Ball Cooper*
Megan Hauptman*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Ave. NW
Washington, D.C. 20001
Telephone: (646) 939-9169
lballcooper@refugeerights.org
mhauptman@refugeerights.org

By: s/ *Harry H. Schneider, Jr.*
Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792
Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com
EAston@perkinscoie.com

John M. Devaney*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
JDevaney@perkinscoie.com

Joel W. Nomkin*
**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
JNomkin@perkinscoie.com

Nicholas J. Surprise*
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
NSurprise@perkinscoie.com

*Counsel for Plaintiffs*

* *Admitted pro hac vice*

PLAINTIFFS' SUBMISSION REGARDING SPECIAL NEUTRAL AND PROCEDURES – 13
(No. 2:25-cv-255-JNW)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000