District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER;
PLAINTIFF JOSEPHINE; PLAINTIFF
SARA; PLAINTIFF ALYAS; PLAINTIFF
MARCOS; PLAINTIFF AHMED;
PLAINTIFF RACHEL; PLAINTIFF ALI;
HIAS, INC.; CHURCH WORLD SERVICE,
INC.; and LUTHERAN COMMUNITY
SERVICES NORTHWEST,

                *Plaintiffs*,

      v.

DONALD J. TRUMP, in his official capacity
as President of the United States, MARCO
RUBIO, in his official capacity as Secretary of
State, KRISTI NOEM, in her official capacity
as Secretary of Homeland Security;
DOROTHY A. FINK, in her official capacity
as Acting Secretary of Health and Human
Services,

                *Defendants*.

CASE NO. 2:25-cv-00255

DEFENDANTS' RESPONSE TO MAY 15,
2025 ORDER RESCINDING COMPLIANCE
FRAMEWORK

## **INTRODUCTION**

Defendants submit this report as required by this Court's May 15 order issued in response to the Ninth Circuit's clarification that the carveout of its stay of the first preliminary injunction should be "interpreted narrowly, on a case-by-case basis to apply to individuals with a strong reliance interest arising prior to January 20, 2025, comparable to Plaintiff Pacito." *Pacito*, Dkt. No. 64.1 at 2.

Defendants object to the appointment of a special master. The "case by case determinations" of who has "a strong reliance interest arising prior to January 20, 2025, comparable to Plaintiff Pacito" are individualized determinations that the agencies—not a special master—are uniquely suited to make (and, indeed, are empowered by statute to make). Further, the implementation of the Ninth Circuit's carveout is not so complex as to require the involvement of a special master. The Ninth Circuit's successive clarification orders underscore the narrow scope of the carveout. And the carveout's terms afford agencies considerable latitude in determining who meets the conditions set out by the Ninth Circuit. A special master is not necessary and may only hinder the agencies' ability to expeditiously complete the processing of individuals contemplated by the Ninth Circuit. Thus, Defendants ask that this Court allow the agencies to proceed unimpeded with the plan they have developed and outlined below to ensure refugee applicants with strong reliance interests, similar to Plaintiff Pacito, may be considered on a case-by-case basis, without judicial second-guessing of the agencies' considered assessments of individual requests. The appointment of a special master risks usurping control over that agency process preemptively, which would be both baseless and unprecedented.

Alternatively, if the Court, over Defendants' reasoned objections, appoints a special master, Defendants nominate potential special masters and suggested procedures for the case-by-case

DEFENDANTS' RESPONSE TO MAY 15, 2025 ORDER RESCINDING COMPLIANCE FRAMEWORK [CASE NO. 2:25-CV-00255]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

1    evaluation process. This does not constitute Defendants' acquiescence that a special master is

2    warranted.

3                                    **LEGAL STANDARD**

4           Rule 53 governs special masters, and "contemplates that the master will assist the court with

5    specific tasks and exercise necessary power" to do so. *Burlington N. R.R. Co. v. Wash. Dep't of Rev.*,

6    934 F.2d 1064, 1071 (9th Cir. 1991). The appointment of a special master is "the exception and not

7    the rule" and, "save in matters of account and of difficult computation of damages, … [must] be made

8    only upon a showing that some exceptional condition requires it." *Id.* (quoting Fed. R. Civ. P. 53(b)).

9    And "the unusual complexity of an action, the length of time a trial would require, and congestion of

10   a court's calendar [are] *not* exceptional conditions." *Castaneda v. Burger King Corp.*, 264 F.R.D. 557,

11   570 (N.D. Cal. 2009) (citing *La Buy v. Howes Leather Co.*, 352 U.S. 249, 258–59 (1957)).

12          Courts have found exceptional circumstances in cases involving extremely complex litigation

13   or where there have been documented problems with compliance with court orders. *See United States*

14   *v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990) (concluding litigation which began in

15   1974 involving "14 sub-proceedings and over 11,000 papers had been filed with the district court"

16   was complex enough to warrant a special master); *cf. Burlington*, 934 F.2d at 1072-73 (concluding a

17   claim for injunctive relief under a railroad statute was not so complex as to require reference of the

18   entire case to a special master simply for reasons of judicial efficiency); *see also Local 28 of Sheet*

19   *Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 482 (1986) (appointing special master and noting

20   the parties' "established record of resistance to prior state and federal court orders"). A decision to

21   appoint a special master "must consider the fairness of imposing the likely expenses on the parties and

22   must protect against unreasonable expense or delay." Fed. R. Civ. P. 53(a)(3). Further, a special master

23

24

1  "may not be placed in *control* of governmental defendants for the purpose of forcing them to comply

2  with court orders." *Nat'l Org. for Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 545 (9th Cir.

