District Judge Jamal N. Whitehead

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, MARCO RUBIO, in his official capacity as Secretary of State, KRISTI NOEM, in her official capacity as Secretary of Homeland Security; DOROTHY A. FINK, in her official capacity as Acting Secretary of Health and Human Services,<br><br>*Defendants*. | CASE NO. 2:25-cv-00255<br><br>DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST SUPPLEMENTAL COMPLAINT<br><br>NOTE ON MOTION CALENDAR: May 27, 2025 |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

ARGUMENT ................................................................................................................................1

    I.    Plaintiffs' claims against the President are barred by separation of powers principles ..........................................................................................................................1

    II.   The suspension of the USRAP was a valid exercise of presidential authority under 8 U.S.C. § 1182(f) ..........................................................................................................1

        A.    The USRAP Order meets the "sole" requirement of § 1182 ...........................1

        B.    The USRAP Order is not in conflict with the Refugee Act ............................3

        C.    Separation of powers principles uphold the suspension of USRAP funding ................5

    III.  Because Plaintiffs' funding claims sound in contract and are governed by the Tucker Act, they are unreviewable under the APA ...................................................................6

    IV.  Even assuming the APA is applicable to the agencies' implementation of the President's Executive Orders, Plaintiffs' APA claims still fail .......................................8

CONCLUSION ............................................................................................................................11

DEFENDANTS' REPLY IN SUPPORT OF  
MOTION TO DISMISS  
[CASE NO. 2:25-CV-00255]

i

U.S. DEPARTMENT OF JUSTICE  
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION  
P.O. BOX 878, BEN FRANKLIN STATION  
WASHINGTON, D.C. 20044  
(202) 353-5950

# TABLE OF AUTHORITIES

## **CASES**

*Am. Ins. Ass'n v. Garamendi*,
  539 U.S. 396 (2003) .................................................................................................... 7

*Ancient Coin Collectors Guild v. CPB.*,
  801 F. Supp. 2d 383 (D. Md. 2011) ......................................................................... 2, 9

*Anderson v. Evans*,
  371 F.3d 475 (9th Cir. 2004) .................................................................................... 11

*Bennett v. Spear*,
  520 U.S. 154 (1997) ................................................................................................... 9

*Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp.*,
  333 U.S. 103 (1948) ................................................................................................... 2

*Clinton v. Jones*,
  520 U.S. 681 (1997) ................................................................................................ 1, 2

*Dep't of Educ. v. California*,
  145 S. Ct. 966 (2025) ................................................................................................. 8

*Dep't of State v. Munoz*,
  602 U.S. 899, 144 S. Ct. 1812, 219 L. Ed. 2d 507 (2024) .................................... 5, 12

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ..................................................................................... 4

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ................................................................................................... 1

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ................................................................................................... 7

*Hawaii v. Trump*,
  859 F.3d 741 (9th Cir.) .............................................................................................. 3

*Kuahulu v. Emps. Ins. of Wausau*,
  557 F.2d 1334 (9th Cir. 1977) ................................................................................. 11

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

ii

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

*Landon v. Plasencia*,
  459 U.S. 21, 103 S. Ct. 321, 74 L.Ed.2d 21 (1982) ................................................................. 5

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ................................................................................................................ 10

*Mansor v. U.S. Citizenship & Immigr. Servs.*,
  345 F.R.D. 193 (W.D. Wash. 2023) ....................................................................................... 11

*McCray v. Biden*,
  574 F. Supp. 3d 1 (D.D.C. 2021) ............................................................................................. 2

*Mississippi v. Johnson*,
  71 U.S. (4 Wall.) 475 (1866) .................................................................................................... 1

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) .................................................................................................... 2

*Spectrum Leasing Corp. v. United States*,
  764 F.2d 891 (D.C. Cir. 1985) .................................................................................................. 9

*Trump v. Hawaii*,
  583 U.S. 941 (2017) ................................................................................................................. 3

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ......................................................................................................... 3, 4, 7

*United Aeronautical Corp. v. U.S. Air Force*,
  80 F.4th 1017 (9th Cir. 2023) ................................................................................................... 8

