District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF
ESTHER; PLAINTIFF JOSEPHINE;
PLAINTIFF SARA; PLAINTIFF ALYAS;
PLAINTIFF MARCOS; PLAINTIFF
AHMED; PLAINTIFF RACHEL;
PLAINTIFF ALI; HIAS, INC.; CHURCH
WORLD SERVICE, INC.; and
LUTHERAN COMMUNITY SERVICES
NORTHWEST,

        *Plaintiffs*,


      v.

DONALD J. TRUMP, in his official
capacity as President of the United States,
MARCO RUBIO, in his official capacity
as Secretary of State, KRISTI NOEM, in
her official capacity as Secretary of
Homeland Security; DOROTHY A. FINK,
in her official capacity as Acting Secretary
of Health and Human Services,

        *Defendants*.

CASE NO. 2:25-cv-00255

RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR
EMERGENCY CONFERENCE TO
ADDRESS DEFENDANTS'
COMPLIANCE WITH PRELIMINARY
INJUNCTION


NOTE ON MOTION CALENDAR: JUNE
25, 2025

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR EMERGENCY
CONFERENCE
[CASE NO. 2:25-CV-00255]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## INTRODUCTION

Defendants have worked diligently to implement the Court's first injunction as narrowed by the Ninth Circuit's stay and clarification orders. Plaintiffs once again misconstrue those orders to expand the application of the largely stayed injunction in a way that does not square with the Circuit's narrow carveout of its injunction stay. *See Pacito, et al., v. Trump, et al.*, No. 25-1313, at 4 (Apr. 21, 2025).

Plaintiffs erroneously claim Defendants have brought the implementation of the Ninth Circuit's carveout to a "near halt" because Proclamation 10949 prevents some potential "injunction-protected" refugees from entering the United States. From there, they leap to asking this Court to order the Government to begin immediately processing large swaths of individuals, beyond the 160 who had been booked for travel in the first two weeks after the issuance of the USRAP Order. But Proclamation 10949 is a separate executive action not at issue in this case, and it acts as an independent source of executive authority for entry restrictions that the Court's injunction here did not and could not preclude. Going a step further, Plaintiffs also contend individuals whose travel was cancelled *any* time prior to January 20, 2025, for *any* reason (even unrelated to the USRAP Order), somehow fall within the limited carveout. But the Ninth Circuit has repeatedly rejected Plaintiffs' overbroad readings of its orders and would likely do so again here. At bottom, Plaintiffs seek to grossly enlarge the pool of people who would be processed and admitted despite the Circuit's otherwise broad stay. This Court should reject that excessive overreach and allow the government to continue in its steady implementation of the sharply narrowed injunction.

## RELEVANT BACKGROUND

Plaintiffs claim Defendants have slowed implementation of the Court's orders to a "near halt." Pls' Mot. 7. That is a baseless accusation. Defendants have worked diligently to

Defendants' Response in Opposition to
Plaintiffs' Motion for Emergency Conference - 1

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 746-8537

process, admit, and provide resettlement services to the individuals who fall within the Ninth Circuit's narrow stay carveout.

The State Department's Bureau of Population, Refugees, and Migration (PRM) unsuspended five Resettlement Support Centers (RSCs) and instructed them, on May 20, to begin overseas processing of the carveout cohort. Chretien Decl. ¶ 5. Active RSCs include RSC Africa, RSC Asia, RSC Latin America, RSC Eurasia, and RSC Middle East and North Africa. *Id.* ¶ 4. On May 21, PRM notified domestic Resettlement Agencies (RAs) of the agency's intent to lift the suspension of their respective awards to provide Reception and Placement services to arriving refugees from the cohort. *Id.* ¶ 6. Between May 21 and June 4, the awards for the following RAs were reinstated: Bethany Christian Services, Church World Service, Ethiopian Community Development Council, Global Refuge, HIAS, International Rescue Committee, U.S. Committee for Refugees & Immigrants, and World Relief. *Id.* These eight RAs are operational and ready to receive cases assured to them. *Id.* ¶ 7.

