Nos. 25-1313, 25-1939

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**PACITO, et al.,**
**Plaintiffs-Appellees,**

v.

**DONALD J. TRUMP, et al.,**
**Defendants-Appellants.**

---

**On Appeal from the United States District Court**
**for the Western District of Washington**
**District Court Case No. 2:25-cv-255**

---

# EMERGENCY MOTION PURSUANT TO CIRCUIT RULE 27-3
# TO ENFORCE, CLARIFY, OR AMEND STAY ORDER

---

BRETT A. SHUMATE
  *Assistant Attorney General*
YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney*
  *General*
DREW C. ENSIGN
  *Deputy Assistant Attorney General*
DAVID KIM
  *Senior Litigation Counsel*
JOSEPH MCCARTER
ALEXANDRA YEATTS
LINDSAY ZIMLIKI
JASON ZUBATA
  *Trial Attorneys*
U.S. Department of Justice
Civil Division

## TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

BACKGROUND .................................................................. 2

ARGUMENT .................................................................... 7

    I.    The Compliance Framework Exceeds the Carveout..... 8

    II.   The Supreme Court's Decision in *CASA* Reinforces the Need for Broader Appellate Relief. ............................ 10

    III.  The Government Has Already Largely Complied with this Court's Carveout.................................................. 13

CONCLUSION................................................................. 16

## TABLE OF AUTHORITIES

### CASES

*Trump v. CASA, Inc.*,
  606 U.S. ----, No. 24A884, 2025 WL 1773631 (June 27, 2025).... 1,
  *passim*

*Pacito v. Trump*,
  768 F. Supp. 3d 1199 (W.D. Wash. 2025) .................................. 12

### STATUTES

**Immigration and Nationality Act of 1952, as amended:**

8 U.S.C. § 1101(a)(15) ...................................................................... 15

8 U.S.C. § 1181(c).............................................................................. 15

8 U.S.C. § 1182(f) ......................................................................... 6, 15

### OTHER AUTHORITIES

Exec. Order No. 14163, *Realigning the United States Refugee
  Admissions Program*, 90 Fed. Reg. 8459, 8459 (Jan. 20, 2025) .. 2

Proclamation 9645, *Enhancing Vetting Capabilities and Processes
  for Detecting Attempted Entry Into the United States by
  Terrorists or Other Public-Safety Threats*, 82 Fed. Reg. 45161
  (Sept. 24, 2017).......................................................................... 15

Proclamation 10949, *Restricting the Entry of Foreign Nationals to
  Protect the United States From Foreign Terrorists and Other
  National Security and Public Safety Threats*, 90 Fed. Reg. 24497
  (June 4, 2025) .......................................................2, 4, 14, 15, 16

## INTRODUCTION

This Court largely stayed the district court's universal injunctions in this case, subject to only a narrow carveout for individuals already effectively in transit when the President issued the Executive Order suspending refugee admissions. And this Court has since clarified *twice* the narrow nature of that carveout, when the district court construed it to swallow the stay.

For about two months since that second clarification, the Government has proceeded to implement the carveout in good faith, including by admitting approximately 80 refugees who would otherwise be barred by the President's Executive Order. Yet the district court has once again inappropriately interceded, issuing a 23-page "injunction compliance framework" order that imposes detailed, burdensome procedures far beyond anything this Court contemplated with its narrow carveout. Worse, the district court did so after the Supreme Court clarified in *Trump v. CASA, Inc.* that universal injunctions like those issued here exceed the federal judiciary's power under Article III in the first place. 606 U.S. ----, No. 24A884, 2025 WL 1773631 (June 27, 2025).

1

The Government now respectfully urges this Court to enforce or clarify its stay order, or amend it to fully stay the injunctions at issue. The district court's novel compliance framework sets new deadlines of July 21 and July 28, and the Government thus requests appellate relief as soon as possible.

