UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC., and LUTHERAN COMMUNITY SERVICES NORTHWEST,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,<br><br>Defendants. | CASE NO. 2:25-cv-255-JNW<br><br>CLASS-CERTIFICATION ORDER |

CLASS-CERTIFICATION ORDER - 1

## 1. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Class Certification. Dkt. No. 71. The Supreme Court recently clarified in *Trump v. CASA, Inc.*, that while universal injunctions likely exceed the equitable authority vested in federal courts, class actions remain available to plaintiffs seeking broad relief from government policies. 145 S. Ct. 2540 (2025). The concurring justices warned, however, that "district courts should not view [the Court's] decision as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23." *Id.* at 2566 (Alito, J., concurring).

Mindful of this admonition, the Court has conducted the "rigorous analysis" that Rule 23 demands. Having reviewed the record, the briefing, and the law, the Court FINDS that Plaintiffs have met the requirements for class certification under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(2) and thus GRANTS the motion for class certification in its entirety.

## 2. BACKGROUND

This litigation arises from challenges to executive actions that suspended and defunded the United States Refugee Admissions Program (USRAP). The Court incorporates by reference the background information set forth in its previous orders, Dkt. Nos. 45, 79, 92, 104, 108, as well as its concurrently issued order resolving the Government's motion to dismiss. The Court also incorporates by reference these terms and abbreviations as defined in those orders: USRAP, USRAP

EO, Foreign Aid EO, Agency Suspension, Funding Suspension, R&P Termination, Processing Termination, and Funding Termination.

Against this backdrop, Plaintiffs move to certify three subclasses (together, "the Class"): (1) all persons who are being or will be processed for admission to the United States as a refugee or who have applied or will apply for a family member to be processed for admission as a refugee ("Refugee and Family Member Subclass"); (2) all refugees and Afghan and Iraqi Special Immigrant Visa (SIV) holders resettled to the United States and within their first ninety days post-resettlement as of January 20, 2025, or who currently are, or will be, resettled in the United States and within their first ninety days post-resettlement ("Reception & Placement Subclass," or "R&P Subclass"); and (3) all persons in the United States who are currently petitioning or will petition for family members to be admitted to the United States under the follow-to-join (FTJ) refugee program ("FTJ Petitioner Subclass").

Plaintiffs move to appoint Plaintiffs Pacito, Sara, Alyas, Marcos, Josephine, and Ahmed as representatives of the Refugee and Family Member Subclass; Plaintiff Ali as representative of the R&P Subclass; and Plaintiff Esther as representative of the FTJ Petitioner Subclass. Plaintiffs also move to appoint counsel from the International Refugee Assistance Project (IRAP) and Perkins Coie LLP as class counsel.

### 3. DISCUSSION

**3.1  Legal standard.**

A party seeking to litigate a claim as a class representative must satisfy the requirements of Fed. R. Civ. P. 23(a) and at least one category under Fed. R. Civ. P. 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The Court must conduct a "rigorous analysis" to determine whether this burden has been met. *Id.* at 350–51. While this inquiry may "entail some overlap with the merits" of the underlying claims, the Court considers the merits only insofar as they overlap with the Rule 23 requirements. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Dukes*, 564 U.S. at 351). "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). When subclasses are created, each subclass must independently satisfy each of the Rule 23 criteria. *See Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 581–82 (W.D. Wash. 2008). The decision whether to certify a class is within the Court's sound discretion. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009).

**3.2  Plaintiffs satisfy the class-certification requirements of Rule 23(a).**

Plaintiffs may pursue claims on behalf of a class only if (1) the class is so numerous that joinder is impracticable; (2) there are common questions of law or fact to the class; (3) the claims or defenses of representative parties are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the absent class members. Fed. R. Civ. P. 23(a). Here, the Government

contests class certification only on commonality, typicality, and adequacy grounds. Dkt. No. 93. Nevertheless, the Court addresses each requirement.

### 3.2.1 The proposed subclasses are so numerous that joinder is impracticable.

The numerosity requirement is satisfied when the proposed class is numerous enough to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). While this determination entails a fact-specific inquiry into "the difficulty or inconvenience of joining all members of the class," *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted), "in general, courts find the numerosity requirement satisfied when a class includes at least [forty] members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).

The parties do not dispute numerosity, as the numerical threshold is easily satisfied here. All three of the proposed subclasses meet the standard. For the R&P Subclass, Plaintiffs cite State Department data—uncontested by the Government—indicating that over 15,000 individuals were resettled in the United States in December 2024 alone and were therefore entitled, as of January 20, 2025, to R&P services. *See* Dkt. No. 71 at 13. For the Refugee and Family Member Subclass, the Government has represented that as of January 20, 2025, over 12,000 individuals were being processed for admission into the United States as refugees, and had their applications approved, cleared for travel, and had their tickets booked. Dkt. No. 118. And for the FTJ Petitioner Subclass, the Government has represented that—in the six-day period between March 1, 2025, and March 7, 2025, alone—160 FTJ cases were processed. Dkt. No. 62 at 3.

