District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, MARCO RUBIO, in his official capacity as Secretary of Homeland Security; ROBERT J. KENNEDY JR, in hIS official capacity as Secretary of Health and Human Services,

*Defendants*.

CASE NO. 2:25-cv-00255-JNW

**CERTIFIED ADMINISTRATIVE RECORD**

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

**PACITO, et al.**,

*Plaintiffs,*

v.

**DONALD J. TRUMP, et al.**,

*Defendants.*

CASE NO. 2:25-cv-00255

**CERTIFICATION OF THE ADMINISTRATIVE RECORD**

Graham S. Dudley, pursuant to 5 U.S.C. § 706, deposes and says as follows:

1. I am the Director, Enforcement Programs Division (EPD), Admissibility and Passenger Programs (APP), Office of Field Operation (OFO), U.S. Customs and Border Protection, Department of Homeland Security, in Washington, D.C. APP was principally responsible for issuing guidance to OFO personnel at U.S. ports of entry implementing Executive Order 14163, *Realigning the United States Refugee Admissions Program*, 90 Fed. Reg. 8459 (Jan. 20, 2025), which is the subject of the above-captioned case. As Director, EPD, I manage a senior law enforcement team at CBP Headquarters which oversees admissibility policy development in conjunction with oversight for the processing of travelers seeking entry to the United States at U.S. ports of entry. I have served in this role since January 2023.

2. To the best of my knowledge, information, and belief, the attached documents, also designated in the accompanying Index of Certified Administrative Record, constitute a true and complete copy of all non-privileged documents and materials considered by the agency in issuing

initial guidance to OFO personnel regarding the implementation of Executive Order 14163.

3. I certify under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of December, in Washington, D.C.

Graham S. Dudley
Director, Enforcement Programs Division
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection

**THE HONORABLE JAMAL N. WHITEHEAD**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, MARCO RUBIO, in his official capacity as Secretary of State, KRISTI NOEM, in her official capacity as Secretary of Homeland Security; DOROTHY A. FINK, in her official capacity as Acting Secretary of Health and Human Services,

*Defendants*.

CASE NO. 2:25-cv-00255

CERTIFICATION OF THE ADMINISTRATIVE RECORD: Ashley B. Caudill-Mirillo

**CERTIFICATION OF THE ADMINISTRATIVE RECORD**

Ashley B. Caudill-Mirillo pursuant to 5 U.S.C. § 706, deposes and says as follows:

1. I am the Acting Chief of the International and Refugee Affairs Division (“IRAD”) within the Refugee, Asylum, and International Operations (“RAIO”) Directorate

within U.S. Citizenship and Immigration Services ("USCIS"), a component agency within the Department of Homeland Security ("DHS").

2. In my current position as Acting Chief of IRAD, I oversee IRAD operations, including refugee processing, international adjudications, and certain types of parole adjudications.

3. To the best of my knowledge, information, and belief, the attached document, also designated in the accompanying Index of Certified Administrative Record, constitutes a true and complete copy of all non-privileged documents and materials considered by the agency in implementing Executive Order 14163, *Realigning the United States Refugee Admissions Program*, 90 FR 8459 (Jan. 20, 2025).

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of August 2025, in Washington, D.C.

ASHLEY B CAUDILL MIRILLO

Digitally signed by ASHLEY B CAUDILL MIRILLO
Date: 2025.08.13 15:57:15 -04'00'

Ashley B. Caudill-Mirillo
Acting Chief, International and Refugee Affairs Division
U.S. Citizenship and Immigration Services
Department of Homeland Security

**Administrative Record Index**
**E.O. 14163, *Realigning the United States Refugee Admissions Program*, 90 FR 8459 (Jan. 20, 2025).**
***Pacito, et al. v. Trump, et al.*, 25-cv-00255 (W.D. Wash.).**

| | **Guidance** | **Starting Bates Number** |
|---|---|---|
| 1 | January 27, 2025, CBP Memorandum regarding Implementation of Active Executive Orders | 001 |
| 2 | January 27, 2025, CBP Muster regarding Implementation of Active Executive Orders issued January 21, 2025 | 003 |
| 3 | Email from USCIS regarding final decisions on applications awaiting Guidance on Jan 20, 2025 Executive Orders | 010 |

1300 Pennsylvania Avenue, NW
Washington, DC 20229

U.S. Customs and
Border Protection

January 27, 2025

MEMORANDUM FOR: Executive Directors
Directors, Field Operations
Office of Field Operations

FROM: Ray Provencio
Acting Executive Director, Admissibility and Passenger Programs
Office of Field Operations

SUBJECT: Implementation of Active Executive Orders – January 27, 2025

This memorandum and accompanying muster update the guidance package of the same title, issued on January 21, 2025.

