District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF
ESTHER; PLAINTIFF JOSEPHINE;
PLAINTIFF SARA; PLAINTIFF ALYAS;
PLAINTIFF MARCOS; PLAINTIFF
AHMED; PLAINTIFF RACHEL;
PLAINTIFF ALI; HIAS, INC.; CHURCH
WORLD SERVICE, INC.; and
LUTHERAN COMMUNITY SERVICES
NORTHWEST,

   *Plaintiffs*,

  v.

DONALD J. TRUMP, in his official
capacity as President of the United States,
MARCO RUBIO, in his official capacity
as Secretary of State, MARKWAYNE
MULLIN, in his official capacity as
Secretary of Homeland Security; ROBERT
F. KENNEDY, JR., in his official capacity
as Secretary of Health and Human
Services,

   *Defendants*.

CASE NO. 2:25-cv-00255

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO
AMEND COMPLAINT AND TO
EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE
CERTAIN INFORMATION FROM
PUBLIC DOCKET

NOTE ON MOTION CALENDAR:
APRIL 28, 2026

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

**INTRODUCTION**

Defendants submit this response in opposition to Plaintiffs' motion for leave to file an amended complaint and motion to extend the scheduling order. Dkt. No. 204 ("Mot."). Plaintiffs seek leave to add eight new claims under the Administrative Procedure Act ("APA") and five new named Plaintiffs; meanwhile, they remove five of their original seven claims. Plaintiffs also seek to extend all dates in the Court's Scheduling Order issued on February 6, 2026 (Dkt. No. 187, "Scheduling Order") by 60 days. Mot. at 8.

The Court should deny Plaintiffs leave to amend their complaint. Their proposed amendments would prejudice Defendants, are unduly delayed, and are futile. The amendments do not, as Plaintiffs assert (Mot. at 2, 6), "streamline" the case following the Ninth Circuit's ruling that Defendants are likely to succeed on most of the original claims. Rather, the amendments transform this case from a challenge to the January 2025 suspension of the U.S. Refugee Admissions Program ("USRAP") into a challenge of unrelated facets of the refugee program over the ensuing fourteen months. Plaintiffs should not be permitted to swap out claims they are unlikely to succeed on with new claims constituting a *separate case*. Especially not when Plaintiffs have been on notice for the past several months of the government actions that their new claims challenge. If Plaintiffs want to drop claims that they are unlikely to succeed on, they may dismiss them with prejudice. And if Plaintiffs want to challenge separate government actions, they may seek to do so in a separate lawsuit.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND TO EXTEND CASE SCHEDULE, AND DEFENDANTS' REQUEST TO STRIKE CERTAIN INFORMATION FROM PUBLIC DOCKET [CASE NO. 2:25-CV-00255]

1

U.S. DEPT. OF JUSTICE, CIVIL DIVISION OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 746-8537

Likewise, the Court should deny Plaintiffs' motion to extend the Scheduling Order by 60 days. Plaintiffs appear to want to continue seeking discovery into the two claims they are re-alleging in the amended complaint while their eight brand-new claims simultaneously proceed through the pleadings stage. That approach is impractical and prejudicial. If the Court allows Plaintiffs to amend the complaint, the case will essentially start over again at the pleadings stage, rendering the Scheduling Order inoperative. Moreover, a 60-day extension will result in Plaintiffs' claims proceeding on two separate litigation tracks—the two re-alleged claims under the Scheduling Order and the eight new claims under some other schedule. At the very least, if the Court is inclined to preserve the Scheduling Order, it should *stay* the Scheduling Order until any of Plaintiffs' new claims reach the same stage in the litigation.

Lastly, the Court should strike certain paragraphs of the proposed amended complaint from the public docket because they appear to contain confidential information.

