District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; PLAINTIFF YODIT; PLAINTIFF SENAI; PLAINTIFF MIRIAM; PLAINTIFF BABAK; PLAINTIFF JALAL; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

MARCO RUBIO, in his official capacity as Secretary of State; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; and ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

*Defendants*.

CASE NO. 2:25-cv-00255

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

NOTE ON MOTION CALENDAR: JULY 28, 2026

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-cv-00255]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.       Statutory and regulatory background. ................................................................... 2

          A.      The Executive's authority to suspend entry of aliens. ............................. 2

          B.      The Refugee Act. ..................................................................................... 2

    II.      Factual background and procedural history. .......................................................... 4

          A.      Government actions at issue. .................................................................... 4

          B.      This litigation. ......................................................................................... 5

STANDARD OF REVIEW ................................................................................................ 7

ARGUMENT ...................................................................................................................... 8

    I.       The Ninth Circuit's decision upholding EO 14163 requires dismissal of nearly all Plaintiffs' amended claims (First Claim, Second Claim in part, and Third through Tenth Claims). .......................................................................... 8

          A.      The Ninth Circuit rejected Plaintiffs' EO-14163-implementation and foreign-funding claims (First Claim in full and Second Claim in part). ......................................................................................................... 8

          B.      Plaintiffs' case-by-case-exceptions and equal protection claims also necessarily fail for lack of redressability due to the Ninth Circuit's decision (Third and Eighth Claims). ............................................. 9

          C.      Likewise, Plaintiffs' APA and equal protection claims challenging the FY 2026 PD fail for lack of redressability due to the Ninth Circuit's decision (Fourth through Eighth Claims). ................................. 10

          D.      The claims challenging Proclamation 10949 also fail for both lack of injury and lack of redressability due to the Ninth Circuit's decision (Ninth and Tenth Claims). ........................................................... 11

    II.      Regardless, Claims Two through Ten fail for numerous other reasons. ............... 12

          A.      Plaintiffs' domestic funding claim is moot (Claim Two in

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

i

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

remaining part). ................................................................................ 12

B.    Case-by-case-exceptions decisions are unreviewable, and Defendants' implementation of EO 14163's exceptions provision is consistent with both the INA and the EO (Claim Three). ..................... 14

B.    Plaintiffs' FY-2026-PD claims are re-framed challenges to case-by-case-exceptions decisions, and Defendants implementation the PD is consistent with its parameters (Fourth through Seventh Claims). ............................................................................... 20

C.    Plaintiffs' Fifth Amendment equal protection claim is not plausible (Eighth Claim). ................................................................ 22

D.    Proclamation 10949's entry bar also applies to refugees (Ninth and Tenth Claims). ........................................................................ 27

CONCLUSION ................................................................................................. 29

CERTIFICATION OF CONFERRAL ............................................................. 30

CERTIFICATION OF SERVICE ..................................................................... 30

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Transp. Ass'n of Am. v. FAA*,
169 F.3d 1 (D.C. Cir. 1999) ............................................................................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 8, 20, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 7

*Brach v. Newsome*,
38 F.4th 6 (9th Cir. 2022) ..................................................................................... 12, 13

*Chen Zhou Chai v. Carroll*,
48 F.3d 1331 (4th Cir. 1995) ...................................................................................... 19

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) .................................................................................................. 14

*Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985) .................................................................................................. 25

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ..................................................................................... 4

*Dep't of State v. Muñoz*,
602 U.S. 899 (2024) ........................................................................................... 23, 24

*Ekimian v. INS*,
303 F.3d 1153 (9th Cir. 2002) ................................................................................... 15

*Elkins v. Moreno*,
435 U.S. (1978) ......................................................................................................... 2

*Fisher v. Univ. of Texas at Austin*,
570 U.S. 297 (2013) .................................................................................................. 25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .................................................................................................. 12

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

iii

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

*Haig v. Agee,*
    453 U.S. 280 (1981) .................................................................................................... 26

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ............................................................................................... 14, 15

*Hemp Indus. Ass'n v. DEA,*
    333 F.4th 1082 (9th Cir. 2003) ................................................................................. 28

*Humanitarian Law Project v. Reno,*
    205 F.3d 1130 (9th Cir. 2000) ................................................................................... 26

*Hymes v. Procunier,*
    428 F.2d 824 (9th Cir. 1970) ...................................................................................... 6

*Johnson v. Eisentrager,*
    339 U.S. 763 (1950) .................................................................................................... 24

*Kleindienst v. Mandel,*
    408 U.S. 753 (1972) .................................................................................................... 23

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ..................................................................................................... 7

*Landon v. Plasencia,*
    459 U.S. 21 (1982) ............................................................................................... 18, 23

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..................................................................................................... 9

*Mathews,*
    426 U.S. ....................................................................................................................... 23

*Meyer v. Bush,*
    981 F.2d 1288 (D.C. Cir. 1993) ................................................................................ 19

*Morton v. Ruiz,*
    415 U.S. 199 (1974) ............................................................................................... 18, 19

*Mullin v. Doe,*
    Nos. 25-1083, 25-1084, 609 U.S. ----, 2026 WL 1825840 (U.S. June 25, 2026) .............. 26, 27

*Nixon v. United States,*
    506 U.S. 224 (1993) .................................................................................................... 27

*Pacito v. Trump*,
   169 F.4th 895 (9th Cir. 2026)................................................................................ passim

*Poursina v. USCIS*,
   936 F.3d 868 (9th Cir. 2019)................................................................................ passim

*R.R. Retirement Bd. v. Fritz*,
   449 U.S. 166 (1980) ........................................................................................... 24, 25

*Ram v. INS*,
   243 F.3d 510 (9th Cir. 2001)...................................................................................... 24

*Romer v. Evans*,
   517 U.S. 620 (1996) ................................................................................................... 25

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014)...................................................................................... 12

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..................................................................................................... 9

*Trout Unlimited v. Pirzadeh*,
   1 F.4th 738 (9th Cir. 2021)......................................................................................... 14

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ............................................................................................ passim

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990) ............................................................................................. 23, 24

*Waterkeeper All. v. EPA*,
   140 F.4th 1193 (9th Cir. 2025).................................................................................... 18

*Webster v. Doe*,
   486 U.S. 592 (1988) ................................................................................................... 15

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004)......................................................................................... 7

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ................................................................................................... 23

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

v

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

**Statutes**

5 U.S.C. § 553 ............................................................................................................... 19

5 U.S.C. § 553(a) ........................................................................................................... 19

5 U.S.C. § 553(b) ........................................................................................................... 28

5 U.S.C. § 706(2)(a) ....................................................................................................... 14

8 U.S.C. § 1101 ................................................................................................................ 2

8 U.S.C. § 1101(a)(42) ................................................................................................... 26

8 U.S.C. § 1157(a)(1)-(3) ............................................................................................... 10

8 U.S.C. § 1157(a)(2) ....................................................................................................... 3

8 U.S.C. § 1157(a)(2)-(3) ............................................................................................... 21

8 U.S.C. § 1157(a)(3) ....................................................................................................... 3

8 U.S.C. § 1157(c)(1) ....................................................................................................... 3

8 U.S.C. § 1157(c)(2)(A) ..................................................................................... 3, 11, 22

8 U.S.C. § 1157(c)(3) ....................................................................................................... 3

