THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO et al.,

               *Plaintiffs,*

      v.

MARCO RUBIO, in his official capacity as
Secretary of State, et al.,

               *Defendants.*

Case No. 2:25-cv-255-JNW

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

NOTE ON MOTION CALENDAR: AUGUST 11, 2026

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.     The Refugee Act authorizes the admission of refugees of special
humanitarian concern and creates special protections for certain refugees. ........... 2

II.    Defendants' implementation of the Refugee Ban EO, the FY 2026 PD, and
the Travel Bans excludes all refugees but a favored few ...................................... 3

III.   Plaintiffs filed the FAC in line with the Ninth Circuit's opinion. ......................... 6

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.     The Court has subject-matter jurisdiction over Plaintiffs' claims. ......................... 7

    A.    The Ninth Circuit's preliminary-injunction decision does not
deprive this Court of jurisdiction. ................................................................ 7

    B.    Plaintiffs have standing to bring each of their claims. ................................. 8

    C.    No claims are moot. ..................................................................................... 11

II.    Plaintiffs' APA claims are reviewable ................................................................. 12

    A.    The Ninth Circuit held that Plaintiffs' claims are reviewable. ................. 12

    B.    Plaintiffs' APA claims are reviewable because there is law to
apply .......................................................................................................... 13

III.   Plaintiffs adequately allege APA violations. ....................................................... 15

    A.    Defendants' implementation of the case-by-case-exceptions
provision violates the APA (Third Claim). ............................................... 15

    B.    Defendants' implementation of the FY 2026 PD violates the APA
(Fourth through Seventh Claims) ............................................................. 18

    C.    Defendants' application of the Travel Bans to refugees violates the
APA (Ninth Claim). .................................................................................. 19

    D.    Defendants' private-right-of-action argument is a red herring. ................ 20

IV.   Plaintiffs adequately allege violation of the Fifth Amendment's equal-
protection guarantee (Eighth Claim). .................................................................. 21

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

V.   Plaintiffs adequately allege claims under the *Accardi* doctrine (Seventh and Tenth Claims)..................................................................... 24

CONCLUSION................................................................................................. 25

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**INTRODUCTION**

Having effectively dismantled the U.S. Refugee Admissions Program ("USRAP") with Executive Order 14163 (the "Refugee Ban EO" or "EO"), the Trump Administration has unveiled an insidious exception to its otherwise-wholesale ban on refugee admissions: a policy of allowing *white* refugees to begin new lives in the United States while depriving the remainder of the global refugee population the same opportunity. This policy not only shocks the conscience—it also violates fundamental principles of administrative law, the mandates of the Refugee Act of 1980 ("Refugee Act"), and the U.S. Constitution's guarantee of equal protection.

The Refugee Ban EO authorizes Defendants to admit refugees on a case-by-case basis, while the Fiscal Year 2026 Presidential Determination ("FY 2026 PD") directs that admissions be allocated "primarily" to Afrikaners *and* "other victims of illegal or unjust discrimination in their respective homelands." Yet rather than administer these presidential proclamations lawfully, Defendants have adopted an unpublished policy that renders every refugee other than a favored group of primarily white South Africans per se ineligible for either an exception under the EO or consideration under the FY 2026 PD. Refugees who were previously vetted, approved, and booked for travel and those designated as refugees of special humanitarian concern or otherwise prioritized by Congress—including minor children like U.S.-based Plaintiff Miriam's nine-year-old son—are categorically excluded. And Defendants have imposed additional barriers, including implementing the FY 2026 PD in an unprecedented and unlawful manner to exclude congressionally designated refugees and applying additional executive orders banning entrants from designated countries (the "Travel Bans") to refugees, even though the Travel Bans expressly exclude refugee admissions from their reach.

Unable to defend their policies, Defendants' motion to dismiss instead attacks a complaint Plaintiffs did not file and mischaracterizes the relief Plaintiffs actually seek. Plaintiffs do not ask the Court to set aside the Refugee Ban EO; Plaintiffs dropped that claim and removed President Trump as a Defendant. They do not ask the Court to order admission of any refugees; no claim

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 1
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

seeks this relief. And Plaintiffs do not ask the Court to deprive any Afrikaners of exceptions; they simply ask that a lawful, transparent process be extended to *all* refugees. Plaintiffs challenge Defendants' unlawful implementation of the EO, its case-by-case exception, the FY 2026 PD, and the Travel Bans—policies that violate the Administrative Procedure Act ("APA"), are contrary to statute, and are unconstitutional because they erect a categorical barrier to entry. On a Rule 12 motion, Plaintiffs' well-pleaded allegations control, not Defendants' fanciful rewriting of Plaintiffs' first amended complaint ("FAC"). The Court has already rejected the recycled jurisdictional arguments on which Defendants' motion principally rests, *see* Dkt. 149, and the Ninth Circuit's preliminary-injunction decision—rendered under a different standard and addressing different claims—does not disturb those conclusions. Defendants' motion should be denied.

## BACKGROUND

**I.      The Refugee Act authorizes the admission of refugees of special humanitarian concern and creates special protections for certain refugees.**

The Refugee Act established "a permanent and systematic procedure for the admission" of refugees and provided for their "effective resettlement." Pub. L. No. 96-212, § 101(b), 94 Stat. 102, 102 (1980). The act authorizes Defendants to admit refugees of special humanitarian concern who are not firmly resettled elsewhere or otherwise inadmissible. 8 U.S.C. § 1157(c)(1). Before each fiscal year, the President sets the admissions ceiling in consultation with Congress and allocates admissions "among refugees of special humanitarian concern." *Id.* § 1157(a)–(b).

Congress has in turn singled out certain refugees for special protection. Principal refugees already resettled in the United States may petition for their spouses and unmarried children as "follow-to-join" ("FTJ") beneficiaries, who "shall … be entitled to the same admission status" as the principal if otherwise admissible. *Id.* § 1157(c)(2)(A). The Refugee Crisis in Iraq Act ("RCIA") designates as refugees of special humanitarian concern certain Iraqis ("Iraqi DAP refugees") and directs that the Secretary of State "shall establish or use existing refugee processing mechanisms"

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

in and around Iraq to permit such designated Iraqi DAP refugees to "apply and interview for admission." Pub. L. No. 110-181, §§ 1242(a), 1243(a), 122 Stat. 3, 395 (2008). And the Lautenberg Amendment prioritizes designated categories of religious minorities facing persecution in their homelands by prescribing a reduced evidentiary standard and requiring written reasons for any denial—including Iranian religious minorities. 8 U.S.C. § 1157 note; Consolidated Appropriations Act, Pub. L. No. 108-199, div. E, tit. II, § 213, 118 Stat. 3, 253 (2004); *see also* Dkt. 211 ("FAC") ¶¶ 63–65. These provisions confer a right to access and consideration through a functioning program; none is contingent on—and Plaintiffs do not contend any guarantees for—admission. Congress also mandated post-arrival services for resettled refugees, directing that Defendants "shall" provide employment, English-language, and cash-assistance support. 8 U.S.C. § 1522(a)(1). The Ninth Circuit affirmed that these domestic-services obligations are mandatory. *Pacito v. Trump*, 169 F.4th 895, 936–37 (9th Cir. 2026).

