District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; and LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

MARCO RUBIO, in his official capacity as Secretary of State, MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

*Defendants*.

CASE NO. 2:25-cv-00255

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

NOTE ON MOTION CALENDAR:
AUGUST 11, 2026



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Ninth Circuit's decision disposes of nearly all Plaintiffs' claims (First Claim; Third-Tenth Claims). .......... 2

A. The Circuit rejected Plaintiffs' EO-14163-implementation challenge (First Claim). .......... 2

B. Plaintiffs' remaining implementation and equal-protection challenges necessarily fail for lack of redressability due to the Circuit's decision (Third-Tenth Claims). .......... 3

II. Plaintiffs' claims fail for additional reasons (Second-Tenth Claims). .......... 6

A. Plaintiffs' domestic funding claim is moot (Second Claim). .......... 6

B. Defendants' case-by-case-exception decisions are unreviewable and not arbitrary and capricious (Third Claim). .......... 7

C. Defendants' implementation of the FY 2026 PD is likewise not arbitrary and capricious (Fourth-Seventh Claims). .......... 13

D. Defendants' application of Proclamation 10949 to refugees is not arbitrary and capricious either (Ninth-Tenth Claims). .......... 14

E. Plaintiffs' so-called *Accardi* claims fail (Seventh and Tenth Claims). .......... 17

CONCLUSION .......... 17

CERTIFICATE OF SERVICE .......... 18




U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

# TABLE OF AUTHORITIES

**Cases**

*AA v. U.S. Dep't of State*,
2026 WL 1498079 (E.D. Va. May 28, 2026) .......... 6

*ASSE Int'l, Inc. v. Kerry*,
803 F.3d 1059 (9th Cir. 2015) .......... 9

*Backcountry Against Dumps v. FAA*,
77 F.4th 1260 (9th Cir. 2023) .......... 17

*Chairez v. Mayorkas*,
168 F.4th 1227 (9th Cir. 2026) .......... 9

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019) .......... 10

*Dep't of State v. Muñoz*,
602 U.S. 899 (2024) .......... 1, 14, 15

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) .......... 12

*Emami v. Nielsen*,
365 F.Supp.3d 1009 (N.D. Cal. 2019) .......... 10

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .......... 12

*FDA v. Wages and White Lion Invs., L.L.C.*,
604 U.S. 542 (2025) .......... 12

*Fla. Chapter of Associated General Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993) .......... 5

*Haig v. Agee*,
453 U.S. 280 (1981) .......... 16

*Hemp Indus. Ass'n v. DEA*,
333 F.3d 1082 (9th Cir. 2003) ....................12

*Mendoza v. Perry*,
754 F.3d 1002 (D.C. Cir. 2014)....................12

*Mullin v. Doe*,
609 U.S. ----, 146 S. Ct. 2121 (2026) ....................16

*O'Bannon v. Town Court Nursing Ctr.*,
447 U.S. 773 (1980) ....................15

*Pac. Nw. Generating Coop. v. Bonneville Power Admin.*,
596 F.3d 1065 (9th Cir. 2010) ....................8

*Pacito v. Trump*,
169 F.4th 895 (9th Cir. 2026) .................... passim

*Pacito v. Trump*,
768 F.Supp.3d 1199 (W.D. Wash. 2025) ....................12

*Poursina v. USCIS*,
936 F.3d 868 (9th Cir. 2019) ....................1, 8, 9

*Rohani v. Rubio*,
2025 WL 1503950 (W.D. Wash. May 27, 2025) ....................17

*Romer v. Evans*,
517 U.S. 620 (1996) ....................16

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014) ....................6, 7

*Saldana v. Occidental Petroleum Corp.*,
774 F.3d 554 (9th Cir. 2014) ....................11

*Trump v. Hawaii*,
585 U.S. 667 (2018) .................... passim

*Village of Arlington Heights v. Metro. Housing Development Corp.*,
429 U.S. 252 (1977) ....................2, 17

