# EXHIBIT A

District Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PLAINTIFF PACITO; PLAINTIFF ESTHER; PLAINTIFF JOSEPHINE; PLAINTIFF SARA; PLAINTIFF ALYAS; PLAINTIFF MARCOS; PLAINTIFF AHMED; PLAINTIFF RACHEL; PLAINTIFF ALI; HIAS, INC.; CHURCH WORLD SERVICE, INC.; LUTHERAN COMMUNITY SERVICES NORTHWEST,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; ROBERT F. KENNEDY, in his official capacity as Secretary of Health and Human Services,

*Defendants*.

CASE NO. 2:25-cv-00255

DEFENDANTS' OBJECTIONS IN RESPONSE TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION



U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044

**TO:** Plaintiffs Esther; Josephine; Sarah; Alyas; Marcos; Ahmed; Rachel; Ali; HIAS, Inc.; Church World Services, Inc.; and Lutheran Community Services Northwest.

**AND:** Counsel for Plaintiffs.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Federal Defendants Donald J. Trump, et al., (hereinafter, "Defendants") hereby respond to Plaintiffs' first requests for production ("RFPs"), served January 26, 2026, as follows:

**<u>OBJECTIONS WHICH APPLY TO ALL REQUESTS FOR PRODUCTION</u>**

Defendants object to the RFPs in their entirety because discovery is not appropriate in this record-review case. Plaintiffs brought claims under the Administrative Procedure Act ("APA") and their constitutional and statutory claims overlap with the APA claims. Thus, factual development in this case is limited to the certified administrative records ("CARs") Defendants filed and supplemented. Defendants maintained this position in the parties' December 5, 2025 joint status report. Dkt. No. 176 at 8. Defendants also moved for a protective order relieving them of responding to Plaintiffs' discovery requests on this basis, Dkt. No. 188, which as of the date of this response is pending with the Court.

Defendants object to the RFPs to the extent that they seek: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) documents that are protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, the investigation files privilege, executive privilege, the presidential communications privilege, and the official information privilege; (c) documents that, if produced, would violate the legitimate privacy interests and

expectations of persons who are not party to this litigation; or (d) documents to which any other privilege applies.

Defendants object to the RFPs to the extent they seek documents that are otherwise protected by the stipulated protective order the parties are currently negotiating. Defendants also object to producing any documents responsive to the RFPs while the protective order is not in place.

Defendants object to the RFPs (and the definitions and instructions that accompany them) to the extent that they purport to impose obligations other than ones that are imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the Western District of Washington, or an order of the Court.

Defendants object to the RFPs to the extent that they seek documents that are not relevant to any party's claim or defense. Defendants further object to the extent that the RFPs are disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

Defendants object to the RFPs to the extent that they require Defendants to conduct an unduly burdensome and disproportionate search for documents. Defendants further object to the extent that the RFPs request documents that are publicly available, that are in the custody or control of Plaintiffs, that are readily accessible to Plaintiffs, or that Plaintiffs otherwise can obtain with minimal burden. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Defendants further object to the extent that the RFPs are not reasonably limited in time or scope. Defendants object to the extent the requests

purport to require the disclosure of information in the possession, custody or control of entities other than Defendants, Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity.

Defendants further object to the RFPs to the extent they require the disclosure of information in the possession, custody, or control of entities other than properly named Defendants on the grounds that such discovery is beyond the scope of Fed. R. Civ. P. 34 and other applicable law.

Defendants object to the RFPs to the extent they seek documents between January 1, 2020 and the present because that time period is beyond the scope of these RFPs and is not proportional to the needs of the case. Defendants conferred with Plaintiffs and Plaintiffs informed Defendants in writing via email on February 13, 2026, that they seek documents between January 1, *2025*, and present, not January 1, *2020*.

Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted in respect to a specific RFP. Defendants reserve the right to assert additional responses and objections at a later time in the event that Defendants discover additional grounds for objections, in accordance with Federal Rule of Civil Procedure 26(e).

**PLAINTIFFS' INSTRUCTIONS**

1. These requests are to be answered within thirty (30) days of the date of service. Unless otherwise agreed, you are to produce responsive documents and other tangible things that are within your possession, custody, or control at the offices of Perkins Coie LLP, 1301 Second Avenue, Suite 4200, Seattle, Washington 98101.

2. Produce documents responsive to these requests for production in single page Group 4, 300 DPI, TIFF format, named according to the unique production number followed by the extension ".TIF". The TIFF images should be accompanied by an Opticon format image registration file that includes a first page "Y" flag to identify the logical document breaks.

3. Produce documents with the following metadata fields, subject to the exceptions noted parenthetically:

Metadata from Emails

a. Email subject (not to be produced for documents that are redacted);

b. Email author;

c. Email recipient(s);

d. Email received date;

e. Email sent date; and

f. Custodian

Metadata from Electronic Files

a. File name (not to be produced for documents that are redacted);

b. File author;

c. File created date;

d. File access date;

e. File modification date; and

f. Custodian

Metadata for all Documents that Contain an Attachment

a. Production number begin;

b. Production number end;

c. Production attachment range number begin; and

d. Production attachment range number end

4. Either identify the particular request for production to which each document is responsive or, alternatively, produce documents in the same manner as you keep them in the ordinary course of business.

