UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PACITO, et al.,

Plaintiffs,

v.

MARCO RUBIO, in his official capacity as Secretary of State, et al.,

Defendants.

CASE NO. 2:25-cv-255-JNW

**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER**

The Parties hereby stipulate to the following Agreement Regarding Discovery of Electronically Stored Information ("ESI") in this matter ("ESI Agreement or Agreement"):

## I. GENERAL PRINCIPLES

1. The production of Documents and ESI by the Parties shall be subject to the provisions of the Protective Order entered by this Court. Dkt. No. 196. Pursuant to the applicable rules and the Protective Order, the production of privileged or work-product protected ESI, documents, information or materials, whether inadvertent or otherwise, is not a waiver of the privilege or protection in the pending case or in any other federal or state proceeding.

2. The Parties agree to consult and cooperate reasonably as discovery proceeds regarding the collection and production of Hard Copy Discovery and ESI pursuant to this Agreement. The negotiation of this Agreement, and any dispute arising under it, shall not delay any Party's

obligation to respond to discovery requests or to produce Documents that are not the subject of a pending dispute.

3. The Parties agree that this ESI Agreement governs preservation, collection, production, and exchange of ESI in this action. For purposes of this Agreement, the following definitions apply:

a. The term "Action" means *Pacito, et al. v. Rubio, et al.*, 2:25-cv-255-JNW.

b. Chats. Sequences of time-stamped messages exchanged on platforms such as Microsoft Teams, including messages in channels, group chats, and one-on-one chats, together with their attachments, reactions, and edit history where available. Unlike emails, chat data is stored in formats such as RSMF, JSON, TXT, and CSV.

c. Custodian. An individual or source from which relevant ESI may be collected, including current and former officers, employees, and contractors whose ESI remains in a Party's possession, custody, or control.

d. Discovery Plan. The plan required under Fed. R. Civ. P. 26(f) and LCR 26(f).

e. Document. Both ESI and Hard Copy Documents consistent with Fed. R. Civ. P. 34 and Fed. R. Evid. 1001.

f. Email. Electronic mail that is transmitted via email servers which are typically accompanied by a standardized set of structured metadata fields (e.g., To/from/CC/BCC, Subject/Title, Date, Message-ID).

g. ESI. Data or information stored electronically, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data compilations stored in any medium from which information can be obtained. Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

h. Extracted Text. Text extracted from a Native File, which may include header, footer, and document body information.

i. Format. The internal structure of a file, which defines the way it is stored and used.

j. Hard Copy Discovery. Any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized by ESI.

k. Meta-Data/Metadata. (i) Information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

l. Native File(s) or Native Format. A file or datum created by a computer-based or cloud-based application, including Microsoft Office file types, video and audio files, *.eml, *.pst, and *.pdf files.

m. Non-custodial Data Source. A system or container that stores ESI, but one that is not tied to an individual custodian or specific individuals, such as an enterprise system or database.

n. Optical Character Recognition or "OCR". An automated process that scans a document's legible text into machine-readable text, thereby making such documents searchable using appropriate software.

o. Parties. Plaintiffs and Defendants collectively.

p. Producing Party. A Party that produces documents within its possession, custody, or database.

q. Receiving Party. A Party to whom documents are produced.

r. Requesting Party. A Party that serves a request for production of documents.

s. Static Image(s). A representation of ESI produced by converting a Native File into an image format capable of being viewed and printed on standard computer systems. In the

absence of agreement of the Parties or order of the Court, a Static Image should be provided in either Tagged Image File Format ("TIFF" or ".TIF files") or Portable Document Format ("PDF"). If load files were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, load files should be produced together with Static Images.

t. Structured Data. Data that has been organized into a tabular format with relationships between the different rows and columns, including, but not limited to, Microsoft Excel spreadsheets, Structured Query Language ("SQL") databases, and other relational databases.

u. Tagged Image File Format or TIFF. The CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents. All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. When producing black and white paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi, 1 bit, single-page TIFF files, CCITT Group IV (2D Compression). When producing in color, paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi single-page JPG. Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image. Upon reasonable request, the Producing Party shall produce a color image or Native File of any document produced in black and white.

v. Opticon/Concordance® Image Cross Reference file**:** Images should be accompanied by an Opticon load file that associates each Bates number with its corresponding single-page TIFF

image file. The Cross Reference file should also contain the relative image file path for each Bates numbered page. The Opticon/Concordance® Image Cross Reference file is a page level load file, with each line representing one image.

w. Text Messages. iMessage, Multimedia Messaging Service ("MMS"), Rich Communication Service ("RCS"), Short Message Service ("SMS") , and messages sent or received through applications such as Signal, WhatsApp, and Telegram, sent and received via a cellular phone.