3  1987) (emphasis in original).

## ARGUMENT

4

5  **I.    Defendants object to the appointment of a special master.**
   **A.  Appointing a special master is not warranted for effective and timely implementation**
6  **of the Ninth Circuit's limited carveout.**

7         The Court should not appoint a special master. Determining who falls in the Ninth Circuit's

8  carveout is not particularly complex. Nor is there a history of noncompliance with the Ninth Circuit's

9  stay or with the aspect of this Court's preliminary injunction that remains unstayed. *See Suquamish*

10 *Indian Tribe*, 901 F.2d at 775; *Burlington*, 934 F.2d at 1072–73. Thus, this Court should allow the

11 agencies to proceed with the case-by-case analysis of refugee applicants who fall within the Ninth

12 Circuit's limited carveout, unimpeded by a special master.

13        First, no exceptional circumstances are present that warrant a special master. Identifying,

14 processing and admitting those who fall within the carveout is not a task of extreme complexity.  Nor

15 does this case require the type of technical expertise—like those typically found in multidistrict or

16 patent litigation—that would ordinarily benefit from the appointment of a special master with

17 particularized expertise. *See Elizabeth Chamblee Burch & Margaret S. Williams*, Judicial Adjuncts in

18 Multidistrict Litigation, 120 Colum. L. Rev. 2129, 2133–34 (2020) (presenting an empirical study into

19 "court-appointed adjuncts," including special masters, in products liability multidistrict litigation, and

20 concluding that courts should be cautious "about outsourcing judicial duties to private adjuncts"). On

21 the contrary, the Ninth Circuit distilled the task: "Our [stay] order should be interpreted narrowly, on

22 a case-by-case basis, to apply to individuals with a strong reliance interest arising prior to January 20,

23

24 
                                     U.S. DEPARTMENT OF JUSTICE
                              CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                     P.O. BOX 878, BEN FRANKLIN STATION
                                          WASHINGTON, D.C. 20044
                                              (202) 353-5950

2025, comparable to Plaintiff Pacito." Ninth Cir. Dkt. No. 64.1 at 2. That is a straightforward directive to Defendants to determine whose reliance interests are comparable to Pacito's. The Ninth Circuit's order allows for sufficient agency discretion to render these case-by-case evaluations of a limited applicant pool, without making reference to complex or highly specialized concepts or procedures that would require the services of a private third party such as a special master.

Second, there are no compliance issues that call for the imposition of a Special Master. If anything, the repeated need for clarification from the Ninth Circuit (and the Ninth Circuit's willingness to take up those requests for clarification) shows that Defendants have largely interpreted its orders correctly, and will apply them properly going forward. They are not in breach of any order of this Court. Where there is no history of noncompliance, there is no need for the Court to take the extraordinary measure of assigning a special master to monitor Defendants' enforcement of the Ninth Circuit's carveout. *See Hook v. Arizona*, 120 F.3d 921, 926 (9th Cir. 1997) (finding special master referral warranted due to an agency's "history of noncompliance"). A premature appointment would, if anything, cut against the discretion and flexibility the agencies need to carry out the highly fact-based, case-specific assessments the Ninth Circuit has allowed and that Defendants are charged with making in the normal course. *See* 8 U.S.C. § 1157(c)(1) (providing that admission of refugees is a discretionary decision).