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*,
  __ F. Supp. 3d __, 2025 WL 763738, at *4 (D.D.C. Mar. 11, 2025) (on appeal) ............... 8, 9

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) ................................................................................................................. 4

*United States v. Munsingwear, Inc.*,
  340 U.S. 36 (1950) ................................................................................................................... 3

**STATUTES**

8 U.S.C. § 1101(a)(13) ................................................................................................................ 5

8 U.S.C. § 1101(a)(13)(A) .......................................................................................................... 6

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

iii

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

8 U.S.C. § 1157(a)(2) ............................................................................................................. 4, 5

8 U.S.C. § 1157(c)(2)(A) ............................................................................................................ 6

8 U.S.C. § 1182(f) ............................................................................................................. 1, 3, 7

8 U.S.C. § 1201(h) ................................................................................................................. 5, 6

8 U.S.C. § 1522 .......................................................................................................................... 8

8 U.S.C. § 1522(b)(1)(A) ......................................................................................................... 10

**OTHER**

Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024, Div. F, 2024, Pub. L. No. 118-47, 138 Stat. 460 .................................................................... 10

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

iv

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

## INTRODUCTION

At its core, this litigation challenges discretionary decisions made at the highest levels of the Executive Branch regarding refugee admissions and the allocation of limited agency resources—decisions squarely entrusted to the President and his delegates by Congress and the Constitution. In their attempt to overcome clear limits imposed by the Immigration and Nationality Act ("INA") (specifically 8 U.S.C. § 1182(f)), Article II of the U.S. Constitution, the Tucker Act, and the Administrative Procedure Act ("APA), Plaintiffs advance a strained interpretation of the Refugee Act. They ask this Court to second-guess the President's national interest determination and improperly reframe their contract-based grievances as statutory violations. This Court should reject the invitation to inject itself into the executive policymaking process under the cover of legal claims purporting to challenge a non-discretionary agency action, which Plaintiffs still have not adequately identified.

For any of these reasons, the Court should grant the Government's motion.

## ARGUMENT

### I. Plaintiffs' claims against the President are barred by separation of powers principles.

Plaintiffs concede the President is not subject to injunctive relief but nonetheless maintain they can obtain declaratory relief that would invalidate Executive Order 14163 ("USRAP Order"). ECF No. 130 at 5-6 ("Pls' Opp."). The Supreme Court has consistently held that courts may not issue declaratory *or* injunctive relief against the President in the performance of official duties. *See Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992); *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866). Plaintiffs fail to distinguish *Franklin*, nor do they engage with its core rationale—that attempts by courts to supervise the President's performance of his official duties would violate the separation of powers. *See Franklin*, 505 U.S. at 802.

Plaintiffs' reliance on *Clinton v. Jones* is misplaced, as *Clinton* addressed whether private litigation must be put on hold during a President's term. Pls' Opp. at 6 (citing *Clinton*, 520 U.S.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

681, 703 (1997)). There, the Supreme Court observed that "the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States." 520 U.S. at 705. It did not silently overrule *Franklin* and *Johnson* or reach the extraordinary conclusion that a court can impose injunctive declaratory relief against the President, thereby constraining his ability to carry out lawfully delegated powers. Further, *Sierra Club v. Trump* is distinguishable because, there, the Ninth Circuit found no statutory or constitutional authority for the Executive's actions. Pls' Opp. at 6 (citing *Sierra Club*, 929 F.3d 670, 696–97 (9th Cir. 2019)). Here, by contrast, the presidential actions at issue are authorized by § 1182(f) and Article II of the Constitution. Thus, whether Plaintiffs frame their requested as injunctive or declaratory, the constitutional barrier remains. *See, e.g.*, *McCray v. Biden*, 574 F. Supp. 3d 1, 11 (D.D.C. 2021) ("[U]nder controlling Supreme Court and D.C. Circuit precedent, the Court concludes that Plaintiff lacks standing to seek an injunction or declaratory judgment against the President[.]" (collecting cases)).