By May 9, PRM made requests with the U.S. Centers for Disease Control and Prevention (CDC) to extend the validity of medical checks for individuals who remained in processing from the cohort of 160. *Id.* ¶ 8. By May 29, the RSCs made new requests for medical checks for any individuals whose medical check validity could not be extended by the CDC. *Id.* ¶ 9. On the security front, by May 12, PRM requested new NVC security checks for individuals who remained in processing from the cohort of 160. *Id.* ¶ 10.

Of the 160 individuals with travel booked for the weeks of January 20 and January 27, 37 individuals have already been admitted into the United States, leaving 124 individuals (53 cases) in overseas processing as of June 9. On June 12, three individuals (one case) elected to voluntarily repatriate to Afghanistan, and, on June 17, USCIS confirmed that one FTJ-R from the cohort self-traveled to the United States in March. *Id.* ¶ 11. Currently, 120 individuals (51 cases) remain in overseas processing. *Id.*

Defendants' Response in Opposition to
Plaintiffs' Motion for Emergency Conference - 2

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 746-8537

1

2    Of the 120 individuals who remain in processing as of June 30, 80 individuals are
nationals of countries designated in Proclamation 10949, while 40 individuals are not. *Id.* ¶

3    12. Thirty-three individuals (14 cases) comprised entirely of individuals who are not from

4    countries designated in Proclamation 10949 are ready for departure and await exit permits

5    and/or flight booking. *Id.* ¶ 13. This includes Plaintiff Pacito and others in his case, who are

6    booked to arrive in the United States on July 10. *Id.* ¶ 14. Additionally, seven individuals (two

7    cases) are booked to arrive the week of June 30, and 10 individuals (six cases) are booked to
arrive the week of July 7. *Id.*

8
**ARGUMENT**

9
**I.      This Court's first preliminary injunction does not override a separate executive
order lawfully issued under 8 U.S.C. § 1182(f).**

10

11    Plaintiffs suggest Defendants are not in full compliance with this Court's narrowed

injunction because a separate presidential proclamation not at issue in this case suspends
12
admission of nationals of certain designated countries. Pls' Mot. 4–5 (referring to
13
Proclamation 10949). That assertion is meritless.

14    Defendants' enforcement of Proclamation 10949 is consistent with the Ninth Circuit's

15    stay order because it is a separate presidential order that suspends admission of aliens (both

16    refugees and non-refugees) from certain countries for reasons wholly independent of the

17    USRAP Order. *See* Proclamation 10949 §§ 1–3. Proclamation 10949 invokes the President's

statutory and constitutional authority to broadly restrict entry in response to national security
18
risks stemming from deficient screening and vetting standards in the identified countries—it
19
does not rely on or refer to the USRAP Order or its independent justifications in any way. *See*

20    *Trump v. Hawaii*, 585 U.S. 667, 706 (2018) (finding there was "persuasive evidence that the

21    entry suspension ha[d] a legitimate grounding in national security concerns, quite apart from

22    any religious hostility," and that it "must accept that independent justification").

23

24    Defendants' Response in Opposition to                      U.S. Department of Justice
Plaintiffs' Motion for Emergency Conference - 3      Civil Division, Office of Immigration Litigation
                                                      P.O. Box 878, Ben Franklin Station
No. 2:25-cv-00255-JNW                                 Washington, DC 20044
                                                      (202) 746-8537

1

2     The first injunction does not preclude the President from suspending entry of refugees

3  for reasons unrelated to the refugee program suspension. Accordingly, this Court should

   decline to address this "subsequent development[]" in the instant posture—just as this Court

4  declined to do when Plaintiffs challenged the termination of cooperative agreements that

5  occurred after the Court issued the first injunction.[1] *See* Dkt. 45 at 11.