## BACKGROUND

**The Original Injunction.** On February 28, 2025, the district court issued a written order enjoining the Government from, among other things, suspending refugee processing, decisions, and admissions under the U.S. Refugee Admissions Program ("USRAP"). Dist. Dkt. No. 45 (enjoining Exec. Order No. 14163, *Realigning the United States Refugee Admissions Program*, 90 Fed. Reg. 8459 (Jan. 20, 2025) ("USRAP Order")).

**This Court's Stay Order and "Carveout."** On March 25, 2025, this Court stayed the district court's preliminary injunction, with a narrow exception (the "carveout") for individuals who were conditionally approved for refugee status before January 20, 2025. Dkt. No. 28.1. This Court made clear that the injunction was stayed "[i]n all other respects." *Id.* at 2.

**This Court's Clarification Orders.**  After the district court adopted an excessively broad view of that carveout, this Court issued two further clarification orders on April 21 and May 9, respectively.  Dkt. No. 46.1; Dkt. No. 64.1.  This Court considered the exigencies of this case and determined those most likely to suffer irreparable injury were those "conditionally approved and *in transit*" when the USRAP Order took effect.  Dkt. No. 46.1 at 4 (emphasis added).  So the Court clarified that its carveout applies only to individuals who, *inter alia*, had "arranged and confirmable" travel plans.  *Id.*  This Court also stressed that the carveout must be read narrowly and applies *only* to individuals with a strong reliance interest, comparable to Plaintiff Pacito, who was booked to travel on January 22 and had sold all his belongings in anticipation of imminent entry.  Dkt. No. 46.1 at 2; Dkt. No. 61.1 at 6.

**Implementation of the Carveout.**  Consistent with this Court's orders, the Government reinstated overseas and domestic processing operations that were paused under the USRAP Order to the extent necessary to implement the narrow carveout.  *See* Dist. Dkt. No. 138 at 1–2.

Of the 160 refugees who had travel booked for the weeks of January 20 and January 27—in short, those with reliance interests most like those of Plaintiff Pacito, who had been booked for travel on January 22—approximately 80 individuals have already been admitted into the United States, including Plaintiff Pacito. Ex. A (Declaration of Spencer Chretien), ¶¶ 4, 5. The remaining 80 individuals from this cohort are nationals of countries designated in an independent Presidential Proclamation and thus barred from entry into the United States without a showing that they warrant a national interest exception. *Id.* ¶¶ 5, 6; Proclamation 10949, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24497 (June 10, 2025) ("Proclamation 10949").

**The New Compliance Framework Order.** Despite all this, the district court this week issued a "Compliance Framework Order" that imposes a broad and burdensome set of new obligations on the Government while once again construing this Court's carveout in an untenably broad way. Dist. Dkt. No. 145.

The compliance order requires the Government to identify the "universe of 'Review-Eligible Cases,'" which it defines to include any "individuals whose travel to the United States was canceled after December 1, 2024, and never rebooked because of the USRAP EO." *Id.* at 12–13. For those refugees, whom the Government estimates exceed 10,000 in number, the Government must provide notice within seven days of what the district court describes as "procedures for seeking individualized reliance assessments"— procedures the court adopted wholesale from a proposal submitted by Plaintiffs and containing a long litany of survey questions. *Id.* at 16–17 (citing Dist. Dkt. No. 127-1). The order goes on to require Resettlement Support Centers (RSCs) to administer this survey to all "Review-Eligible Cases" and "transmit all completed survey responses to Plaintiffs' counsel"—allowing Plaintiffs to "determine which completed surveys to submit," on the back end, "to the Government for reliance-interest assessment." *Id.* at 16–17.

The compliance order also adopts "a presumption of sufficient reliance interests" for three sets of cases: (1) the entire group of aforementioned 160 individuals who had travel booked within two

weeks of January 20; (2) all unaccompanied minor children who
had "arranged and confirmable travel plans" on or before January
20; and (3) all Afghan refugees at Camp As Sayliyah. *Id.* at 13–16.
For all refugees within those categories, the order compels the
Government to resume immediate processing immediately unless
it identifies them for challenge within 14 days. *Id.* at 16.