Beyond these substantial numbers, joinder is impracticable for other, non-quantitative reasons as well, including both the geographic dispersal of the subclass members and the fact that, presumably, few have resources, financial or otherwise, to independently pursue a complex lawsuit such as this. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 674 (W.D. Wash. 2010). In sum, all three subclasses satisfy Rule 23's numerosity requirement.

### 3.2.2  This case presents common questions of law and fact.

The commonality requirement mandates the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citation modified).

"[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499, 504–05 (2005), (in ADA suit, holding that class satisfied commonality despite differences in specific disabilities). That is the case here. All three subclasses are affected by, and challenge, system-wide practices and policies. Members of the Refugee and Family Member Subclass and FTJ Petitioner Subclass had, or will have, their refugee applications indefinitely halted due to the USRAP EO, Agency Suspension, Funding Suspension, and Funding Termination. And

Members of the R&P Subclass have suffered, or will suffer, deprivation of services withheld pursuant to the R&P Termination. "These policies and practices are the 'glue' that holds together the putative class and the putative subclass; either each of the policies and practices is unlawful as to every [class member] or it is not." *Parsons*, 754 F.3d at 678.

Common questions of fact and law prevail across all subclasses. These include whether the USRAP EO and Agency Suspension violate the Refugee Act and APA (common to Refugee and Family Member Subclass and FTJ Petitioner Subclass); whether the Funding Suspension and Funding Termination violate the Refugee Act and APA (common to all subclasses); whether suspension of FTJ processing violates FTJ Petitioners' due-process rights under the Fifth Amendment (common to FTJ Petitioner Subclass); and whether Defendants' actions violate the separation of powers (common to all subclasses). Each of these issues can be resolved "in one stroke," *Dukes*, 564 U.S. at 350, and the Court, to provide relief, does not need to "determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination." *See Parsons*, 754 F.3d at 678.

The Government offers several arguments why Plaintiffs fail to establish commonality. First, they assert that Plaintiffs "cannot point to a universal policy that applies to all proposed class members." Dkt. No. 93 at 9. But this argument fails because there is no requirement that a single policy affect every class member. Plaintiffs have proposed three subclasses, each bound together because the USRAP

EO, Agency Suspension, Funding Suspension, and Funding Termination commonly affect their members, who all seek the same injunctive and declaratory relief.

Second, the Government argues that factual differences within each subclass preclude commonality. For example, regarding the Refugee and Family Member Subclass, the Government points out that "[o]ne Plaintiff alleges ongoing personal safety concerns, while others focus on economic difficulties or delays in processing"; regarding the R&P Subclass, there are "refugees who vary significantly in their post-resettlement support needs, geographic locations, and access to alternative assistance"; and regarding the FTJ Petitioner Subclass, "[s]ome petitioners have already completed parts of the process, while others have not yet filed." Dkt. No. 93 at 10–11. This argument fails. Such differences—inevitable in any class action—do not alter the fact that common questions unite each subclass. *See Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008) ("Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.").

Finally, the Government argues that the "proposed subclasses include individuals who have not been impacted—let alone harmed—in any way by any of the challenged agency actions," including "future applicants for admission to the U.S. as a refugee, future FTJ petitioners, and future newly-resettled refugees." Dkt. No. 93 at 10. This argument is also unavailing. "The inclusion of future class members in a class is not itself unusual or objectionable." *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Probe v. State Teachers' Ret. Sys.*, 780 F.2d

CLASS-CERTIFICATION ORDER - 8

776, 780 (9th Cir.1986). "When the future persons referenced become members of the class, their claims will necessarily be ripe." *Rodriguez*, 591 F.3d at 1118. Nor is the Court concerned that class-wide relief would sweep more broadly than the Government's actual statutory obligations. Enjoining the Agency Suspension, Funding Suspension, and Funding Termination would not compel the Government to admit and resettle every class member. More modestly, it would eliminate a class-wide obstacle that, left intact, prevents *any* class member from being admitted and resettled in the United States.

The Court finds that Plaintiffs have satisfied Rule 23's commonality requirement.

### 3.2.3   Each subclass satisfies the typicality requirement.

Next, Plaintiffs must show that their claims are typical of the class. Fed. R. Civ. P. 23(a)(3). This requirement, which "tend[s] to merge" with commonality, serves as a "guidepost[]" for determining whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5 (citation omitted). Typicality is satisfied when the class representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Parsons*, 754 F.3d at 685). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have

been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (citation modified).