There are multiple active Executive Orders / Presidential Proclamations as of January 27, 2025, including:

- *Guaranteeing the States Protection Against Invasion* (January 2025)
- *Securing Our Borders* (January 2025)
- *Securing the Border* (September 2024)

Among other authorities, the *Guaranteeing the States Protection Against Invasion* and the *Securing the Border* Proclamations leverage INA 212(f) authorities. This authority provides the ability for U.S. Customs and Border Protection (CBP) personnel to immediately and efficiently repatriate undocumented aliens that are not excepted. LEP [redacted]

In alignment with the executive actions, the Department of Homeland Security has ceased actions on the following programs and processes:

- Uniting for Ukraine (U4U)
- Operations Allies Welcome (OAW)
- Family Reunification Parole (FRP) Processes
- Processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV)
- Safe Mobility Offices (SMOs)
- Central American Minor (CAM) Processes




Recent changes have been implemented regarding the processing of arriving refugees, as well as expanded use of ER, both detailed in the attached muster. Active executive actions do not change existing policies on the identification and processing of unaccompanied alien children (UACs), the processing of children consistent with the *Flores* Settlement Agreement, requirements under *Orantes*, or requirements under the *Ms. L v. ICE* Settlement Agreement.

Please ensure this memorandum and the attached muster are distributed to port personnel. Should you require additional information, please contact Graham Dudley, Director, Enforcement Programs Division.

**Muster**

**Date**: January 27, 2025

**Topic**: Update: Implementation of Active Executive Orders – January 27, 2025

**Headquarters POCs**: Admissibility Policy Concerns: Enforcement Program Division (PII @cbp.dhs.gov)

Secondary Processing Systems: Systems Enforcement Analysis and Review (PII @cbp.dhs.gov)

Operational Concerns: Law Enforcement Operations Division (PII @cbp.dhs.gov)

***This guidance is updated from the initial muster, Implementation of Active Executive Orders, issued on January 21, 2025***

Overview:

- There are multiple active executive actions as of January 27, 2025, such as:
  - Presidential Proclamation *Guaranteeing the States Protection Against Invasion* (January 2025) suspends entry to the U.S. across the southern border pursuant to sections 212(f) and 215(a) of the Immigration and Nationality Act (INA) and restricts access to provisions of immigration law that would permit an alien's continued presence in the United States, including, but not limited to, Section 208 of the INA.
  - *Securing Our Borders* (January 2025) strengthens immigration response requirements and border security measures, ending "Catch and Release" practices, and reiterates the appropriate discretionary use of parole.
  - *Realigning the United States Refugee Admissions Program* (January 2025) suspends the entry of refugees under the U.S. Refugee Admission Program (USRAP) pursuant to sections 212(f) and 215(a) of the INA
  - *Securing the Border* (September 2024) suspends and limits the entry of certain aliens into the United States across the southern border with Mexico, maritime borders approximate to the southern border and the Gulf, the Virgin Islands, and Puerto Rico and does so during emergency border circumstances pursuant to sections 212(f) and 215(a) of the INA.
- Changes in the operational landscape due to the Executive Orders and the Proclamation will be addressed through strategic resource leveraging in the following areas of consideration: pre-processing steps, port security, inspecting travelers in the appropriate manner.

Scope:

- The following are not subject to the Proclamation *Guaranteeing the States Protection Against Invasion* (January 2025):
  - U.S. citizens (USCs) and Lawful Permanent Residents (LPRs);

  - Unaccompanied alien children (UAC);
  - Aliens with valid entry documents or authorizations (e.g., visa, ESTA); and
  - Aliens permitted to enter based on CBP officer discretion regarding the totality of circumstances, including consideration of significant law enforcement, public and officer safety, public health, or urgent humanitarian interests, or operational considerations.
- Travelers subject to the Proclamation shall not be permitted to cross the international boundary.
- An undocumented alien who claims or manifests a fear at the international boundary line to CBP personnel is not excepted from the Proclamation.
- Undocumented aliens who have evaded international boundary line operations, via vehicle or other means such as on foot or by rail, are not excepted from the Proclamation.
  - Once in the United States, these aliens should generally be processed for Expedited Removal (ER) consistent with guidance below in "Processing."
- Undocumented aliens using force against CBP personnel to evade international boundary line operations should be referred for prosecution.
- Once present in the United States, all applicants for entry must be inspected and processed by CBP officers.