## **BACKGROUND**

### I.    Government actions at issue.

On January 20, 2025, President Trump issued Executive Order 14163, which suspended the USRAP. Exec. Order No. 14163, *Realigning the United States Refugee Admissions Program* (Jan. 20, 2025) ("EO 14163"); 90 Fed. Reg. 8459 (Jan. 30, 2025). The same day, the President also issued Executive Order 14169, *Reevaluating and Realigning United States Foreign Aid* (Jan. 20, 2025) ("EO 14169"); 90 Fed. Reg. 8619 (Jan. 30, 2025). Three weeks later, on February 7, 2025, the President issued Executive Order 14204, which directed the

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

2

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

prioritization of resettlement through the USRAP for Afrikaners from South Africa. Exec. Order No. 14204, *Addressing Egregious Actions of the Government of South Africa* (Feb. 7, 2025) ("EO 14204"); 90 Fed. Reg. 9497, 9498 (Feb. 12, 2025).

In June 2025, the President issued Presidential Proclamation 10949, which restricts the entry of certain foreign nationals whose admission would be detrimental to the national interest.  90 Fed. Reg. 24497, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats* (June 4, 2025).  Proclamation 10949 has no exception for entry into the United States of refugees. The President later supplemented and continued this proclamation in Proclamation 10998. 90 Fed. Reg. 59717, *Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States* (Dec. 16, 2025).

On September 30, 2025, the President set the refugee ceiling for Fiscal Year 2026 at 7,500 refugees and directed admissions to primarily be allocated to Afrikaners from South Africa. 90 Fed. Reg. 49005, *Presidential Determination on Refugee Admissions for Fiscal Year 2026* (Sept. 30, 2025) ("FY 2026 PD"). The FY 2026 PD makes clear that any refugee admissions are subject to the USRAP suspension in EO 14163 and the entry restrictions in Proclamation 10949. *Id.*

## II.   This litigation.

On February 10, 2025, Plaintiffs filed their initial complaint challenging EO 14163 and EO 14169, but not EO 14204. Dkt. No. 1. Plaintiffs then supplemented the complaint on March

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

3

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

5, 2025, after Defendants terminated cooperative agreements with Plaintiff nonprofit organizations. Dkt. No. 56 (the "operative complaint"). Plaintiffs also moved for preliminary injunctions, Dkt. Nos. 14, 57, which the Court granted, Dkt. Nos. 39, 79. Defendants appealed the injunctions. *Pacito v. Trump*, Nos. 25-1313, 25-1939 (9th Cir.).

Defendants then moved to dismiss the operative complaint in April 2025, Dkt. No. 115, which the Court denied in July 2025, Dkt. No. 149. The same day, the Court granted Plaintiffs' motion for class certification, certifying three mandatory subclasses based on the claims in the operative complaint. Dkt. No. 148.

Two weeks later, in August 2025, Defendants answered the operative complaint, Dkt. No. 155, and filed three certified administrative records ("CARs"), Dkt. Nos. 152, 153, 154. Defendants later supplemented the CARs in January and February of 2026. Dkt. Nos. 152-1 ("DHS CAR"), 153-1 ("HHS CAR"), 154-1 ("State CAR"), 178-2 ("Corr. DHS CAR"), 184 ("Suppl. DHS CAR"), 186 ("Suppl. State CAR"). Between the three CARs and their supplementations, Defendants served over one thousand pages of records, including guidance, emails, and notices, which demonstrate the reasons behind the actions the agencies took to implement the USRAP suspension and the suspension and later termination of cooperative agreements with Plaintiff nonprofit organizations. *See, e.g.*, State CAR at 006-08, 014, 016-20, 022-26; Suppl. State CAR at 929-40; Corr. DHS CAR at 001-10; HHS CAR at 001-02.

The Court issued the Scheduling Order, Setting Trial Date and Related Dates, on February 6, 2026. Dkt. No. 187. The Scheduling Order set the following deadlines: March 10,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

4

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

2026, for filing amended pleadings; April 7, 2026, for joining additional parties; June 5, 2026, for completion of discovery; July 6, 2026, for filing of dispositive motions; several pre-trial matters in July, August, and September 2026; and September 8, 2025, for trial. Dkt. No. 187.