8 U.S.C. § 1182(f) ................................................................................................... passim

8 U.S.C. § 1522 ......................................................................................................... 3, 13

Pub. L. No. 96-212 ........................................................................................................... 3

Pub. L. No. 110-181 ....................................................................................................... 11

**Rules**

Fed. R. Evid. 201 ............................................................................................................. 4

Federal Rules of Civil Procedure 12(b)(1) ................................................................. 1, 7

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

vi

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

**Regulations**

8 C.F.R. § 207.1 ................................................................................................ 29

8 C.F.R. § 207.7(a) .............................................................................................. 3

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

vii

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Defendants Marco Rubio, Secretary of U.S. Department of State ("State Department"); Markwayne Mullin, Director of U.S. Department of Homeland Security ("DHS"), and Robert F. Kennedy, Jr., Director of U.S. Department of Health and Human Services ("HHS"), move to dismiss Plaintiffs' first amended complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

The Ninth Circuit upheld Executive Order 14163 ("EO 14163") and reversed this Court's preliminary injunctions in almost every respect. The Circuit confirmed that 8 U.S.C. § 1182(f) authorized the President to suspend the entry of *all* refugees to the United States. Thus, by default all refugees—including refugee Plaintiffs—are currently barred from entering the country. That is dispositive of Plaintiffs' case because, no matter what results from Plaintiffs' amended claims, they cannot receive the relief they ultimately want—admission into the United States.

Aware that the Ninth Circuit's decision precludes their admission, Plaintiffs now attack the case-by-case-exceptions process. They complain that Defendants have granted exceptions to other refugees, like Afrikaners from South Africa whose entry the U.S. Government has deemed to be in the national interest due to U.S. foreign policy towards South Africa. But Plaintiffs may not force the Government to grant them exceptions or follow their desired procedures. And they certainly may not force the Government to change its foreign policy.

Plaintiffs also attack Defendants' so-called implementation of the presidential determination that set the refugee ceiling for the 2026 fiscal year ("FY 2026 PD") and Defendants application of Presidential Proclamation 10949 to refugees. But the FY 2026 PD claim is simply a reframing of Plaintiffs' grievances with Defendants' case-by-case-exceptions decisions. And

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

their challenge to Proclamation 10949 again is not redressable because refugee Plaintiffs are already barred from entering the United States due to the EO 14163.

At bottom, the Ninth Circuit confirmed that refugee Plaintiffs are currently barred from entering the United States. And attacking other Government actions and foreign policy decisions cannot overcome that bar.

## BACKGROUND

**I.    Statutory and regulatory background.**

**A.  The Executive's authority to suspend entry of aliens.**

The Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1101 et seq., as amended, established "a comprehensive and complete code covering all aspects of admission of aliens to this country," *Elkins v. Moreno*, 435 U.S. 664 (1978). Congress gave the President broad discretionary authority to suspend or restrict the entry of all aliens:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f). The Supreme Court has repeatedly upheld the broad and virtually unreviewable sweep of this authority. *E.g.*, *Trump v. Hawaii*, 585 U.S. 667, 684 (2018). The Ninth Circuit did the same recently. *See Pacito v. Trump*, 169 F.4th 895, 921-22 (9th Cir. 2026).

**B.  The Refugee Act.**

The Refugee Act of 1980 amended the INA to establish "a permanent and systematic procedure for the admission to this country of refugees of special humanitarian concern to the United States, and to provide comprehensive and uniform provisions for [their] effective

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

2

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

resettlement." Pub. L. No. 96-212, 94 Stat. 102, § 101(b). The Refugee Act provides that the maximum number of refugees that may be admitted annually shall be "such number as the President determines, before the beginning of the fiscal year and after appropriate consultation [with Congress], is justified by humanitarian concerns or is otherwise in the national interest." 8 U.S.C. § 1157(a)(2).

Subject to numerical limits set annually by the President, the Secretary of Homeland Security has discretion to admit "any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible (except as otherwise provided under [8 U.S.C. § 1157(c)(3)]) as an immigrant" under the INA. 8 U.S.C. § 1157(c)(1). Which refugees are determined to be "of special humanitarian concern" to the United States for the purpose of refugee resettlement is determined by the Department of State, in coordination with other U.S. government agencies. *See* 8 U.S.C. § 1157(a)(3) ("Admissions … shall be allocated among refugees of special humanitarian concern to the United States in accordance with a determination made by the President after [Congressional] consultation."). Certain individuals who do not meet the statutory definition of a refugee may receive refugee status if they are accompanying or "following-to-join" a principal refugee (*i.e.*, "FTJ-Rs"). *See* 8 U.S.C. § 1157(c)(2)(A); 8 C.F.R. § 207.7(a).

Following admission, the INA authorizes the funding of programs by public or private organizations to assist refugees in achieving self-sufficiency. 8 U.S.C. § 1522. As of January 2026, Office of Refugee Resettlement, an HHS sub-agency, ("HHS-ORR"), assumed full responsibility for administering to refugees § 1522 services. 90 Fed. Reg. 49007, *Presidential Determination on Transferring the United States Program of Initial Resettlement* (Oct. 31, 2025); *see* Dkt.181. HHS-

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

3

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

ORR provides refugees with initial resettlement services, as well as the longer-term cash and medical assistance and refugee social services. *See* Office of Refugee Resettlement, *Refugee Resettlement Program*[1]; Dkt.181.

## II.    Factual background and procedural history.

### A.    Government actions at issue.

In January 2025, President Trump issued EO 14163, which suspended the USRAP. Exec. Order No. 14163, *Realigning the United States Refugee Admissions Program* (Jan. 20, 2025); 90 Fed. Reg. 8459 (Jan. 30, 2025). FAC ¶ 122. The same day, the President also issued Executive Order 14169, which required a pause of review of foreign assistance, like the domestic and overseas refugee services funded from the Title III of the Department of State, Foreign Operations, and Related Programs Appropriations Act. Exec. Order 14169, *Reevaluating and Realigning United States Foreign Aid* (Jan. 20, 2025) ("EO 14169"); 90 Fed. Reg. 8619 (Jan. 30, 2025). FAC ¶ 204. The Government also suspended and terminated cooperative agreements with refugee nonprofits who provided refugee services. FAC ¶¶ 204, 214; *see* Dkt.58-2.

In February 2025, the President also issued Executive Order 14204, which directed the resettlement of Afrikaners from South Africa in response to actions taken by the South African government that harm U.S. interests and discriminate against minority ethnic Afrikaners, Exec. Order No. 14204, *Addressing Egregious Actions of the Government of South Africa* (Feb. 7, 2025) ("EO 14204"); 90 Fed. Reg. 9497, 9498 (Feb. 12, 2025). FAC ¶ 152.

---

[1]    Available at https://acf.gov/orr/programs/refugees (visited June 30, 2026). The Court may take judicial notice of government websites. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010); *see* Fed. R. Evid. 201.

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

4

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Later, in June 2025, the President issued Presidential Proclamation 10949, which restricts the entry of certain foreign nationals whose admission would be detrimental to the national interest, Pres. Procl. 10949, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24497 (June 4, 2025). FAC ¶ 225.  Proclamation 10949 has no exception for entry into the United States of refugees. The President later supplemented and continued this proclamation in Proclamation 10998, Pres. Procl. 10998, *Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States*, 90 Fed. Reg. 59717 (Dec. 16, 2025). FAC ¶ 240.