**II.    Defendants' implementation of the Refugee Ban EO, the FY 2026 PD, and the Travel Bans excludes all refugees but a favored few.**

On January 20, 2025, President Trump issued the EO, which suspended refugee admissions and decisions on applications but authorized the Secretaries of State and Homeland Security to "jointly determine to admit aliens … as refugees on a case-by-case basis" after finding that entry "is in the national interest and does not pose a threat to the security or welfare of the United States." Exec. Order No. 14163, Realigning the United States Refugee Admissions Program, 90 Fed. Reg. 8,459, 8,459 (Jan. 20, 2025). The EO leaves the procedure for implementing exceptions to agency discretion, FAC ¶¶ 130, 150, and yet over fourteen months later, neither the organizational Plaintiffs nor individual refugee applicants have received any information regarding how applicants are considered for case-by-case exceptions. *Id.* ¶ 151.

Defendants did, however, develop a process and categorical policy of admitting one select group. Weeks after issuing the EO, President Trump issued Executive Order 14204, directing Defendants to prioritize the resettlement of Afrikaners—a white ethnic group not designated in

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 3
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

any prior presidential determination. *Id.* ¶¶ 152–53. Within three months, Defendants created a new initiative to expedite Afrikaner processing and admissions, *id.* ¶¶ 155–56, and, as of the date of Plaintiffs' motion to amend their complaint, had granted over 3,000 exceptions almost entirely to white Afrikaners and other non-Black South African minorities, *id.* ¶¶ 3, 170, 397. As of May 31, 2026, 6,665 South Africans and 3 others had been admitted under the FY 2026 PD while every other applicant's case remained frozen. Defendants have predetermined that all otherwise-eligible Afrikaners will be granted exceptions. Once their cases are processed, Defendants prepare a perfunctory memo issuing an exception, without any individualized case-by-case assessment. All other refugee processing remains frozen, as Defendants have categorically determined other refugees are automatically ineligible for exceptions. *Id.* ¶ 171. When other refugees seek exceptions, they are told only the government can initiate the process—without any further explanation. *Id.* ¶ 173.

On October 31, 2025, President Trump issued the FY 2026 PD, setting an historically low ceiling of 7,500 and directing that admissions be allocated "primarily" among Afrikaners "and other victims of illegal or unjust discrimination in their respective homelands." *Id.* ¶¶ 178–79. Defendants implemented the determination to exclude everyone but white Afrikaners and other non-Black South African minorities, without conducting any analysis of whether any refugees already within the pipeline may be a "victim[] of illegal or unjust discrimination in their respective homelands." Defendants' implementation also excludes congressionally designated FTJ beneficiaries, Iraqi DAP refugees, and Lautenberg applicants who, according to Defendants, "did not have a path forward" under the exception. *Id.* ¶¶ 189–91, 198. Defendants "failed to make any determination as to whether any of the cases excluded under the FY 2026 PD qualify for a case-by-case exception." *Id.* ¶ 198.

The result for those wishing to enter the USRAP is a series of cascading obstacles. Plaintiff Alyas, an Iraqi DAP applicant who continues to face persecution as a religious minority in Iraq, had his travel booked before it was canceled and is now "barred by Defendants' arbitrary and

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 4
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

discriminatory implementation of the FY 2026 PD and deprived of any chance of an exception." *Id.* ¶¶ 14, 199. The family members of Plaintiff Babak, a U.S. citizen, remain stranded in Iran for the same reasons. *Id.* ¶ 22. And Plaintiff Miriam's nine-year-old son survives alone in a refugee camp in Burundi, having been told the exceptions process "was not for" him. *Id.* ¶¶ 21, 174.

Layered atop these barriers are the Travel Bans. On June 4, 2025, President Trump issued Proclamation 10949, suspending entry of nationals of nineteen countries. On December 16, 2025, Proclamation 10998 continued and expanded those restrictions. *Id.* ¶¶ 225–26, 240–41. Both proclamations expressly provide that they do not apply to admitted refugees and "nothing in this proclamation shall be construed to limit the ability of an individual to seek … refugee status." *Id.* ¶¶ 231, 242. That carveout language is identical to language in a travel ban issued under the first Trump Administration, which was not applied to bar the entry of refugees. *Id.* ¶ 232. Defendants have nonetheless applied the Travel Bans to refugees, *id.* ¶ 236, imposing an additional barrier for nationals of countries designated under the Travel Bans like Plaintiff Ahmed (Afghanistan) and Plaintiff Yodit's son Senai (Eritrea).

All these policies have been implemented against the backdrop of Defendants' racist rhetoric towards refugees, whom this administration has described as "garbage" and "leeches," and their unmasked statement that the refugee program is now for "white people only." *Id.* ¶ 160. Defendants' unprecedented categorical exclusion of all refugees except for white Afrikaners and other non-Black South African minorities discriminates against countless refugees and their family members in the United States who have waited years to be reunited with their family members, including refugees who had travel booked (Plaintiffs Jalal and Alyas), who face discrimination in their home countries (the family of Plaintiff Babak), and who face prolonged separation from their young children without any possibility of reunification through an exception simply because they are Black (Plaintiff Miriam). Together, these policies harm not only refugees abroad but their U.S.-citizen family members, U.S.-resident refugees, and the organizational Plaintiffs. *Id.* ¶ 245.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 5
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**III.    Plaintiffs filed the FAC in line with the Ninth Circuit's opinion.**

This Court granted preliminary injunctions and denied Defendants' first motion to dismiss, concluding that Plaintiffs plausibly pleaded their claims and established jurisdiction. Dkt. 149. The Court has also construed Proclamation 10949 and rejected Defendants' reading that it bars admission of refugees. Dkt. 145 at 8–10. On appeal from the injunctions, the Ninth Circuit reviewed Plaintiffs' likelihood of success, held the EO is within the President's section 1182(f) authority, and reversed in part—but *affirmed* that Defendants' domestic-services funding termination was likely unlawful. *Pacito*, 169 F.4th at 921, 936–37. In response to the Ninth Circuit's decision, Plaintiffs amended their pleading: They dropped their challenge to the EO's lawfulness, removed President Trump as a Defendant, and limited their claims.