*Webster v. Doe*,
486 U.S. 592 (1988) ....................8

**Statutes**

5 U.S.C. §553(a) ....................13

8 U.S.C. §1157 ....................9, 11

8 U.S.C. §1157(c)(2)(A) ....................5

8 U.S.C. §1182(f) ....................8, 9

**Regulations**

8 C.F.R. §207.7 ....................9



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

## INTRODUCTION

Plaintiffs cannot evade the dispositive effect of the Ninth Circuit's decision upholding Executive Order 14163's ("EO 14163") suspension of all refugee admissions and case processing, *Pacito v. Trump*, 169 F.4th 895, 940 (9th Cir. 2026). Defendants have no obligation to consider particular refugees for case-by-case exceptions, and vacatur of the agency actions Plaintiffs challenge would not guarantee that Defendants consider them for exceptions. Plaintiffs' challenges would thus not redress their purported injuries—not even partially.

Regardless, most of Plaintiffs' Administrative Procedure Act ("APA") claims are not reviewable. Plaintiffs cannot distinguish on-point precedent holding that "invocation of the 'national interest,'" as the EO's exception provision does here, "is a core example of a consideration that lacks a judicially manageable standard of review." *Poursina v. USCIS*, 936 F.3d 868, 871 (9th Cir. 2019). Plaintiffs' APA claims fare no better on the merits, as Plaintiffs mostly point to statutory and regulatory rules that only apply when the U.S. Refugee Admissions Program ("USRAP") is unsuspended.

Plaintiffs' equal-protection claim also fails from the outset because the U.S.-based Plaintiffs may not assert a constitutional right in the abroad-based Plaintiffs' legal proceedings. *Dep't of State v. Muñoz*, 602 U.S. 899, 916 (2024). That is true regardless of whether the U.S-based Plaintiffs assert enumerated or unenumerated constitutional rights. Nevertheless, Plaintiffs' equal-protection claim fails on the merits because Defendants easily satisfy the

deferential rational-basis test the Supreme Court applied in analogous circumstances in *Trump v. Hawaii*, 585 U.S. 667, 704 (2018). Plaintiffs fail to make the requisite showing of animus needed to trigger the more stringent standard in *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977). Defendants, though, would satisfy that standard too.

## ARGUMENT

### I. The Ninth Circuit's decision disposes of nearly all Plaintiffs' claims (First Claim; Third-Tenth Claims).

#### A. The Circuit rejected Plaintiffs' EO-14163-implementation challenge (First Claim).

The Ninth Circuit held the agencies' suspension of refugee case processing is lawful. *Pacito*, 169 F.4th at 923, 940 ("The President's decision to halt decisions on applications would flow logically from his determination to suspend all admissions. We cannot see anything in the Refugee Act that directs the President to continue to process applications while admissions have been suspended."); Dkt.212 ("Mot.") 8-9. And the Circuit discussed the cancellation of refugee travel and did not find the cancellation unlawful. *See Pacito*, 169 F.4th at 917 & n.4; *see* Mot. 9. The Circuit then fully reversed this Court's APA holdings regarding EO 14163's implementation. *Pacito*, 169 F.4th at 940.

Plaintiffs try to distinguish the Ninth Circuit's holding by claiming the Circuit "confined its APA holding to '*the President's* decision to suspend entry,'" not the agencies' decision to suspend case processing. Dkt.217 ("Opp.") 7 (quoting *Pacito*, 169 F.4th at 931

(emphasis added by Plaintiffs)). Plaintiffs' attempt fails. While the Circuit's opinion used the word "President," *Pacito*, 169 F.4th at 923, the Circuit's holding that the case-processing suspension is lawful clearly encompasses agency conduct because agencies process refugee cases, not the President. The Circuit confirmed this at the end of the opinion. *See id.* at 940 ("Plaintiffs have not shown that they are likely to succeed on the merits of their challenges to … cessation of refugee processing.").