5. Unless words or terms have been given a specific definition herein, each word or term shall be given its usual and customary dictionary definition.

6. The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

7. When producing documents and things, you are requested to furnish all documents or things in your possession, custody, or control, or known or available to you, regardless of whether such documents or things are possessed directly by you or your officers, directors, agents, employees, representatives, or investigators, or by your attorneys or their agents, employees, representatives, or investigators.

8. Documents attached to each other must not be separated.

9. If any portion of a document is responsive, produce the entire document.

10. If no documents are responsive to a particular request, so state in writing.

11. If any requested document or thing cannot be produced in full, please produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

12. If a document once existed but has been lost or destroyed or otherwise is no longer in your possession, custody, or control, identify the document and state the details concerning the loss or destruction of such document, including the name and address of the present custodian of any such document if known.

13. If any request is deemed to call for privileged documents and such privilege is asserted in order to avoid production, provide a list with respect to each document withheld based on a claim of privilege, stating:

a. Type of document withheld (e.g., letter, memorandum, or computer database);

b. Author(s) of document withheld;

c. Recipient(s) of document withheld;

d. Date of document withheld;

e. Subject matter of document withheld;

f. Nature of privilege(s) claimed; and

g. The paragraph(s) of these requests to which the document relates.

14. If any responsive document contains both privileged and nonprivileged material, produce the entire document with the privileged material redacted and the fact of the redaction clearly indicated.

15. You are requested to produce all original documents and all duplicate documents that were altered in any manner or added to after being duplicated and thus differ in some manner from the original.

16. If you object to answering any of these requests or withhold documents from production in response to these requests in whole or in part, state your objections and/or reasons

for not producing and state all factual and legal justifications that you believe support your objection or failure to answer or produce, and also state whether you are withholding documents pursuant to your objection.

17. The timeframe for these discovery requests is from January 1, 2020, through present, unless otherwise stated.

18. Seasonably and promptly supplement and/or correct your responses to these requests as this action continues to the extent required by Federal Rule of Civil Procedure 26(e)(1).

## DEFENDANTS' OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS

Defendants object to the timeframe set forth in Instruction 17. Defendants conferred with Plaintiffs and Plaintiffs clarified in writing via email on February 13, 2026, that the timeframe specified in Instruction No. 17 is from January 1, *2025*, to the present, not January 1, *2020*, to present.

## PLAINTIFFS' DEFINITIONS

As used in these requests for production, the following terms have the meanings described below:

1. The term "**90-Day Reports**" refers to the reports created by the Secretary of Homeland Security in consultation with the Secretary of State regarding whether resumption of entry of refugees into the United States under the USRAP would be in the interests of the United States, which are required by Section 4 of the USRAP Executive Order to be submitted to the President within 90 days of the issuance of the USRAP EO, and every 90 days thereafter.

2. The term "**Agencies Involved in the USRAP**" refers to all federal governmental agencies, state and local governmental agencies, nongovernmental organizations, and international organizations involved in the USRAP.

3. The word "**all**" shall be construed to include and encompass the words "each," "every," and "any."

4. The connectives **"and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

5. The term "**Case-by-Case Exception**" refers to an exception or waiver under Section 3(c) of the USRAP EO that may be granted to permit the admission of individuals to the United States as refugees on a case-by-case basis, notwithstanding the suspension of the USRAP, so long as the Secretaries of State and Homeland Security determine that the entry of such person as a refugee is in the national interest and does not pose a threat to the security or welfare of the United States.

6. The word "**Correspondence**" refers to any communication, electronic or otherwise, including but not limited to email (whether from an official or personal account), phone logs, letters, postcards, faxes, text messages, voicemails, recorded conversations, and complaints.

7. The words "**Defendants**," "**You**," and "**Your**" refer to President Donald Trump, Secretary of State Marco Rubio, Secretary of Homeland Security Kristi Noem, and Secretary of Health and Human Services Robert F. Kennedy and their officers, agents, assigns, employees, insurers, attorneys, subsidiaries, successors, and predecessors, and anyone acting on their behalf.

8. The words "**Document**" and "**Documents**" shall be construed to be synonymous in meaning and equal in scope to the usage of the terms in Federal Rule of Civil Procedure 34(a), in its broadest sense, and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, including Correspondence, both originals and copies, and all attachments and appendices thereto, that are in Your possession, custody, or control, or in the possession, custody, or control of Your attorneys. A draft of a nonidentical copy is a separate Document within the meaning of this term. Without limiting the term "control," a Document is deemed to be within Your control if You have ownership, possession, or custody of the Document or the right to secure the Document or copy thereof from any persons or public or private entity having physical control thereof.