4. The Parties agree that all electronic materials produced in this action will be exchanged electronically via secure File Transfer Protocol ("FTP"), such as the Justice Enterprise File Sharing ("JEFS/BOX"), or on a CD, DVD, flash drive, external hard drive, or any mutually agreeable media storage device or means of electronic transmittal. Download links shall remain active for at least 30 days. Each production shall be accompanied by a cover letter identifying the production volume, Bates range, and custodians or data sources included, and, if the Documents are not produced as they are kept in the usual course of business, the requests to which they respond, consistent with Fed. R. Civ. P. 34(b)(2)(E)(i).

5. As provided in Local Civil Rule 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This ESI Agreement is intended to assist the Parties in identifying relevant, responsive ESI that is proportional to the needs of the case. This Agreement does not supplant the Parties' obligations to comply with Fed. R. Civ. P. 34.

6. This agreement shall not enlarge, narrow, or otherwise affect the proper scope of discovery in this case, nor imply that discovery produced under the terms of this Agreement is or is not properly discoverable, relevant, or admissible in this case.

**7.** Unless the Court orders otherwise, each Party shall bear the costs of producing its own documents.

8. Notwithstanding any other provision of this Agreement, and provided that a copy of the ESI that is subject to preservation in this matter remains accessible and unaltered, or a new copy is created that preserves the ESI—including any metadata (to the extent it exists)—the Parties may:

   a. edit non-final documents to the extent necessary to carry out their ordinary duties, provided that all drafts and final versions of the document created as a result are preserved;

   b. move unfiled documents into files or folders to adhere to an organizational scheme that was created before the complaint was filed in this matter, provided that doing so does not alter the parent-child relationship (or any other form of unitization) of the documents. Nothing in this subparagraph prevents the Parties from implementing an organizational scheme that applies only to documents not subject to preservation in this matter;

   c. delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of a lease, and only after the relevant ESI has been extracted;

   d. copy data from one device to another, or from one location to another; and undertake routine maintenance of a database system, including input additional data, access data, update the software running the database system, and append new data; and compress,

decompress, encrypt, or decrypt data provided doing so does not significantly degrade the quality of the data.

## II. ESI DISCLOSURES

1. Within 30 days of an order from the Court denying Defendants' Motion for a Protective Order, Dkt. No. 221, or at a later time agreed to by the Parties, each Party shall disclose the following categories of potentially relevant ESI:

a. Custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, the dates during which the custodian held that title or role, connection to the instant litigation, and the type of the information under the custodian's control.

b. Non-custodial Data Sources. A list of non-custodial data sources (e.g., shared drives, servers) that are likely to contain discoverable ESI.

c. Third-Party Data Sources. A list of third-party data sources to the extent they are reasonably known and, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage). For each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source. Each Party will promptly disclose any newly discovered third-party data sources not identified during initial collections that become newly accessible or newly relevant.

d. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

2. Failure to Disclose. The following procedures will govern if a Party believes that a Producing Party has failed to disclose responsive ESI. The Parties must make reasonable, good-faith efforts to resolve the issue without court involvement.

a. If a Party believes that a Producing Party has failed to disclose responsive ESI, the Party must raise the concern in writing, identifying: (1) the category of information believed to be missing; (2) the basis for believing such information exists; and (3) any specific documents, communications, or data sources suggesting the gap.

b. Within 10 business days, the Parties must meet and confer regarding the alleged failure to disclose.

c. The Producing Party must explain: (1) whether the requested information exists; (2) if it exists, whether it was collected, reviewed, or produced and (3) any technical or logistical issues affecting its availability.

d. The Producing Party must then confirm this information in writing in response to the initial concern in II.2.a.

e. Court Intervention. If the issue remains unresolved, a Party may seek relief only by motion to the court.

f. Disclosure of additional ESI beyond what the Producing Party has produced may be ordered only upon a court finding of good cause.

g. The Parties must confer again if any new issues arise during compliance with the order.