**B.  Defendants' structured plan to evaluate individuals' reliance interests.**

Defendants have developed a structured plan that is tethered to the express language in the Ninth Circuit's clarified stay order. Defendants are complying with this Court's instruction to immediately evaluate the 160 refugees who had travel booked within the first two weeks after January 20, 2025, on a case-by-case basis and, absent grounds to rebut the Court's presumption that they have strong

DEFENDANTS' RESPONSE TO MAY 15,
2025 ORDER RESCINDING COMPLIANCE
FRAMEWORK
[CASE NO. 2:25-CV-00255]

4

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

1    reliance interests comparable to Plaintiff Pacito's, to "process, admit, and provide statutorily mandated

2    resettlement support services" to these individuals. ECF 126 at 3. Defendants will enlist Refugee

3    Support Centers (RSCs) to solicit requests for consideration from refugee applicants who had travel

4    booked before January 20 and assist with the initial case-by-case assessments of those individuals'

5    reliance interests. Defendants next will prioritize assessment of unaccompanied refugee minors in

6    recognition of special reliance interests they may have. Finally, Defendants will proceed with case-

7    by-case assessments on a chronological week-by-week basis, given that reliance interests are

8    presumably greater the closer a travel booking was to January 20.

9        Defendants will prepare a standard list of questions with the aim of eliciting, from refugee

10   applicants, evidence of a reliance interest akin to Pacito's. Proof of an analogous reliance interest will

11   be primarily based on the following indicia: (1) whether individuals terminated leases or otherwise

12   gave up their homes; (2) whether individuals terminated their employment or voluntarily closed or

13   sold their business; (3) whether individuals sold or donated possessions; and (4) whether children were

14   disenrolled from school. Other evidence of reliance interests will be considered on a case-by-case

15   basis. The agency will give no one reliance interest conclusive weight, but will employ a totality of

16   the circumstances approach. The agencies will work in the coming days to develop an objective system

17   by which the reliance interests documented by applicants and provided to the RSCs can be analyzed.

18       At Defendants' instruction, RSCs will reach out to individuals for case-by-case consideration

19   as described above (the 160 refugees who had travel booked within the first two weeks after January

20   20, then unaccompanied refugee minors, and then week by week, beginning with the third week after

21   January 20). The RSCs will work with applicants to obtains answers to the standard list of questions

22   and information about applicants' relevant circumstances. For efficiency, given the potential for a high

23

24

DEFENDANTS' RESPONSE TO MAY 15,
2025 ORDER RESCINDING COMPLIANCE
FRAMEWORK
[CASE NO. 2:25-CV-00255]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

volume of submissions, an RSC will provide an initial assessment of the evidence and information provided and, based on the totality of the circumstances, make a recommendation to PRM officials regarding whether the applicant(s) has/have demonstrated strong reliance interests similar to those of Plaintiff Pacito. PRM will then make the ultimate determination of whether it agrees that a particular request has or has not demonstrated sufficient comparability to Pacito's case. PRM will strive to evaluate these recommendations within a reasonable period of time, dependent on resource constraints and the number of requests submitted. If PRM agrees with the RSC's recommendation, PRM will proceed to process the cases, moving the individuals through the required steps toward travel, admission, and resettlement.

This plan allows the agencies to exercise appropriate discretion as they review and consider the individualized facts and circumstances in each request. By doing so, the plan also preserves the deliberately narrow scope of the Ninth Circuit's carveout. There is simply no role for a special master to play in such a fact-intensive inquiry, which the agencies, in their expert judgment, can and should be trusted to undertake without any outside interference. Rather, a special master may only *observe* an agency's compliance efforts. *Nat'l Org. For the Reform of Marijuana L.*, 828 F.2d at 545; *Hoptowit v. Ray*, 682 F.2d 1237, 1263 (9th Cir. 1982); *see Sierra Club v. United States Army Corps of Eng'rs*, 701 F.2d 1011, 1042–43 (2d Cir. 1983); *United States v. City of Parma*, 661 F.2d 562, 578–79 (6th Cir. 1981), *cert. denied*, 456 U.S. 926, 102 S. Ct. 1972, 72 L.Ed.2d 441 (1982).

Appointing a special master would be entirely at odds with the principle of judicial restraint. Defendants have never disputed their obligation to comply with this Court's injunction as recently narrowed by the Ninth Circuit. Indeed, the agencies made good faith efforts to conform to the Court's compliance framework while it was in effect, even as Defendants sought relief from the Ninth Circuit

DEFENDANTS' RESPONSE TO MAY 15, 2025 ORDER RESCINDING COMPLIANCE FRAMEWORK [CASE NO. 2:25-CV-00255]

6

U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 353-5950

1   from the burdens it imposed. *See* ECF 124 (parties' Joint Submission Regarding Defendants' Day

2   Seven Compliance Feasibility Concerns). Even if there were a "few technical violations" along the

3   way—which did not occur here—those would not "defeat . . . substantial compliance with the

4   injunction," and would certainly not amount to exceptional circumstances warranting appointment of

5   a special master for the specific task of implementing the Ninth Circuit's limited carveout. *Derek &*

6   *Constance Lee Corp. v. Kim Seng Co.*, 2010 WL 11508468, at *6 (C.D. Cal. Apr. 5, 2010).