Nor can Plaintiffs salvage their claims by shifting focus to the agencies. The challenged conduct flows directly from the President's lawful invocation of § 1182(f) and his broad constitutional authority to attend to foreign affairs. *See, e.g.*, *Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs."). The APA does not permit review of agency implementation of an authority assigned by Congress to the President. *See, e.g.*, *Ancient Coin Collectors Guild v. CPB.*, 801 F. Supp. 2d 383, 402, 405 (D. Md. 2011), *aff'd*, 698 F.3d 171 (4th Cir. 2012) (Where an agency acts on behalf of the President, those acts remain those of the President for APA purposes; they do not become reviewable as actions of an agency, particularly when acting in the realm of foreign affairs.) Nor does the agencies' compliance with facially valid Executive Orders create independent legal violations. As such, the claims against the agencies are indistinguishable from claims against the President and must be dismissed.

| DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS [CASE NO. 2:25-CV-00255] | 2 | U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 353-5950 |
|---|---|---|

**II.   The suspension of the USRAP was a valid exercise of presidential authority under 8 U.S.C. § 1182(f).**

**A.   The USRAP Order meets the "sole" requirement of § 1182.**

Plaintiffs' assertion that the USRAP Order is ultra vires rests on a misreading of 8 U.S.C. § 1182(f) and flouts *Trump v. Hawaii*, 585 U.S. 667 (2018). The "sole prerequisite" to invoke the broad grant of power under § 1182(f) is the President's determination that entry of the designated class of aliens "would be detrimental to the interests of the United States." *Id*. at 685. The language of § 1182(f) is unqualified and entrusts the President alone with the discretion to determine what constitutes "detriment." *Id*. at 685–86 (rejecting the argument that § 1182(f) requires the President to explain his finding that entry would be detrimental with sufficient detail to enable judicial review).

Here, the President made a threshold finding that "record levels of migration over the past four years" has put a "strain on American communities," thus "triggering" the issuance of the USRAP Order. Plaintiffs' preference for further justification for this finding is irrelevant. Pls' Opp. at 14. The President did all that is required. He made a determination as to the national interest, and the "persuasiveness" of that determination is simply not appropriate for judicial review. *Hawaii*, 585 U.S. at 669 ("[S]uch a searching inquiry is inconsistent with the broad statutory text and the deference traditionally accorded the President in this sphere.").

Tellingly, Plaintiffs do not engage with the Supreme Court's holding, leaning instead on an earlier Ninth Circuit case, *Hawaii v. Trump*, 859 F.3d 741, 770-76 (9th Cir.) (per curiam). Pls' Opp. at 15. But the Supreme Court vacated that decision by the Ninth Circuit as moot. *Trump v. Hawaii*, 583 U.S. 941 (2017) (finding "appeal no longer present[ed] a 'live case or controversy.'" (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950) ("[vacating the lower court's judgment for mootness] clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance"))).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

3

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

Further, the Ninth Circuit held that Defendants are likely to succeed on the merits of this case, and that holding is persuasive authority here. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021). Plaintiffs incorrectly claim that the Ninth Circuit partially denied the stay of this Court's injunction because it did not believe "the USRAP suspension to be unquestionably a valid exercise of section 1182(f)." Pls' Opp. at 12, n.2. In reality, the Ninth Circuit created a very narrow "carveout" of its stay in keeping with the fact the USRAP Order did not purport to revoke refugee status. The Ninth Circuit clearly acknowledged the breadth of the President's authority under 1182(f) to suspend entry in finding the Government likely to succeed on the merits.[1]

### B. The USRAP Order is not in conflict with the Refugee Act.

In enacting the INA, Congress recognized two distinct presidential powers: (1) the power to set the annual refugee admissions ceiling under 8 U.S.C. § 1157(a)(2), and (2) his power to suspend or restrict entry under § 1182(f). These authorities operate in tandem and are "inherent in the [President's] executive power to control the foreign affairs of the nation." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). Plaintiffs argue that the Refugee Act implicitly constrains the President's § 1182(f) authority, Pls' Opp. at 15-16, again ignoring the Supreme Court's holding in *Hawaii. Id.*, 585 U.S. at 685. They would have the Court read the Refugee Act as overriding the President's expansive authority under § 1182(f), thus rendering § 1182(f) a nullity with respect to refugees. *See* Pls' Opp. at 16. They assert that the President "could not set the refugee ceiling to zero[,]" ignoring his express powers under § 1182(f) and the text of § 1157(a)(2) that the number of refugees be "otherwise in the national interest." *Id.*