6          Plaintiffs attempt to use the existence of Proclamation 10949—and their accusation that

   the implementation of the injunction has slowed to a "near halt"—to justify expanding the

7  number of people Defendants must process and possibly admit. *See* Pls' Mot. 4–5. But

8  Proclamation 10949 only reaches refugee applicants from certain countries, and, here, only

9  two named Plaintiffs are potentially covered by it.[2] And even then, those named Plaintiffs and

10 putative class members from countries designated in Proclamation 10949 may ultimately

11 avoid being impacted should the Secretary of State find their entry in the national interest and

12 grant them a case-by-case exception. *See* Proclamation 10949 § 4(c)–(d).

13         If anything, it is Plaintiffs who, by claiming an "emergency," attempt to dramatically

   swell the ranks of individuals eligible for relief under that narrow carveout—using

14 Proclamation 10949 as a pretext to argue for immediate processing of multiple groups of

15 people well beyond the identified cohort of 160 individuals. *See* Pls' Mot. 4–5 (asking the

16 Court to apply rebuttable presumptions to individuals outside the current group of 160). But

17 there is no emergency, where processing of that group is underway and will continue to take

18

19

20 [1] Should Plaintiffs move to amend or supplement their complaint to challenge the Proclamation, Defendants would oppose because there is no dispute the Proclamation is a valid exercise of the President's § 1182(f) authority. *See Hawaii*, 585 U.S. at 684 (explaining in a largely identical context that § 1182(f) "exudes deference to the President" and "vests [him]
21 with 'ample power' to impose entry restrictions in addition to those elsewhere enumerated in the INA").

22 [2] Plaintiffs Rachel and Ahmed may be impacted by the Proclamation due to their connections to Afghanistan, which is a designated country. Proclamation 10949 §§ 1(f), 2(a); *see* Dkt. 15-21 (Plaintiff Ahmed, while born in Pakistan, appears to only have an Afghanistan passport), 15-22 (Plaintiff Rachel seeks to sponsor an Afghan family).
23

   Defendants' Response in Opposition to                          U.S. Department of Justice
24 Plaintiffs' Motion for Emergency Conference - 4          Civil Division, Office of Immigration Litigation
                                                                      P.O. Box 878, Ben Franklin Station
   No. 2:25-cv-00255-JNW                                       Washington, DC 20044
                                                                      (202) 746-8537

place, consistent with the Ninth Circuit's order and the President's independent exercise of authority in Proclamation 10949.

## II.   Individuals whose travel was cancelled for reasons unrelated to the USRAP Order do not fall within the Ninth Circuit's narrow carveout.

Contrary to Plaintiffs' assertion, Defendants have not misled the Court in its implementation of the Ninth Circuit's stay order. *See* Pls' Mot. 5. Plaintiffs, for the first time, raise an argument that the injunction should apply to anyone who had travel booked at *any* time prior to January 20, 2025, and cancelled for *any* reason, even if unrelated to the USRAP Order. They knowingly seek to extend the substantially narrowed injunction well beyond its intended purpose. The Circuit has twice clarified who is an "injunction-protected" refugee. A third clarification should not be required.

In creating a narrow carveout from its larger stay of this Court's injunction, the Ninth Circuit considered the exigencies of this case and determined those most likely to suffer irreparable injury were those who were "conditionally approved and *in transit*" when the USRAP Order took effect. *Pacito*, No. 25-1313, Dkt. 46.1 at 4 (emphasis added). Specifically, the carveout applies to individuals who, *inter alia*, had "arranged and confirmable" travel plans to the United States. *Id.* The Circuit also stressed that the carveout must be read narrowly and applies *only* to individuals with a strong reliance interest arising prior to January 20 comparable to that of Plaintiff Pacito. *Id.*, Dkt. 64.1 at 2; Dkt. 56 at 5, 137–141. Plaintiffs now attempt to stretch this definition well beyond its intended meaning.