The compliance framework expands the scope of the carveout
in several respects. For one, the district court ruled that anyone
whose travel had been cancelled for reasons even *unrelated to the
USRAP Order* remained eligible for protection under the carveout.
*Id.* at 11–12. For another, the court opined that Proclamation
10949—issued under 8 U.S.C. § 1182(f) to bar the entry of nationals
of certain countries—does not apply to refugees, and therefore that
refugees from the covered countries remained eligible for protection
under the carveout. *See id.* at 8–10.

Finally, the district court adopted an entire set of procedures
for adjudicating disputes over the Government's implementation of
the carveout. *See id.* at 18–21. Plaintiffs may object to any
determination by the Government that an individual is not covered

by the carveout, and in that event the parties must submit briefs to a magistrate judge, who will render individual rulings—potentially thousands—subject to expedited review by the district court. *Id.* at 19–20. All this in a case with a single named Plaintiff whom this Court believed warranted immediate relief, and just weeks after the Supreme Court directed an end to universal injunctions.

## ARGUMENT

This Court should now fully stay the injunctions issued below, for three reasons. *First*, despite two prior clarifications, the district court has once again plainly exceeded the scope of the narrow carveout that this Court imposed in its original stay order, this time imposing a complex and burdensome "compliance framework" that will irreparably harm the Government. This development shows that the status quo is untenable. *Second*, the Supreme Court's decision in *CASA* leaves no doubt that the district court lacked equitable power to grant relief to non-parties. But the district court is reading the carveout to require exactly that. *Third*, there is no longer any need for the carveout, because Government has already complied with it, in large part if not entirely.

## I.     The Compliance Framework Exceeds the Carveout.

This Court's prior clarification orders make clear that the preliminary injunction remains stayed except for a small and precisely defined group of individuals.  The carveout is supposed to apply only to those who, by January 20, 2025, had an approved refugee application, were cleared for travel, and had "arranged and confirmable" travel bookings.  *See* Dkt. No. 46.1 at 4.  And even then, protection is afforded only on a case-by-case basis, if the individual can demonstrate "a strong reliance interest" comparable to that of Plaintiff Pacito—who was "in transit" when his travel was cancelled and had already sold all of his belongings in anticipation of imminent entry to the United States.  *See id.*; Dkt. No. 64.1 at 2.

The district court's new "compliance framework" defies this Court's repeated clarifications.  Rather than adhere to this Court's command that carveout eligibility be proven through individualized showings of a strong reliance interest comparable to that of Plaintiff Pacito, the court extends sweeping, categorical presumptions to even more groups of people.

For example, the district court deems the entire group of 160 individuals whose travel had been booked for the first two weeks after January 20 to carry sufficient reliance interests, without any case-specific evaluation. *See* Dist. Dkt. No. 145 at 14. It extends the same presumption to unaccompanied minor children with travel plans arranged on or before January 20, and to all Afghan refugees currently located at Camp As Sayliyah. *Id.* at 14–16. Those groups were not identified in this Court's carveout and bear no demonstrable resemblance to Plaintiff Pacito's situation. Yet the district court would have the Government assume the heavy burden of identifying—within a mere 14 days of the order—all individual cases within those loosely drawn categories that it intends to challenge. *Id.* at 20. It also imposes an onerous, resource-intensive requirement whereby the Government must file a merits brief for every case it seeks to challenge—potentially *thousands* or more—explaining why that particular refugee "lacks Pacito-comparable reliance interests." *Id.* at 20–21.

Moreover, the district court stretches this Court's carveout to cover individuals whose travel was canceled well before January

20—some as far back as December 1, 2024—and even where the cancellation was for reasons unrelated to the USRAP Order. *Id.* at 11–13. And, again, rather than require those individuals to show an entitlement to relief (and Article III standing, for that matter), the order shifts the burden onto the Government to object to the presumption or else resume processing within 14 days. *Id.* at 16. In these ways, the framework effectively resurrects the largely stayed preliminary injunction under the guise of compliance, in direct contravention of this Court's carefully cabined exception.