Here, all representative plaintiffs and class members have been injured by the Government's dismantling of USRAP. The representative plaintiffs and the subclasses they seek to represent advance the same legal claims and arguments, arising from the same events, and seek the same injunctive and declaratory relief.

The Government contests typicality as to Plaintiffs Esther, Josephine, and Ali. Regarding Esther and Josephine, the Government asserts, without substantive argument, that Plaintiffs fail to establish a link between "Josephine's situation and related hardships" and "any single challenged agency action or procedural change by Defendants." Dkt. No. 93 at 11. But the very harm Plaintiffs allege as to Esther and Josephine is the suspension of their refugee and FTJ applications—harms perfectly typical of their respective subclasses.

As for Ali, the Government asserts that because his declaration "does not make clear whether he sought and received alternative services or how his specific circumstances align with the experiences of other proposed members of the R&P subclass," the Court cannot assess "whether his situation is representative of the entire proposed subclass, which includes diverse individuals with varying levels of need and support." *Id.* at 12. But typicality does not require identity of harms— rather, it "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation modified). Like all R&P Subclass members, Ali was deprived of R&P benefits. This is sufficient.

The Court finds the typicality requirement is met.

### 3.2.4  The named plaintiffs will adequately represent the proposed class and subclasses.

The final Rule 23(a) requirement is adequacy of representation. The adequacy requirement mandates that the named plaintiffs "fairly and adequately protect the interests of the class[es]" they seek to represent. Fed. R. Civ. P. 23(a)(4). To determine adequacy, the Court must examine (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Ellis*, 657 F.3d at 985 (citing *Hanlon*, 150 F.3d at 1020). In short, adequacy depends on "an absence of antagonism" and "a sharing of interest." *Id.*

Here, the representative plaintiffs and the absent class members share a common interest in enjoining the suspension and defunding of USRAP. The relief sought will benefit equally the representative plaintiffs—all of whom have shown a clear willingness to pursue their claims—and their absent counterparts. There has been no indication of conflict or antagonism.

Likewise, proposed class counsel—IRAP and Perkins Coie—have shown the competence and dedication necessary to adequately prosecute this action. They have extensive experience with complex and class action litigation, including on behalf of refugees, and they have more than adequate resources to litigate this case. *See* Dkt. Nos. 72, 73. Their adequacy as class counsel is not in dispute.

The Government's only substantive argument about adequacy is that Plaintiffs Esther and Josephine cannot adequately represent their respective subclasses because their claims are moot. Because the Government raises mootness mainly in relation to adequacy, the Court addresses it here—though the Court's reasoning applies with equal force to the Government's motion to dismiss.

At the time the complaint was filed, Josephine was in South Africa, awaiting travel to the United States as the FTJ beneficiary of her mother, Esther, the sole representative of the FTJ Petitioner Subclass. Since then, pursuant to the Court's injunctions, Esther's petition was processed, and Josephine was admitted to the United States. *See* Dkt. Nos. 93 at 6; 115 at 24; 130 at 13. On this basis, the Government argues that their claims are no longer amenable to relief and therefore moot; according to the Government, if Esther and Josephine no longer even belong to their respective subclasses, they cannot adequately represent them. *See E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 404–05 (1977) (holding that if a named plaintiff is not a member of the class they purport to represent, they cannot be expected to fairly and adequately represent the interests of the class).

Plaintiffs counter that Josephine and Esther, despite having received relief, remain adequate representatives of their respective subclasses—and their claims remain justiciable—under the "inherently transitory" exception to mootness. Dkt. No. 109 at 9–11. Upon review, the Court agrees.[1]

---

[1] While the Government does not raise this issue in relation to other named plaintiffs, the same argument—and the Court's rejection of it—could be applied equally to other class representatives, if any, who have also obtained relief. *See, e.g.*,

In general, the "inherently transitory" exception to mootness is triggered when "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the named plaintiffs could themselves suffer repeated harm or it is certain that other persons similarly situated will have the same complaint." *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (citation modified). When these conditions are satisfied, "mooting the putative class representative's claim will not necessarily moot the class action." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011). In such cases, "the court may invoke the relation back doctrine upon class certification and review the facts as they were at the time the complaint was filed, to preserve the merits of the case for judicial resolution." *Mansor v. U.S. Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 202 (W.D. Wash. 2023) (citation modified).