Processing:

- Travelers subject to the Proclamation should be processed for ER or Withdrawal (WD).
  - CBP officers will not provide Forms I-867A and I-867B, will not provide individualized advisals on asylum, and will not ask the alien questions related to whether they have a fear. PII
  - Claims of fear or fear manifestations do not alter an undocumented alien's processing disposition (e.g., ER, WD).
  - Aliens who are not subject to the Proclamation because they present valid entry documents (e.g., nonimmigrant visa) during their application for admission and are found to be inadmissible, should still be processed under existing policies and procedures, including sworn statements.
  - For all secondary events where aliens who are subject to the Proclamation are found inadmissible, CBP officers will select the LEP LEP in the secondary processing system. The LEP is available for selection within the LEP
    - The LEP should not be selected for individuals processed at southwest border land border ports of entry (POE) subject to this guidance.
    - The LEP should only be utilized for applicable encounters occurring at the maritime borders that are approximate to the southern border, the Gulf, the Virgin Islands, and Puerto Rico.




- Event Disposition (Summary)




- I-213




- I-862




- While ER should be leveraged to the greatest extent possible, the LEP will continue to auto-populate this information to the I-862 to account for exigent circumstances when a Notice to Appear (NTA) must be issued.

- In all cases, the appropriate processing disposition should be determined on a case-by-case basis, considering the totality of the circumstances. If there are indicators of fraudulent documents or fraudulent activity, CBP officers should continue to utilize ER and prosecution referrals for such documented aliens.
- Travelers not subject to the Proclamation will be processed in accordance with current policy and practices under Title 8.
- The Proclamation does not change existing policies on the identification and processing of UACs, the processing of children consistent with the *Flores* Settlement Agreement, requirements under *Orantes*, or requirements under the *Ms. L v. ICE* Settlement Agreement.

<u>Port Security</u>:

- POEs will take active, preventative measures when necessary, including the suspension of operations when required due to security concerns.
    - The use of barricades, fencing, and similar infrastructure should be leveraged where available and appropriate.
    - Available law enforcement assets such as Special Response Team operators and/or Mobile Field Force personnel should be deployed where available and appropriate.
    - If a significant suspension of POE operations seems probable, port management should immediately contact local law enforcement partners, specifically Border Patrol personnel in the same area of responsibility, as well as local stakeholders and government officials.
    - In addition to active reporting on the circumstances requiring a suspension of operations or temporary closure, POE management will also designate a management official to begin drafting plans for the reconstitution of standard operations at the POE, with anticipated timelines.
- When necessary to respond to a specific threat to human life, time, and circumstances reasonably preclude the exercise of such authority by the Senior Official Performing the Duties of the Commissioner, the authority to close temporarily any OFO office or POE along the southwest border between the United States and Mexico, or to temporarily take any other lesser action that may be necessary to respond to the specific threat to human life, is delegated (See *Delegation Order 22-027* dated December 05, 2022) to Senior Executive Leadership.

<u>Return or Transfer to Law Enforcement Partners</u>:

- OFO only provides short-term holding of inadmissible aliens for processing, repatriation, transfer to other partner agencies.
- OFO turns inadmissible aliens, not amenable to immediate removal, over to law enforcement partners from POEs, such as U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO).
- If OFO's detention and/or transportation resources are unable to match undocumented alien encounter volumes, the processing of some or all individuals may be halted, suspended, or limited due to the suspension of POE operations.



<u>Processing of Refugees:</u>

- Beginning immediately, aliens previously admitted for refugee status and who are returning from foreign travel may not be admitted into the United States if a CBP officer determines the refugee is inadmissible for a security-related ground (Section 212(a)(3)) and the refugee's admission is not in the national interest.
  - The lawful admission of aliens previously admitted as a refugee must be conducted on a case-by-case basis.
- Beginning January 27th at 0001hrs, OFO may not admit refugees seeking admission for the first time under the U.S. Refugee Admissions Program (USRAP), as their entry is suspended pursuant to sections 212(f) and 215(a) of the INA.
  - If encountered, these aliens will be inspected as applicants for admission lacking proper documents sufficient for entry.
  - This would also apply to aliens deriving their status from a principal.