Eleven days before the Scheduling Order issued, Plaintiffs served interrogatories and requests for production on Defendants even though Defendants had already produced and supplemented the CARs. *See* Dkt. No. 190. Defendants moved for a protective order for relief from responding to Plaintiffs' discovery requests because Plaintiffs are not entitled to discovery on their APA claims and their constitutional claims are duplicative of the APA claims. Dkt. No. 193. That motion remains pending. Out of an abundance of caution, Defendants responded to Plaintiffs' discovery requests objecting to each one.

Meanwhile, the parties litigated the Court's preliminary injunctions in the Ninth Circuit. On March 5, 2026, the Circuit substantially narrowed Plaintiffs' path forward, holding that Plaintiffs were unlikely to succeed on their claims challenging the USRAP entry suspension, the suspension of processing on refugee applications, and the termination of cooperative agreements as they pertain to funding of overseas refugee operations. *Pacito v. Trump*, 169 F.4th 895 (9th Cir. 2026); *see* Dkt. No. 198. The Circuit's order vacated this Court's preliminary injunctions except to the extent the injunctions require Defendants to provide resettlement services to refugees who have already been admitted to the United States through the USRAP. *Pacito*, 169 F.4th at 940.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

5

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

## III.    The instant motions.

In light of the Ninth Circuit's order, Plaintiffs moved to extend the Scheduling Order's deadline for amending the operative complaint, Dkt. No. 197, which the Court granted, Dkt. No. 199. Plaintiffs then filed the instant motion for leave to amend by the revised deadline. Dkt. Nos. 204, 204-1, 204-2. In the proposed amendment, Plaintiffs drop their claims challenging the validity of the USRAP suspension and remove the President as a party. The only two claims Plaintiffs re-allege in the proposed amendment are their challenge to the suspension of refugee-application processing and their challenge to termination of funding for Plaintiff resettlement organizations, although Plaintiffs narrow their funding claim to apply only to funding for post-arrival resettlement benefits. 204-1 (First and Second Claims). Plaintiffs then add eight new claims challenging unrelated government actions. They bring one claim challenging the implementation of case-by-case exceptions under EO 14163 § 3(c). Dkt. No. 204-1 (Third Claim). Plaintiffs then bring five claims challenging the FY 2026 PD. Dkt. No. 204-1 (Fourth, Fifth, Sixth, Seventh, and Eighth Claims). Lastly, Plaintiffs bring two claims challenging the application of two Proclamations that separately bar admission of refugees from certain countries that have inadequate vetting procedures—Proclamation 10949 and Proclamation 10998. Dkt. No. 204-1 (Ninth and Tenth Claims).

Plaintiffs also moved to extend the remaining dates in the Scheduling Order by 60 days to account for their amendment motion. Dkt. No. 204.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND TO EXTEND CASE SCHEDULE, AND DEFENDANTS' REQUEST TO STRIKE CERTAIN INFORMATION FROM PUBLIC DOCKET [CASE NO. 2:25-CV-00255]

6

U.S. DEPT. OF JUSTICE, CIVIL DIVISION OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 746-8537

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure ("Rule") 15(a)(2), once amendment as of right is unavailable, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Rule 15 embodies a liberal amendment policy, leave is not automatic. In deciding whether to grant leave, courts consider the factors identified in *Foman v. Davis*, 371 U.S. 178, 182 (1962): (1) undue delay; (2) bad faith, (3) repeated failure to cure deficiencies, (4) futility, and (5) prejudice to the opposing party. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Prejudice to the opposing party is the most important factor, and the presence of prejudice alone may justify the denial of leave. *Id.* at 1052. And a district court acts well within its discretion in denying leave where amendment would force the opposing party to defend materially different facts or theories or delay resolution of the action. *See Lockheed Martin Corp. v. Network Sols.*, 194 F.3d 980, 986 (9th Cir. 1999). While Rule 15(d) gives courts discretion to allow supplementation of a complaint to challenge later-occurring actions, supplementation may be denied where it would inject into the case a separate and distinct controversy or substantially alter the scope of the case. *See Keith v. Volpe,* 858 F.2d 467, 473-74 (9th Cir. 1988).