Next, in September 2025, the President issued the FY 2026 PD, which set the refugee ceiling for FY 2026 at 7,500 refugees and directed admissions to primarily be allocated to Afrikaners from South Africa and other victims of discrimination, Pres. Det. No. 2025-13, *Presidential Determination on Refugee Admissions for Fiscal Year 2026*, 90 Fed. Reg. 49005 (Sept. 30, 2025). FAC ¶ 178. The FY 2026 PD provides that any refugee admissions into the United States are subject to the USRAP suspension in EO 14163 and the entry restrictions in Proclamation 10949, as well EO 14204's policy of providing access for Afrikaners under the 7,500 ceiling. 90 Fed. Reg. 49005. The President later increased the refugee ceiling to 17,500 so that the United States can continue to respond to the South African government's actions. Pres. Det. No. 2026-14, *Emergency Presidential Determination on Refugee Admissions for Fiscal Year 2026*, 91 Fed. Reg. 31645 (May 27, 2026).

**B.** **This litigation.**

In February 2025, Plaintiffs filed their initial complaint challenging EO 14163 and the suspension of refugee-services funding on behalf of themselves and a putative class, Dkt.1, which

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [CASE NO. 2:25-CV-00255]

5

U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 746-8537

the Court later certified, Dkt.148.[2] Plaintiffs then supplemented the complaint in March 2025 after the State Department terminated cooperative agreements with Plaintiff nonprofit organizations. Dkt.56. Plaintiffs also moved for preliminary injunctions, Dkts.14, 57, which the Court granted, Dkts.39, 45, 79. Defendants appealed the injunctions. Dkt.49.

The Government then resumed initial, domestic resettlement services, which were traditionally provided by the State Department, and foreign funding for overseas refugee processing in May 2025. Dkt.138 at 3; Dkt.138-1 ¶ 6.[3] In January 2026, responsibility for domestic services was transferred to U.S. Department of Health and Human Services, Office of Refugee Resettlement ("HHS-ORR"). FAC ¶ 99; *see* Dkt.181. Thus, HHS-ORR became responsible for providing initial resettlement services as well as the longer-term services to refugees like cash and medical assistance that it had previously provided. FAC ¶ 99.

Months later, the Ninth Circuit reversed this Court's injunctions in every respect except for the suspension of domestic refugee services funding. In upholding EO 14163's lawfulness, the Circuit reiterated that § 1182(f) "exudes deference to the President in every clause" and "grants the President Broad discretion to suspend the entry of aliens into the United States." *Pacito*, 169 F.4th at 920 (quoting *Hawaii*, 585 U.S. at 683-84). Indeed, § 1182(f) authorizes the President to suspend *all* refugee admissions. *Id.* at 921. The Circuit also rejected the notion that FTJ-Rs have a statutory entitlement to admission, *id.* at 922-23, as well as the idea that refugee case processing

---

[2] The Court certified three mandatory subclasses under Rule 23(b)(2): The Refugee and Family Member Subclass, the Reception & Placement Subclass, and the Follow-to-Join Subclass. Dkt. No. 148 at 16-17.

[3] The Court may take judicial notice of its records. *Hymes v. Procunier*, 428 F.2d 824, 824 (9th Cir. 1970).

may not be paused during a § 1182(f) entry suspension, *id.* at 923. The Circuit did affirm this Court's holding that the INA requires the provision of *domestic* services for already-admitted refugees and their termination was unlawful. *Id.* at 936-37. But the Circuit reversed this Court's holding that funding for *overseas* services is required. *Id.* at 932.

In response to the Ninth Circuit's decision, Plaintiffs amended their complaint. They dropped their claims challenging the lawfulness of EO 14163 and removed the President as a party. *Compare* Dkt.56 *with* FAC. The only two claims that Plaintiffs re-allege are their suspension of refugee case processing (First Claim) and the suspension and termination of funding for refugee services (Second Claim). Plaintiffs then add eight new claims. One claim challenges the implementation of EO 14163 case-by-case exceptions (Third Claim). Five claims challenge the FY 2026 PD in some manner, both under the APA (Fourth through Seventh Claims) and the Constitution (Eighth Claim). The final two claims challenge the application of Proclamation 10949 to refugees (Ninth and Tenth Claims).

### STANDARD OF REVIEW

Under Rule 12(b)(1), Plaintiffs bear the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) challenge may be either facial, when the inquiry is confined to the complaint's allegations, or factual, when the court may look beyond the complaint to extrinsic evidence. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Dismissal under Rule 12(b)(6) is warranted when a complaint fails to state a claim upon which relief may be granted that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [CASE NO. 2:25-CV-00255]

7

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

544, 546, 570 (2007). Courts accept as true plaintiffs' factual allegations but need not accept as true their legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

**I.    The Ninth Circuit's decision upholding EO 14163 requires dismissal of nearly all Plaintiffs' amended claims (First Claim, Second Claim in part, and Third through Tenth Claims).**

The Ninth Circuit upheld EO 14163 and reversed this Court's preliminary injunctions in nearly every respect. Section 1182(f) "exudes deference to the President in every clause" and "grants the President broad discretion to suspend the entry of aliens into the United States." *Pacito*, 169 F.4th at 920 (quoting *Hawaii*, 585 U.S. at 683-84). As such, the Circuit recognized that the President may decide that *all* refugees are barred from entering the United States during a § 1182(f) suspension. *Id.* at 920-21. Likewise, the Ninth Circuit upheld the termination of funding to organizational Plaintiffs for overseas operations. *Id.* at 932. The consequence of the Circuit's decision is that (i) all refugees are currently barred from entering the United States unless the Secretaries of State and Homeland Security decide to grant individualized case-by-case exceptions, and (ii) organizational Plaintiffs are not entitled to funding for overseas operations. This means that all Plaintiffs' claims (but for the domestic funding claim) necessarily fail.

**A.    The Ninth Circuit rejected Plaintiffs' EO-14163-implementation and foreign-funding claims (First Claim in full and Second Claim in part).**

The Ninth Circuit's decision upheld the lawfulness of EO 14163. Despite Plaintiffs' prior challenge to Defendants' implementation of the EO, Plaintiffs continue to assert that EO 14163 should be set aside because the Government cancelled refugee travel and suspended refugee-application processing due to the EO. *See* FAC ¶¶ 2, 383-87. The Ninth Circuit, however, held that

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

8

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

the suspension of application processing was lawful because the "President's decision to halt decisions on applications would follow logically from his determination to suspend all admissions." *Pacito*, 169 F.4th at 923. The Circuit also discussed the cancellation of refugee travel but did not indicate that the cancellation made Defendants' implementation of EO 14163 any less lawful. *See id.* at 917 & n.4.

Likewise, the Ninth Circuit's decision upheld the lawfulness of the termination of funding to organizational Plaintiffs for their overseas operations. Nevertheless, Plaintiffs yet again claim that termination of overseas funding was unlawful, FAC ¶¶ 388-93, but the Circuit already held otherwise because it "s[aw] no reason why the State Department should be required to maintain an overseas structure capable of processing tens of thousands of applications when the executive order has limited entry to case-by-case consideration," *Pacito*, 169 F.4th at 932.