The FAC asserts ten claims, all directed at *agency* conduct: implementation of the EO (First Claim); the defunding of domestic resettlement services (Second Claim); implementation of the EO's case-by-case-exceptions provision (Third Claim); implementation of the FY 2026 PD, including as to Iraqi DAP and FTJ refugees (Fourth through Seventh Claims); violations of the U.S. Constitution's guarantee of equal protection (Eighth Claim); and application of the Travel Bans to refugees (Ninth and Tenth Claims).

## LEGAL STANDARD

On a facial Rule 12(b)(1) challenge like Defendants', the Court "accept[s] the plaintiff's allegations as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Under Rule 12(b)(6), the Court denies dismissal where the allegations, viewed most favorably to Plaintiffs, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 6
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## ARGUMENT

**I.    The Court has subject-matter jurisdiction over Plaintiffs' claims.**

**A.    The Ninth Circuit's preliminary-injunction decision does not deprive this Court of jurisdiction.**

Defendants' lead argument—that the Ninth Circuit's decision "requires dismissal of nearly all" claims, Dkt. 212 ("Mot.") at 8—misconstrues both that decision and the claims in Plaintiffs' FAC.

The Ninth Circuit reviewed the *likelihood of success* of Plaintiffs' challenge to *the President's* authority to issue the EO; it did not adjudicate, and its reasoning does not reach, the claims in the FAC concerning the legality of the federal agencies' administration of the exceptions process, their implementation of the FY 2026 PD, or their application of the Travel Bans to refugees. For instance, Plaintiffs' claims challenging implementation of the FY 2026 PD (Fourth through Seventh Claims) rest on Defendants' *independent* refusal to discharge duties Congress imposed—processing and considering FTJ and Iraqi DAP applicants—that the President's section 1182(f) suspension does not displace policies that Defendants themselves treat as separate from the EO's suspension. *See* Dkt. 206 at 8–9 (characterizing FY 2026 PD implementation as "unrelated action[] that occurred *after* the suspension").

Nor did the Ninth Circuit address directly whether *agency* implementation of the EO, including suspending all processing and implementing the EO prior to its effective date, violated the APA (First Claim). Indeed, the court confined its APA holding to "*the President's* decision to suspend entry," which it deemed unreviewable presidential action, *Pacito*, 169 F.4th at 931 (emphasis added), while expressly reaffirming that the agency Defendants' implementing decisions remain subject to review, *id.* at 930. A preliminary ruling on a different question, under a different standard, does not a jurisdictional bar create. Defendants fail to offer a convincing argument as to why the Ninth Circuit's decision requires dismissal of any of Plaintiffs' claims.[1]

---

[1] Plaintiffs no longer claim the termination of overseas funding was unlawful. *Contra* Mot. 17. Plaintiffs' Second Claim is limited to challenging the defunding of post-arrival

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**B.      Plaintiffs have standing to bring each of their claims.**

Plaintiffs readily satisfy Article III. Defendants' failure to publicize guidance on how to obtain case-by-case exceptions and their unlawful and discriminatory policy of categorically withholding exceptions from all refugees except for white Afrikaners and other non-Black minorities from South Africa injure Plaintiffs by preventing them from being considered for exceptions to the EO (Third and Eighth Claims). That injury is concrete, traceable to Defendants' policies, and redressable by an order requiring Defendants to adopt a fair and orderly process for determining eligibility for an exception and vacating Defendants' unlawful policy. Similarly, Plaintiffs are injured by Defendants' implementation of the FY 2026 PD (Fourth through Eighth Claims) and the application of the Travel Bans to refugees (Ninth and Tenth Claims), which impose independent barriers to Plaintiffs' case processing and consideration for admission. Plaintiffs seek to enjoin Defendants from implementing the FY 2026 PD to categorically suspend processing and admission of FTJ beneficiaries and Iraqi DAP refugees (Fifth through Seventh Claims) and in a manner that renders all refugees except white Afrikaners and other non-Black minorities from South Africa per se ineligible, regardless of whether they fit within the determination's category of "victims of illegal or unjust discrimination" (Fourth Claim).

The injury to Plaintiffs caused by these barriers, which Defendants themselves concede to be separate action, is at least partially redressable by prevailing on each claim. For some refugees, an order requiring Defendants to process and consider congressionally designated applicants (rather than deem them categorically ineligible) redresses the denial of consideration Congress guaranteed. *See* 8 U.S.C. § 1157(a)(3) (admissions under Refugee Act "shall be allocated among refugees of special humanitarian concern to the United States"). Iraqi DAP and Lautenberg refugees fall within that guarantee because each has already been determined, through the very statutes creating their respective programs, to be of special humanitarian concern. Once that

resettlement benefits, *see* FAC ¶ 389, which Defendants seek to dismiss based on mootness, *see infra* pp. 11–12.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 8
(No. 2:25-cv-255-JNW)

category has been so determined, section 1157(a)(3)'s "shall" leaves Defendants no discretion to withhold consideration altogether. FTJ beneficiaries need not even clear that threshold. Their guarantee of consideration rests on an independent, nondiscretionary mandate without the separate requirement of a special-humanitarian-concern determination: A qualifying spouse or child "shall ... be entitled to the same admission status" as the principal refugee they accompany or follow to join. 8 U.S.C. § 1157(c)(2)(A); *see also Pacito*, 169 F.4th at 917 (describing FTJ beneficiaries as deriving admission status from principal refugee rather than independent refugee determination). Finally, U.S.-based Plaintiffs foreclosed from reuniting with their family members are injured by the denial of equal treatment, establishing standing to bring their equal-protection claims. *See infra* pp. 21–22.

Defendants' contention that Plaintiffs have failed to establish injury or redressability because a successful challenge to one barrier might leave others standing, Mot. 11–12, is simply wrong and would have the bizarre result of depriving courts of jurisdiction to review an unlawful barrier imposed by a federal agency whenever the government imposes a second barrier. "The ability to effectuate a partial remedy satisfies the redressability requirement." *Idaho Conservation League v. Bonneville Power Admin.*, 83 F.4th 1182, 1191 (9th Cir. 2023) (citation modified); *see also WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1157 (9th Cir. 2015) ("[T]he mere existence of multiple causes of an injury does not defeat redressability, particularly for a procedural injury."). Removing any one unlawful barrier redresses the injury *that barrier* inflicts, and Plaintiffs must challenge each of these policies to have the chance of obtaining meaningful relief.