Plaintiffs point out that the Circuit's decision addressed "the *likelihood of success*" of their implementation challenge. Opp. 7 (emphasis in original). True, but the Circuit decided Plaintiffs' implementation challenge as a matter of law—it "[did not see] anything in the Refugee Act that directs the President to continue to process applications while admissions have been suspended." *Pacito*, 169 F.4th at 923. Thus, no facts that may surface later in this litigation will change the dispositive effect of the Circuit's decision on Plaintiffs' First Claim.[1]

**B. Plaintiffs' remaining implementation and equal-protection challenges necessarily fail for lack of redressability due to the Circuit's decision (Third-Tenth Claims).**

Plaintiffs' challenges to the implementation of case-by-case exceptions, the fiscal year 2026 presidential determination ("FY 2026 PD"), and Presidential Proclamation 10949, as

[1] Plaintiffs say their First Claim also encompasses their challenges to agency implementation of EO 14163's case-by-case exceptions, the FY 2026 PD, and Proclamation 10949. Opp. 7. The Court should nonetheless dismiss the First Claim because Plaintiffs already challenge those separate actions in their Third-through-Tenth Claims.

well as their equal protection challenge, all lack redressability due to the Circuit's decision upholding the suspension of *all* refugee admissions. Mot. 9-12.

While Plaintiffs clarify that the relief they seek is only the opportunity to be *considered* for exceptions, Opp. 10, the Circuit's decision is still dispositive. It made clear that refugee admissions may be *zero* while EO 14163's suspension is in effect, *see Pacito*, 169 F.4th at 921 ("Put simply, §1157 sets a ceiling, not a floor—nothing in the statute requires the admission of a non-zero number of refugees."). This means that (i) Defendants need not consider *any* refugee for an exception and (ii) this Court has no statutory hook to force Defendants to consider any refugee for an exception. Thus, the Court cannot force the consideration of Plaintiffs' refugee cases even if they succeed in vacating Defendants' prioritization of Afrikaner refugees[2] or application of Proclamation 10949 to refugees. Conversely, vacating any of these purported barriers would not result even in a partial remedy, *contra* Opp. 8-9, because it still would not guarantee the consideration of Plaintiffs' cases.

Plaintiffs argue that the Court may force Defendants to consider individual refugees for exceptions because the Immigration and Nationality Act ("INA") purportedly "leaves Defendants no discretion to withhold consideration altogether" of Iraqi DAP, Lautenberg, and

---

[2] Plaintiffs state multiple times that they do not take issue with Defendants' prioritization and admission of Afrikaners; they only ask for a fair process to be applied to everyone else. *E.g.*, Opp. 9-10, 24. Yet, the only evidence Plaintiffs offer for why the process is allegedly unfair for everyone else is that Defendants have prioritized Afrikaners. Plaintiffs' contradictory framing of their case thus fails to rebut Defendants' description.



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

FTJ-R refugees. Opp. 8-9. Plaintiffs reason that certain statutes designate Iraqi DAP and Lautenberg refugees as individuals of special humanitarian concern and 8 U.S.C. §1157(c)(2)(A) confers refugee status to FTJ-Rs if admitted to the United States. *See* Opp. 8-9. Not so. Any congressional assessment of concern does not override the President's authority to suspend entry of any or all refugees. *See Hawaii*, 585 U.S. at 688, 691 (explaining, despite "Congress's considered policy judgments[,]" the President may supplement the INA with "additional limitations on entry"); *Pacito*, 169 F.4th at 920 (quoting *id.* at 684). If this were not the case, the President's admissions-suspension authority would be hollow. Moreover, the Ninth Circuit confirmed that even when the USRAP is unsuspended, the INA does not "require[] the admission of a non-zero number of refugees." *Pacito*, 169 F.4th at 921. It does not follow that Defendants would be obligated to consider certain refugees for admission while the USRAP is suspended but then have no obligation to consider them for admission while the program is unsuspended.