9. The term "**Follow-to-Join Refugees**" refers to the beneficiaries (i.e., a petitioner's spouse and unmarried children under age twenty-one) of Form I-730 petitions filed by refugees residing in the United States seeking to reunite with their families pursuant to 8 U.S.C. § 1157(c)(2)(A).

10. The words "**including**" and "**includes**" shall be construed to mean "including, but not limited to," and "includes, but is not limited to," respectively.

11. The word "**Plaintiffs**" refers to Plaintiffs Pacito; Esther; Josephine; Sara; Alyas; Marcos; Ahmed; Rachel; Ali; HIAS, Inc.; Church World Service, Inc.; and Lutheran Community Services Northwest.

12. The term "**Processing of Applications**" refers to all stages of processing in the USRAP by Agencies Involved in the USRAP, including referring cases to the USRAP, preparing and storing files, collecting data, conducting pre-interviews and interviews, adjudicating

applications, reviewing case decisions, conducting security checks and medical clearances, obtaining assurances, providing cultural orientation, and arranging travel to the United States.

13. The terms "**relates to**" and "**relating to**" shall be construed in the broadest sense and shall mean, without limitation, anything that, in whole or in part, directly or indirectly analyzes, comments upon, comprises, concerns, constitutes, contains, discusses, embodies, evidences, explains, identifies, manifests, mentions, reflects, refers to, relates to, states, summarizes, or is in any way relevant to the particular subject matter identified.

14. The term "**USRAP**" refers to the United States Refugee Admissions Program.

15. The terms "**USRAP Executive Order**" and "**USRAP EO**" refer to Executive Order 14163, "Realigning the United States Refugee Admissions Program," which was published on January 20, 2025.

## DEFENDANTS' OBJECTIONS TO PLAINTIFFS' DEFINITIONS

1. Defendants object to Definition 1. Plaintiffs' definition of "the reports created by" is overly broad and unduly burdensome, and improperly invades the attorney/client privilege, deliberative process privilege, presidential communications privilege, and/or the attorney work-product doctrine. In particular, this definition encompasses reports that may have been in draft-only form and not submitted as final to the President through the Homeland Security Advisor.

2. Defendants object to Definition 2. Plaintiffs' definition of "involved in the USRAP" is overly broad and vague. There is no means to determine whether any of the thousands of federal, state, and local government agencies were or are "involved in the USRAP." Defendants further object to this definition to the extent it purports to require the disclosure of information in the possession, custody, or control of entities other than Defendants (e.g., state and local governments, nongovernmental organizations, and international organizations) fall outside the scope of permissible discovery under Fed. R. Civ. P. 34, or seek information that

can and should be sought from another entity. Defendants further object to this definition because it purports to require a government-wide search for documents. Such a government-wide search would be oppressive, overly burdensome and overbroad, given the claims and defenses in this matter, which relate to a discrete issue.

3. Defendants object to Definition 3. Plaintiffs' definition of the term "all" is overly broad and unduly burdensome, and improperly invades the attorney/client privilege, deliberative process privilege, presidential communications privilege, and/or the attorney work-product doctrine. In particular, the definition encompasses communications between agency attorneys and their clients, Department of Justice attorneys and agency attorneys, and White House attorneys and agency personnel. Defendants further object to this definition to the extent it purports to require the disclosure of information in the possession, custody, or control of entities other than Defendants, fall outside the scope of permissible discovery under Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. Defendants further object to this definition because it purports to require a government-wide search for documents. Such a government-wide search would be oppressive, overly burdensome and overbroad, given the claims and defenses in this matter, which relate to a discrete issue.

4. Defendants object to Definition 6. Plaintiffs' definition of "Correspondence" which is defined so broadly as to include verbal or non-written communications and is beyond the scope of Rule 34. See Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).

5. Defendants object to Definition 7. Plaintiffs' definition of the terms "you" and "your" encompasses the entirety of the Executive Office of the President, the U.S. Department of State, the U.S. Department of Homeland Security, and the U.S. Department of Health and Human Services, including subordinate entities, components, and employees having no involvement whatsoever with the claims in Plaintiff's Supplemental Complaint. Defendants further object to this definition to the extent it purports to require the disclosure of information in the possession,

custody, or control of entities other than Defendants, fall outside the scope of permissible discovery under Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. Defendants further object to this definition because it purports to require a government-wide search for documents. Such a government-wide search would be oppressive, overly burdensome and overbroad, given the claims and defenses in this matter, which relate to a discrete issue.

6. Defendants object to Definition 12. Plaintiffs' definition of "all stages of processing in the USRAP" is overly broad, vague, and unduly burdensome.

7. Defendants object to Definition 13. Plaintiffs' definition of the terms "relates to" and "relating to" is overly broad and unduly burdensome, and improperly invades the attorney/client privilege, deliberative process privilege, presidential communications privilege, and/or the attorney work-product doctrine. In particular, the definition encompasses communications between agency attorneys and their clients, Department of Justice attorneys and agency attorneys, and White House attorneys and agency personnel. Defendants further object to this definition to the extent it purports to require the disclosure of information in the possession, custody, or control of entities other than Defendants, fall outside the scope of permissible discovery under Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. Defendants further object to this definition because it purports to require a government-wide search for documents. Such a government-wide search would be oppressive, overly burdensome and overbroad, given the claims and defenses in this matter, which relate to a discrete issue.