## III. ESI DISCOVERY PROCEDURES

1. On-site inspection of electronic media. Such an inspection shall not be required absent a court order finding the Requesting Party has good cause for such inspection, or unless otherwise agreed by the Parties.

2. Search methodology. The Parties shall timely confer in good faith regarding appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies to be used in collecting and producing ESI. Notwithstanding the Responding Party's ability to conduct sample or test searches for purposes of assessing burden and proportionality or a Party's ability to search their own ESI at any time, these discussions shall occur before any search is conducted to promote proportional and efficient results. The Parties shall continue to cooperate to evaluate, refine, and revise the search methodologies as needed. The Parties shall meet and confer to resolve any disputes. If the Parties cannot agree on a methodology, either Party may initiate the Court's process for resolving any disputes regarding discovery.

a. Prior to running searches:

i. The Producing Party shall disclose the data sources (including custodians), search terms and queries, and date restrictions to locate ESI likely to contain responsive and discoverable information, together with unique hit counts for each proposed search term or query.

ii. After disclosure, the Parties will engage in a meet-and-confer process regarding additional terms sought by the Requesting Party.

iii. A Producing Party that collects, searches, or reviews ESI before completing this process does so without prejudice to the Requesting Party's right to seek additional terms, custodians, or data sources, and the Producing Party may not rely on the cost or burden of repeating that work as a basis to object.

b. Search terms are not a substitute for a reasonable inquiry. Documents and data sources that a Producing Party knows contain responsive, non-privileged information shall be produced

whether or not they are captured by agreed search terms, and search terms need not be applied to Structured Data or to discrete, identified collections of responsive documents (e.g., guidance, directives, or standard operating procedures governing the case-by-case exception process).

3. Search Terms/Queries Proposed by the Requesting Party. Search terms should be focused and proportional to the needs of the case. Broad terms or queries generally should be avoided. A conjunctive combination of multiple words or phrases (e.g., "computer" AND "system") narrows the results and counts as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" OR "system") broadens results, and thus each word or phrase shall count as a separate search term unless the words are variants of each other. The Producing Party may identify each search term or query returning overbroad results, with hit counts demonstrating the overbroad results, and a counterproposal correcting the overbroad search term or query. After search terms and custodians are agreed upon, the Producing Party may, but is not required to, provide unique hit counts for those terms or queries. Nothing in this Agreement imposes further requirements outside what is required under the Federal Rules.

4. Mobile Device Data. The Parties do not anticipate mobile devices being relevant. No mobile device searches or collections will occur absent a later agreement of the Parties or order of the Court. If mobile device data becomes relevant, the Parties will meet and confer regarding proportional collection methods (e.g., screenshots or targeted exports).

5. Format of ESI Production. ESI shall be produced with searchable text, in a "load-ready" format. Acceptable formats include, but are not limited to: (a) native files, (b) data load files (such as .DAT files with accompanying path links to directly import accompanying text or native files), (c) image load files (such as .OPT files with accompanying instructions for

mapping TIFF images), (d) image folder (showing endorsements, redactions, bate stamps), (e) native folder (original electronic files, such as spreadsheets or audio, with an image placeholder or slipsheet), (f) text holder (with extracted full-text or OCR files linked to each document). (g) multi-page TIFFs (with a companion OCR or extracted text file), (h) single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files) and (i) searchable PDF.

a. Unless otherwise agreed to by the Parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, shall be produced in native format. Presentation files, audio and video files, and any file that cannot be accurately imaged shall also be produced in native format. Subject to applicable privileges, feasibility, and burden, documents containing tracked changes, comments, speaker notes, or hidden content shall be imaged showing that content. A document ordinarily produced in native format that requires redaction shall be produced a redacted native file where technically feasible.

b. Each document image file shall be named with a unique Bates number. File names shall not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the Producing Party must preserve the original formatting, metadata (as noted below) and, where applicable, the revision history.

c. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Parent-child document relationships (including emails and their attachments, and files embedded in other files) shall be preserved and reflected in the BegAttach and EndAttach fields.

d. The Parties shall produce ESI as single- page images and associated multi-page text files or with load files containing all metadata required for the Receiving Party's review platform.