7        This is particularly true where agency operations implicating foreign affairs are involved.

8   Federal courts themselves are largely precluded from intruding upon Executive Branch decisions

9   regarding admission of aliens. *See Trump v. Hawaii*, 585 U.S. 667, 702 (2018); *Fiallo v. Bell*, 430

10  U.S. 787, 792 (1977). This rings just as true for special masters, who are delegees of a court's authority.

11  Appointing a special master to essentially make decisions regarding who may enter the country under

12  the Ninth Circuit's narrow carveout to its stay order would be a usurpation of the Executive's exclusive

13  authority in this realm—a gross violation of separation of powers principles. *See Hoptowit v. Ray*, 682

14  F.2s 1237, 1263 (9th Cir. 1982) ("An order placing a master in control of the prison would have been

15  error as an overreaching of judicial authority."); *see Mullen*, 828 F.2d at 545 (special masters may

16  only "observe" or "monitor" governmental agencies). Indeed, a special master's involvement in such

17  decisionmaking would necessarily cause the special master to become enmeshed in the operational

18  details of sensitive foreign affairs decisions, which not even this Court has the authority to do. This

19  would rob the Executive of its statutory discretion over refugee admissions. 8 U.S.C. § 1157(c)(1).

20       At this point—as they always have done—Defendants are taking action to carry out the Ninth

21  Circuit's carveout. This Court should permit Defendants to proceed with the plan they developed in

22  response to all applicable orders of this Court and the Ninth Circuit. Allowing Defendants to proceed

23

24  DEFENDANTS' RESPONSE TO MAY 15,               7          U.S. DEPARTMENT OF JUSTICE
    2025 ORDER RESCINDING COMPLIANCE                    CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
    FRAMEWORK                                              P.O. BOX 878, BEN FRANKLIN STATION
    [CASE NO. 2:25-CV-00255]                                    WASHINGTON, D.C. 20044
                                                                  (202) 353-5950

1  this way preserves their ability to expeditiously process individual cases under the carveout without

2  burdensome, granular oversight from an outside party. It also avoids the unnecessary financial burden

3  appointing a special master would put on the Parties. At minimum, Defendants request the Court refer

4  the Parties to a magistrate judge before resorting to the costly option of a special master. *See* Fed. R.

5  Civ. P. 53(a); *Prudential Ins. Co. of Am. v. United States Gypsum Co.*, 991 F.2d 1080, 1085, 1087 (3d

6  Cir. 1993) (disqualifying special master, in part because of availability of magistrate judges).

7  **II.  If the Court decides to appoint a special master despite Defendants' objections, Defendants respond to the Court's instruction in its May 15 Order.**

8  Defendants reiterate that they do not consent to the appointment of a special master and reserve

9  the right to seek further appellate relief if necessary. While the Court may believe appointment of a

10  special master is warranted, Defendants again stress that the Court is empowered to appoint a federal

11  magistrate judge for this purpose. But should this Court appoint a special master, the master's role

12  should be limited to monitoring Defendants' implementation of its plan for evaluating applicants on a

13  case-by-case basis—monitoring general adherence to the outlined plan, rather than acting as a

14  decision-maker or influencing the outcomes of these individualized agency determinations in any way.

15  Defendants propose the following potential special masters[1]: **Hon. David F. Levi** is the former

16  Chief Judge of the U.S. District Court for the Eastern District of California. Following his services as

17  the U.S. Attorney for the Eastern District of California, he served as a district court judge for almost

18  seventeen years. **Hon. Benson E. Legg** is the former Chief Judge in the U.S. District Court for the

19  District of Maryland. **Hon. Paul W. Grimm** had a twenty-five-year career on the federal bench,

20  including serving as a federal judge in the U.S. District Court for the District of Maryland. **Hon.**

21

22  _____

23  [1] Subject to their availability, which Defendants are working to confirm, Defendants reserve the right to supplement this list with an additional nominee.