---

[1] Whether the USRAP Order suspended the program indefinitely is not a factual issue, as Plaintiffs claim, but a legal issue that has been resolved. *Hawaii*, 585 U.S. at 687 (finding "section 1182(f) authorizes the President to suspend entry 'for such period as he shall deem necessary'").

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

4

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

Plaintiffs also argue that the Refugee Act "provides no mechanism" to curtail refugee admissions. Yet they fail to explain why lack of such a mechanism would invalidate § 1182(f)'s explicit grant of authority for the President to suspend entry. *See* Pls' Opp. at 16. Plaintiffs barely engage with the statutory text of § 1182(f) at all, presumably because if they did, they would have to acknowledge the authority it grants is not conditioned on or subordinate to any other statutory provision, including § 1157. Moreover, the Refugee Act does not *mandate* any particular number of refugee admissions. *See* Dkt. No. 115 at 10. It allows the President to set out a *maximum* number of refugee admissions for a given year. *See* 8 U.S.C. § 1157(a)(2) ("The number of refugees who may be admitted under this section in any fiscal year [] shall be such number as the President determines . . . is justified by humanitarian concerns or is otherwise in the national interest."). This reading aligns with the rest of the INA, given that no alien is entitled to admission to the United States. *See* 8 U.S.C. § 1201(h) ("Nothing in this chapter shall be construed to entitle any alien . . . to be admitted [to] the United States."); *Dep't of State v. Munoz*, 602 U.S. 899, 934, 144 S. Ct. 1812, 1835, 219 L. Ed. 2d 507 (2024) ("Noncitizens who apply for visas from outside the United States have no constitutional entitlement to enter the country[.]") (citing *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S. Ct. 321, 74 L.Ed.2d 21 (1982)).[2]

As for following-to-join refugees ("FTJ-R"), Congress does not, as Plaintiffs claim, guarantee their entry or admission. Pls' Opp. at 16. Plaintiffs continue to elide the critical distinction between "admission status" and actual admission, which as discussed, *supra* n.2, does not take place (nor is guaranteed) until *after* the refugee is found to be admissible upon arrival at

---

[2] Plaintiffs argue that § 1201(h) only relates to issuance of visas, Pls' Opp. at 17–18, but it also covers "any alien" "to whom a visa *or other documentation* has been issued." 8 U.S.C. § 1201(h) (emphasis added); *see also id.* § 1185(d), (f). The broader principle underlying § 1201(h) still stands— actual admission to the United States, whether after issuance of a particular visa or after the granting of refugee status, is not an entitlement any alien can claim. Instead, admission takes place "after inspection and authorization by an immigration officer," 8 U.S.C. § 1101(a)(13)— after "he is found to be admissible" "upon arrival at a port of entry," 8 U.S.C. § 1201(h).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

5

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

a port of entry. *See* 8 U.S.C. § 1201(h); *see also* 8 U.S.C. § 1101(a)(13)(A). Nothing in 8 U.S.C. § 1157(c)(2)(A) allows a refugee to skirt that requirement.

Plaintiffs are unable to point to any text that would support the notion that an FTJ-R *must* be admitted upon arriving at a port of entry or that would exclude them from the broad sweep of § 1182(f). It is nonsensical that Congress would have silently excluded this one group of aliens from the President's authority to suspend entry. That would run counter to the statute's plain text, which states that FTJ-Rs are entitled to "the same admission *status*" of the individuals they are following, rather than actual admission. Consistent with the rest of the INA, this language contemplates the possibility that an FTJ-R is subject to § 1182(f)'s proclamation power and may be found inadmissible and thus denied admission to the United States.

In short, nothing in the Refugee Act bars the President from suspending entries by refugees under his § 1182(f) powers, and no conflict exists between the two statutory authorities. Plaintiffs' imagined conflict only exists if the statutory text is stretched beyond what any reasonable interpretation allows.