The Ninth Circuit did not envision the narrowed injunction to include refugees with travel scheduled prior to January 20 whose travel was not in fact cancelled on account of the USRAP Order. Thus, contrary to Plaintiffs' assertion, they would not (and should not) be entitled to protection of an injunction that is intended to enjoin application of the USRAP Order. It is simply too hypothetical and tenuous for this Court to conclude that these individuals would have resolved the issues that led to their cancellations such that the only

Defendants' Response in Opposition to
Plaintiffs' Motion for Emergency Conference - 5

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 746-8537

1 remaining bar to a reliable future travel date would have been the USRAP Order itself. *See,*

2 *e.g.*, *Clapper v. Amnesty Int'l*, 568 U.S. 398, 410 (2013) (Article III's causation

3 requirement not satisfied by "a highly attenuated chain of possibilities").

4      Further, Plaintiffs do not even endeavor to identify the time period prior to January 20

5 that, in their view, would render an individual eligible under the Ninth Circuit's carveout—

6 the only parameter they propose is that the travel cancellation have taken place before that

date. If Plaintiffs had their way, the Ninth Circuit's carveout would encompass individuals

7 whose travel was cancelled months or even years prior to January 20. But neither this Court's

8 injunction nor the Circuit's stay and clarification orders contemplate the inclusion of any and

9 all refugee applicants who might have had their travel cancelled at any point before January

10 20 even without any connection to—let alone injury resulting from—the USRAP Order.

11      The general rule regarding the scope of preliminary injunctive relief is for it to "be no

12 more burdensome to the defendant than necessary to provide complete relief to the plaintiffs

before the court." *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476,

13 511 (9th Cir. 2018); *see Trump v. CASA*, No. 24A884, 2025 WL 1773631, at *3 (June 27,

14 2025) ("complete relief" "not synonymous with 'universal relief,'" but "a narrower concept

15 that allows courts to administer complete relief *between the parties*" (cleaned up)). Not only

16 would extending injunctive relief to anyone whose travel had been cancelled before January

17 20 be overly burdensome to Defendants, it would also require an unsustainably overbroad

18 reading of the Ninth Circuit's tailored injunction—far beyond the Circuit's confirmed intent.

19 Even if this Court were to overlook that the travel cancellations of this large and unbounded

20 pool of people were completely divorced from the USRAP Order, Plaintiffs fail to articulate

how they could even show reliance interests comparable to those of Plaintiff Pacito—after all,

21 someone who had their travel cancelled long ago for reasons unrelated to the USRAP Order

22 could not have been "in transit" at the time the Order was issued.

23

24 Defendants' Response in Opposition to              U.S. Department of Justice
Plaintiffs' Motion for Emergency Conference - 6      Civil Division, Office of Immigration Litigation
                                                     P.O. Box 878, Ben Franklin Station
No. 2:25-cv-00255-JNW                                Washington, DC 20044
                                                     (202) 746-8537

1    Ultimately, Plaintiffs' proposal, if accepted, would stretch the Ninth Circuit's carveout

2    to the point where it would "swallow the entire stay order." *Pacito*, No. 25-1313, Dkt. 46.1 at

3    2. This Court must reject such a baseless and unrestrained expansion of the Circuit's stay.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Defendants' Response in Opposition to                    U.S. Department of Justice
Plaintiffs' Motion for Emergency Conference - 7          Civil Division, Office of Immigration Litigation
                                                         P.O. Box 878, Ben Franklin Station
No. 2:25-cv-00255-JNW                                    Washington, DC 20044
                                                         (202) 746-8537

DATED this 1st day of July, 2025.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

DAVID KIM
Senior Litigation Counsel

*/s/ Joseph McCarter*
JOSEPH MCCARTER
Maryland Bar No. 2311290014
ALEXANDRA YEATTS
LINDSAY ZIMLIKI
JASON ZUBATA
Trial Attorneys
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
Washington, DC 20005
Phone: 202-746-8537
Email: Joseph.A.McCarter@usdoj.gov

*Attorneys for Defendants*

I certify that this memorandum contains 2,091 words, in compliance with the Local Civil Rules.

Defendants' Response in Opposition to
Plaintiffs' Motion for Emergency Conference - 8

No. 2:25-cv-00255-JNW

U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 746-8537