The district court's new "framework" fails to grapple with the clear pronouncements by this Court that its carveout should "be interpreted narrowly" and was never intended to apply to even a prospective pool of "tens of thousands of individuals." Dkt. No. 64.1 at 2–3. Further relief is therefore necessary.

## II. The Supreme Court's Decision in *CASA* Reinforces the Need for Broader Appellate Relief.

Even if the district court's new compliance framework could be reconciled with this Court's stay orders, it cannot be reconciled with the Supreme Court's recent decision in *CASA*. For that reason too, the Court should now grant appropriate further relief.

As explained in the Government's supplemental *CASA* brief, Dkt No. 106.1, the district court's universal injunctions are plainly improper in light of the Supreme Court's explicit guidance in *CASA*. *CASA* confirms that federal courts lack authority to issue universal injunctions and instead must limit themselves to administering complete relief between the parties. 2025 WL 1773631, at *4, 11. The Court held that the Judiciary Act of 1789 authorizes only those equitable remedies traditionally available at the time of our nation's founding. *Id.* at *6. Because universal injunctions—those that restrain a policy from being applied even to nonparties—have no such historical grounding, they exceed federal courts' authority. *Id.* at *8. The Court emphasized that relief must be limited to what is necessary to provide complete relief to the named plaintiffs. *Id.* at *11. And even then, "complete relief" is not guaranteed—it is merely the outer bound of judicial authority. *Id.* at *12.

*CASA* also recognized that universal injunctions cause irreparable harm to the Government by disrupting nationwide enforcement of federal policies and intruding on executive branch prerogatives. *Id.* at *14. The Supreme Court explained that such

11

sweeping relief interferes with the separation of powers and harms the public interest, regardless of whether the challenged policy is ultimately upheld. *Id.* at *14–15. Accordingly, the Court confirmed that where a district court oversteps its equitable authority, courts of appeals should grant interim relief. *Id.* at *14.

The preliminary injunctions issued here suffer from the legal defects identified in *CASA*. As the Government has maintained throughout this litigation, the district court extended relief not only to the named individual and organizational Plaintiffs, but also to refugees (and resettlement partners) worldwide—relief far beyond what was necessary to provide complete relief to Plaintiffs. *See, e.g.*, *Pacito v. Trump*, 768 F. Supp. 3d 1199, 1239 (W. D. Wash. 2025) ( "any order enjoining the implementation of the USRAP EO must be nationwide"). That violates *CASA*'s central holding.

The district court justified its sweeping relief on the theory that a narrower injunction would be impracticable and inconsistent with the integrated structure of the USRAP. *See Pacito*, 768 F. Supp. 3d at 1238. But *CASA* rejected precisely that rationale, explicitly holding that "the policy pros and cons are beside the

point"—under "well-established precedent," courts are not empowered to extend relief beyond what is necessary to redress the named plaintiffs' injuries. 2025 WL 1773631, at *12–13.

The district court's recent compliance order compounds its error by compelling the Executive to take further immediate action on behalf of a potentially vast pool of nonparty refugee applicants. *CASA* thus supplies an additional reason to grant a full stay, or at least to enforce or clarify the existing stay so that the district court does not extend the carveout beyond the named Plaintiffs.

## III. The Government Has Already Largely Complied with this Court's Carveout.

The final reason for granting further relief is that the carveout is no longer necessary—the Government has already complied with it in large part, if not entirely.