Moreover, it is well-established that the "inherently transitory" exception applies with special force "where the duration of the controversy is solely within the control of the defendant." *See Anderson v. Evans*, 371 F.3d 475, 479 (9th Cir. 2004); *see, e.g.*, *Mansor*, 345 F.R.D. at 202 (certifying class action challenging denial of employment authorizations even though named plaintiffs' employment authorizations were processed after complaint was filed). This is because "a claim transitory by its very nature and one transitory by virtue of the defendant's litigation strategy share the reality that both claims would evade review." *Pitts*, 653 F.3d at 1091. If courts were to hold otherwise, then gamesmanship would inevitably

---

Dkt. No. 138 at 4 (indicating, as of July 1, that Plaintiff Pacito was "booked to arrive in the United States on July 10").

CLASS-CERTIFICATION ORDER - 13

interfere with the adjudication of class actions on their merits, as defendants could easily render class actions non-justiciable merely by extending relief to the named plaintiffs only.

Here, the processing of FTJ petitions and refugee applications is exclusively in the control of the Government. Thus, the Court finds that Plaintiffs' claims satisfy the inherently transitory exception, and the fact that the Government has extended relief to Josephine and Esther neither moots their claims nor those of their respective subclasses. Further, the course of litigation to date has demonstrated that Plaintiffs Josephine and Esther have represented, and will continue to represent, the interests of absent subclass members with fairness and vigor.

Accordingly, the Court finds that the adequacy requirement is met for all three subclasses.

**3.3     This action satisfies the requirements of Rule 23(b)(2).**

"A class action may be maintained if Rule 23(a) is satisfied *and* if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). The underlying premise of subsection (b)(2) is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct [at issue] can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted). In other words, subsection

(b)(2) is met where "a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

That is clearly the case here. Through the USRAP EO, Agency Suspension, Funding Suspension, and Funding Termination, the Government has acted in a way that is generally applicable to all class and subclass members. Plaintiffs ask the Court to declare the USRAP EO, Agency Suspension, Funding Suspension, and Funding Termination unlawful and unenforceable and to enjoin the Government from enforcing these policies against Plaintiffs and all members of the Class. Plaintiffs do not ask for any individual adjudication of refugee status or R&P services for any individual. Nor does any Plaintiff seek damages. Rather, the requested relief would benefit Representative Plaintiffs and each subclass member equally, and no individual subclass member would call for different or separate relief. The requested relief is, therefore, the prototypical "uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *See Parsons*, 754 F.3d at 688 (citation omitted).

The Government argues that Rule 23(b)(2) is not satisfied for the same reasons they argue commonality is not met—because "the harms alleged often result from case-specific factors, such as the availability of local resources, individual processing delays, or differences in resettlement assistance" and "[t]herefore, any injunctive relief would require individualized analysis, precluding a one-size-fits-all solution." Dkt. No. 93 at 13. This argument fails. As a result of the USRAP EO, Agency Suspension, Funding Suspension, and Funding Termination, members of the Refugee and Family Member Subclass have had their, or their

CLASS-CERTIFICATION ORDER - 15

family members', processing and admission to the United States indefinitely suspended; members of the FTJ Petitioner Subclass have had the processing of their FTJ petitions suspended; and each R&P Subclass member has had their R&P services withdrawn. These harms, of course, befall every subclass member differently based on their circumstances. But that does not affect the Court's conclusion that the challenged actions apply generally to the subclasses and that the relief sought would remedy the harms to all.

Rule 23(b)(2) certification is therefore appropriate for each subclass.

### 4. CONCLUSION

Plaintiffs have met the requirements for class certification under Fed. R. Civ. P. 23(a) and Fed R. Civ. P. 23(b)(2). The Court therefore GRANTS Plaintiffs' motion for class certification, Dkt. No. 71, and APPROVES and CERTIFIES the following subclasses:

a. The Refugee and Family Member Subclass: all persons who are being or will be processed for admission to the United States as a refugee or who have applied or will apply for a family member to be processed for admission as a refugee;

b. The Reception & Placement Subclass: all refugees and Afghan and Iraqi Special Immigrant Visa holders resettled to the United States and within their first ninety days post-resettlement as of January 20, 2025, the issuance date of the Refugee Ban Executive Order, or who currently are, or will be, resettled in the United States and within their first ninety days post-resettlement; and

    c. The FTJ Petitioner Subclass: all persons in the United States who are currently petitioning or will petition for family members to be admitted to the United States under the follow-to-join ("FTJ") refugee program.

The Court also APPOINTS Plaintiffs Pacito, Sara, Alyas, Marcos, Josephine, and Ahmed as representatives of the Refugee and Family Member Subclass; APPOINTS Plaintiff Ali as representative of the Reception & Placement Subclass; APPOINTS Plaintiff Esther as representative of the FTJ Petitioner Subclass; and APPOINTS IRAP and Perkins Coie as class counsel.

It is so ORDERED.

Dated this 30th day of July, 2025.

                                      Jamal N. Whitehead
                                      United States District Judge