<u>Cessation of "Catch and Release" and Use of Parole:</u>

- The cessation of "Catch and Release" policies do not change any of the requirements of the *Ms. L v. ICE* Settlement or CBP policies governing the processing and separation of family units. Families may only be separated in accordance with the CBP *Family Unity* policy and the *Ms. L* Settlement. Similarly, the cessation of "Catch and Release" policies does not change any procedures governing the processing of UAC as codified in the Trafficking Victims Protection Reauthorization Act (TVPRA).
- CBP officers inspecting applicants for admission to the United States are reminded that aliens who are charged as inadmissible are expected to be detained until the conclusion of proceedings, pursuant to Section 235(b)(1) and (2) of the INA.
- Inadmissible applicants for admission will be processed for an appropriate disposition, primarily issuance of an ER, service of an NTA under Section 240 of the INA, or processed for a Visa Waiver Refusal.
  - CBP retains discretion under Section 235(a)(4) of the INA to permit an alien to withdraw their application for admission.
- If an inadmissible applicant for admission is not able to immediately depart foreign, then CBP officers must take every reasonable action to detain the alien pending removal.
  - Under no circumstances shall ports of entry utilize a procedure known as LEP [redacted] LEP [redacted]
- Title 6, United States Code Section 211(m) designates CBP ports of entry as short-term processing locations and defines short term as 72 hours or less.
  - Long term custody of inadmissible or removable aliens is the statutory responsibility of ICE/ERO.
- Under no circumstances will ports of entry process a parole from custody for an inadmissible applicant for admission placed into removal proceedings without the approval of their respective Director of Field Operations (DFO).
- CBP officers must request approval to grant a port parole, including a parole from custody, through their chain of command from their DFO, and each request should strive to identify the following through event creation:
  - [redacted]
  - LEP [redacted].






- LEP [redacted]
    - LEP [redacted]
    - Reporting must be completed in alignment with Operations Directorate guidance.
- This muster and the requirements herein may apply similarly to CBP encounters of non-arriving aliens who are inadmissible or removable including encounters of aliens returned to the U.S. under a Safe Third Country Agreement (STCA).
    - OFO, in the interest of recent memorandum, "Operational Priority – Safeguard America by Securing Our Border," should remain steadfast in their duty to protect the public and leverage all methods of enforcement and authorities available to CBP under federal law.
    - Non-arriving aliens should be classified as an LEP [redacted] in secondary processing systems with the appropriate classification selected under LEP [redacted] as applicable.
    - As a practical matter, if an alien is demonstrating an intention to depart the United States, CBP officers should LEP [redacted]
    - When encountering an alien previously authorized a grant of parole, that is pending their removal proceedings, and the parole authorization remains valid, CBP may, LEP [redacted]

Expansion of Use of Expedited Removal:

- On January 24, 2025, the Acting Secretary of Homeland Security issued a Federal Register Notice (90 FR 8139) expanding the authority for CBP to process the following aliens for ER:
    - Aliens who did not arrive by sea, who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for less than two years; and
    - Aliens who did not arrive by sea, who are encountered within 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years.
- Prior to this Federal Register notice, CBP officers were limited to processing ER cases for aliens who were found within 100 air miles of the U.S. border and in the United States for less than 14 days; and applicants for admission at port of entry.
- Inadmissible alien applicants for admission encountered at ports of entry and who meet the conditions listed in 8 CFR 235.3(b)(2) will not be impacted by this notice.
- Notwithstanding the processes and procedures applicable to the active Executive Orders discussed in this muster, claims of fear of return or intentions to apply for asylum are not changed by this notice and such instances should be referred for a Credible Fear screening

by USCIS and detained by ICE/ERO.

- CBP officers assigned to task forces with other DHS components or conducting outbound operations may encounter aliens subject to the expansion of ER.
  - If serving an Order of Expedited Removal based upon this notice and expansion, CBP officers must clearly articulate upon Form I-213 how CBP determined the alien was amenable to ER.
- In those circumstances where the applicability of the expansion of ER is in question, port leadership should consult with local Office of Chief Counsel.

**From:** Prelogar, Brandon B
**To:** RAIO-IRAD-All
**Subject:** Re: Executive Order on Refugee Admissions Program

---

IRAD Colleagues,

In accordance with, and while we await further guidance related to, the Executive Order titled *Realigning the United States Refugee Admissions Program*, issued Jan. 20, 2025, do not make any final decisions (approval, denial, closure) on any refugee application, petition, or other request, specifically:

- I-590 refugee applications;
- Requests for Review (RFR);
- I-730 Follow-to-Join petitions for refugees (FTJ-R); and
- I-290B Notices of Appeal or Motion relating to I-730 FTJ-Rs.

As soon as we have additional information, we will share it. Thank you,

Brandon

Brandon Prelogar
Chief, International and Refugee Affairs Division
U.S. Citizenship and Immigration Services
Department of Homeland Security
(202) 578-3639