Rule 16 governs whether the courts may modify a case schedule. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause standard is a more demanding inquiry than the Rule 15 standard and reflects

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

7

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

a court's interest in the orderly and efficient management of its docket. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (quoting Fed. R. Civ. P. 16, advisory committee's notes (1983 amendment)).

## **ARGUMENT**

**I.     The Court should deny leave to amend because the proposed amendment is prejudicial, is unduly delayed, and is futile.**

**A.     The proposed amendment prejudices Defendants by transforming this case into two separate lawsuits.**

The Ninth Circuit has affirmed denials of leave to amend where "[t]he new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see Lockheed Martin*, 194 F.3d at 986. Here, Plaintiffs' proposed amendments would cause the same prejudice to Defendants.

*First*, the proposed amendments would "greatly alter[] the nature of the litigation." *Morongo Band*, 893 F.2d at 1079. The operative complaint focuses primarily on the validity of the January 2025 suspension of the USRAP under EO 14163 and USRAP funding under EO 14169. *See* Dkt. No. 56. The proposed amendments do not refine those claims; rather, they challenge three unrelated actions that occurred *after* the suspension—implementation of case-

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

8

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

by-case exceptions under EO 14163 § 3(c), the FY 2026 PD, and application of Proclamations 10949 and 10998 to refugees. *See* Dkt. No. 204-1 (Third through Tenth Claims). The proposed amendments are essentially a separate lawsuit that Plaintiffs seek to cram into this case. If Plaintiffs want to challenge these government actions, they may seek to do so in a separate lawsuit rather than transforming this case. *See ACLU of N. Ca. v. Burwell*, No. 16-cv-3539, 2017 WL 4551492, at *5 (N.D. Cal. Oct. 11, 2017) (denying leave to amend where amendment would "transform the case"); *Garcia v. Service Employees Int'l Union*, No. 17-cv-1340, 2018 WL 10721071, at *3 (D. Nev. July 24, 2018) (same).

*Second*, allowing Plaintiffs to amend would require Defendants to "undertake . . . an entirely new course of defense" and this "late hour" in the case. *Morongo Band*, 893 F.2d at 1079. Contrary to Plaintiffs' implied assertions, *see* Mot. at 6-7, this case has reached a significantly advanced stage such that transformation of the case would be prejudicial. For instance, Defendants litigated the Court's preliminary injunctions in the Ninth Circuit and obtained an order holding that Defendants are likely to succeed on a majority of Plaintiffs' claims. *Pacito*, 169 F.4th at 940. Meanwhile, Defendants produced three certified administrative records and supplements pertaining to those claims. *See supra* p.4. The Court also certified three mandatory subclasses based on those claims. Dkt. No. 148. Allowing amendment after all that has transpired in this case would require Defendants to shift their defense strategy away from one defending the validity of the USRAP suspension and create an entirely new strategy defending the reasonableness of the agencies' implementation of case-

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

9

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

by-case exceptions to the USRAP suspension, the validity of the FY 2026 PD, and the validity of applying Proclamations 10949 and 10998 to refugees.

*Third*, Defendants would be prejudiced if Plaintiffs are permitted, through amendment, to essentially dismiss without prejudice the claims on which the Ninth Circuit held they are likely to fail. *See* Dkt. No. 204-2. Rule 41 requires the parties to stipulate to dismissal of claims after an answer. Defendants would require that the dismissal of the claims Plaintiffs are likely to lose on be with prejudice to spare Defendants the burden of re-litigating these issues should other litigation arise.