The Ninth Circuit's decision on these claims necessarily requires the same result here. It decided these claims as a matter of law, so no facts that may surface during later stages of this litigation will change the outcome. This Court must dismiss Plaintiffs' First and Second Claims for lack of subject matter jurisdiction.

**B.      Plaintiffs' case-by-case-exceptions and equal protection claims also necessarily fail for lack of redressability due to the Ninth Circuit's decision (Third and Eighth Claims).**

It is Plaintiffs' burden to establish that they have Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). They must show not only that they have experienced an injury that is traceable to Defendants' conduct, but also that their alleged injury "is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs cannot do so with regards to their case-by-case-exceptions and equal protection claims.

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

9

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Indeed, the relief Plaintiffs seek—that "Defendants' implementation of [EO 14163's] case-by-case exceptions" be set aside, FAC ¶ 401, Prayer for Relief ¶ L—would not redress individual Plaintiffs' inability to enter the United States. The default under EO 14163 is that *all* refugees are barred entry. *See Pacito*, 169 F.4th at 920-21 (acknowledging that a § 1182(f) suspension may reduce refugee admissions to zero). And the only way a refugee can avoid this default result is for the Secretaries of State and Homeland Security to make a case-by-case determination that the individual's entry is in the national interest and does not threaten U.S. security or welfare. EO 14163 § 3(c). If Plaintiffs succeed in getting the exceptions process vacated or set aside, the result is that *no* refugees can enter the country, including Plaintiffs. That would not redress Plaintiffs' alleged injury. This Court must dismiss Plaintiffs' Third Claim for lack of standing.

**C.      Likewise, Plaintiffs' APA and equal protection claims challenging the FY 2026 PD fail for lack of redressability due to the Ninth Circuit's decision (Fourth through Eighth Claims).**

For similar reasons, Plaintiffs' claims challenging Defendants' implementation of the FY 2026 PD fail for lack of redressability. The relief Plaintiffs seek, in practical effect, is to enjoin Defendants from prioritizing Afrikaner refugee admissions. *See* FAC ¶¶ 405, 412, 416. But that would not redress Plaintiffs' inability to enter the United States either. All the FY 2026 PD does is set the cap on refugee entries and directs Defendants as to which refugees to prioritize in the event an admission is allocated. *See* 8 U.S.C. § 1157(a)(1)-(3); *see also* 90 Fed. Reg. 49005; 91 Fed. Reg. 31645. The FY 2026 PD does not *require* the admission of any refugees at all. *See Pacito*, 169 F.4th at 921 ("Put simply, § 1157 sets a ceiling, not a floor—nothing in the statute requires the admission of a non-zero number of refugees."). And due to EO 14163, which the Ninth Circuit upheld, the default number of refugees that may enter the country is zero. That is true for

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

*all* refugees, including Iraqi DAP refugees and FTJ-Rs, as no statute requires that they be admitted. *See* Refugee Crisis in Iraq Act ("RCIA") § 1242-43, Pub. L. No. 110-181, 122 Stat. 395 (requiring only the establishment or use of refugee processing mechanisms and eligibility for Iraqi DAPs); 8 U.S.C. § 1157(c)(2)(A) (entitling FTJ-Rs to only "the same admissions status" as their family member). Thus, Plaintiffs cannot prevail on their FY 2026 PD claims because their requested relief again would only result in blocking the admission of other refugees for whom the Secretaries of State and Homeland Security have chosen to allocate an admission under the cap through a case-by-case exception; setting aside this exceptions process would not cause any Plaintiff, including Iraqi DAP and FTJ-R Plaintiffs, to be allocated an admission. Plaintiffs' Fourth through Eighth Claims are therefore not redressable and must be dismissed.

**D.  The claims challenging Proclamation 10949 also fail for both lack of injury and lack of redressability due to the Ninth Circuit's decision (Ninth and Tenth Claims).**

As an initial matter, Proclamation 10949 does not apply to all Plaintiffs; it only covers individuals from nineteen countries, Procl. 10949 § 1(f)-(g), and it allows for certain case-by-case exceptions, *id.* § 4(c)-(d). Many Plaintiffs are nationals of other countries and thus cannot be impacted by the Proclamation. *See, e.g.*, FAC ¶¶ 189-90 (showing many Plaintiffs are from countries that are not designated in Proclamation 10949). These Plaintiffs—the number of whom are unidentified—therefore do not have standing to challenge the Proclamation's implementation.

Further, even Plaintiffs from Proclamation-designated countries cannot establish an injury due to the Proclamation or that any such injury would be redressable by the relief they seek—that Defendants' interpretation of the Proclamation to cover refugees be set aside, FAC ¶ 428. Again, the default under EO 14163 is that no refugees may enter the United States. Plaintiffs cannot show

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

injury caused by Proclamation 10949 because they have not plausibly alleged that any Plaintiff would be given a case-by-case exception to EO 14163 but for the Proclamation.

While some Plaintiffs could have entered the country but for the Proclamation back in June 2025 when the Court's injunction was in place, *see* Dkt.138 at 5, that is no longer the case because the Ninth Circuit upheld EO 14163. In any case, even if Plaintiffs succeeded in setting aside Defendants' interpretation that Proclamation 10949 applies to refugees, it would not redress their inability to enter the United States because their entry is independently barred by EO 14163. Plaintiffs therefore lack standing to challenge Defendants' reading of the Proclamation.

## II.    Regardless, Claims Two through Ten fail for numerous other reasons.

### A.    Plaintiffs' domestic funding claim is moot (Claim Two in remaining part).

A case becomes moot when intervening circumstances mean "there is no longer a live controversy necessary for Article III jurisdiction" or "any effective relief that can be granted by the court." *Brach v. Newsome*, 38 F.4th 6, 11 (9th Cir. 2022). The party asserting mootness must show "that the allegedly wrongful behavior cannot reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 173 (2000). For situations like here involving a change in government policy, "mootness is more likely if" (1) "the policy change is evidenced by language that is broad in scope and unequivocal in tone," (2) the policy change addresses the challenged measures the government took against the plaintiffs, (3) the litigation "was the catalyst" for the change in policy, (4) the new "policy has been in place for a long time when [the court] consider[s] mootness," and (5) since the change in policy, the agency officials "have not engaged in similar conduct to that challenged by the plaintiff." *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014) (citation omitted).

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [CASE NO. 2:25-CV-00255]

12

U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 746-8537

Here, Plaintiffs' domestic funding claim is no longer live and is unlikely to recur. Defendants restored domestic funding over a year ago, *see* Dkt.138-1 ¶ 6, and the Ninth Circuit held that such funding is required by the INA, *Pacito*, 169 F.4th at 936.[4] The Government then made clear that it intends for domestic funding to continue. The President transferred the program of initial resettlement to HHS-ORR to "ensure[] better alignment of resources, oversight, and accountability" of domestic refugee resettlement services, which demonstrates a continuing commitment to providing domestic services authorized under 8 U.S.C. § 1522 through HHS-ORR. 90 Fed. Reg. 49007; *see* Dkt.181. And HHS-ORR has forecasted a Notice of Funding Opportunity Announcement for funding initial resettlement services, with the project estimated to start in November 2026. U.S. Dept. of Health and Human Services, *Placement and Coordination Program*.[5] Moreover, Plaintiffs make no allegations that Defendants have failed to provide domestic funding to any refugees during this time. Rather, Plaintiffs' allegations all relate to events that occurred in early 2025. FAC ¶¶ 200-17.