Defendants' additional argument against redressability rests on the erroneous premise that "the default under EO 14163 is that all refugees are barred entry" and therefore no relief can redress Plaintiffs' injury. Mot. 10–12. That premise blatantly distorts the relief Plaintiffs seek. Plaintiffs do not ask the Court to order any admissions or allocate any case-by-case exceptions. Nor do they ask the Court to vacate an entire exceptions process. *Contra* Mot. 18. They instead ask the Court

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 9
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

to set aside Defendants' unlawful and discriminatory policy of excluding all refugees other than white Afrikaners and other non-Black minorities from South Africa and order Defendants to "adopt[] and publiciz[e] clear and consistent guidance for determining whether an applicant is entitled to a case-by-case exception." FAC 84. And Defendants' assertion that vacatur would mean "no refugees can enter," Mot. 10, again misconstrues the relief Plaintiffs seek: Setting aside Defendants' "policy of categorically withholding case-by-case exceptions from all refugees except white Afrikaners and other non-Black minorities in South Africa," FAC 84, does not require Defendants to stop issuing exceptions to any refugees.

Defendants' other arguments are similarly unavailing. That Plaintiffs cannot "plausibly show" they *would* receive exceptions, Mot. 12, is beside the point; the opportunity to be considered under a lawful process, not the discretionary benefit itself, is what Plaintiffs seek and what they have been deprived of. A plaintiff challenging an unlawful barrier to a discretionary benefit "need not allege" they "would have obtained the benefit but for the barrier in order to establish standing." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The injury "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* So too here. The injury is Defendants' erection of a discriminatory barrier that forecloses Plaintiffs from even seeking consideration, and Plaintiffs request an order dismantling that barrier to redress their injury—whatever the ultimate admission decision. That is precisely how a court confronting a materially identical redressability challenge to these same proclamations reasoned just weeks ago. *See AA v. U.S. Dep't of State*, No. 25-cv-01819 (AJT/WEF), 2026 WL 1498079, at *4 (E.D. Va. May 28, 2026) ("[A] court order requiring the processing of the … applications is likely to redress Plaintiffs' injuries.").

Defendants' contention that not all Plaintiffs are nationals of Travel Ban-designated countries, Mot. 11, is irrelevant and does not defeat standing. Only one plaintiff need establish standing for each claim. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006). The FAC's Travel Ban claims are brought by Plaintiffs Ahmed, Yodit, and Senai, who are

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 10
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

nationals of countries designated under the Travel Bans. FAC ¶¶ 240–41. And Defendants' argument that Plaintiffs have merely been "deprioritized" rather than rendered ineligible, Mot. 10, contradicts the FAC's allegation that Defendants "render[ed] all other refugees automatically ineligible," FAC ¶ 171—a well-pleaded fact the Court must accept on a motion to dismiss.

Finally, Plaintiffs' equal-protection claim (Eighth Claim) is brought only by U.S.-based Plaintiffs. Their injury is the denial of equal treatment—being subjected to a federal program restructured to allow only white Afrikaners and other non-Black South African minority refugees to be considered and thereby foreclosed from reuniting with family "for no reason other than their race and ethnicity." *Ne. Fla.*, 508 U.S. at 666. As in the APA context, the injury is the discriminatory barrier itself, which is more than enough to establish standing and is at least partially redressed by an order requiring race-neutral consideration. *See supra* p. 9; *infra* pp. 21–22.

## C.     No claims are moot.

Defendants contend their restoration of domestic-services funding moots Plaintiffs' domestic-funding claim (Second Claim). Mot. 12–13.[2] But Defendants' burden to establish mootness is "formidable," and "the simple expedient of suspending [] challenged conduct" does not suffice. *FBI v. Fikre*, 601 U.S. 234, 241 (2024). "[T]he voluntary cessation of unlawful conduct does not render a case moot unless there is no reasonable expectation that the wrong will be repeated," and the "standard … is whether the defendant is free to return to its illegal action at any time." *Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996) (citation modified). Defendants restored funding only because of this Court's preliminary injunction—while simultaneously appealing that decision. *See* Mot. 14 (conceding State Department resumed services "due to this Court's injunction"). That is paradigmatic conduct evidencing that Defendants remain free to resume the proscribed policies. And because compelled compliance reflects "an

---

[2] Plaintiffs no longer pursue the overseas-funding portion of their claim and retain allegations related to this earlier theory solely as evidence of the arbitrary and ad hoc character of Defendants' actions.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 11
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

exercise of discretion" rather than "a decision arising from a broad change in agency policy or procedure," *Fikre v. FBI*, 35 F.4th 762, 771 (9th Cir. 2022), *aff'd*, 601 U.S. 234 (2024), the framework from *Rosebrock v. Mathis* does not govern, *cf.* 745 F.3d 963, 972–73 (9th Cir. 2014) (finding mootness where government formally recommitted to consistent enforcement of its own longstanding regulation). Defendants have never repudiated their funding suspension; instead, they expressly preserve for appeal the position that "the services authorized under § 1522 are not mandatory." Mot. 13 n.4.

Defendants' conduct fails under the *Rosebrock* factors in any event. There has been no broad and unequivocal disavowal, and Defendants themselves insist relevant action was "unrelated to this litigation," Mot. 14—foreclosing any argument that a policy change addressed the challenged measures or that this litigation prompted one. The record also forecloses any "reasonable expectation" that Defendants will not repeat this wrong: They terminated the cooperative agreements "within one day of this Court's verbal order enjoining" the suspension, an indicium of bad faith Plaintiffs documented, Dkt. 176 at 9, and Defendants suspended funding sub silentio, FAC ¶ 208; *see also Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009) (evidence of bad faith supports expectation that action will be repeated). "[T]ransferr[ing] the program of initial resettlement to HHS-ORR" changes the payor, not the risk, and any forecasted funding opportunity is future and contingent. Mot. 13. Because the Ninth Circuit confirmed that the section 1522 domestic-services obligations are mandatory, *see Pacito*, 169 F.4th at 936–37, declaratory and permanent injunctive relief remains effective and required.