Thus, Plaintiffs are wrong that a court order vacating Defendants' prioritization of Afrikaner refugees for exceptions will automatically result in Defendants considering other refugees for exceptions. Instead, it likely will mean that no refugees—Afrikaner or otherwise—are admitted. *See supra* n.2. Plaintiffs' reliance (Opp. 10) on *Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993), is misplaced. Unlike the contract-bidding competition in *Northeast Florida*, a court order telling Defendants they cannot prioritize Afrikaners for exceptions does not mean



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Defendants must automatically consider other refugees for exceptions, particularly given that all refugee admissions have been suspended and a non-zero number of refugee admissions is never required, *Pacito*, 169 F.4th at 921. Also misplaced is Plaintiffs' reliance on *AA v. U.S. Department of State*, 2026 WL 1498079, at *4 (E.D. Va. May 28, 2026). *See* Opp. 10. There, the court held that vacating an agency policy of refusing to issue travel documents to asylum applicants due to a presidential proclamation would likely redress the plaintiffs' injuries, which flowed from the document-issuance pause. *AA*, 2026 WL 1498079, at *4. However, unlike here, where the EO makes exception considerations discretionary, vacatur of the *AA* document-issuance pause *would* automatically result in consideration of the *AA* plaintiffs' applications because the court (erroneously) held that application considerations were *not* discretionary, *id.* at *4-6.

## II. Plaintiffs' claims fail for additional reasons (Second-Tenth Claims).

### A. Plaintiffs' domestic funding claim is moot (Second Claim).

The defunding of domestic resettlement services—which were restored over a year ago—cannot be reasonably expected to recur, which moots this claim. Mot. 12-14.[3]

Plaintiffs first argue (Opp. 11-12) that the voluntary-cessation factors in *Rosebrock v. Mathis*, 745 F.3d 963, 972-73 (9th Cir. 2014), do not govern because Defendants' *initial* decision to resume funding was due to this Court's injunction. That argument overlooks

---

[3] Plaintiffs confirm this claim no longer challenges suspension of overseas-operations funding. Opp. 11 n.4.

Defendants' subsequent actions demonstrating a commitment to—not a temporary cessation of—continued domestic services funding, such as transferring the program of initial resettlement to HHS-ORR, *see* Mot. 13, publishing a notice-of-funding-opportunity announcement regarding provision of initial resettlement and intensive case management to begin December 2026, Dep't of Health and Human Services, *Placement and Coordination Program*, https://perma.cc/23FY-PPTB.

Plaintiffs then argue the *Rosebrock* factors militate against mootness because Defendants have not "unequivocal[ly] disavow[ed]" the funding suspension and Defendants transfer of the program of initial resettlement was unrelated to this litigation. *See* Opp. 12. That argument again overlooks Defendants' subsequent conduct, *see* Mot. 13, and, while transfer of the program of initial resettlement to HHS-ORR was unrelated to this litigation, the initial restoration of funding *was* related, *id.* Plaintiffs do not address the other *Rosebrock* factors, *see* Opp. 11-12, which Defendants satisfy: The measures Defendants have taken to restore funding addresses Plaintiffs' funding injury (factor 2), the new policy has been in place for a long time (funding restoration for over a year and the program-of-initial-resettlement transfer since January 2026) (factor 4), and Defendants have not re-suspended domestic funding (factor 5), Mot. 13.

**B. Defendants' case-by-case-exception decisions are unreviewable and not arbitrary and capricious (Third Claim).**

**1.** There are no judicially manageable standards to evaluate the agencies' discretionary determination as to whether granting any particular exception "is in the national interest" and

does not "pose a threat to the security or welfare of the United States." Mot. 14-16 (citing *Webster v. Doe*, 486 U.S. 592, 600 (1988); *Poursina*, 936 F.3d at 871). A statute's "invocation of the 'national interest' is a core example of a consideration that lacks a judicially manageable standard of review." *Poursina*, 936 F.3d at 871.

Plaintiffs claim *Poursina* and *Webster* lack "any bearing on this case," arguing that Defendants invoked these cases "by pointing to section 1182(f)'s broad grant of presidential discretion," not the agencies' discretion. Opp. 14. Not so. While Defendants did begin their argument by discussing the President's broad §1182(f) authority because §1182(f) is the relevant statute here, Defendants continued by discussing the discretionary authority the President "delineated in EO 14163" to "the Secretaries of State and Homeland Security." Mot. 16. Plaintiffs then claim that the agency actions at issue in *Poursina* and *Webster* "stemm[ed] from statutes conferring broad agency discretion" without explaining how that is materially different from the discretion conferred to Defendants in EO 14163. *See* Opp. 14. Tellingly, Plaintiffs do not respond at all to *Poursina*'s most crucial statement—that "invocation of the 'national interest' is a core example of a consideration that lacks a judicially manageable standard of review," 936 F.3d at 871. *See* Opp. 14. That statement alone resolves the reviewability issue.