## DEFENDANTS' RESERVATION OF RIGHTS

Defendants' responses to Plaintiffs' RFPs are made subject to and without waiving the following:

1. In providing these responses, Defendants reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time. *See* Fed. R. Civ. P. 26(e).

2. In providing these responses, Defendants reserve the right to assert additional responses and objections at a later time in the event that Defendants discover additional grounds for objections, in accordance with Federal Rule of Civil Procedure 26(e).

3. In providing these responses, Defendants do not waive and hereby expressly reserve their right to assert any and all objections as to the admissibility into evidence—at the trial of this action or in any other proceeding—of any response herein or of any documents annexed to or referred to herein, on any and all grounds, including but not limited to competency, relevance, materiality, proportionality, and privilege.

4. The responses herein do not constitute a waiver of any applicable privilege. To the extent any privileged documents are produced inadvertently, Defendants reserve the right to claw back all such documents consistent with Fed. R. Civ. P. 26(c) and the stipulated protective order the parties are currently negotiating.

5. In providing these responses, Defendants do not in any manner admit or imply that they consider any RFP or the responses herein to be relevant, admissible, or material to the subject matter of this action, nor do Defendants in any manner admit or imply that they consider any request or the responses herein to be proportional to the needs of the case.

6. Defendants expressly reserve the right to object to the use of their responses to any RFP in any proceedings other than the above-captioned action.

Defendants acknowledge their ongoing responsibility to supplement this discovery pursuant to Fed. R. Civ. P. 26(e).

**DEFENDANTS' RESPONSES AND OBJECTIONS TO**
**<u>PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION</u>**

**REQUEST FOR PRODUCTION NO. 1:** All 90-Day Reports created by the Secretary of Homeland Security in consultation with the Secretary of State pursuant to Section 4 of the USRAP EO, including the reports disclosed to the news media and referenced in a *New York Times*

article dated October 15, 2025. *See* Zolan Kanno-Youngs & Hamed Aleaziz, *Trump Considers Overhaul of Refugee System That Would Favor White People*, N.Y. Times (Oct. 15, 2025), https://www.nytimes.com/2025/10/15/us/politics/trump-refugee-white-people.html.

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein, including their objections to "90-Day Reports."
2. Defendants object to RFP 1 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.[1]
3. Defendants object to production of any and all 90-Day Reports, and any alleged reports referenced in the New York Times article that Plaintiffs cite—to the extent they exist—on the basis that such reports are not relevant to Plaintiffs' claims. Plaintiffs challenge the suspension of the USRAP and the pause, suspension, and termination of grants and cooperative agreements between the U.S. government and refugee resettlement agencies. Any internal Executive Branch reports concerning whether resumption of the USRAP is in the national interests is not relevant to any of those claims.
4. Defendants further object to RFP 1 as vague, ambiguous, and calling for speculation insofar as it refers to undefined "reports disclosed to the news media and referenced in a *New York Times* article dated October 15, 2025."
5. Defendants object to production of any and all 90-Day Reports on the basis that the 90-Day Reports are privileged under the Presidential Communications Privilege.

---

[1] As Defendants asserted in their protective order motion, discovery is inappropriate in this record-review case because Plaintiffs brought most of their claims under the Administrative Procedure Act, and no exception to the Act's record-review requirement applies. Dkt. No. 188 at 3. And while Plaintiff's brought two claims under the U.S. Constitution and one under the Immigration and Nationality Act, those claims overlap with the APA claims and thus do not provide and independent basis for discovery. *Id.*

6. Defendants further object to RFP 1 to the extent that it requests the production of documents protected by the attorney-client privilege, the deliberative process privilege, the law enforcement privilege, the attorney work-product doctrine, and any other applicable privileges.

**REQUEST FOR PRODUCTION NO. 2:** All policies, directives, instructions, guidelines, guidance, advisals, cables, notices, training, memoranda, decisions, Communications, and other similar Documents issued or sent by Defendants and Agencies Involved in the USRAP relating to the implementation of Section 3(c) of the USRAP EO and Case-by-Case Exceptions, including any application process, eligibility standards, eligibility assessment and adjudication process, and approval process related to Case-by-Case Exceptions (collectively "Case-by-Case Exception Documents") that have been produced and been in effect at any time since January 15, 2025.

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein, including their objections to Plaintiffs' definitions of the terms "all," "relating to," and "Agencies involved in the USRAP."
2. Defendants object to RFP 2 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.
3. Defendants further object to production of Case-by-Case Exception Documents on the basis that such documents are not relevant to Plaintiffs' claims. Plaintiffs make no claim that any failure to establish an exceptions process or provide information on a process is a violation of law. *See* Dkt. No. 56 ¶¶ 229-57 (Claims for Relief).
4. Defendants further object to production of Case-by-Case Exception Documents on the basis that Plaintiffs' broad request—*e.g.*, "all [documents] … relating to …"—

includes documents that are privileged under the Deliberative Process Privilege and Attorney-Client Privilege, and includes documents that are protected by the Work-Product Doctrine.