6. Email Threading. The Parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the Producing Party will produce a less inclusive copy. A lesser inclusive email shall not be excluded if it contains unique content, including a unique attachment or recipient (including bcc). If all or part of a most inclusive email is withheld for privilege, the Producing Party shall produce the non-privileged lesser inclusive emails in the thread and shall log each withheld email separately.

**7.** Hyperlinks. Emails may contain hyperlinks to files stored in Producing Parties' collaboration platforms or cloud locations ("Linked Files"). The Producing Party is not required to produce the linked content by default. If the Receiving Party believes specific linked content is relevant and proportional, it may request production of those items. If the hyperlinked file(s) is accessible—including that it would be in the Producing Party's possession, custody, or control—the Parties will meet and confer in good faith regarding the relevance and proportionality of producing the hyperlinked file(s) and whether the files(s) may be produced. The Producing Party shall produce the requested items, or state the basis for declining, within 30 days of the request. If produced, the Producing Party shall collect the Linked File (the version as it existed when the message was sent, if available, or otherwise the current version) and produce it as a family member of the message, with metadata identifying the relationship.

8. Metadata fields. The following metadata fields shall be produced, to the extent they exist, are reasonably accessible, and are non-privileged: BegBates; EndBates; BegAttach; EndAttach;

custodian and duplicative custodians (or storage location if no custodian); duplicate file paths; document type; author/from; recipient/to/cc/bcc; title/subject; email subject; file name; file size; file extension; original file path; date/time created, sent, modified and/or received; last modified by; conversation or thread identifier; Chat or channel name and participants; processing time zone; redaction indicator; confidentiality designation; page count; native file link; text file link; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the Parties, particularly in light of advances and changes in technology, vendor, and business practices.

9. Hard-Copy Documents. Hard-Copy documents shall be scanned and produced in electronic format, and each such production shall include a cross-reference file reflecting document breaks and associated custodians or locations. Hard-copy documents that are not produced electronically shall be logically unitized, and folder labels, binder covers, and similar identifying materials shall be scanned and produced with the documents they contain. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the Producing Party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

10. Processing Time Zone. This is the practice of converting and standardizing document timestamps during processing so that all files align to a single reference point. Utilizing one processing time zone assists with deduplication, ensuring proper chronological order of

communications and events represented in the ESI, and inclusion of all files by using date filters. All ESI shall be processed in Coordinated Universal Time ("UTC"), and the processing time zone shall be reflected in the metadata.

11. Deduplication. The Producing Party may deduplicate exact duplicate ESI across custodians and data sources after disclosing its deduplication method to the Requesting Party. A single unique copy of a document shall be produced. Where a duplicate document exists in the files of multiple custodians, the Producing Party shall list all duplicate custodians and file paths in the metadata fields identified in Section III.8. Email shall be deduplicated based on industry-standard hash values (*e.g.*, MD5 or SHA-1) calculated across the entire email family, including sender, all recipients (including bcc), date and time sent, subject, email body and attachments. Deduplication shall occur only at the family level; a stand-alone document shall not be removed as a duplicate of an attachment, and no attachment shall be removed from its parent. Attachments must be preserved and produced with their parent emails. Near-duplicate documents shall not be removed unless the Parties agree otherwise. Whether a Producing Party deduplicates globally or by custodian, it shall populate the duplicate custodian and duplicate file path fields for every removed copy. There are two types of deduplication which Parties may utilize:

a. Global. After comparing files across the entire case collection or workspace, the Producing Party shall globally deduplicate across all custodians so that only one unique copy remains, regardless of who produced the duplicate.

b. Custodial. After comparing files within a specific custodian's individual dataset, the Producing Party may utilize custodial deduplication so that only one copy of the file remains within that custodian's dataset, but copies held by other custodians remain.

## IV. TECHNOLOGY-ASSISTED REVIEW AND ANALYTICS

1. A Producing Party may use technology-assisted review ("TAR"), continuous active learning ("CAL"), and email threading to search, filter, cull, review, and produce ESI, subject to the following: (a) before using TAR or CAL to cull or exclude documents from human review or production, the Producing Party shall notify the Requesting Party, disclose the tool, the document population to which it will be applied (including whether search terms will be applied first), and the method for training the model, and meet and confer regarding a validation protocol; and (b) at the conclusion of the review, the Producing Party shall review a statistically valid random sample of the documents not produced (the "null set") and disclose the sample size, the number of responsive documents identified, and the resulting estimated recall. The Parties shall meet and confer regarding an appropriate recall target.