24

**Stephen G. Larson** is a former district court judge in the U.S. District Court for the Central District of California, with more than twenty-one years of litigation experience.

Defendants raise several objections to Plaintiffs' proposed names. Because the special master should be a neutral arbiter who serves strictly in an oversight function, civil rights or immigration expertise is not relevant. Defendants specifically object to the appointment of any individual who has legally represented immigrants, as well as anyone who regularly contributes articles to political magazines or who has spoken out against immigration policies—each is an indicator of a potential impediment to serving as an impartial arbiter here. A former federal judge, on the other hand, who has overseen settlements in the past, would be particularly well suited to serving as a special master whose role is limited to overseeing the implementation of a case-by-case assessment plan.

As discussed above, Defendants propose the following procedures for the case-by-case evaluation process. Defendants will immediately evaluate the 160 "Injunction-Protected Individuals" on a case-by-case basis and, absent any ground to rebut the Court's presumption, will begin processing them. Defendants will prioritize the assessment of unaccompanied refugee minors. Next, Defendants will instruct RSCs to begin contacting refugee applicants chronologically, week by week, if they had been scheduled to travel beginning with the third week after January 20. RSCs will provide these applicants with a form containing a standard list of questions with the aim of eliciting, from applicants, evidence of a reliance interest akin to that of Plaintiff Pacito. For the limited purpose of maintaining oversight of this request and consideration process, the special master will review agency records and data to: (1) ensure that the agencies are identifying and tracking in a chronological, week-by-week manner requests submitted by individuals who had travel booked after February 3, 2025; (2) ensure the agency has streamlined and clarified procedures for review of agency records and evidence

DEFENDANTS' RESPONSE TO MAY 15,
2025 ORDER RESCINDING COMPLIANCE
FRAMEWORK
[CASE NO. 2:25-CV-00255]

9

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

submitted by refugees to show indicia of "strong reliance interests"; (3) ensure the agencies complete necessary medical checks and security clearances; (4) ensure the agencies provide notice of travel clearance to the refugee or, if a FTJ-R, to the principal applicant (petitioner) and their qualified relative (beneficiary); (5) ensure the agency is booking travel for the refugees; (6) determine whether the refugees gain admission to the U.S.; and (7) ensure that refugees are provided resettlement benefits upon their admission to the United States. The special master will develop a plan for the sole and limited purpose of monitoring compliance with these provisions. To assist the special master in developing this monitoring plan, each agency will make available to the master appropriate personnel who can answer any questions the master may have regarding agency records and data that can be used for monitoring compliance with these provisions.

During the period the special master order is in place, Plaintiffs will not be permitted to file any motions to enforce this Court's or the Ninth Circuit's orders. Defendants propose a term of three months for the special master's appointment. Defendants propose the following language: The Court appoints the special master for a term of three months, commencing 30 days from the date of this Order. Additionally, a cost-sharing agreement is appropriate.

## <u>CONCLUSION</u>

This Court should not appoint a special master and instead should allow the agencies to proceed, unimpeded by burdensome third-party interference, with processing the "Injunction-Protected Individuals" and the remaining refugees who meet the definition of the Ninth Circuit's carveout. Alternatively, if this Court appoints a special master, Defendants request that the Court choose one of their candidates and adopt the well-structured plan that they have prepared for prompt implementation.

DEFENDANTS' RESPONSE TO MAY 15, 2025 ORDER RESCINDING COMPLIANCE FRAMEWORK
[CASE NO. 2:25-CV-00255]

10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

DATED this 22nd day of May, 2025.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

MICHELLE LATOUR
Deputy Director

DAVID KIM
Senior Litigation Counsel

*/s/ Alexandra L. Yeatts*
ALEXANDRA L. YEATTS
California Bar No. 358762

JOSEPH MCCARTER
LINDSAY ZIMLIKI
JASON ZUBATA
Trial Attorneys
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
Washington, DC 20005
Phone: 202-353-5677
Email: Alexandra.Yeatts@usdoj.gov

*Attorneys for Defendants*


I certify that the body of this brief is within 10 pages,
in compliance with this Court's order.

DEFENDANTS' RESPONSE TO MAY 15,
2025 ORDER RESCINDING COMPLIANCE
FRAMEWORK
[CASE NO. 2:25-CV-00255]

11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5677