**C. Separation of powers principles uphold the suspension of USRAP funding.**

Plaintiffs' challenges to the suspension of funding are directed against "the president's judgment in the arena of foreign affairs, implicating the very separation-of-powers concerns on which they purport to bring their challenge."[3] Dkt. No. 115 at 13. They argue that "the Foreign Aid EO and the agency Defendants' implementation of it violate Congress's exclusive power of the purse and power to legislate because Defendants, without congressional authorization, suspended and terminated USRAP funding that had already been appropriated." Pls' Opp. at 17. Yet, "in foreign affairs"—and foreign aid, if nothing else, is an issue involving foreign affairs—

---

[3] Contrary to Plaintiffs claims, Pls' Opp. at 19, n.3, Defendants did not waive any challenge to Plaintiffs' separation of powers claim as to the USRAP funding suspension. *See* ECF No. 115 at 12-13 (citing First Supplemental Complaint ("FSC") at ¶¶ 254-57).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

6

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

"the President has a degree of independent authority to act," and courts should refrain from "intrud[ing] into the core concerns of the executive branch." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003). "[M]atters relating "to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). "[T]he executive Power vested in Article II of the Constitution" reflects "the president's vast share of responsibility for the conduct of our foreign relations." *Garamendi*, 539 U.S. at 414 (internal quotation marks omitted).

Beyond the constitutional authority to conduct foreign affairs, the President and his executive delegates have explicit statutory authority to suspend the USRAP and, consequently, its funding. The same "comprehensive delegation" of authority that § 1182(f) affords to the President to determine when entry of aliens into the United States is in the nation's interest, *Hawaii*, 585 U.S. at 684–85, necessarily extends to any funding that supports that entry. As Defendants explained, the President's "sweeping proclamation power" extends not only to the suspension of entry but also the imposition of "any *restrictions* he may deem to be appropriate." *Id.* at 12; 8 U.S.C. § 1182(f) (emphasis added). Thus, the Constitution, as recognized by Congress, grants the President and his executive delegates authority to manage and restrict foreign aid, along with the border and the immigration system. And separation of powers principles uphold the Foreign Aid Order and agency suspension of the USRAP funding pursuant to the valid Order.[4]

### III. Because Plaintiffs' funding claims sound in contract and are governed by the Tucker Act, they are unreviewable under the APA.

Plaintiffs' challenges to the suspension and termination of the cooperative agreements sound in contract and belong in the Court of Federal Claims. Plaintiffs contend that the cooperative agreements at issue are "likely not contracts enforceable under the Tucker Act[.]" Pls' Opp. at 7.

---

[4] The terminations of the cooperative agreements were additionally authorized by the contractual terms that govern those agreements, as discussed *infra*, section III.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

7

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

But the Supreme Court recently held that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on '*any* express or implied contract with the United States.'" *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (quoting 28 U.S.C. § 1491(a)(1) (emphasis added)). If the request for relief is simply "grounded in contract, the APA does not waive the Government's immunity from suit, and the district court cannot afford the requested relief." *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, __ F. Supp. 3d __, 2025 WL 763738, at *4 (D.D.C. Mar. 11, 2025) (on appeal).

Plaintiffs are correct that "the individual Plaintiffs here are not parties to the USRAP cooperative agreements and thus have no claim to enforce them," Pls' Opp. at 8, but organizational Plaintiffs *are* parties to the cooperative agreements and, therefore, *can* challenge the suspension and termination of those agreements in the Court of Federal Claims. As Plaintiffs themselves acknowledge, the defining issue as to where this action should be brought is whether the Government is required by statute or the Constitution to make payments to resettlement partners, which it is not. *See* 8 U.S.C. § 1522. Instead, the contractual terms of the cooperative agreements are the very basis for the organizational Plaintiffs' claim to continued funding. Plaintiffs cannot dispute that if they were to prevail on their funding claims, the Government would have to resume disbursement of funds based strictly on the contractual agreements it previously entered into with resettlement partners, rather than any statutory provision requiring payment. The "rights and remedies" involved are thus "*contractually* based" and barred from APA review under the Tucker Act. *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023).