To date, the Government has processed and admitted 80 refugees pursuant to the carveout. That accounts for all refugees in the previously identified group of 160 (*i.e.*, those who had travel plans within two weeks of January 20) who are not subject to the new entry ban in Proclamation 10949. Ex. A, ¶¶ 5, 6. As for the named Plaintiffs, Plaintiff Pacito and all others in his case have

been admitted to the United States.  *Id.* ¶ 4.  Josephine and Esther
have also received complete relief in the form of admission, Dist.
Dkt. Nos. 75 at 1; 93 at 4–5, while Ali is receiving complete relief
through receipt of domestic resettlement benefits.  The carveout, in
short, has served its intended function and there is nothing more
the Government should be required to do, particularly in light of
*CASA*.

        To be sure, there are 80 additional refugee applicants who had
travel scheduled within two weeks of January 20, but whose entry
is barred by an independent Presidential Proclamation.[1]  While the
district court disagreed that Proclamation 10949 bars refugee entry,
that is incorrect.  The Proclamation applies to all "foreign nationals
of the designated countries" who were "outside the United States"
on June 9, 2025, and did "not have a valid visa" on that date.  90
Fed. Reg. at 24502–03.  While Section 6(d) of the Proclamation
states that it does not apply to refugees who have *already* been
admitted, nothing in the text exempts refugee *applicants* still

---

[1] Three individuals who would otherwise be subject to Proclamation
10949 elected to return to their country of origin.  Ex. A, at 2 n.2.

abroad.   Moreover, although refugees are exempt from the immigrant visa requirement under 8 U.S.C. § 1181(c), they remain "immigrants" for purposes of the Immigration and Nationality Act and thus fall squarely within the scope of § 1182(f).  *See* 8 U.S.C. § 1101(a)(15) (defining "immigrant" to mean "every alien except an alien who is within one of the … classes of nonimmigrant aliens").

That the Proclamation discusses visas as part of its policy rationale does not negate the Proclamation's plain text, which addresses screening and vetting protocols associated with both "visa adjudications and *other immigration processes*."  90 Fed. Reg. at 24498 (emphasis added).  That text is further bolstered by a comparison to Proclamation 9645, issued in 2017, which provided for an exception for "any foreign national who has a document other than a visa—such as a transportation letter, an appropriate boarding foil, or an advance parole document"—an exception not found in Proclamation 10949.  *Compare* Proclamation 9645, *Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other*

*Public-Safety Threats*, 82 Fed. Reg. 45161, 45167 (Sept. 24, 2017), *with* Proclamation 10949, 90 Fed. Reg. 24497.

In any event, the district court's contrary interpretation of the new Proclamation only underscores the impropriety of resolving complex and contested questions through compliance proceedings on a largely stayed injunction. Any dispute over Proclamation 10949 belongs in a new suit, not in the district court's enforcement of a stay carveout that should no longer be in effect at all.

## CONCLUSION

At this point, the Court's carveout has served its purpose, and its continued existence is imposing irreparable harm to the Government, contrary to this Court's intent and the Supreme Court's decision in *CASA*. The Government respectfully requests that the Court amend or clarify its order to provide a full stay.[2]

---

[2] Plaintiffs state their position on this motion as follows: "The District Court's Order carefully implements the preliminary injunction as narrowed by the Ninth Circuit's stay decision and subsequent clarification orders, and Plaintiffs oppose Defendants' emergency motion for further stay or clarification."

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

DAVID KIM
*Senior Litigation Counsel*

*s/ Joseph A. McCarter*
JOSEPH A. MCCARTER
ALEXANDRA YEATTS
LINDSAY ZIMLIKI
JASON ZUBATA
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Washington, DC 20005

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27, I hereby certify that this motion complies with the type-volume limitation, where it does not exceed 5,200 words. This motion also complies with the typeface and type style requirements because it is proportionately spaced and has a 14-point Century Schoolbook typeface.

*s/ Joseph A. McCarter*
JOSEPH A. MCCARTER
Attorney for Defendants-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Plaintiffs-Appellees' counsel are registered CM/ECF users and will be served by the appellate CM/ECF system.

*s/ Joseph A. McCarter*
JOSEPH A. MCCARTER
Attorney for Defendants-Appellants