*Lastly*, allowing Plaintiffs to amend their complaint simply because they seek to challenge matters related to the USRAP—but unrelated to this case—would significantly prejudice Defendants. That would set the precedent that Plaintiffs may add new claims to this lawsuit every time the government takes a new action that impacts refugees, indefinitely prolonging this litigation. For instance, the FY 2027 Presidential Determination will issue on or about October 1, 2026. Plaintiffs could seek to add claims regarding that action to this case as well rather than through a separate lawsuit, which would prolong the litigation.[1]

---

[1] As a practical matter, Plaintiffs do not explain how it is proper and efficient for them to add new class claims after the Court has already certified three subclasses based on the operative claims.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND TO EXTEND CASE SCHEDULE, AND DEFENDANTS' REQUEST TO STRIKE CERTAIN INFORMATION FROM PUBLIC DOCKET [CASE NO. 2:25-CV-00255]

10

U.S. DEPT. OF JUSTICE, CIVIL DIVISION OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 746-8537

**B.    The proposed amendments are unduly delayed. Plaintiffs now seek to bring claims that they could have brought several months ago.**

"Although delay is not a dispositive factor in the amendment analysis, it is relevant, . . . especially when no reason is given for the delay." *Lockheed Martin*, 986 F.3d at 986 (internal citations omitted). Here, Plaintiffs do not explain their delay in seeking to challenge Defendants' implementation of case-by-case exceptions to the USRAP suspension, the application of Proclamations 10949 and 10998 to refugees, and the FY 2026 PD.

Indeed, Plaintiffs now seek to challenge actions taken many months ago, and in some instances, more than a year ago and even before Plaintiffs filed the operative complaint. For example, the President issued EO 14204, the Afrikaner EO that is the basis for Plaintiffs' challenge to the implementation of case-by-case USRAP-suspension exceptions, in February 2025, and Defendants began processing Afrikaners that same month. Defendants then began admitting refugees pursuant to case-by-case exceptions in May 2025. The President also issued Proclamation 10949 in June 2025 and Proclamation 10998 in December 2025. And the President issued the FY 2026 PD in September 2025.

Plaintiffs knew of these actions and could have challenged them soon after they happened just like Plaintiffs did when they challenged the USRAP suspension and the termination of cooperative agreements. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[I]n evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.") (citation omitted). Instead, Plaintiffs waited while proceedings in this

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

11

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

case progressed on a different footing and finally sought to add the new challenges only after the Ninth Circuit substantially narrowed their original theory. That sequence strongly supports denial of leave to amend for undue delay. *See id.* (affirming denial of leave to amend because eight-month delay in seeking amendment was unreasonable).

## C.    The proposed amendment is futile.

A proposed amended complaint "should be denied as futile" where it "cannot withstand a motion to dismiss." *Potter v. Eaton Corp.*, 9 F.3d 1553, 1553 (9th Cir. 1993). Here, Plaintiffs' proposed new claims would not survive a motion to dismiss.

*First*, Plaintiffs' Third Claim challenges Defendants' implementation of case-by-case exceptions to the USRAP suspension. Dkt. No. 204-1, ¶¶ 394-401. But case-by-case exception decisions under EO 14163 § 3(c) are discretionary and thus unreviewable. *See Pacito*, 169 F.4th at 930 (explaining the APA's authorization that court's may set aside agency action that is "an abuse of discretion" is "to be read . . . quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion") (citation omitted); *cf. Kucana v. Holder*, 558 U.S. 233, 248 (2010) (holding discretion over admission of refugees under 8 U.S.C. § 1157(c)(1) is unreviewable pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii)). Moreover, "[a]s a general rule, there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995) (citation omitted).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND TO EXTEND CASE SCHEDULE, AND DEFENDANTS' REQUEST TO STRIKE CERTAIN INFORMATION FROM PUBLIC DOCKET [CASE NO. 2:25-CV-00255]