Further, the ending of the pause in HHS-ORR funding that occurred in early 2025, which Plaintiffs refer to as a "sub silentio" funding suspension, FAC ¶ 208, is not an example of voluntary cessation; the pause was unrelated to this litigation, but rather the completion of HHS's ongoing integrity review, Dkt.153 at CAR006. *See Brach*, 38 F.4th at 12 (holding that voluntary cessation did not apply when a policy expired by its terms). Nor is the transfer of responsibility for domestic

---

[4]    Defendants preserve for appeal the arguments that (i) the Court lacks jurisdiction over the funding claims because they sound in contract and must be brought in the Court of Federal Claims under the Tucker Act, and (ii) the services authorized under § 1522 are not mandatory. But Defendants acknowledge that the Ninth Circuit held otherwise.

[5]    Available at https://simpler.grants.gov/opportunity/72c7c1b7-7685-47f0-9ebf-ce14dfc496fc (visited June 30, 2026).

resettlement services from the State Department to HHS-ORR voluntary cessation. The State Department did resume domestic initial resettlement services due to this Court's injunction while the program was under State's purview, but the decision to transfer responsibility of initial resettlement services was unrelated to this litigation. Rather, the decision was made to "promote[] efficient use of taxpayer dollars, protect[] the integrity of the United States immigration system, and support[] refugees in achieving early economic self-sufficiency and assimilation into American society." 90 Fed. Reg. 49007. Through Defendants' actions, they have shown they have every intention of continuing the program. Suspension of funding therefore cannot be reasonably expected to recur, which moots Plaintiffs' domestic funding claim.

> **B.     Case-by-case-exceptions decisions are unreviewable, and Defendants' implementation of EO 14163's exceptions provision is consistent with both the INA and the EO (Claim Three).**

**1.** Case-by-case-exceptions decisions are discretionary and unreviewable because there are no judicially manageable standards for judging Defendants' exercise of discretion.

APA review is unavailable for "agency action [that] is committed to agency discretion by law." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751 (9th Cir. 2021) (quoting 5 U.S.C. § 701(a)(2)). While the APA does allow abuse-of-discretion review of some discretionary agency decisions, *see* 5 U.S.C. § 706(2)(a), agency action remains unreviewable where the relevant statute is "drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), or "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion," *Trout Unlimited*, 1 F.4th at 751 (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). That's because "[i]f no judicially manageable standards are available for judging how and when an agency should exercise its

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

14

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

discretion, then it is impossible [for the Court] to evaluate agency action for 'abuse of discretion.'" *Ekimian v. INS*, 303 F.3d 1153, 1158 (9th Cir. 2002) (quoting *Heckler*, 470 U.S. at 830).

Here, the relevant statute is the one under which the President issued EO 14163—8 U.S.C. § 1182(f). Section 1182(f) authorizes the President to suspend entry to classes of aliens that he finds "would be detrimental to the interests of the United States" and further authorizes him to "impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f). The President made such a determination when issuing the EO and then committed case-by-case-exception decisions to the discretion of the Secretaries of State and Homeland Security. EO 14163 § 3(c). The President directed the Secretaries to "determine that entry of such aliens as refugees is in the national interest and does not pose a threat to the security or welfare of the United States." *Id.*

The Supreme Court and Ninth Circuit have evaluated similarly worded statutes and held they provide no judicially manageable standards of review. In *Webster v. Doe*, the statute at issue "allows termination of [a CIA] employee whenever the Director 'shall *deem* such termination necessary or advisable in the interests of the United States.'" 486 U.S. 592, 600 (1988) (quoting 50 U.S.C. § 403(c)) (emphasis in original). "This standard fairly exudes deference to the Director, and appear[ed] to [the Court] to foreclose the application of any meaningful judicial standard of review." *Id.* Similarly, in *Poursina v. USCIS*, the statute at issue provides that "the Attorney General *may*, when the Attorney General *deems* it to be in the national interest, waive the [labor certification requirement]." 936 F.3d 868, 871 (9th Cir. 2019) (quoting 8 U.S.C. § 1153(b)(2)(B)(i)) (emphasis in original). The Court analogized the statute to the one at issue in *Webster* and concluded that "Congress's use of 'deems' connotes that the Attorney General's

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

15

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

determination involves some measure of judgment. And the invocation of the 'national interest' is a core example of a consideration that lacks a judicially manageable standard of review." *Id.* Indeed, "the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts." *Id.* at 874 (citing *Hawaii*, 585 U.S. at 686).

The same is true here. Section 1182(f) "exudes deference to the President in every clause." *Hawaii*, 585 U.S. at 684. Like in *Webster* and *Poursina*, the standards Congress provided for the President's exercise of discretion are that (i) the President finds that entry would be contrary to "the interests of the United States" (*i.e.*, national interest), and (ii) the entry restrictions the President directs are those "he may deem to be appropriate." 8 U.S.C. § 1182(f). Likewise, the standards the President delineated in EO 14163 were that the Secretaries of State and Homeland Security (i) determine that the entry of aliens who receive case-by-case exceptions "is in the national interest," and (ii) that an alien's entry "does not pose a threat to the security or welfare of the United States." EO 14163 § 3(c). Together, Congress's invocation of "the interests of the United States" in § 1182(f) and the President's invocation of "national interest" in EO 14163 are "core example of a consideration that lacks a judicially manageable standard of review." *Poursina*, 936 F.3d at 871; *Hawaii*, 585 U.S. at 713 (Thomas, J., concurring) ("Section 1182(f) does not set forth any judicially enforceable limits that constrain the President. … Nor could it, since the President has *inherent* authority to exclude aliens from the country." (emphasis in original) (citation omitted)).

**2.** Even assuming APA review is available, Defendants have implemented EO 14163's case-by-case-exceptions provision in a manner consistent with both the INA and the EO's text.

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

16

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Congress did not require the President to allow for case-by-case exceptions to a § 1182(f) entry suspension, nor did Congress require that, if the President does allow for exceptions, that particular procedures be established to govern an exceptions regime. *See* 8 U.S.C. § 1182(f); *see also Pacito*, 169 F.4th at 921 (upholding EO 14163 before discussing § 3(c) exceptions, which confirms that the EO's lawfulness is not predicated on the availability of exceptions). Thus, even assuming the truth of Plaintiffs' allegations—that Defendants have not "adopt[ed] or publicize[d] eligibility standards for adjudicating case-by-case exceptions" and have not "adopt[ed] or promulgate[d] procedures or guidance regarding eligibility for a case-by-case exception," FAC ¶ 398—Defendants' implementation of EO 14163 does not run afoul of the INA.