## II.    Plaintiffs' APA claims are reviewable.

### A.    The Ninth Circuit held that Plaintiffs' claims are reviewable.

At the outset, the Ninth Circuit already rejected Defendants' claim that *Lincoln v. Vigil*, 508 U.S. 182 (1993), insulates Defendants from judicial review and instead concluded Plaintiffs' APA claim challenging the funding suspension is reviewable, *see Pacito*, 169 F.4th at 930 ("The rule announced in *Lincoln* has no application where, as here, the agency fails to carry out a program

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 12
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

that is *required* by statute." (citation modified)). In so holding, the Ninth Circuit distinguished challenges to the Refugee Ban EO itself from challenges to agency actions *implementing* the EO, finding the latter reviewable. *See id.*; *contra* Mot. 14–19. Plaintiffs' current APA claims challenge agency policies implementing the Refugee Ban EO or other presidential directives. Therefore, Defendants have not "rebutted the strong presumption favoring judicial review of administrative action." *Id.* (citation modified).

### B. Plaintiffs' APA claims are reviewable because there is law to apply.

There is a strong presumption in favor of judicial review of agency policies. The only exceptions to this rule are when Congress specifically precludes judicial review or the actions in question are "committed to agency discretion by law." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). The exception for actions "committed to agency discretion by law" is very narrow and is applicable only when there is truly "no law to apply." *Id.* And while the standards set forth in the Refugee Ban EO contain *some* discretion, "the mere fact that a statute contains discretionary language does not make an agency action unreviewable." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751 (9th Cir. 2021) (citation modified). Similarly broad statutory and regulatory provisions have been found reviewable by courts to determine "whether a decision was 'in the public's interest' or whether a particular act was 'feasible' or 'just and reasonable.'" *Pac. Nw. Generating Coop. v. Bonneville Power Admin.*, 596 F.3d 1065, 1077 (9th Cir. 2010); *see also, e.g., Taslimi v. Holder*, 590 F.3d 981, 985–86 (9th Cir. 2010) (agency's interpretation of what constitutes "reasonable period" for filing asylum application is reviewable).

Defendants have adopted policies to implement the EO's case-by-case-exceptions provision. Accordingly, it is well within the Court's power to review whether these policies comport with the requirements of the Refugee Ban EO, section 1157's eligibility requirements, and the agencies' own policies and procedures. *See City of Los Angeles v. U.S. Dep't of Com.*, 307 F.3d 859, 869 n.6 (9th Cir. 2002) (agency action reviewable to determine whether agency considered correct and relevant factors in making determination). By the same token, Defendants'

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 13
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

policies implementing the FY 2026 PD and suspending the processing and admission of Iraqi DAP and FTJ applications are also reviewable. Courts may look to both governing statutes and agency policies and regulations for a "meaningful standard to review." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011). And here, the Refugee Act's provision governing agency authority to admit refugees, *see* 8 USC § 1157(c); the RCIA's provisions mandating the processing and consideration of Iraqi DAP refugees; agency implementing regulations, *see* 8 C.F.R. § 207.7 et seq.; and President Trump's own orders and proclamations (like language from the Travel Bans prohibiting their application against refugees) all provide a "meaningful standard" by which to review Defendants' policies.

Defendants' creative attempt to conflate section 1182(f)'s standards governing the President's authority to suspend entry with the EO's standards governing the agencies' implementation of case-by-case exceptions goes a step too far and relies on inapposite case law. *See* Mot. 24. Defendants cite *Hawai'i v. Trump*, 585 U.S. 667 (2018), but that opinion addressed the deferential review afforded *the President* under section 1182(f) and did not consider action committed to *agency* discretion under the APA. Indeed, *Hawai'i* confirmed that agency-implemented exceptions processes can be judicially examined. *See Emami v. Nielsen*, 365 F.Supp.3d 1009, 1020–21 (N.D. Cal. 2019) (reviewing whether State Department's implementation of waiver process under Muslim ban was arbitrary and capricious). Likewise, neither *Webster v. Doe*, 486 U.S. 592 (1988), nor *Poursina v. USCIS*, 936 F.3d 868 (9th Cir. 2019), has any bearing on this case. Both cases found unreviewable actions stemming from statutes conferring broad agency discretion. *See Webster*, 486 U.S. at 600; *Poursina*, 936 F.3d at 871. Defendants invoke these cases by pointing to section 1182(f)'s broad grant of presidential discretion, but again, that statute *is not relevant to Plaintiffs' claims*. Instead, the statutes, regulations, and proclamations described above provide the requisite scheme for reviewing the agency Defendants' actions.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 14
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Finally, Defendants assert the case-by-case-exceptions provision is nonreviewable because it includes the "national interest" as a relevant consideration. The argument is unavailing, as not every case touching on foreign policy "lies beyond judicial cognizance." *Baker v. Carr*, 369 U.S. 186, 211 (1962); *see also ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) (State Department's termination of exchange program was reviewable under agency regulations and practice). Notably, Plaintiffs are not challenging determinations about whether a particular refugee's admission is in the national interest but rather the agencies' process (or lack thereof) for making that determination.

## III.   Plaintiffs adequately allege APA violations.

### A.   Defendants' implementation of the case-by-case-exceptions provision violates the APA (Third Claim).

Defendants' implementation of the case-by-case-exceptions provision violates the APA's basic procedural requirements and is arbitrary, capricious, an abuse of discretion, and contrary to law. *See* 5 U.S.C. § 706. Two independent and complementary theories support Plaintiffs' claim, and though Defendants try to pit the theories against each other, *see* Mot. 27, the attempt fails: Defendants have quietly adopted a categorical eligibility rule—white Afrikaners and other non-Black minorities from South Africa only—while publishing no standards by which other refugees can seek exceptions. A scheme that both is secret *and* categorically excludes Black refugees violates the APA twice over.

**Failure to adopt and publicize standards.** An agency administering benefits "must, at a minimum, let the standard be generally known so as to assure that it is being applied consistently and so as to avoid both the reality and the appearance of arbitrary denial of benefits to potential beneficiaries." *Morton v. Ruiz*, 415 U.S. 199, 231–32 (1974) (noting APA was adopted "so as to avoid the inherently arbitrary nature of unpublished ad hoc determinations"). Defendants have published no eligibility standards or process for the case-by-case-exceptions provision, instead performing "perfunctory" assessments of Afrikaners they have predetermined to admit while

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 15
(No. 2:25-cv-255-JNW)

excluding everyone else on an unstated basis. FAC ¶¶ 170–74. That is precisely the sort of ad hoc administration the APA forbids. *See Sierra Club v. EPA*, 762 F.3d 971, 983 (9th Cir. 2014) (EPA's "ad hoc waiver" of statutory environmental standard without issuing regulations violated APA); *N. Colo. Water Conservancy Dist. v. FERC*, 730 F.2d 1509, 1521 n.12 (D.C. Cir. 1984) (similar); *Schumacher v. Aldridge*, 665 F.Supp. 41, 53 (D.D.C. 1987) (explaining "the determination of eligibility cannot be made on ad hoc or unstated criteria" and requiring agency to articulate "specific, meaningful criteria to guide decisions" (citation modified)).