Plaintiffs rely instead on cases outside the immigration and national-security context that found reviewable statutory and regulatory language like "in the public's interest," "feasible," and "just and reasonable." Opp. 13 (quoting *Pac. Nw. Generating Coop. v.*



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

*Bonneville Power Admin.*, 596 F.3d 1065, 1077 (9th Cir. 2010)). But *Poursina* is more on point because it was an immigration case and involved the same language at issue here—"in the national interest." 936 F.3d at 871. And *Poursina* explained exactly why invocation of the national interest is different from the provisions at issue in the cases Plaintiffs rely on—because "the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts." *Id.* at 874 (citing *Hawaii*, 585 U.S. at 686); *accord Chairez v. Mayorkas*, 168 F.4th 1227, 1232-35 (9th Cir. 2026).[4]

Further, Plaintiffs contend that INA statutes and regulations governing the USRAP, as well as the statute for Iraqi DAP refugees, all provide a meaningful standard to review Defendants' implementation of exceptions. Opp. 14 (citing 8 U.S.C. §1157, 8 C.F.R. §207.7, and the RCIA). But these provisions cannot supply a meaningful standard of review for exception determinations while the USRAP is suspended under §1182(f). The President found that *all* refugee admissions—including Iraqi DAP, Lautenberg, and FTJ-Rs—were contrary to the national interest. EO 14163 §1. Requiring exceptions for those categories of refugee applicants cannot be squared with that presidential determination. *See Hawaii*, 585 U.S. at 691 (President may supplement INA entry restrictions).

---

[4] Likewise, Plaintiffs' reliance (Opp. 15) on *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015), does not undermine *Poursina*'s persuasiveness because the statute at issue did not involve a "national interest" determination.



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Finally, Plaintiffs' reliance (Opp. 14) on *Emami v. Nielsen*, 365 F.Supp.3d 1009, 1020-21 (N.D. Cal. 2019), is misplaced. That court found waiver determinations under a prior travel ban reviewable because that proclamation required, and the agency created, a multi-factor waiver framework against which the court could review such determinations. *See id.*; Procl. 9645 §3(c)(i)-(ii). Even if *Emami* was correctly decided and remains good law, there is no similar requirement or agency framework in place here. And the *Hawaii* footnote (n.7) the *Emami* court cited did not, as Plaintiffs assert (Opp. 14), "confirm[] that agency-implemented exceptions processes can be judicially examined." The APA-reviewability issue was not before the *Hawaii* Court, *see* 585 U.S. at 710 n.7, and *Emami* did not suggest otherwise, *see* 365 F.Supp.3d at 1021.

**2.** Even assuming reviewability, Defendants' implementation of the EO's exceptions provision is not arbitrary and capricious because it fully comports with the EO's text. Mot. 16-20.

The criteria underlying Defendants' issuance of exceptions primarily to Afrikaners can be readily inferred from the President's directive in Executive Order 14204 ("EO 14204") and the FY 2026 PD to prioritize Afrikaners to advance the President's foreign policy towards South Africa. *See* Mot. 17-18; EO 14204 §4. This inferable rationale neatly matches the exception decisions Defendants have made, satisfying *Department of Commerce v. New York*, 588 U.S. 752 (2019). *Contra* Opp. 17.