5. Even if Case-by-Case Exception Documents were relevant to Plaintiffs' claims (they are not), Defendants object to production of Case-by-Case Exception Documents to the extent that Plaintiffs' broad request—*e.g.*, "all [documents] … relating to …"—is unduly burdensome on Defendants.

6. Even if Case-by-Case Exception Documents were relevant to Plaintiffs' claims (they are not), Defendants object to production of Case-by-Case Exception Documents to the extent that Plaintiffs' broad request—*e.g.*, "all [d]ocuments issued or sent by Defendants and Agencies Involved in the USRAP relating to … Case-by-Case Exceptions … that have been produced and been in effect at any time since January 15, 2025"—is disproportionate to Plaintiffs' needs of the case. Any documents relating to any exception processes will not be important in resolving any issue regarding the legality of the USRAP suspension, and the burden on Defendants of the proposed discovery outweighs any likely benefit to Plaintiffs. Furthermore, the organizational Plaintiffs (i.e., Church World Services and HIAS) are "Agencies Involved in the USRAP," as Plaintiffs have defined that term, and would already have access to any documents issued or sent by those Agencies or from Defendants to those Agencies.

7. Defendants further object to RFP 2 to the extent that it requests the production of documents protected by the law enforcement privilege, presidential communications privilege, and any other applicable privileges.

**REQUEST FOR PRODUCTION NO. 3:** Documents sufficient to show the categories of personnel[2] of the Agencies Involved in the USRAP to whom the Case-by-Case Exception Documents have been distributed.

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein, including their objections to the definition of "Agencies Involved in the USRAP."
2. Defendants object to RFP 3 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.
3. Defendants object to production of Case-by-Case Exception Documents on the basis that such documents are not relevant to Plaintiffs' claims. Plaintiffs make no claim that any failure to establish an exceptions process or provide information on a process is a violation of law. *See* Dkt. No. 56 ¶¶ 229-57 (Claims for Relief).
4. Even if Case-by-Case Exception Documents were relevant to Plaintiffs' claims (they are not), Defendants object to RFP 3 on the basis that it is duplicative of the information requested in RFP 2. For that reason, Defendants object to RFP 3 on the same undue burden and disproportionality grounds as RFP 2.
5. Defendants further object to production of Case-by-Case Exception Documents on the basis that Plaintiffs' broad request—*e.g.*, "all [documents] … relating to …"—reaches information that is privileged under the Deliberative Process Privilege and Attorney-Client Privilege, and documents that are protected by the Work-Product Doctrine.

[2] Defendants conferred with Plaintiffs on the meaning of the phrase "categories of personnel" and Plaintiffs informed Defendants in writing via email on February 13, 2026, that "Categories of personnel in RFP No. 3 refers to job titles and sub-departments/offices."

6. Defendants further object to RFP 3 to the extent that it requests the production of documents protected by the law enforcement privilege, presidential communications privilege, and any other applicable privileges.

**REQUEST FOR PRODUCTION NO. 4:** For the time period since January 20, 2025, Documents sufficient to show the following data related to the Case-by-Case Exceptions and admission of cases and refugees to the United States. For the following, data should be provided for each week within the time period identified above:

a. Number of individuals and cases approved for a Case-by-Case Exception, disaggregated by nationality;

b. Number of individuals and cases approved for a Case-by-Case Exception who were admitted into the United States, disaggregated by nationality; and

c. Number of individuals and cases denied a Case-by-Case Exception, disaggregated by nationality and underlying petition or application type (I-590 or I-730).

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein.

2. Defendants object to RFP 4 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.

3. Defendants further object to production of Case-by-Case Exception data on the basis that such data is not relevant to Plaintiffs' claims. Plaintiffs make no claim that any failure to establish an exceptions process or provide information on a process is a violation of law. *See* Dkt. No. 56 ¶¶ 229-57 (Claims for Relief).

4. Even if Case-by-Case Exception data were relevant to Plaintiffs' claims (it is not), Defendants further object to RFP 4 on the basis that it is largely duplicative of the

information requested in RFP 2—Plaintiffs would be able to ascertain Case-by-Case-Exception data from Case-by-Case Exception Documents.

5. Even if Case-by-Case Exception data were relevant to Plaintiffs' claims (it is not), Defendants further object to production of Case-by-Case Exception data on the basis production would be disproportionate to Plaintiffs' needs of the case. Any data relating to exceptions will not be important in resolving any issue regarding the legality of the USRAP suspension, and the burden on Defendants of the proposed discovery outweighs any likely benefit to Plaintiffs. Furthermore, Plaintiffs have access to publicly available monthly data on refugee admissions, disaggregated by nationality, at https://www.rpc.state.gov/admissions-and-arrivals/.

6. Even if Case-by-Case Exception data were relevant to Plaintiffs' claims (it is not), Defendants further object to RFP 4 on the basis that, the data, in the format requested by Plaintiffs, would require compiling data that is not maintained in the ordinary course of operations.