2. The Parties agree that received ESI—including material marked "Confidential Information" or "Confidential—Attorneys' Eyes Only Information"—may not be entered into an artificial intelligence tool or service, including but not limited to publicly available Large Language Model interfaces, unless such a tool or service is deployed in a closed environment that does not use received discovery material to train or improve any model. For the avoidance of doubt, such a closed environment may include a shared environment among people subject to the Protective Order, such as a shared Relativity instance or Harvey vault. The Parties further agree that artificial intelligence tools or services shall not be given access to received discovery materials designated as "Confidential Information" or "Confidential—Attorneys' Eyes Only Information" in such a way that would result in access to such discovery material by any person or entity not subject to the Protective Order. For the sake of clarity, it will not constitute a violation of the Protective Order to upload such information into a closed environment so long

as (1) access to the materials is still limited to people and entities subject to the Protective Order and (2) the received discovery materials are used only in connection with this case. Should a Receiving Party load, import, submit, feed, or otherwise transfer received discovery material into a closed artificial intelligence environment in compliance with the terms of this Protocol, the Party shall not use, or permit the tool or its model providers to use, such received discovery material to train or improve any model or otherwise inform other cases or matters. Deletion of uploaded information will occur upon termination of this case in accordance with the Protective Order.

3. The Parties shall meet and confer to resolve any disputes. If the Parties cannot agree on usage of a tool or a protocol for use of a tool, either Party may initiate the Court's process for resolving any disputes regarding the use of such technology.

**V. PRESERVATION OF ESI**

1. The Parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. Notwithstanding any other provision of this Agreement, and provided that a copy of the ESI that is subject to preservation in this matter remains accessible and unaltered, or a new copy is created that preserves the ESI—including any metadata (to the extent it exists)—the Parties may:
   a. Edit non-final documents to the extent necessary to carry out their ordinary duties, provided that all drafts and final versions of the document created as a result are preserved;
   b. Move unfiled documents into files or folders to adhere to an organizational scheme that was created before the complaint was filed in this matter, provided that doing so does not alter the parent-child relationship (or any other form of unitization) of the documents.

Nothing in this subparagraph prevents the Parties from implementing an organizational scheme that applies only to documents not subject to preservation in this matter;

c. Delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of a lease, and only after the relevant ESI has been extracted;

d. Copy data from one device to another, or from one location to another; and undertake routine maintenance of a database system, including input additional data, access data, update the software running the database system, and append new data; and compress, decompress, encrypt, or decrypt data provided doing so does not significantly degrade the quality of the data.

## VI. PRIVILEGE

1. A Producing Party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. The Parties disagree whether this obligation applies to documents withheld from a certified administrative record ("CAR"). Defendants believe that the obligation does not apply to documents withheld from a CAR (*see Blue Mountains Biodiversity Project v. Jeffries*, 72 F.4th 991, 996-97 (9th Cir. 2023)), whereas Plaintiffs believe that a privilege log for materials withheld from a CAR is warranted and reserve the right to seek relief from the Court. *See e.g. Nat'l TPS All. v. Noem*, No. 25-CV-05687-TLT (SK), 2025 WL 2419266, at *4 (N.D. Cal. Aug. 21, 2025). The Parties otherwise agree that this ESI Agreement does not apply to the production of CARs.

2. Privilege logs shall include a unique identification number for each document, the date, the author(s) and all recipients (with titles or affiliations, and with attorneys identified), a

description of the subject matter sufficient to enable the Receiving Party to assess the claim without revealing the privileged information, and the basis for the claim (e.g., attorney-client privileged, work-product protection, deliberative process privilege). For ESI, privilege logs may rely on available metadata (e.g., author/recipient, to/from/cc/bcc fields, subject/title, date created). If the available metadata is insufficient to evaluate the privilege claim, the Producing Party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs shall be produced to all other Parties no later than 30 days after delivering a production from which the document was withheld unless the Parties agree to a different deadline.