Finally, Plaintiffs argue that no waiver of sovereign immunity is required because their claims against the funding suspension are also brought as ultra vires and constitutional claims. Pls' Opp. at 9–10. But they miss the crucial point that "the agency action that it asks the Court to reverse is the Government's decision to cease a financial relationship with" certain outside partners. *See Catholic Bishops*, 2025 WL 763738, at *7. They would have the Court order the Government "to

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

8

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

pay money owed . . . under an executory contract." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). That kind of request is "founded upon a contract for purposes of the Tucker Act" and thus could only be heard, if at all, in the Court of Federal Claims.[5] *Id.* at 895.

### IV. Even assuming the APA is applicable to the agencies' implementation of the President's Executive Orders, Plaintiffs' APA claims still fail.

Defendants maintain that the claims against the agencies are indistinguishable from claims against the President and are thus not subject to APA review. *Ancient Coin*, 801 F. Supp. 2d at 402. However, assuming APA jurisdiction exists to review Plaintiffs' challenge to the agencies' implementation of the President's Executive Orders, their claims still fail.

First, Plaintiffs do not challenge a final, discrete agency action. In an unsuccessful attempt to disguise their programmatic challenge, Plaintiffs re-label a number of agency decisions that collectively administered the refugee program as "two sets of time-limited, specific agency actions." Pls' Opp. at 21. Further, Plaintiffs claim they are challenging final agency action by asserting that "[t]he agencies' decision-making process here had a direct and immediate effect on the day-to-day operations of the refugee resettlement partners, case processing for refugee applicants, and benefits provisions for recently resettled refugees in the United States." Pls' Opp. at 22. Yet no refugee was irrevocably denied admission pursuant to the agencies' implementation of the USRAP Order; rather, all the activities that make up the administration of the program were merely suspended in accordance with evolving executive priorities and the national interest. Such provisional measures taken pursuant to an executive order do not amount to final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (the action must mark the "consummation" of

---

[5] The Claims Court could find that it "lacks the authority to grant specific performance of [the cooperative agreements] as well as other forms of equitable relief." *See Spectrum*, 764 F.2d at 895 n.7. But "[r]egardless of the precise remedial powers of the Claims Court, . . . government contractors seeking specific performance must go there, even if the contractor will be limited to a damages remedy"—or possibly nothing at all if it is seeking purely equitable relief. *See Catholic Bishops*, 2025 WL 763738, at *7 n.6.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

9

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

the agency's decisionmaking process). Plaintiffs argue all agency actions "are subject to future change," Pls' Opp. at 22, but, here, the challenged USRAP suspension actions are, by definition, temporary and to be maintained only until a policy reassessment by the President. *See* USRAP Order § 4 (temporarily suspending agency decisionmaking on refugee applications until the President determines "the resumption of entry of refugees . . . is in the interests of the United States"). Even Plaintiffs' challenge to the funding suspension lacks the requisite finality. Setting aside that Plaintiffs had no legal entitlement to the continuation of USRAP funds, the Foreign Aid Order provided for a "90 day pause" and called for an internal agency review of contracts for "programmatic efficiencies and consistency with United States foreign policy," Foreign Aid Order § 3(a), and agency implementation of this 90 day internal review does not amount to a final agency action under the APA.

Next, Plaintiffs' funding APA claims fail because the jurisdictional bar on agency actions "committed to agency discretion by law" applies where statutes are drawn in such broad terms that there is no meaningful standard against which to judge the agency's exercise of discretion. *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). Here, the statutory scheme for allocating the lump-sum appropriation entrusted to the State Department is deliberately flexible, with minimal restrictions on how or when it must be distributed across the migration and refugee programs (including the USRAP). *See* Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024, Div. F, 2024, Pub. L. No. 118-47, 138 Stat. 460, 729 (appropriating a lump sum of $3,928,000,000 "to remain available until expended" for various "refugee and migration needs"). Further, the Refugee Act *authorizes* the Secretary of State to "make grants to, and contracts with, public or private nonprofit agencies for initial resettlement" of "refugees in the United States," 8 U.S.C. § 1522(b)(1)(A), but the statute's plain text does not require the Secretary to enter into cooperative agreements with resettlement partners—that is left entirely to the agency's discretion.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