12

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

*Second*, Plaintiffs' Fourth, Fifth, Sixth, Seventh, and Eighth Claims all challenge in one way or another the Presidential Determination setting the parameters for refugee admissions in FY 2026 (the FY 2026 PD). Dkt. No. 204-1, ¶¶ 402-23. While Plaintiffs frame these claims as challenges to agency *implementation* of the FY 2026 PD, in practical effect they are challenges to the PD itself. Indeed, Plaintiffs fault Defendants for giving case-by-case exceptions primarily to Afrikaners, *e.g.*, Dkt. 204-1, ¶ 397, but that is precisely what the FY 2026 PD instructs Defendants to do pursuant to EO 14204, *see* 90 Fed. Reg. at 49005 ("The admissions numbers shall primarily be allocated among Afrikaners from South Africa pursuant to Executive Order 14204 . . . ."), *see also Pacito*, 169 F.4th at 916 n.3 (noting that the FY 2026 PD "set[s] the annual cap at 7,500 refugees to 'primarily be allocated among Afrikaners from South Africa.'"). Yet, tellingly absent from the proposed amendment is any direct challenge to the FY 2026 PD, and Plaintiffs drop the President as a defendant in this case. In addition, none of the laws cited by Plaintiffs require Defendants to process or admit any categories of refugees. *See* Dkt No. 204-1, ¶¶ 53-65 (discussing following-to-join refugees, Iraqi applicants, and Lautenberg applicants); *see also Pacito*, 169 F.4th at 923 (stating the INA does not guarantee entry to following-to-join refugees). Further, if the trial date is postponed until after November 9, 2026—which is likely if Plaintiffs are permitted to transform this case through amendment—the FY 2027 PD will have issued by then, thus mooting Plaintiffs' challenges to the FY 2026 PD.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

13

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

*Third*, Plaintiffs' Ninth and Tenth Claims challenge the application of Proclamations 10949 and 10998 to refugees. Dkt. No. 204-1, ¶¶ 424-31. Plaintiffs cannot establish standing to challenge these Proclamations because Plaintiffs are already barred from entering the United States under EO 14163, which is an independent 8 U.S.C. § 1182(f) entry suspension from Proclamations 10949 and 10998. Thus, any ruling by this Court on Defendants' interpretation of these Proclamations would not redress Plaintiffs' inability to enter the United States as long as the USRAP suspension is in effect. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016) (redressability is a requirement of Article III standing).

*Lastly*, while Plaintiffs' First and Second Claims are already being litigated in this case, *see* Dkt. No. 204-1, ¶¶ 383-93, if the Court were to grant Plaintiffs leave to amend, the Court should not permit their First Claim, which challenges the suspension of refugee application processing, to proceed. It is futile because the Ninth Circuit already held it is unlikely to succeed. *See Pacito*, 169 F.4th at 923.

**II.    Plaintiffs have not shown good cause to extend the Scheduling Order by 60 days.**

As discussed, Plaintiffs must meet Rule 16's good cause standard to extend the scheduling order, which is "*more stringent*" than Rule 15's liberal standard. *AmerisourceBergen*, 465 F.3d at 958 (emphasis in original). A party must show good cause even where, as here, the request for leave to amend is timely under the scheduling order. *Id.* at 957. Here, Plaintiffs fail to satisfy Rule 16's stringent standard.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

14

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Plaintiffs' 60-day extension proposal overlooks that, if the Court grants leave to amend, the Scheduling Order will become inoperative because the case will start all over again at the pleadings stage. All ten claims must therefore proceed through the pleadings stage together, Defendants must answer all of the claims together, and the parties must file a new Rule 26(f) report so that the Court may set a *new* scheduling order to govern the later stages of the litigation so that factual development and summary judgment may proceed as to all claims together. *See Int'l Mezzo Tech., Inc. v. Airborne ECS LLC*, No. 24-cv-1368, 2025 WL 2855345, at *4 (W.D. Wash. Oct. 8, 2025) (Whitehead, J.) (after granting leave to amend, striking the remaining case schedule and ordering the parties to file joint status report proposing a new case schedule that would account for the amended pleading).