Likewise, Defendants' implementation of EO 14163's case-by-case-exceptions provision does not stray outside the scope of the EO's text. As discussed, the EO directs the Secretaries, in their discretion, to grant exceptions to refugees they deem to be "in the national interest" and not to "pose a threat to the security or welfare of the United States." EO 14163 § 3(c). Even under Plaintiffs' articulation of events, that is what Defendants have done. Plaintiffs acknowledge that Defendants have "grant[ed] over 3,000 exceptions." FAC ¶ 397; *see* U.S. Dep't of State, Bureau of Populations, Refugees, and Migration, *Refugee Admissions Report* (showing Defendants admitted 6,668 refugees in FY 2026 as of May 31, 2026, all of whom required an exception).[6] It is not relevant that most of these exceptions were given to certain Afrikaner refugees. *See* FAC ¶ 397. Again, the EO gave the Secretaries full discretion to determine if entry of Afrikaner refugees was in the national interest. And a determination that entry of Afrikaner refugees was in the

---

[6]    Available at https://www.rpc.state.gov/admissions-and-arrivals/ (visited June 29, 2026).

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [CASE NO. 2:25-CV-00255]

17

U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 746-8537

national interest is rational; it comports with the President's national-interest determination in the FY 2026 PD, which stated that "admissions numbers shall *primarily be allocated among Afrikaners* from South Africa pursuant to Executive Order 14204," 90 Fed. Reg. 49005 (emphasis added). EO 14204 in turn advances the President's foreign policy goal of responding to actions by the South African government that discriminate against ethnic minority Afrikaners and harm U.S. interests and requires the Secretaries of State and Homeland Security to prioritize Afrikaner resettlement. *See* EO 14204 §§ 1-2, 4. The Secretaries "certainly ha[ve] discretion to pursue administration priorities." *Waterkeeper All. v. EPA*, 140 F.4th 1193, 1226 (9th Cir. 2025).

Plaintiffs contend that case-by-case exceptions to EO 14163 are a "benefit[]" and Defendants are consequently obligated to create universally applicable procedures and promulgate guidance. FAC ¶ 396 (citing *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)). Not so.

*First*, the possibility of an exception to a § 1182(f) is not a legal immigration benefit because admission to the United States is a privilege, not a right. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."); *Hawaii*, 585 U.S. at 710 (mentioning the "privilege of admission"). Moreover, Plaintiffs' argument turns the President's § 1182(f) authority on its head. The President's authority to suspend an entire class of aliens he deems detrimental to the national interest would be illusory if the President was then required to consider for admission the very class of aliens whose entry he barred.

*Second*, EO 14163's final clause expressly states that the "order is not intended to, and does not, create *any right or benefit*, substantive or procedural, enforceable at law or in equity by

any party against [the Government]." EO 14163 § 7(c) (emphasis added). This is not analogous to the situation in *Morton*, where express welfare *benefits* for Native Americans that were congressionally appropriated were at issue. 415 U.S. at 231. Rather, the "general rule" is that "there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995) (citation omitted); *see Meyer v. Bush,* 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993). That is equally true where, as here, a plaintiff indirectly attempts to enforce private rights under an executive order by framing their claim as a challenge to an agency's implementation of an order. *See Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8-9 (D.C. Cir. 1999) ("Although petitioner indicated that it does not seek to assert rights under the order but is merely referencing it to provide evidence of the arbitrary and capricious nature of the FAA's decision, such an argument is nothing more than an indirect—and impermissible—attempt to enforce private rights under the order.").

**3.** Plaintiffs' notice-and-comment-rulemaking claim (FAC ¶ 400) fails.

Plaintiffs also contend that Defendants' implementation of EO 14163's case-by-case-exceptions regime "violate Plaintiffs' substantive rights and constitute a legislative rule" that is subject to the APA's notice-and-comment-rulemaking procedures. FAC ¶ 400; *see* 5 U.S.C. § 553. This assertion does not make sense. Plaintiffs' exceptions claim is based on the premise that there are *no* universally applicable procedures or guidance, so it is unclear what Plaintiffs believe should have gone through notice and comment or be set aside. And the Government's consideration of which aliens to admit to the United States "in the national interest" would be exempt from notice-and-comment rulemaking. *See* 5 U.S.C. § 553(a). Moreover, as discussed, Plaintiffs' have no "substantive right" to receive case-by-case exceptions because EO 14163 created no rights or

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

19

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

obligations, and the INA does not require that exceptions to a § 1182(f) suspension be made available. *Supra* p.18. Thus, to the extent Plaintiffs make a notice-and-comment claim, it is implausible and should be dismissed for failure to state a claim. *See Iqbal*, 556 U.S. at 678.

        **B.**      **Plaintiffs' FY-2026-PD claims are re-framed challenges to case-by-case-exceptions decisions, and Defendants implementation the PD is consistent with its parameters (Fourth through Seventh Claims).**

**1.** Plaintiffs' FY-2026-PD challenges fail at the outset because they are based on a false premise. Plaintiffs believe that Iraqi DAP, FTJ-R, and other refugees are ineligible for admission to the United States because Defendants have issued case-by-case exceptions to EO 14163 primarily to Afrikaners. *See* FAC ¶¶ 404 (Defendants' PD implementation "makes all refugees except white Afrikaners and other non-Black minorities in South Africa per se ineligible"), 411 (Defendants' PD implementation "indefinitely suspends the processing and admission of Iraqi DAP refugees"), 415 (Defendants' PD implementation "suspend[s] FTJ refugee processing and admission"); 418 (same). That is incorrect. It is EO 14163, which the Ninth Circuit upheld, that makes *all* refugees ineligible for admission to the country. *See Pacito*, 169 F.4th at 921 ("Put simply, § 1157 sets a ceiling, not a floor—nothing in the statute requires the admission of a non-zero number of refugees."). Thus, the PD claims are merely a re-framing of Plaintiffs' challenge to Defendants' case-by-case-exceptions decisions, which are not redressable or reviewable for the reasons discussed, *supra* pp.14-19.

**2.** In any event, Plaintiffs' PD implementation challenge fails because Defendants' actions are consistent with the PD.

The annual presidential determination sets the ceiling on "the number of refugees who may be admitted … in [the] fiscal year," and admissions under the ceiling "shall be allocated among

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [CASE NO. 2:25-CV-00255]

20

U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION P.O. BOX 878, BEN FRANKLIN STATION WASHINGTON, D.C. 20044 (202) 746-8537

refugees of special humanitarian concern to the United States." 8 U.S.C. § 1157(a)(2)-(3). The ceiling does nothing more than set the "[*m*]*aximum* number of admissions" for a given year. *Pacito*, 169 F.4th at 921 (quoting 8 U.S.C. § 1157(a)) (emphasis in original). It does not "require[] the admission of a non-zero number of refugees" or "restrict the President's power to otherwise exclude refugees under § 1182(f)." *Id.*

The FY 2026 PD set the ceiling at 7,500 refugees and directs that "admissions numbers shall primarily be allocated among Afrikaners from South Africa pursuant to Executive Order 14204, and other victims of illegal or unjust discrimination in their respective homelands." 90 Fed. Reg. 49005. EO 14204 requires the Secretaries of State and DHS to prioritize USRAP resettlement to Afrikaners. 90 Fed. Reg. 9497, 9498. And the President increased the ceiling to 17,500 though an emergency determination, directing that the additional 10,000 potential admissions be "allocated among Afrikaners from South Africa, consistent with Executive Order 14204." 91 Fed. Reg. 31645. As of May 31, 2026, Defendants have admitted 6,668 refugees through the grant of case-by-case exceptions, and those exceptions were primarily given to refugees from Africa, *see supra Refugee Admissions Report*, the majority of whom were Afrikaners according to Plaintiffs, FAC ¶¶ 167-68.