**Failure to observe notice and comment.** To the extent Defendants have instead adopted a categorical, Afrikaner-only eligibility rule, that legislative rule required notice-and-comment rulemaking. *See* 5 U.S.C. §§ 553, 706(2)(D); *Colwell v. Dep't of HHS*, 558 F.3d 1112, 1124 (9th Cir. 2009). Defendants' rule substantively alters the legal rights of hundreds of thousands of refugees and their U.S.-based family members by categorically excluding them. FAC ¶ 400. Defendants' rejoinder—that it is "unclear what Plaintiffs believe should have gone through notice and comment," Mot. 19—simply misconstrues Plaintiffs' pleading. Simply put: If there is a governing standard, then it was adopted unlawfully in secret; if there is none, then the ad hoc administration is itself unlawful.

**Arbitrary, capricious, and contrary to law.** Agency policies must reflect "reasoned decisionmaking" and "a rational connection between the facts found and the choice made," *All. for Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (citation modified), and a court may not "infer an agency's reasoning from mere silence," *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009) (citation modified). Defendants have offered no explanation for a policy that flouts the EO's own command of "case-by-case" determinations, FAC ¶¶ 171–74; that ignores the serious reliance interests of over 12,000 travel-booked refugees and others the agency previously deemed to warrant expedited processing, *id.* ¶ 176; and that categorically excludes beneficiaries of congressionally created programs, *see Emami v. Mayorkas*, Nos. 18-cv-01587-JD, 18-cv-07818-JD, 2022 WL 3031213, at *1 (N.D. Cal. Aug. 1, 2022) (agency guidance implementing

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 16
(No. 2:25-cv-255-JNW)

proclamation's waiver criteria was arbitrary and capricious where government imposed "unduly narrow and restrictive limitations" for which "no rational explanations can be found in the administrative record"). Any proffered justification is contradicted by allegations that Defendants decided the program is "for white people only," FAC ¶ 160, and disparaged an "increase in diversity," *id.* ¶ 161, which establish the "significant mismatch" and pretext needed to defeat agency action under *Department of Commerce v. New York*, 588 U.S. 752, 755 784–85 (2019) (rejecting stated rationale as pretextual given "significant mismatch between the decision … made and the rationale … provided"); *accord Dorcas Int'l Inst. of R.I. v. USCIS*, No. 26-cv-132-JJM-PAS, 2026 WL 1622708 (D.R.I. June 5, 2026) (vacating agency policies that indefinitely suspended adjudication of benefit requests based solely on nationality as contrary to Immigration and Nationality Act and arbitrary and capricious).

Rather than defend against Plaintiffs' claim that the categorical exclusion of all other refugees is arbitrary and capricious and contrary to law (they cannot), Defendants repeat their mischaracterization of Plaintiffs' claim as taking issue with the grant of exceptions to Afrikaners and defend that choice instead. *See* Mot. 17. But again, what Plaintiffs challenge is the lack of a rational, reasoned exceptions policy and a transparent process for administering exceptions—not any individual exception. Defendants' other arguments also miss the mark. That admission is a "privilege," Mot. 18, does not exempt the *process* for administering exceptions from APA review; Plaintiffs seek a transparent and lawful process, not guaranteed admission. And the EO's no-private-rights clause, *see* Mot. 18–19, is irrelevant here because Plaintiffs seek to enforce *the APA's* requirements for agency policies, not any right or process created by the EO. *Morton* itself confirms that, where an agency administers a program of benefits, it must apply ascertainable standards. *See* 415 U.S. at 231.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 17
(No. 2:25-cv-255-JNW)

**B.    Defendants' implementation of the FY 2026 PD violates the APA (Fourth through Seventh Claims).**

Defendants wrongly recast these claims as demands that the FY 2026 PD "require[]" Plaintiffs' admissions, Mot. 20–22, but Plaintiffs actually allege that Defendants implemented the determination to render "all refugees except white Afrikaners and other non-Black minorities in South Africa per se ineligible for admission." FAC ¶ 404. Four independent theories sustain this claim.

*First*, the FY 2026 PD directs that admissions be allocated "primarily" to Afrikaners "*and other victims of illegal or unjust discrimination in their respective homelands*." FAC ¶ 5 (emphasis added). Yet Defendants implemented the FY 2026 PD to admit cases from South Africa only, categorically excluding, without explanation, Lautenberg applicants (who by definition face unjust discrimination in their homelands) and other similarly situated refugees. FAC ¶¶ 188, 404. Defendants' unexplained, selective policy is arbitrary and capricious and rooted in the pretext described above.

*Second*, regardless of the FY 2026 PD's allocations, the RCIA statutorily obligates Defendants to process Iraqi DAP applications and enable eligible applicants to apply and interview. *See* Pub. L. No. 110-181, §§ 1242(a)(1), 1243(a), 122 Stat. 3, 395–96 (2008) (Secretary "*shall* establish or use existing refugee processing mechanisms" (emphasis added)). Defendants' unilateral suspension of Iraqi DAP processing is contrary to law and exceeds their authority, and it is independently arbitrary and capricious because it departs from longstanding practice and disregards these refugees' congressional designation of special humanitarian concern. *See* 8 U.S.C. § 1157(c)(1); FAC ¶¶ 60–61, 407–11.

*Third*, Defendants lack authority to suspend FTJ processing and admission on an independent basis because Congress imposed a nondiscretionary duty to accord FTJ beneficiaries "the same admission status" as their principals. 8 U.S.C. § 1157(c)(2)(A). The Ninth Circuit held *the President* may restrict FTJ entry under section 1182(f), *see Pacito*, 169 F.4th at 923, but *the*

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 18
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*agency Defendants* made a separate determination not to process or admit FTJ refugees under the FY 2026 PD—an action Defendants concede is distinct from the presidential suspension. *See* Dkt. 206. Once again, the point is not that FTJ beneficiaries are entitled to admission but that they are entitled to the consideration and processing Congress guaranteed, and Defendants—federal agencies—have no authority to impose their own independent suspension.