Plaintiffs' response ultimately rests on their theory that Defendants have "adopted a categorical eligibility rule" barring anyone who is not a "white Afrikaner" or "other non-Black minorit[y] from South Africa." *See* Opp. 15. But, given that the President has prioritized Afrikaner refugees as being of special humanitarian concern under 8 U.S.C. §1157, it should come as no surprise that most exceptions are granted to this group. Moreover, the Court need not accept Plaintiffs' "categorical-eligibility-rule" allegation as true because it is contradicted by Plaintiffs' own statements and public data. *Contra* Opp. 17; *see Saldana v. Occidental Petroleum Corp.*, 774 F.3d 554, 551 (9th Cir. 2014). Plaintiffs say that "over 95% of the 3,158 refugee admissions from South Africa this fiscal year have been white Afrikaners or another white minority," FAC ¶168, *see* Opp. 22 (same), meaning Defendants have admitted some refugees who do not fall within the alleged "categorical eligibility rule." *See also* Dep't of State, *Refugee Admissions Report*.[5] There is thus no plausibly-alleged categorical eligibility rule that Defendants have failed to publicize. *Contra* Opp. 15-16.

Plaintiffs' arbitrary-and-capricious arguments fail. They claim Defendants "flout[ed]" the EO's "command of 'case-by-case' determinations." Opp. 16. Not true; the EO says the Secretaries "*may*" "determine to admit aliens to the United States as refugees on a case-by-case basis, *in their discretion*." EO 14163 §3(c) (emphasis added). Plaintiffs also claim Defendants "ignore[d] the serious reliance interests of over 12,000 travel-booked refugees and

[5] Available at https://www.rpc.state.gov/admissions-and-arrivals/ (visited Aug. 6, 2026).



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

others the agency previously deemed to warrant expedited processing." Opp. 16. That does not square with the Ninth Circuit's decision, *Pacito*, 169 F.4th at 923, 940, which reversed this Court's prior arbitrary-and-capricious holding concerning agency suspension of refugee case-processing based on similar reliance-interest allegations, *see Pacito v. Trump*, 768 F.Supp.3d 1199, 1233 (W.D. Wash. 2025). Moreover, the refugees Plaintiffs reference lack serious reliance interests in potential admission to the United States through the USRAP, especially while: the program is suspended, exceptions are completely discretionary, and the President has repeatedly prioritized Afrikaner admissions under any exceptions. "A belief about how an agency is likely to exercise its enforcement discretion is not a serious reliance interest." *FDA v. Wages and White Lion Invs., L.L.C.*, 604 U.S. 542, 585 (2025) (cleaned up).[6]

Plaintiffs' notice-and-comment argument also fails. Defendants' prioritization of Afrikaners for exceptions pursuant to an executive order does not create "a substantive regulatory change to the statutory or regulatory regime," *Mendoza v. Perry*, 754 F.3d 1002, 1020-21 (D.C. Cir. 2014), or "effect a change in existing law," *Hemp Indus. Ass'n v. DEA*,

---

[6] This case is distinguishable from *DHS v. Regents of the University of California*, where the Supreme Court held DHS was obligated to consider reliance interests of participants in the Deferred Action for Childhood Arrivals ("DACA") program, even though DACA status was a discretionary benefit, 591 U.S. 1, 30-31 (2020). Unlike the DACA program, which had existed for years, here there is no history of Defendants exercising their discretion regarding EO-14163-exceptions in a way sufficient to engender serious reliance interests. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("[T]he agency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate," but "[s]ometimes it must—when, for example, … its prior policy has engendered serious reliance interests that must be taken into account.").



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

333 F.3d 1082, 1087 (9th Cir. 2003). Mot. 28-29. Despite Plaintiffs' attempt to frame their challenge as such, what they truly challenge is whether Defendants' actions violate the existing statutory and regulatory regime, *see* Opp. 16, which does not trigger notice-and-comment procedures. Nor does Plaintiffs' framing overcome that "the Government's consideration of which aliens to admit to the United States 'in the national interest' would be exempt from notice-and-comment rulemaking." Mot. 19 (citing 5 U.S.C. §553(a)).