7. Even if Case-by-Case Exception data were relevant to Plaintiffs' claims (it is not), Defendants further object to production of Case-by-Case Exception data on the basis that production would be unduly burdensome on Defendants.

8. Defendants further object to RFP 4 to the extent that it requests the production of documents protected by the attorney-client privilege, the deliberative process privilege, law enforcement privilege, presidential communications privilege, the attorney work-product doctrine, and any other applicable privileges.

**REQUEST FOR PRODUCTION NO. 5:** For the time period since January 20, 2025, Documents sufficient to show the following data related to the Processing of Applications and admission of Follow-to-Join Refugees to the United States:

a. For the following, data should be provided for each month within the time period identified above:

i. Number of pending I-730 refugee petitions, disaggregated by nationality of petitioner and beneficiary and stage of processing:

ii. Number of I-730 refugee petitions filed each month, disaggregated by nationality of petitioner and beneficiary;

iii. Number of I-730 refugee petitions approved each month, disaggregated by nationality of petitioner and beneficiary;

iv. Number of I-730 refugee petitions forwarded to overseas posts each month, disaggregated by nationality of petitioner and beneficiary;

v. Number of I-730 refugee petitions for whom interviews were conducted each month, disaggregated by nationality of petitioner and beneficiary; and

vi. Number of Follow-to-Join Refugees who were admitted into the United States as refugees each month, disaggregated by nationality of petitioner and beneficiary and basis for admission (admitted pursuant to a Case-by-Case Exception or pursuant to a court order).

b. For the following, data should be provided for the time period identified above:

i. Number of pending I-730 petitions for which Follow-to-Join Refugees are physically inside the United States; and

ii. Number of approved I-730 petitions for which Follow-to-Join Refugees are physically inside the United States.

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein, including their objections to the definitions of "Processing of Applications."

2. Defendants object to RFP 5 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.

3. Defendants object to RFP 5 on the basis that data on Follow-to-Join Refugee ("FTJ-R") processing and admissions is disproportionate to Plaintiffs' needs of the case. Regarding FTJ-Rs, Plaintiffs challenge the suspension of FTJ-R application processing and admissions. *See* Dkt. No. 56 ¶¶ 229-33, 239-53. The parties do not dispute that the U.S. government suspended FTJ-R application processing and FTJ-R admissions under the challenged executive order. The in-depth data Plaintiffs request in RFP 5 therefore will not prove or disprove that FTJ-R application processing and FTJ-R admissions have ceased under the challenged executive order.

4. Even if FTJ-R application processing and admissions data were not disproportionate to the needs of Plaintiffs' case, Defendants further object to production of such data on the basis that monthly data on refugee admissions, disaggregated by nationality, is publicly available at https://www.rpc.state.gov/admissions-and-arrivals/. *See* Fed. R. Civ. P. 26(b)(1) (a party's "relative access to relevant information" is a factor for consideration in the proportionality analysis).

5. Even if FTJ-R application processing and admissions data were not disproportionate to the needs of Plaintiffs' case (it is), Defendants further object to production of such data on the basis that the data, in the format requested by Plaintiffs, would require compiling data that is not maintained in the ordinary course of operations.

6. Even if FTJ-R data were not disproportionate to the needs of Plaintiffs' case (it is not), Defendants further object to production of FTJ-R data on the basis that production would be unduly burdensome on Defendants.

7. Defendants also object to RFP 5 on the basis that it is vague because Plaintiff do not define the phrase "stage of processing."

8. Defendants further object to RFP 5 to the extent that it requests the production of documents protected by the attorney-client privilege, the deliberative process privilege, law enforcement privilege, presidential communications privilege, the attorney work-product doctrine, and any other applicable privileges.

**REQUEST FOR PRODUCTION NO. 6:** For the time period since January 20, 2025, Documents sufficient to show the following data related to the Processing of Applications and admission of cases and refugees to the United States:

a. For the following, data should be provided for each month within the time period identified above:

i. Number of pending I-590 applications, disaggregated by nationality and stage of processing;

ii. Number of I-590 applications referred to the USRAP each month, disaggregated by nationality;

iii. Number of I-590 applications conditionally approved each month, disaggregated by nationality;

iv. Number of I-590 applications for whom interviews were conducted each month, disaggregated by nationality; and

v. Number of approved I-590 individual applicants and cases who were admitted into the United States as refugees each month, disaggregated by nationality and basis for admission (admitted pursuant to a Case-by-Case Exception or pursuant to a court order).

b. For the following, data should be provided for the time period identified above:

i. Number of pending I-590 applications for which applicants are physically inside the United States; and

ii. Number of approved I-590 applications for which applicants are physically inside the United States.

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein, including their objections to the definition of "Processing of Applications."