3. Redactions need not be logged, provided the basis for the redaction is clear on the redacted document (e.g., labeled "Privileged," "Work-Product," or pursuant to protective order designations). No Party shall redact information on the basis of relevance, responsiveness, or confidentiality; confidentiality shall be addressed through designations under the Protective Order, Dkt. No. 196. Redaction of personally identifying information ("PII") is permitted only as authorized by the Protective Order or agreed by the Parties, and each such redaction shall be labeled as PII.

4. With respect to privileged or work-product information generated after the filing of the first amended complaint (Dkt. No. 211), Parties are not required to include any such information in privilege logs.

5. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

6. Pursuant to Fed. R. Evid. 502(d), the production of any documents, ESI or information, whether inadvertent or otherwise, shall not constitute a waiver of any privilege or protection

in this proceeding or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a Party's right to review documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the Producing Party, consistent with the Protective Order, Dkt. No. 196. A Producing Party that seeks to claw back a produced Document shall notify the Receiving Party in writing, identifying the Document by Bates number and the basis for the claim, and shall provide a privilege log entry (and, for a partially privileged Document, a redacted replacement) within 30 days of the notice. Upon notice, the Receiving Party shall promptly return, sequester, or destroy the Document consistent with Fed. R. Civ. P. 26(b)(5)(B) and the Protective Order, Dkt. No. 196. This paragraph does not apply to (a) any Document or information a Producing Party affirmatively uses or relies upon in this Action, including in a filing, at a deposition, or in a certified administrative record, or (b) any Document that the Producing Party has publicly disclosed.

## VII. MODIFICATION

1. This Stipulated Order may be modified by a written agreement of the Parties or by the Court for good cause shown. Nothing in this Stipulation shall be construed to prohibit the undersigned Parties from agreeing to modify any provision of this Stipulation or seeking relief from the Court. Nor shall anything in this Stipulation or any Party's compliance be construed as a waiver of any Party's rights under the Federal Rules of Civil Procedure. Nor shall anything in this Stipulation be interpreted to require disclosure of information that is not relevant to the

claims or defenses in this case or that is protected by any applicable privilege. Nor shall anything in this Stipulation be interpreted to limit discovery of information that is relevant and proportional under Fed. R. Civ. P. 26(b)(1). Nor shall anything in this Stipulation be construed to waive any objections as to the production, discoverability, proportionality, technical impracticality, or the protected status of ESI.

DATED: October 16, 2026

By: /s/ *Harry Schneider*

Harry H. Schneider, Jr., WSBA No. 9404
Jonathan P. Hawley, WSBA No. 56297
Christine E. Gibbs, WSBA No. 62949
**ASHURST PERKINS COIE US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
Harry.Schneider@ashurstperkins.com
Jonathan.Hawley@ashurstperkins.com
Christine.Gibbs@ashurstperkins.com

Joel W. Nomkin*
**ASHURST PERKINS COIE US LLP**
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
Joel.Nomkin@ashurstperkins.com

John M. Devaney*
**THE LAW OFFICE OF JOHN DEVANEY**
3428 Patterson Street NW
Washington, D.C. 20015
Telephone: (202) 285-3013
DevaneyJ07@gmail.com

Mevlüde Akay Alp*
Hussein Elbakri*
Kimberly Grano*
Ghita Schwarz*
Pedro Sepulveda*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
makayalp@refugeerights.org
helbakri@refugeerights.org
kgrano@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Laurie Ball Cooper*
Megan McLaughlin Hauptman*
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
650 Massachusetts Avenue NW, Suite 600
Washington, D.C. 20001
Telephone: (516) 732-7116
Facsimile: (516) 324-2267
lballcooper@refugeerights.org
mhauptman@refugeerights.org

*Counsel for Plaintiffs*
* Admitted *pro hac vice*

*/s/ Jason K. Zubata*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Director

CARA E. ALSTERBERG
Assistant Director

JASON K. ZUBATA
JOSEPH MCCARTER
TIA L. HOCKENBERRY
Trial Attorneys
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20005
Phone: (202) 746-8537
Email: Joseph.A.McCarter@usdoj.gov

*Counsel for Defendants*

**[PROPOSED] ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: ______________________

______________________________
The Honorable Jamal N. Whitehead
UNITED STATES DISTRICT JUDGE