By second-guessing the State Department's management of this lump-sum appropriation, Plaintiffs ask this Court to render policy judgments about the appropriate balance of priorities across foreign assistance programs—a task that lies beyond the competence and jurisdiction of the judiciary. Plaintiffs' argument would subject the Executive's resource allocation and procurement decisions to granular judicial oversight, transforming every policy shift into a potential APA lawsuit. That is not what Congress intended. Plaintiffs' funding APA claims should be dismissed.

V. **Plaintiffs' due process claim is moot and legally deficient.**

Under binding precedent, the mooting of the named plaintiff's claim prior to class certification ends the controversy. *Kuahulu v. Emps. Ins. of Wausau*, 557 F.2d 1334 (9th Cir. 1977). Recognizing this, Plaintiffs claim that the Court has jurisdiction to review the FTJ-R subclass's claim under the "capable of repetition yet evading review" exception to the mootness doctrine because the claim is inherently transient. Pls' Opp. at 10. Yet the case upon which they rely is distinguishable from this one. *Id.* (citing *Mansor v. U.S. Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 202 (W.D. Wash. 2023)). There, the Court held that "the duration of the challenged action is 'too short' because processing times for TPS applications are measured in months, and because 'the duration of the controversy is solely within the control of the defendant.'" *Id.* (quoting *Anderson v. Evans*, 371 F.3d 475, 479 (9th Cir. 2004). Here, Plaintiff Esther's case had been pending for several years, as many refugee cases are. Further, the duration of the FTJ-R process is not solely within the Government's control. Some of the process is dependent upon the applicant or beneficiary. They must submit information, respond to requests for evidence, appear for interviews and medical checks, and occasionally choose to delay travel for personal reasons.

Second, *Mansor* held that "other TPS applicants w[ould] certainly have the same complaint, because Defendants w[ould] continue their practice of not issuing temporary employment authorization immediately upon receipt of TPS applications." 345 F.R.D. at 202. This case, however, is not a claim for routine delay caused by an entrenched governmental practice.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

Each FTJ-R application presents different circumstances, and its processing is dependent upon various individual factors, as outlined above, including where they are at a given point in the administrative process. Any number of unique circumstances could dictate how long their individual applications ultimately take to process. Thus, this case does not qualify as an exception to the mootness doctrine.

Further, Plaintiffs' claim is foreclosed on the merits by *Dep't of State v. Muñoz*, 602 U.S. 899 (2024), in which the Supreme Court reiterated that even a United States citizen lacks a fundamental liberty interest in a family member, who is an alien, being admitted to the country. Plaintiffs' attempt to distinguish *Muñoz* by claiming a statutory entitlement to admission, and "not a discretionary privilege," falls flat. Pls' Opp. at 19. Esther's FTJ-R petition on her daughter's behalf was, in fact, for a statutory benefit subject to agency discretion—not a vested right triggering constitutional protections. The Due Process Clause does not require the Government to grant admission to every FTJ-R. To the extent Plaintiffs ask for more in excess of clear statutory limits, the Court must dismiss their claim.

## **CONCLUSION**

For these reasons, the Court should dismiss the First Supplemental.

DATED this 30th day of May, 2025.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

12

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW ENSIGN
Deputy Assistant Attorney General
Civil Division

AUGUST FLENTJE
Special Counsel

DAVID KIM
Senior Litigation Counsel

*/s/ Lindsay W. Zimliki*
LINDSAY W. ZIMLIKI
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 353-5950
Email: Lindsay.Zimliki@usdoj.gov
JOSEPH MCCARTER
ALEXANDRA YEATTS
JASON ZUBATA
Trial Attorneys

*Attorneys for Defendants*

I certify that this memorandum contains 4,026 words, in compliance with the Local Civil Rule 7(e)(3).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
[CASE NO. 2:25-CV-00255]

13

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-5950