Plaintiffs' proposal to extend the current Scheduling Order by 60 days is impractical and prejudicial. It would result in the "old" and "new" claims proceeding under separate tracks. After 60 days pass, the two re-alleged claims would pick up where they left off—in the factual development stage with administrative records already produced and litigation over the permissibility of discovery already underway. Meanwhile, the new claims will likely be stuck in the pleadings stage. The Court would likely need to create a separate scheduling order for those claims, which would lag behind the two re-alleged claims. The re-alleged claims then would likely be ready for summary judgment and possibly trial before factual development had completed on the new claims. In short, the parties would be unable to meet the deadlines

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

15

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

in the scheduling order as to the new claims if the dates in the Scheduling Order are only extended by 60 days.

To the extent the Court is inclined to preserve the Scheduling Order, the better approach is to *stay* the Order, along with all discovery obligations, until the eight new claims can reach the same stage in the litigation as the two re-alleged claims (if they can at all). At that point, the Court can set new deadlines for completion of factual development, summary judgment, and trial-related dates.

**III.   The Court should strike confidential information from the proposed amended complaint.**

Defendants will be prejudiced if the Court grants Plaintiffs leave to file the proposed amended complaint in its current form because multiple paragraphs appear to contain confidential information that would otherwise be protected from public disclosure under the parties' stipulated protective order if Defendants eventually have to produce it in discovery.[2] The information contained in paragraphs 158, 160, 168, and 172 was likely obtained via unauthorized disclosure by a government employee and/or USRAP implementer. *See* Dkt. No. 196, Stipulated Protective Order § 2.1(a) (defining confidential information as information that "is not in the public domain except through the Producing Party's voluntary or court

---

[2]   Defendants neither confirm nor deny whether Plaintiffs information and belief in paragraphs 158, 160, 168, and 172 is correct but note those allegations are not in the public domain.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

16

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

ordered disclosure"). Defendants therefore request that the Court strike from the public docket paragraphs 158, 160, 168, and 172 of the proposed amended complaint. *See* LCR 7(g).

### CONCLUSION

For the foregoing reasons, this Court should (a) deny Plaintiffs' motion for leave to amend their complaint, (b) deny Plaintiffs' motion to extend the case schedule, and (c) strike paragraphs 158, 160, 168, and 172 of the proposed amended complaint from the public docket.

DATED April 22, 2026.                                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

CARA E. ALSTERBERG
Acting Assistant Director

*/s/ Joseph McCarter\**
JOSEPH MCCARTER
ILANA KRAMER
JASON ZUBATA
Trial Attorneys
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franlin Station
Washington, DC 20044

*Attorneys for Defendants*

\* I certify that this opposition brief contains 4,170 words, which complies with the Local Civil Rules. *See* LCR 7(e)(4).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND TO EXTEND CASE SCHEDULE, AND DEFENDANTS' REQUEST TO STRIKE CERTAIN INFORMATION FROM PUBLIC DOCKET [CASE NO. 2:25-CV-00255]

17

U.S. DEPT. OF JUSTICE, CIVIL DIVISION OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 746-8537

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 22, 2026, I caused a copy of this filing to be served on counsel for Plaintiffs via the ECF system.

*/s/ Joseph McCarter*
JOSEPH MCCARTER
Attorney for Defendants

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO EXTEND CASE SCHEDULE, AND
DEFENDANTS' REQUEST TO STRIKE CERTAIN
INFORMATION FROM PUBLIC DOCKET
[CASE NO. 2:25-CV-00255]

18

U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537