Defendants' allocation of 6,668 admissions primarily to Afrikaners is consistent with the PD. Doing so does not exceed the PD's 17,500 ceiling on refugee admissions. And allocating admissions primarily to Afrikaners does not stray beyond the PD's directive that "admissions numbers shall primarily be allocated among Afrikaners from South Africa pursuant to Executive Order 14204, and other victims of illegal or unjust discrimination in their respective homelands," 90 Fed. Reg. 49005. The PD does not require Defendants to issue exceptions to additional refugees

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

21

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

just because there is space left under the ceiling or because other refugees might be victims of discrimination. *See Pacito*, 169 F.4th at 921. While Plaintiffs want Defendants to exercise their discretion differently and grant case-by-case exceptions to additional refugees, the FY 2026 PD does not require Defendants to do so.

**3.** Plaintiffs contend that the RCIA and the INA provision regarding FTJ-Rs mandate that these refugees be given case-by-case exceptions. FAC ¶¶ 53-62, 406-16. Not so. The Ninth Circuit upheld EO 14163's suspension of *all* refugee admissions, which necessarily includes Iraqi DAP refugees and FTJ-Rs. *See Pacito*, 169 F.4th at 921. And the Circuit rejected Plaintiffs' contention (FAC ¶ 59) that the INA entitles FTJ-Rs to admission. *See id.* at 923 ("Section 1157(c)(2)(A) does not guarantee entry to spouses and children of refugees who qualify for admission. They are entitled only to 'the same admission *status.*'" (emphasis in original)). The Circuit's rejection of that argument is also dispositive of Plaintiffs' *Accardi* claim (Seventh Claim), which is also premised on the incorrect belief that FTJ-Rs are entitled to admission under INA regulation. *See* FAC ¶ 418 (citing 8 C.F.R. § 207.7). Similarly, the RCIA does not require the admission of any aliens. Rather, that law requires the Secretary of State to "establish or use existing refugee processing mechanisms in Iraq and in countries, where appropriate, in the region in which … [certain Iraqis] may *apply* and *interview* for admission to the United States." 122 Stat. 395 § 1242(a) (emphasis added).

**C.    Plaintiffs' Fifth Amendment equal protection claim is not plausible (Eighth Claim).**

As discussed, Plaintiffs equal protection claim is not redressable because their requested relief would not require Defendants to issue *them* case-by-case exceptions; it would merely result in Defendants being unable to grant exceptions to other refugees whose entry Defendants deem to

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

22

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

be in the national interest. *Supra* pp.9-11. In any case, Plaintiffs fail to state a plausible equal protection claim. *See Iqbal*, 556 U.S. at 678.

"The admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Hawaii*, 585 U.S. at 702 (citation omitted). Accordingly, "[f]oreign nationals seeking admission have no constitutional right to entry." *Id.* at 703; *Dep't of State v. Muñoz*, 602 U.S. 899, 902 (2024). It is also "well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Landon*, 459 U.S. at 32 ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). That includes Fifth Amendment equal protection rights. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) ("Indeed, we have rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States.").

In the visa context, the Supreme Court "has engaged in a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Hawaii*, 585 U.S. at 703 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 756-57 (1972)). However, "[a]ny rule of constitutional law that would inhibit the flexibility of the President to respond to changing world conditions should be adopted only with the greatest caution, and [a court's] inquiry into matters of entry and national security is highly constrained." *Id.* at 704 (citing *Mathews*, 426 U.S. at 81-82).

Here, Plaintiffs allege that Defendants' issuance of case-by-case exceptions to Afrikaners violates Plaintiffs' supposed right to equal protection under the Fifth Amendment. FAC ¶¶ 420-

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

23

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

23. Plaintiffs reason that Defendants' determination that the entry of certain Afrikaner refugees is in the national interest is evidence of racial animus towards Plaintiffs. FAC ¶ 422. This theory fails to state a plausible claim.

**1.** Nearly all individual Plaintiffs are located abroad and thus have no Fifth Amendment rights to assert. *See Verdugo-Urquidez*, 494 U.S. at 269; *Johnson v. Eisentrager*, 339 U.S. 763, 784-85 (1950). And, while some Plaintiffs are U.S. citizens or otherwise present in the country, *e.g.*, FAC ¶¶ 11, 17, 19, 22, 23, Plaintiffs have not alleged that the fundamental rights of any U.S. citizen or person present in the United States have been burdened by Defendants' issuance of case-by-case exceptions to certain Afrikaner refugees, *see generally*, FAC. *See Muñoz*, 602 U.S. at 915-16 (holding plaintiff's Fifth Amendment challenge regarding visa decision failed because she did not establish the burdening of a U.S. citizen's fundamental right).

**2.** In any event, Plaintiffs' theory would not withstand rational basis review, which is the correct standard in this context. *See Ram v. INS*, 243 F.3d 510, 517 (9th Cir. 2001) ("'Line-drawing decisions made by Congress or the President in the context of immigration and naturalization must be upheld if they are rationally related to a legitimate government purpose."). Indeed, rational basis was the standard the Supreme Court applied in *Hawaii* under similar circumstances, 585 U.S. at 704-705 (citing *R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)). That flexible standard considers whether Defendants' determination that certain Afrikaners' entry is in the national interest "is plausibly related to the Government's stated objective." *Id.* And Defendants' determinations must be upheld "so long as [they] can reasonably be understood to result from a justification independent of unconstitutional grounds. *Id.* at 705. "The Supreme Court hardly ever strikes down a policy as illegitimate under rational basis scrutiny." *Id.* "On the few occasions

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

24

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

where [it has] done so, a common thread has been that the laws at issue lack any purpose other than a bare ... desire to harm a politically unpopular group." *Id.* (citation omitted).

Here, the Government's stated objective for primarily considering certain Afrikaners for case-by-case exceptions was to respond to (i) "countless [South African] government policies designed to dismantle equal opportunity … and hateful rhetoric and government actions fueling disproportionate violence against racially disfavored landowners," and (ii) "aggressive positions" by the South African government that are "undermining United States foreign policy" and "pos[ing] national security threats." 90 Fed. Reg. 9497; *see* 90 Fed. Reg. 49005 (directing that refugee admissions during FY 2026 are subject to EO 14204); 91 Fed. Reg. 31645 (same). Granting exceptions to certain Afrikaners due to this foreign-policy-focused objective bears "a relationship to legitimate state interests" and, unlike policies that have been found to violate equal protection, it is not "inexplicable by anything but animus." *Hawaii*, 585 U.S. at 706 (quoting *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 448 (1985), and *Romer v. Evans*, 517 U.S. 620, 632 (1996)). Rather, this objective reflects why "the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control": "Because decisions in these matters may implicate relations with foreign powers, or involve classifications ... defined in the light of changing political and economic circumstances." *Id.* at 702 (citations omitted).

**3.** Nevertheless, even if the Court were to apply strict scrutiny, Plaintiffs' theory still fails. A government action that classifies based on race or ethnic origin is constitutional where it is "narrowly tailored to further a compelling governmental interest." *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 310 (2013).