*Fourth*, Defendants' implementation departs from the agencies' prior practice—including during the first Trump Administration—of continuing to process travel-ready refugees and those within the three congressionally created programs notwithstanding a ceiling imposed by a presidential determination. FAC ¶ 182. An agency that changes course "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored," *Pacito*, 169 F.4th at 937 (citation modified), and must weigh "serious reliance interests," *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 30 (2020) (citation modified). Defendants supplied no such analysis, and where an agency has offered no contemporaneous explanation, dismissal of an APA claim is inappropriate. *See Arrington v. Daniels*, 516 F.3d 1106, 1113–14 (9th Cir. 2008) (invalidating categorical exclusion where proffered justification was "entirely absent from the administrative record" and holding "the agency's lack of explanation for its choice renders its decision arbitrary and capricious"); *Organized Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 967–69 (9th Cir. 2015) (en banc) (affirming judgment against agency that reversed course without adequately explaining its departure from prior findings).

### C.    Defendants' application of the Travel Bans to refugees violates the APA (Ninth Claim).

As the Court has already held, "by its plain terms, the [Travel Bans] exclude[] refugees from [their] scope." Dkt. 145 at 8. In so ruling, the Court rejected Defendants' "creative reading … according to which the [Travel Bans] fully bar[] refugee entry while preserving only their ability to seek refugee status." *Id.* The Court's reasoning still applies with equal force. Barring refugee entry necessarily "limits an individual's ability to seek refugee status," meaning Defendants'

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 19
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

reading of the Travel Bans "renders the carveout a functional nullity, violating the canon against surplusage." *Id.* at 9. And the Travel Bans' "policy rationale—addressing inadequate visa vetting—does not apply to refugees because refugees do not receive visas." *Id.* The Court further recorded that "the Government admitted" an identical refugee carveout was why an earlier travel ban "did not bar the admission of refugees." *Id.* at 10.

Defendants' new theory—that the earlier proclamation spared refugees only because of a *different* provision and another executive order, Mot. 28—is a litigation-driven reversal of Defendants' own position in this case and cannot be squared with the identical carveout language the Court has already construed. As the Court put it, "[i]f the President had intended the carveout in Proclamation 10949 to operate differently from the one in its direct predecessor, he would have worded it differently." Dkt. 145 at 10. A court confronting the same carveout in the parallel asylum context reached the same result just weeks ago, concluding family members abroad are "clearly 'seek[ing] asylum' such that they are excepted from the reach of" the Travel Bans. *AA*, 2026 WL 1498079, at *6. Defendants' irrational application of the Travel Bans to refugees—adopted without any of the reasoned analysis the APA requires, FAC ¶ 425—is arbitrary, capricious, and contrary to the Travel Bans' terms. Additionally, it violates the APA's notice-and-comment requirements by altering the legal rights of tens of thousands of refugees who are nationals of Travel Ban-designated countries by categorically barring their admission.

### D.   Defendants' private-right-of-action argument is a red herring.

Defendants' additional argument that Plaintiffs' claims are not viable because there is "no private right of action" under the Refugee Ban EO fails. *See* Mot. 19. Plaintiffs' FAC does not challenge the EO itself but rather agency policies implementing the case-by-case-exceptions process. By their own admission, Defendants have granted at least 3,000 exceptions to the EO, meaning they made decisions to create a process by which exceptions are granted. *See id.* at 17. Because Defendants have used their judgment to create a case-by-case-exceptions process (regardless of whether those procedures have been made public), the process is reviewable under

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

the APA. *See, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018); *Tate v. Pompeo*, 513 F.Supp.3d 132, 143 (D.D.C. 2021); *Milligan v. Pompeo*, 502 F.Supp.3d 302, 314 (D.D.C. 2020). The right of action underlying Plaintiffs' claims comes from the APA, *not* from the Refugee Ban EO itself.[3]

## IV.    Plaintiffs adequately allege violation of the Fifth Amendment's equal-protection guarantee (Eighth Claim).

Defendants misconstrue the nature of Plaintiffs' equal-protection claim and instead attack strawmen. Plaintiffs do not challenge the granting of case-by-case exceptions to Afrikaners, *contra* Mot. 22; rather, they challenge Defendants' implementation of a refugee system that permits only the resettlement of white Afrikaners and other non-Black minorities from South Africa to the active exclusion of eligible refugees of other races and ethnicities. FAC ¶¶ 420–23.

**Standing.** As discussed above, *supra* p. 11, Defendants' discriminatory restructuring of the USRAP has prevented U.S.-based Plaintiffs[4] from having the opportunity to reunite with their refugee family members "for no reason other than their race and ethnicity." *Ne. Fla.*, 508 U.S. at 666. Defendants do not deny their policy has this exact effect but instead distort the standing inquiry to argue Plaintiffs' claim cannot survive. *See* Mot. 22. But contrary to Defendants' characterization, Plaintiffs "need not allege" that their family would have been admitted "but for the barrier in order to establish standing." *Ne. Fla.*, 508 U.S. at 666. Instead, in an "equal protection case," the "injury in fact" is the "denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* Where Defendants have halted processing of all refugees except white Afrikaners and other non-Black minorities from South Africa and adopted a policy that all such refugees are categorically ineligible for case-by-case exceptions, they have imposed a discriminatory barrier on Plaintiffs seeking to be reunited with

---

[3] Defendants do not argue that any of the actions challenged by Plaintiffs are not final agency action, and this argument is now waived.

[4] The equal-protection claim is brought only by Plaintiffs Yodit, Miriam, Babak, and Jalal, along with the FTJ Petitioner Subclass and the putative U.S. Family Member Subclass.

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

their refugee family members, flagrantly denying them equal treatment under the law. This is more than enough to establish standing as to this claim.

**Equal-protection rights.** Defendants' argument that Plaintiffs have no constitutional equal-protection right fares no better. Defendants contend most Plaintiffs are abroad and thus have no constitutional right to assert. Mot. 24. But Defendants ignore that the equal-protection claim is brought only on behalf of U.S.-based Plaintiffs, who *do* have constitutional rights to assert here based on their ongoing separation from their family members abroad as a result of Defendants' animus-driven policies. *See Hawai'i*, 585 U.S. at 688–89 ("[A] person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact."); *Mayor & City Council of Balt. v. Trump*, 416 F.Supp.3d 452, 513 (D. Md. 2019) (while noncitizens "seeking entry to the United States cannot assert constitutional [equal-protection] rights," municipality can assert "constitutional rights of its residents" affected by discriminatory policy that separates them from noncitizen family abroad).