### C. Defendants' implementation of the FY 2026 PD is likewise not arbitrary and capricious (Fourth-Seventh Claims).

Plaintiffs' four theories supporting their PD-implementation argument fail. *See* Opp. 18-19. *First*, their PD argument also rests on their self-contradicted theory that Defendants have adopted a "per se ineligib[ility]" rule for non-Afrikaner refugees. *See* Opp. 18; *supra* p.11. *Second*, the RCIA does not, as Plaintiffs assert (Opp. 18), oblige Defendants to consider Iraqi DAP refugees for exceptions. The RCIA only requires Defendants to use *existing refugee processing mechanisms* to allow Iraqi DAP refugees to apply for refugee admission, but the EO suspended those mechanisms. Mot. 22. *Third*, the INA does not require Defendants to consider FTJ-Rs for exceptions either; the Ninth Circuit rejected Plaintiffs' contention that §1157(c)(2)(A) creates any statutory entitlement to admission. *Pacito*, 169 F.4th at 923. Plaintiffs' response that Defendants must nevertheless process FTJ-R applications (Opp. 18-19) is unpersuasive because the Circuit also held that Defendants' suspension of all refugee case processing while EO 14163 is in effect is lawful. *See id.* at 923. *Fourth*, the Circuit's decision also disposes of Plaintiffs' argument (Opp. 19) that Defendants must continue to

process refugee applications while the program is suspended—the Circuit held the case-processing-suspension is lawful, *see id.*

**D. Defendants' application of Proclamation 10949 to refugees is not arbitrary and capricious either (Ninth-Tenth Claims).**

Defendants acknowledge that the Court previously disagreed with their position that the Proclamation applies to refugees, *see* Dkt.145, 8-10, but respectfully the Court should reconsider. The Court justified its holding using the canon of surplusage for one aspect of the Proclamation, Dkt.145, 9, but overlooked that the surplusage canon militates in Defendants' favor because, "[i]f the Proclamation did not apply to *any* refugee, then the drafters would not have needed to add the qualifier 'who has already been admitted' after stating that the Proclamation does not apply to a refugee," Mot. 27 (emphasis in original) (quoting Procl. 10949 §6(d)). Further, the Court did not grapple with the additional differences between Proclamation 10949 and Proclamation 9645 now discussed by Defendants in their motion. *Compare* Dkt.145, 8-10, *with* Mot. 27-28. Defendants' discussion of these additional reasons supporting their position is not an about-face, *contra* Opp. 20, but rather a supplement to their position.

**E. Plaintiffs' equal protection claim is not plausible (Eighth Claim).**

**1.** Plaintiffs cannot show that any U.S.-based Plaintiff has a constitutional right to assert, which is independently dispositive of their equal protection claim. Mot. 23 (citing *Muñoz*, 602 U.S. at 902).

Plaintiffs argue that *Muñoz* does not apply because the U.S.-based Plaintiffs are asserting deprivation of *enumerated* rights under the Equal Protection Clause rather than deprivation of an *unenumerated* liberty interest like in *Muñoz*. Opp. 22. That argument fails. *Muñoz* is dispositive here because a U.S.-based plaintiff may not assert a constitutional right "in *someone else's* legal proceedings." 602 U.S. at 916 (emphasis in original). That is true where a case involves unenumerated rights, like in *Muñoz*, *see id.* (liberty interest in residing with noncitizen spouse in U.S.), as well as enumerated rights, like property, *see O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 787 (1980) (Medicaid benefits). That reasoning logically extends to enumerated equal-protection rights.

If this Court were to allow the U.S.-based Plaintiffs to assert equal-protection rights on behalf of refugees abroad who desire exceptions, it would result in "unsettling collateral consequences" similar to those the *Muñoz* Court cautioned against. *See* 602 U.S. at 917 ("Could a citizen assert [*equal protection*] rights in the removal proceeding of her spouse?" (emphasis added)). The bottom line is "the Constitution does not ordinarily prevent the government from taking actions that 'indirectly or incidentally' burden a citizen's legal rights." *Id.* (citation omitted). At the very most, that is all Plaintiffs can argue has occurred here with respect to the U.S.-based Plaintiffs, which is not enough to assert an equal protection claim.