2. Defendants object to RFP 6 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.

3. Defendants further object to RFP 6 on the basis that data on refugee application processing and refugee admissions is disproportionate to Plaintiffs' needs of the case. Regarding refugees, Plaintiffs challenge the suspension refugee application processing and refugee admissions. *See* Dkt. No. 56 ¶¶ 229-38, 245-53. The parties do not dispute that the U.S. government suspended refugee application processing and refugee admissions under the challenged executive. The in-depth data Plaintiffs request in RFP 5 therefore will not prove or disprove that refugee application processing and refugee admissions have ceased under the challenged executive.

4. Even if refugee application and admission data were not disproportionate to the needs of Plaintiffs' case, Defendants further object to production of refugee admission data on the basis that monthly admissions data, disaggregated by nationality, is publicly available at https://www.rpc.state.gov/admissions-and-arrivals/. *See* Fed. R. Civ. P. 26(b)(1) (a party's "relative access to relevant information" is a factor for consideration in the proportionality analysis).

5. Even if data on refugee applications and admissions were not disproportionate to the needs of Plaintiffs' case, Defendants further object to production of such data

on the basis that the data, in the format requested by Plaintiffs, would require compiling data that is not maintained in the ordinary course of operations.

6. Even if data on refugee applications and admissions were not disproportionate to the needs of Plaintiffs' case (it is not), Defendants further object to production of such data on the basis that production would be unduly burdensome on Defendants.

7. Defendants also object to RFP 6 on the basis that it is vague because Plaintiff do not define the phrase "stage of processing."

8. Defendants further object to RFP 6 to the extent that it requests the production of documents protected by the attorney-client privilege, the deliberative process privilege, law enforcement privilege, presidential communications privilege, the attorney work-product doctrine, and any other applicable privileges.

**REQUEST FOR PRODUCTION NO. 7:** All policies, directives, instructions, guidelines, guidance, advisals, cables, notices, training, memoranda, decisions, communications and other similar Documents issued or sent by Defendants and Agencies Involved in the USRAP relating to the processing of refugee applications and petitions since January 20, 2025, including Documents applicable to beneficiaries located both overseas and within the United States.

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein, including their objections to Plaintiffs' definitions of the terms "all," "relating to," and "Agencies Involved in the USRAP."

2. Defendants object to RFP 7 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.

3. Defendants object to RFP 7 on the basis that documents regarding refugee application processing is disproportionate to the needs of Plaintiffs' case, which challenges the suspension of USRAP processing. Plaintiffs already have access to

the documents considered by the Defendants in suspending USRAP in Dkt. No. 154-1 at 2, 14, 25. And Plaintiffs have communications between Defendants and Agencies Involved in the USRAP, as Plaintiffs have defined that term, concerning the suspension of the USRAP by virtue of organizational Plaintiffs being Agencies involved in the USRAP and therefore recipients of those communications.

4. Defendants further object to RFP 7 on the basis that Plaintiffs' broad request—*i.e.*, "all [documents] … relating to …"—includes information that is privileged under the Deliberative Process Privilege and Attorney-Client Privilege and includes documents that are protected by the Attorney Work-Product Doctrine.

5. Defendants also object to RFP 7 on the basis that production of *all* documents related to refugee application processing would be unduly burdensome on Defendants.

6. Defendants further object to RFP 7 to the extent that it requests the production of documents protected by the law enforcement privilege, presidential communications privilege, and any other applicable privileges.

**REQUEST FOR PRODUCTION NO. 8:** All policies, directives, instructions, guidelines, guidance, advisals, cables, notices, training, memoranda, decisions, communications and other similar Documents issued or sent by Defendants and Agencies Involved in the USRAP relating to the implementation of the USRAP EO, including the cancellation of travel arrangements in anticipation of the USRAP EO, produced at any time prior to January 20, 2025.

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein, including their objections to Plaintiffs' definitions of the terms "all," "relating to," and "Agencies Involved in the USRAP."

2. Defendants object to RFP 8 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.

3. Defendants further object to RFP 8 on the basis that "any time prior to January 20, 2025" exceeds the scope of Plaintiffs' RFPs as delineated in Instruction No. 17. Defendants conferred with Plaintiffs and Plaintiffs clarified in writing via email on February 13, 2026, that the timeframe for these RFPs as specified in Instruction No. 17 is from January 1, 2025, to the present.

4. Defendants object to RFP 8 on the basis that "[a]ll … [d]ocuments" concerning implementation of the USRAP EO and cancellation of refugee travel is disproportionate to the needs of Plaintiffs' cases. Plaintiffs already have access to documents related to (a) implementation of the USRAP EO and (b) cancellation of refugee travel arrangements in anticipation of the USRAP EO in Dkt. No. 154-1 at 2, 14, and 25 and Dkt. No. 183-2. *See* Fed. R. Civ. P. 26(b)(1).

5. Defendants further object to RFP 8 on the basis that "[a]ll … documents" concerning implementation of the USRAP EO and cancellation of refugee travel is disproportionate to the needs of Plaintiffs' cases. Plaintiffs' broad request for information prior to January 20, 2025, likely reaches information that is outside Defendants' custody and control. *See* Fed. R. Civ. P. 26(b)(1).