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

25

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Here, the compelling governmental interest is clear in EO 14204: It is the United States' foreign policy that, as long as the South African government continues its racially discriminatory policies and actions that fuel violence against racial minorities, the United States will promote the resettlement of the victims of that government-sponsored race-based discriminations, EO 14204 §§ 1-2. "Protection of the foreign policy of the United States is a governmental interest of great importance, since foreign policy and national security considerations cannot be neatly compartmentalized." *Haig v. Agee*, 453 U.S. 280, 307 (1981); *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1135 n.3 (9th Cir. 2000) (quoting *id.*). And the Government's action is narrowly tailored to achieve that interest: It is the prioritization for resettlement through the USRAP of the victims of that discrimination, Afrikaners. *Id.* Moreover, because the USRAP provides resettlement to individuals who have been or who have a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42), it is only natural that the Government would make admissions decisions based on those statutorily protected bases, including race. *See Hawaii*, 585 U.S. at 696; *Mullin v. Doe*, Nos. 25-1083, 25-1084, 609 U.S. ----, 2026 WL 1825840, at *16 (U.S. June 25, 2026) (Thomas, J., concurring) (nationality distinctions common in immigration context).

Plaintiffs err in asserting that the Government's prioritization of Afrikaners was motivated by animus based on race and national origin. FAC ¶ 421. The Government's actions only demonstrate that Defendants believe the entry of certain Afrikaner refugees is in the national interest, not that they have animus towards Plaintiffs. EO 14204 clearly states the Government's foreign policy objectives for prioritizing Afrikaners—to respond to South Africa's discriminatory policies and actions harmful to U.S. interests. EO 14204 §§ 1-2. This is "a strong, race-neutral

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

26

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

explanation" for the Government's policy. *Doe*, 2026 WL 1825840, at \*12 (rejecting equal protection challenge to TPS terminations). Moreover, Defendants judgments about which refugees' entry is in the national interest is a "core example of a consideration that lacks a judicially manageable standard of review." *Poursina*, 936 F.3d at 871; *cf. Nixon v. United States*, 506 U.S. 224, 228 (1993) ("A controversy is nonjusticiable … where there is … a lack of judicially discoverable and manageable standards for resolving it.").

### D. Proclamation 10949's entry bar also applies to refugees (Ninth and Tenth Claims).

Plaintiffs fail to plausibly allege that any of them are impacted by Proclamation 10949 or that vacatur would give any redress because none of them are eligible for admission due to EO 14163, *supra* pp.11-12. Nevertheless, Defendants' application of the Proclamation to refugees is rational.

**1.** The Proclamation bars entry under § 1182(f) to nationals of nineteen countries. Procl. 10949 § 1(f)-(g). The Proclamation then specifies that it does "not apply … to a refugee who has *already been admitted* to the United States." *Id.* § 6(d) (emphasis added). And that the Proclamation does not "limit the ability of an individual to *seek*" (*i.e.*, apply for) "refugee status." *Id* (emphasis added). This means that refugees from the designated countries who have not been admitted to the United States are ineligible for admission, but they are not prevented from applying for refugee status. If the Proclamation did not apply to *any* refugee, then the drafters would not have needed to add the qualifier "who has already been admitted" after stating that the Proclamation does not apply to a refugee. *See* Procl. 10949 § 6(d). And if the Proclamation was not intended to apply to refugee admission, then the drafters would not have used the text "seek … refugee status" and would have instead written "be admitted as a refugee." *Id.*

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

27

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Plaintiffs contend that Proclamation 10949 does not apply to any refugee because a 2017 entry ban, Presidential Proclamation 9645, which was not applied to refugees, also contained a clause stating that "[n]othing in this proclamation shall be construed to limit the ability of an individual to seek … refugee status," Procl. 9645 § 6(e). FAC ¶¶ 115, 232. That is incorrect.

Proclamation 9645 was not applied to refugees because of that language in § 6(e); rather, it was not applied to refugees because a different provision—§ 3(b)(iii)—stated that the entry suspension "shall not apply to … any foreign national who has a document other than a visa— such as a transportation letter, an appropriate boarding foil, or an advanced parole document—… that permits him or her to travel to the United States and seek entry or admission." Procl. 9645 § 3(b)(iii). Section 1(g) of Executive Order 13815, which on October 24, 2017, resumed the USRAP after a prior pause, makes this reading of Proclamation 9645 clear: "Pursuant to section 3(b)(iii) of Proclamation 9645, [the entry] restrictions and limitations do not apply to those who seek to enter the United States through the USRAP." 82 Fed. Reg. 50055, 50056.

**2.** Plaintiffs' apparent notice-and-comment claim (FAC ¶ 427) and *Accardi* claim (Tenth Claim) also fail.

So-called "legislative rules" must undergo APA notice-and-comment procedures, but "interpretive rules" do not. *Hemp Indus. Ass'n v. DEA*, 333 F.4th 1082, 1087 (9th Cir. 2003); *see* 5 U.S.C. § 553(b). Legislative rules "create rights, impose obligations, or effect a change in existing law." *Id.* "[I]nterpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule." *Id.* Plaintiffs claim that Defendants' application of Proclamation 10949 to refugees constitutes a legislative rule. FAC ¶ 427. Not so. At most, Defendants' application of Proclamation 10949 to refugees is an interpretive rule because

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

28

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

it does not alter any preexisting regulation regarding refugees, such as 8 C.F.R. § 207.1; it merely applies a valid § 1182(f) suspension to refugees based on a rational reading of its text.

Likewise, Plaintiffs' *Accardi* claim (FAC ¶¶ 429-31) fails because Defendants' application of Proclamation 10949 to refugees does not alter refugee eligibility regulations in 8 C.F.R. § 207.1. It merely pauses refugees' eligibility while Proclamation 10949 is in effect.

## CONCLUSION

All claims should be dismissed.

DATED this 30th day of June, 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANTHONY P. NICASTRO
Director

AUGUST E. FLENTJE
Deputy Director

CARA E. ALSTERBERG
Assistant Director

*/s/ Joseph McCarter**
JOSEPH MCCARTER
JASON ZUBATA
TIA HOCKENBERRY
Trial Attorneys
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20005
Phone: (202) 746-8537
Email: Joseph.A.McCarter@usdoj.gov

*Attorneys for Defendants*

DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
[CASE NO. 2:25-CV-00255]

29

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

\* I certify that this memorandum contains 8,396 words, in compliance with the Local Civil Rule 7(e)(4).

**CERTIFICATION OF CONFERRAL**

Pursuant to rule 5.6 of this Court's procedures, on June 25, 2026, counsel for Defendants conferred via e-mail with counsel for Plaintiffs as to this Rule 12(b) motion. Counsel for Plaintiffs stated that Plaintiffs will oppose this motion.

*/s/ Joseph McCarter*
JOSEPH MCCARTER
*Attorney for Defendants*

**CERTIFICATION OF SERVICE**

I hereby certify that on June 30, 2026, I caused a copy of this filing to be served on counsel for Plaintiffs via the CM/ECF system.

*/s/ Joseph McCarter*
JOSEPH MCCARTER
*Attorney for Defendants*