Defendants' reliance on *Department of State v. Muñoz*, 602 U.S. 899 (2024), is misplaced. There, the U.S. Supreme Court analyzed the doctrine of consular nonreviewability as applied to an individual final decision, *see Baygan v. Blinken*, No. 23-2840 (JDB), 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024), and held a U.S. citizen does not have a "fundamental liberty interest" in the admission of a noncitizen spouse sufficient to trigger constitutional due-process protections, *see Muñoz*, 602 U.S. at 903, 909. But Plaintiffs' equal-protection claim does not assert deprivation of an unenumerated liberty interest. Rather, it clearly alleges that Defendants' actions constitute a *policy* of exclusion that violate a distinct protection: The U.S. Constitution's guarantee of equal protection under the law. *See* FAC ¶ 421. *Muñoz* did not address this issue.

**Animus.** Regardless of the standard applied, Plaintiffs' equal-protection claim survives because Defendants' overhaul and limitation of the USRAP to process only white Afrikaners and other non-Black South African refugees is not merely motivated by discriminatory animus toward non-white refugees but is "inexplicable by anything but animus." *Romer v. Evans*, 517 U.S. 620,

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 22
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

632 (1996). As in *Romer*, the policy's "sheer breadth is so discontinuous with the reasons offered for it" that it appears "divorced from any factual context from which [a court] could discern a relationship to legitimate state interests." *Id.* at 632, 635. Here, Plaintiffs allege animus through the full array of factors that courts examine: the disparate impact on non-white refugees; the allocation of over 95% of exceptions to white South Africans; the departure from prior practice and disregard of statutory requirements; the absence of any explanation; the Trump Administration's long history of racial slurs against non-white immigrants and refugees; and its targeting of lawfully admitted, non-white refugees within the United States. FAC ¶¶ 160–61, 422. Defendants' proffered foreign-policy justification for prioritizing Afrikaners does not explain the categorical exclusion of everyone else, and the "significant mismatch" between the justification and the sweep of the policy confirms pretext. *New York*, 588 U.S. at 784–85. On a motion to dismiss, nothing more is required.

**Burden shift.** Where a plaintiff shows that unconstitutional animus was a motivating factor behind a challenged government policy, the burden shifts to the government to "establish[] that the same decision would have resulted even had the impermissible purpose not been considered." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 n.21 (1977). Defendants have not merely "prioritized" one group of refugees; they have simultaneously closed the refugee system to all others, permitting only white Afrikaners and other non-Black South African minority refugees to be considered. Defendants' motion never explains why this so-called prioritization of one small group requires the blanket exclusion of hundreds of thousands of non-white refugees. That non-explanation—especially taken in the context of the Trump Administration's blatant animus and its statements that the refugee program is now "for white people only," FAC ¶¶ 160–61 & n.16—falls far short of establishing that the "same decision would have resulted even had the impermissible purpose not been considered," *Arlington Heights*, 429 U.S. at 271.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 23
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**Defendants' remaining arguments.** Defendants' invocation of *Poursina* is again misplaced: Plaintiffs do not ask the Court to decide which refugees should be admitted but rather whether Defendants' policies violate the U.S. Constitution's equal-protection guarantee, a question for which constitutional law supplies clear and judicially manageable standards. *See Baker*, 369 U.S. at 211. And because Defendants' policy sorts by race and national origin, strict scrutiny applies and Defendants' pretextual, grossly overinclusive exclusion cannot be "narrowly tailored to further [a] compelling governmental interest." *Fisher v. Univ. of Tex.*, 570 U.S. 297, 310 (2013). The Court need not resolve the applicable standard now, however, because Plaintiffs' equal-protection claim is plausible under any level of review, as explained above, *supra* pp. 22–23. Finally, Defendants' suggestion that Plaintiffs' requested relief would force them to "shut it all down," Mot. 22, is their own invention. Equalizing the process does not require ending exceptions for Afrikaners—it requires extending a lawful, race-neutral process to everyone else.

## V.    Plaintiffs adequately allege claims under the *Accardi* doctrine (Seventh and Tenth Claims).

Agencies must follow their own regulations, and Defendants' contention that the *Accardi* doctrine turns on whether admission is a "right" or a "privilege," Mot. 18, is wrong. The *Accardi* doctrine holds that "regulations validly prescribed by a government administrator are binding upon him as well as the citizen, and … this principle holds even when the administrative action under review is discretionary in nature." *Service v. Dulles*, 354 U.S. 363, 372 (1957); *see also generally United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Defendants' implementation of the FY 2026 PD to suspend FTJ processing and admission violates 8 C.F.R. § 207.7, which governs FTJ processing, FAC ¶¶ 417–19, and their application of the Travel Bans to refugees violates the regulatory scheme governing refugee eligibility, *id.* ¶¶ 429–31. These claims are anchored in Defendants' obligation to follow the processing steps their own regulations prescribe—not in any entitlement to admission. The failure to comply renders these policies

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 24
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

arbitrary, capricious, and contrary to law. *See* 5 U.S.C. § 706(2); *Emami*, 365 F.Supp.3d at 1019–21.

**CONCLUSION**

For these reasons, the Court should deny Defendants' motion to dismiss.

\*    \*    \*

The undersigned certifies that this opposition contains 8,106 words, in compliance with the Local Civil Rules.

Dated: July 28, 2026

Mevlüde Akay Alp*
Hussein Elbakri*
Kimberly Grano*
Ghita Schwarz*
Pedro Sepulveda*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
makayalp@refugeerights.org
helbakri@refugeerights.org
kgrano@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Laurie Ball Cooper*
Megan McLaughlin Hauptman*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Avenue NW, Suite 600
Washington, D.C. 20001
Telephone: (516) 732-7116
Facsimile: (516) 324-2267
lballcooper@refugeerights.org
mhauptman@refugeerights.org

By:  s/ *Harry H. Schneider, Jr.*
Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Christine E. Gibbs, WSBA No. 62949
**ASHURST PERKINS COIE US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
Harry.Schneider@ashurstperkins.com
Jonathan.Hawley@ashurstperkins.com
Christine.Gibbs@ashurstperkins.com

Joel W. Nomkin*
**ASHURST PERKINS COIE US LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
Joel.Nomkin@ashurstperkins.com

John M. Devaney*
**THE LAW OFFICE OF JOHN DEVANEY**
3428 Patterson Street NW
Washington, D.C. 20015
Telephone: (202) 285-3013
DevaneyJ07@gmail.com

*Counsel for Plaintiffs*

*\* Admitted pro hac vice*

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS
FAC – 25
(No. 2:25-cv-255-JNW)

**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000