**2.** Regardless, Defendants' prioritization of Afrikaners for exceptions passes constitutional muster. Mot. 24-27.



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

Plaintiffs rely on the burden-shifting framework from *Arlington Heights*. Opp. 23. But the correct standard is the deferential rational-basis test that the Supreme Court in *Hawaii* applied in analogous circumstances. Mot. 23; *see Hawaii*, 585 U.S. at 704; *see also Mullin v. Doe*, 609 U.S. ----, 146 S. Ct. 2121, 2138 (2026) (declining to resolve which standard applies and merely "assum[ing] for the sake of argument that the *Arlington Heights* standard applies"). Defendants easily satisfy *Hawaii*'s rational-basis standard because prioritizing certain Afrikaners for exceptions is plausibly related to the Government's stated objective—to respond to discriminatory policies by the South African government that harm disfavored Afrikaners and undermine U.S. foreign policy. Mot. 24-25 (citing EO 14204).

Regardless, Defendants satisfy *Arlington Heights*. Mot. 25-27. Plaintiffs claim that Defendants' prioritization of Afrikaners for exceptions is "inexplicable by anything but animus." Opp. 22 (quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996)). Not so. As discussed, the explanation for Afrikaner prioritization is readily inferred from the President's foreign-policy-driven directives in EO 14204 and the FY 2026 PD. *Supra* p.10. This case is nothing like *Romer* because Defendants' advancement of the President's foreign policy is not "divorced from any factual context from which [a court] could discern a relationship to state interests," 517 U.S. at 635. Rather, "[p]rotection of the foreign policy of the United States is a governmental interest of great importance, since foreign policy and national security considerations cannot be neatly compartmentalized." *Haig v. Agee*, 453 U.S. 280, 307 (1981); Mot. 26.



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

In any case, even assuming *arguendo* that (i) Plaintiffs plausibly alleged animus towards non-white refugees and (ii) the burden shifted to the Government to "establish[] that the same decision would have resulted even had the impermissible purpose not been considered," Opp. 23 (quoting *Arlington Heights*, 429 U.S. at 270 n.21), Defendants meet that burden. Their prioritization of Afrikaners would have occurred regardless of any alleged animus by the President or agency officials, *see* FAC ¶¶160-61, because the agencies were bound to carry out the President's directives in EO 14204 and the FY 2026 PD to prioritize Afrikaners for resettlement as refugees.

**E. Plaintiffs' so-called *Accardi* claims fail (Seventh and Tenth Claims).**

Plaintiffs' standalone *Accardi* claims are not cognizable because "the *Accardi* doctrine is not an independent cause of action." *Rohani v. Rubio*, 2025 WL 1503950, at *14 (W.D. Wash. May 27, 2025) (King, J.) (appeal pending). The doctrine simply requires that an agency generally must adhere to its own binding procedures, especially when the rights of individuals are affected. *See Backcountry Against Dumps v. FAA*, 77 F.4th 1260, 1267 (9th Cir. 2023). Accordingly, Defendants address Plaintiffs' *Accardi* arguments when discussing why Defendants' actions do not violate the Constitution or any statute, regulation, or procedure, *see* Mot. 22, 29.

## CONCLUSION

The FAC should be dismissed.



U.S. DEPT. OF JUSTICE, CIVIL DIVISION
OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 746-8537

DATED August 11, 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANTHONY P. NICASTRO
Director

AUGUST FLENTJE
Deputy Director

CARA E. ALSTERBERG
Assistant Director

*/s/ Joseph McCarter**
JOSEPH MCCARTER
JASON ZUBATA
TIA HOCKENBERRY
Trial Attorneys
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franlin Station
Washington, DC 20044
Phone: (202) 746-8537
Email: Joseph.A.McCarter@usdoj.gov

*Attorneys for Defendants*

* I certify that this reply brief contains 4,200 words, which complies with the Local Civil Rules. *See* LCR 7(e)(4).

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 11, 2026, I caused a copy of this filing to be served on counsel for Plaintiffs via the ECF system.

*/s/ Joseph McCarter*
JOSEPH MCCARTER
Attorney for Defendants