6. Defendants further object to RFP 8 on the basis that Plaintiffs' broad request—*i.e.*, "all [documents] … relating to …"—reaches information that is privileged under the Deliberative Process Privilege and Attorney-Client Privilege.

7. Defendants also object to RFP 8 on the basis that production of *all* documents related to implementation of the USRAP EO would be unduly burdensome on Defendants.

8. Defendants further object to RFP 8 to the extent that it requests the production of documents protected by the law enforcement privilege, presidential communications privilege, the attorney work-product doctrine, and any other applicable privileges.

**REQUEST FOR PRODUCTION NO. 9:** All policies, directives, instructions, guidelines, guidance, advisals, cables, notices, training, memoranda, decisions, communications and other similar Documents issued or sent by Defendants and Agencies Involved in the USRAP relating to the implementation of Presidential Determination No. 2025-13 of September 30, 2025, titled "Presidential Determination on Refugee Admissions for Fiscal Year 2026," published in the federal register on October 31, 2025, see 90 Fed. Reg. 49005.

**RESPONSE:**

1. Defendants incorporate by reference their "Objections that Apply to All Requests for Production of Documents" as though fully set forth herein, including their objections to Plaintiffs' definitions of the terms "all," "relating to," and "Agencies Involved in the USRAP."
2. Defendants object to RFP 9 on the basis that discovery outside the CARs, as set forth more fully in Defendants' pending motion for a protective order (Dkt. No. 188) is not proper in this action.
3. Defendants further object to RFP 9 on the basis that implementation of Presidential Determination No. 2025-13 ("PD 2025-13") is not relevant to Plaintiffs' claims. PD 2025-13 does not impact any suspension of the USRAP. Rather, PD 2025-13 makes clear that any refugee admissions under PD 2025-13 are "subject to the requirements of" Executive Order 14163, which suspends refugee admissions except when both the Secretaries of State and Homeland Security jointly determine that the individual's admission is in the national interest and does not pose a threat to the security or welfare of the United States, Exec. Order 14163 § 3(c).
4. Defendants further object to RFP 9 on the basis that "[a] … [d]ocuments" relating to the implementation of PD 2025-13 is disproportionate to the needs of Plaintiffs' case. Plaintiffs already have access to (a) information addressing how the U.S. government is implementing PD 2025-13 at https://www.state.gov/wp-content/uploads/2025/12/Report-to-Congress-on-Proposed-Refugee-Admissions-

Accessible-11-28-2025.pdf, and (b) information addressing the USRAP processing of Afrikaners at https://za.usembassy.gov/refugee-admissions-program-for-south-africans/. *See* Fed. R. Civ. P. 26(b)(1) (a party's "relative access to relevant information" is a factor for consideration in the proportionality analysis).

5. Defendants further object to RFP 9 on the basis that Plaintiffs' broad request—*i.e.*, "all [documents] … relating to …"—reaches information that is privileged under the Deliberative Process Privilege and Attorney-Client Privilege, and/or are protected by the Work-Product Doctrine.

6. Defendants further object to RFP 9 on the basis that Plaintiffs' broad request—*i.e.*, "all [documents] … relating to …"—is overbroad and is unduly burdensome on Defendants.

7. Defendants further object to RFP 5 to the extent that it requests the production of documents protected by the law enforcement privilege, presidential communications privilege, and any other applicable privileges.

February 25, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CARA E. ALSTERBERG
Acting Assistant Director

*/s/ Joseph McCarter*
JOSEPH MCCARTER
ILANA KRAMER
JASON ZUBATA
Trial Attorneys
U.S. Dept. of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 746-8537
Email: Joseph.A.McCarter@usdoj.gov

Attorneys for Defendants

**FED. R. CIV. P. 26(G) CERTIFICATION**

I hereby certify that Defendants' objections to Plaintiffs' RFPs are consistent with the Federal Rules and warranted by existing law and are not made for any improper purpose.

*/s/ Joseph McCarter*
JOSEPH MCCARTER
U.S. Dept. of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 746-8537
Joseph.A.McCarter@usdoj.gov
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that, on February 25, 2026, I caused the foregoing document to be served on the following attorneys of record in the related federal-court action via email:


Mevlüde Akay Alp*
Kimberly Grano*
Ghita Schwarz*
Pedro Sepulveda, Jr.*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
makayalp@refugeerights.org
kgrano@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Laurie Ball Cooper*
Megan Hauptman*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Ave. NW
Washington, D.C. 20001
Telephone: (646) 939-9169
lballcooper@refugeerights.org
mhauptman@refugeerights.org

Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Shireen Lankarani, WSBA No. 61792
Esmé L. Aston, WSBA No. 62545
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com
EAston@perkinscoie.com

John M. Devaney*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
JDevaney@perkinscoie.com
Joel W. Nomkin*
**PERKINS COIE LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
JNomkin@perkinscoie.com

*Counsel for Plaintiffs*

** Admitted pro hac vice*


*/s/ Joseph McCarter*
JOSEPH MCCARTER
Attorney for Defendants